**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| | § | |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT CITY OF IRVING'S RULE 12(b)(6)**
**MOTION TO DISMISS, AND BRIEF IN SUPPORT THEREOF**

Respectfully submitted,

**CITY ATTORNEY'S OFFICE**
**CITY OF IRVING, TEXAS**

By:     /s/Saul Pedregon
        **SAUL PEDREGON**
        Senior Assistant City Attorney
        State Bar No. 00797231
        Email: spedregon@IrvingTX.gov
        **JASON D. McCLAIN**
        Senior Assistant City Attorney
        State Bar No. 00797032
        Email: jmcclain@IrvingTX.gov
        825 West Irving Boulevard
        Irving, Texas 75060
        Telephone: 972.721.2541
        Facsimile: 972.721.2750

**ATTORNEYS FOR DEFENDANTS CITY OF IRVING, JAMES MARKHAM, ANDREW HAMMETT, and PAUL LEWIS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following parties or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Dale Lotts
401 E. 8th St.
Ste. 214 PMB 7860
Sioux Falls and Minnehaha, SD 57103

/s/Saul Pedregon
**SAUL PEDREGON**
Assistant City Attorney

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF SERVICE

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

I.      INTRODUCTION AND GROUNDS NECESSITATING DISMISSAL ..........................1

II.     APPLICABLE STANDARD FOR 12(b)(6) DISMISSAL ................................................3

III.    ARGUMENT AND AUTHORITIES ...............................................................................4

        A.   Plaintiff's Constitutional Claims Should Be Dismissed ...............................................6

        B.   Plaintiff Has Not Sufficiently Alleged That Any Violation Of His
             Constitutional Rights Was Pursuant To An Official City Policy ............................10

        C.   Plaintiff Has Not Plead Sufficient Facts Regarding City Policymakers'
             Alleged Deliberate Indifference................................................................14

        D.   Plaintiff's Claims for Failure to Train Should Be Dismissed..................................15

        E.   Plaintiff's Claim for Failure to Supervise Should Be Dismissed ...........................24

        F.   Plaintiff is Barred from Recovering Exemplary Damages .......................................25

IV.     CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

*Cases*

*Alford v. State*,
    358 S.W.3d 647, 654 (Tex. Crim. App. 2012) ............................................................. 9

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ............................................................................ passim

*Baker v. Putnal*,
    75 F.3d 190, 199 (5th Cir.1996) ...................................................................... 23

*Barrios-Barrios v. Clipps*,
    825 F.Supp. 2d 730, 746 (E.D. La. 2011) ..................................................... 20, 22

*Bd. Of Comm'rs of Bryan Cnty. v. Brown* ("Brown"),
    520 U.S. 397, 410 (1997) ........................................................................ 16, 17, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ............................................................................ passim

*Benavides v. County of Wilson*,
    955 F.2d 968, 973 (5th Cir.1992) ..................................................................... 23

*Bennett v. City of Slidell*,
    735 F.2d 861 (5th Cir. 1984) ..................................................................... 5, 14, 17

*Blackburn v. City of Marshall*,
    42 F.3d 925 at 931 (5th Cir. 1995) ................................................................... 4, 24

*Brown v. Bryan County* ("*Bryan County*"),
    219 F.3d 450,459-61 (5th Cir. 2000) ............................................................ 16, 17, 19

*Brown v. Tarrant County*,
    985 F.3d 489, 497 & n. 11 (5th Cir. 2021) ............................................................ 10

*Burge v. St. Tammany Parish*,
    336 F.3d 363, 370 (5th Cir. 2003) ............................................................ 14, 16, 19

*Campbell v. City of San Antonio*,
    43 F.3d 973, 977 (5th Cir. 1995) ...................................................................... 17

*Case v. City of New York*,
    233 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ........................................................ 13

*City of Canton v. Harris*,
    489 U.S. 378, 386-92 (1989) ............................................................. passim

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247, 271 (1981) ............................................................. 25

*City of St. Louis v. Praprotnik*,
    485 U.S. 112, 123 (1988) ............................................................. 7

*Connick v. Thompson*,
    563 U.S. 51, 61-62 (2011) ............................................................. 19, 21, 22

*Culbertson v. Lykos*,
    790 F.3d 608, 625 (5th Cir. 2015) ............................................................. 15

*Deville v. Marcantel*,
    567 F.3d 156, 171 (5th Cir. 2009 ) ............................................................. 15

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
    406 F.3d 375, 383 (5th Cir. 2005) ............................................................. 5, 13, 14

*Eugene v. Alief Ind. Sch. Dist.*,
    65 F.3d 1299, 1304 (5th Cir. 1995) ............................................................. 8

*Fernandez- Montes v. Allied Pilots Ass'n*,
    987 F.2d 278, 284 (5th Cir. 1993) ............................................................. 3

*Fraire v. City of Arlington*,
    957 F.2d 1268, 1278 (5th Cir. 1992) ............................................................. 17

*Fuentes v. Nueces County*,
    689 F. App'x 775, 778 (5th Cir. 2017) ............................................................. 17

*Gladden v. Roach*,
    864 F.2d 1196, 1198 (5th Cir. 1989) ............................................................. 9, 10

*Gonzales v. Westbrook*,
    118 F.Supp.2d 728, 737 (W.D. Tex. 2000) ............................................................. 23

*Goodman v. Harris Cnty.*,
    571 F.3d 388 (5th Cir.2009) ............................................................. 15, 23, 24

*Gros v. City of Grand Prairie*,
    181 F.3d 613, 615 (5th Cir. 1999) ............................................................. 7

*Huong v. City of Port Arthur*,
    961 F.Supp. 1003, 1007 (E.D. Tex. 1997) ............................................................. 23

*Hutcheson v. Dallas County*,
    994 F.3d 477, 483 (5th Cir. 2021) ..................................................................... 10

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191, 205 (5th Cir. 2007) .................................................................... 3, 4

*Jackson v. Procunier*,
    789 F.2d 307, 309 (5th Cir. 1986) ......................................................................... 3

*James v. Harris County*,
    577 F.3d 612, 617 (5th Cir. 2009) ...................................................................... 11

*Jett v. Dallas Independent School District*,
    491 U.S. 701, 737 (1989) ..................................................................................... 7

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045, 1050 (5th Cir. 1982) ................................................................... 3

*Keane v. Fox TV Stations, Inc.*,
    297 F. Supp. 2d 921 at 925 (S.D. Tex. 2004) ............................................... 4, 24

*Littell v. Hous. Indep. Sch. Dist.*,
    894 F.3d 616, 622-23 (5th Cir. 2018) ............................................................. 5, 20

*Livingston v. Desoto Indep. Sch. Dist.*,
    2004 WL 2964977, at *2 (N.D. Tex. Dec. 15, 2004) ......................................... 25

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464, 467 (5th Cir. 2004) ........................................................................ 3

*Meals v. Hale Cnty. Sheriff's Office*,
    No. 5:10-CV-00045-BG, 2011 WL 13137098, at *2 (N.D. Tex. Aug. 18, 2011) ................... 10

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658, 690 (1978) .............................................................................. passim

*Pagan-Negron v. Seguin Indep. Sch. Dist.*,
    974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) .................................................. 17

*Peña v. City of Rio Grande*,
    879 F.3d 613, 621 (5th Cir. 2018) .............................................................. 5, 11, 14

*Pennsylvania v. Muniz*,
    496 U.S. 582, 600-02 (1990) ........................................................................... 9, 10

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Peterson v. City of Fort Worth,*
    588 F.3d 838, 847 (5th Cir. 2009) ............................................................ 5, 10, 17

*Pineda v. City of Houston,*
    291 F.3d 325, 328 (5th Cir. 2002) ................................................................ 10, 17

*Pinedo v. City of Dallas,*
    No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ......................... 7, 11

*Piotrowski v. City of Houston,*
    237 F.3d 567, 578 (5th Cir. 2001) ................................................................. passim

*Presley v. City of Benbrook,*
    4 F.3d 405, 408 (5th Cir. 1993) ....................................................................... 10

*Ratliff v. Aransas County,*
    948 F.3d 281, 285 (5th Cir. 2020), cert. denied,
    141 S. Ct. 376, 208 L. Ed. 2d 97 (2020) ............................................................... 22

*Sanchez v. Young County,*
    956 F.3d 785, 791 (5th Cir. 2020) ..................................................................... 10

*Skyy v. City of Arlington,*
    712 F. App'x 396, 401 (5th Cir. 2017) ................................................................ 25

*Smith v. Brenoettsy,*
    158 F.3d 908, 911-912 (5th Cir. 1998) ................................................................ 24

*Snyder v. Trepagnier,*
    142 F.3d 791, 796 (5th Cir. 1998) ..................................................................... 15

*Spiller v. City of Tex. City, Police Dep't,*
    130 F.3d 162, 167 (5th Cir. 1997) ..................................................................... 11

*Tennessee v. Garner,*
    471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985) ...................................................... 19

*Townsend v. State,*
    813 S.W.2d 181, 186 (Tex. App. - Houston [14th Dist.] 1991, pet. ref'd) ................................. 9

*Tuchman v. DSC Comms. Corp.,*
    14 F.3d 1061, 1067 (5th Cir. 1994) ................................................................. 3, 24

*United States v. Lugo,*
    289 F. Supp. 2d 790, 795 (S.D. Tex. 2003) .............................................................. 9

*Valle v. City of Houston,*
    613 F.3d 536, 542 (5th Cir. 2010) ................................................................. 21, 22

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*,
   495 F.3d 191, 205 (5th Cir. 2007) ............................................................................. 4

*Webster v. City of Houston*,
   735 F.2d 838, 841 (5th Cir. 1984) .................................................................... 5, 11, 13

*Young v. City of Irving*,
   No. 3:23-CV-1423-D, 2024 WL 4193936, at *13 (N.D. Tex. Sept. 12, 2024) ......................... 7

*Zarnow v. City of Wichita Falls*,
   614 F.3d 161, 168-69 (5th Cir. 2010) ................................................................... 5, 10

## Statutes

42 U.S.C. § 1983 ................................................................................................. 2, 4, 6

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 3

Tex. Loc. Gov't Code § 341.003 ........................................................................... 7

Tex. Local Govt. Code, §51.072 ........................................................................... 7

Texas Constitution Article 11 .............................................................................. 7

Texas Occupations Code §§ 2701.251, 1701.253 .................................................. 23

## Other Authorities

Home Rule Charter of the City of Irving, Texas ..................................................... 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALE LOTTS | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. 3:25-CV-03329-S-BN |
| **VS.** | § | |
| | § | ECF |
| | § | |
| CITY OF IRVING, OFFICER JAMES | § | |
| MARKHAM, OFFICER ANDREW | § | |
| HAMMETT, OFFICER PAUL LEWIS, | § | |
| and JOHN DOE JAIL OFFICERS 1-10 | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT CITY OF IRVING'S RULE 12(b)(6)**
**MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of Irving, Texas ("City") submits its Rule 12(b)(6) Motion to Dismiss and Brief in Support Thereof in response to Plaintiff's Complaint (Dkt. 3).

## I.    INTRODUCTION AND GROUNDS NECESSITATING DISMISSAL

This case arises out of Plaintiff's arrest for Public Intoxication. Plaintiff files this lawsuit alleging numerous claims against Markham (the officer who initially contacted and ultimately arrested Plaintiff), Hammett (an officer who provided backup to Markham), and Lewis (another officer who provided backup to Markham). Finally, Plaintiff also sued the City of Irving, the entity which employed each of the individual defendants.[1] Plaintiff sues Defendants Markham,

---

[1] Plaintiff has not specified whether he has sued Defendants Markham, Hammett, and Lewis in their official or individual capacities, or both. To the extent that Plaintiff has sued the City through the individual defendants in their official capacity, Defendant City also moves this Court to dismiss Plaintiff's claims against it for lack of standing as discussed more fully within DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE

Hammett, and Lewis alleging various violations of the U.S. Constitution under 42 U.S.C. § 1983.

Defendants Markham, Hammett, and Lewis have filed their 12(b)(6) Motion to Dismiss.

With regards to the City, Plaintiff asserts the following cause of action: [2]

**Claim 6 - Monell Liability - City of Irving**.

[Dkt. 3, § IV Claim 6].

Plaintiff alleges that his "constitutional injuries were caused by the policies, customs, and practices of the City of Irving." *Id*. Specifically, Plaintiff asserts that "[t]he City maintained:

- an established pattern of pretextual public-intoxication arrests by specific officers,
- coercive and unlawful jail-booking practices,
- a widespread and tolerated practice of muting body-worn-camera audio during enforcement encounters, and
- systemic failures in supervision, training, and discipline that allowed these practices to persist.

Each of these customs was a moving force behind Plaintiff's unlawful arrest, excessive force, retaliatory detention, and due-process violations."
[Dkt. 3, § IV Claim 6].

The City moves for judgment on the grounds that Plaintiff has failed to establish an underlying constitutional violation. Moreover, Plaintiff has not plead and cannot establish evidence of any City policy or custom promulgated or adopted by the City's policymakers that caused ("were the moving forces behind") Plaintiff's alleged injuries. Further, Plaintiff cannot show that any of the City's training procedures were inadequate, that the City's policymakers were deliberately indifferent in adopting a training policy, or that any City policy directly caused Plaintiff's alleged injuries. Likewise, Plaintiff cannot show that the polices regarding

---

12(B)(6)MOTION TO DISMISS, the contents of which Defendant City incorporates herein pursuant to the provisions of Rule 10 of the Federal Rules of Civil Procedure.
[2] While Plaintiff clearly states a single claim for relief against the City on pages 22-28 of his Complaint, he references, alludes to, and perhaps even alleges other claims against the City throughout his pleading. The City has erred on the side of caution and addressed all of the claims that Defendant believes Plaintiff is or may be raising. However, if the Court believes Defendant missed an allegation raised or pled by the Plaintiff, it respectfully requests an opportunity to provide supplemental briefing on that claim or claims.

supervision, training, and treatment of persons was so constitutionally lacking that it constituted a deliberate disregard to Plaintiff's constitutional rights.

## II.    APPLICABLE STANDARD FOR 12(b)(6) DISMISSAL

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the City asserts that Plaintiff has failed to state a claim upon which relief may be granted and seeks dismissal of Plaintiff's claims against it. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all well-pleaded facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To avoid dismissal, a plaintiff must allege all the proper elements of a right to recover from a defendant. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The court should dismiss a complaint if it lacks an allegation regarding one of the required elements

of a cause of action. *See Keane v. Fox TV Stations, Inc*., 297 F. Supp. 2d 921 at 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925 at 931 (5th Cir. 1995)). Additionally, FED. R. CIV. P. 8 demands more than unadorned, "the-defendant-unlawfully-harmed-me" accusations and is not met by a complaint that includes nothing more than conclusions. *Iqbal*, 566 U.S. at 678. The pleadings must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 570; *see also Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007).

### III. ARGUMENT AND AUTHORITIES

Plaintiff seeks to hold the City liable under 42 U.S.C. § 1983, which makes liable "[e]very person" who, under color of state law, violates federal constitutional rights. For this purpose, municipal entities like the City qualify as "persons." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 (1978). But the City "cannot be held liable under § 1983 on a respondeat superior theory." *Id*. Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). Rather, to hold the City liable under § 1983 a plaintiff must establish that an "official policy" of the City itself - and not the policy of an individual municipal employee - was the "moving force" and actual cause of the loss of constitutional rights and any resultant harm. *Id*.

Thus, to state a § 1983 claim against the City, the Complaint must allege sufficient facts to permit the reasonable inference 1) that a constitutional violation occurred, and 2) an "official policy" attributable to the City's policymakers that 3) "was the moving force" behind it. *Littell v.*

*Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622-23 (5th Cir. 2018); *see Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018).

In the absence of proof that a deprivation was caused by an officially promulgated municipal policy, a plaintiff may establish municipal liability through proof that a deprivation was caused by a custom, that is, a practice that is so widespread as to have the force of law. *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Isolated incidents do not establish the type of persistent, often repeated, constant violations that constitute the custom required for municipal liability under Section 1983. *Id*. at 581 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *see also Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (a custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the conduct").

In order to impose municipal liability under Section 1983 based on a custom or practice, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted); *see also Zarnow*, 614 F.3d at 169; *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). Prior incidents used to establish a pattern must have occurred for so long or so frequently that the course of conduct warrants attribution to the municipality of knowledge that the objectionable conduct is the expected, accepted practice of its employees. *Peterson*, 588 F.3d at 850-51. Additionally, a pattern requires similarity and specificity, and prior incidents cannot simply include any and all bad or unwise acts, but rather they must point to the specific violation in question. *Id*. at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Isolated unconstitutional actions by municipal employees will almost never trigger municipal

liability. *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

## A.    Plaintiff's Constitutional Claims Should Be Dismissed

Plaintiff claims that City police officers Markham, Hammet, and Lewis violated his rights when they allegedly arrested him without probable cause and falsely imprisoned him [Dkt. 3, §IV Claim 1], retaliated against him for exercising his First Amendment rights [*Id*. Claim 2], and utilized excessive force in effectuating his arrest [*Id*. Claim 4]. Plaintiff further asserts that unnamed John Doe defendants violated his due process rights. [*Id*. Claim 3]. Plaintiff's claim of alleged constitutional violations should be dismissed because Plaintiff has failed to plead sufficient facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Plaintiff has not pled sufficient facts to establish either a constitutional violation by the City or a policy, custom, or practice of the City that was the moving force of a constitutional violation. *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 578.

### 1.    Plaintiff Cannot Demonstrate Involvement by a Final Policymaker

Municipal liability under Section 1983 must be premised on a municipal policy or custom that causes the alleged constitutional deprivation. Thus, Plaintiff must have evidence of a City policy that has caused his alleged constitutional injuries in order to survive dismissal. Because a municipality is not subject to respondeat superior liability, the acts of individual City employees do not create liability under Section 1983 unless that employee is a policymaker.

Identification of a final policymaker for Defendant City is necessary for a proper analysis of a Section 1983 cause of action. Throughout his Complaint, Plaintiff generally refers to "the City" but does not identify a final policymaker. *See, generally,* Plaintiff's Complaint [Dkt. 3]. However, for purposes of Defendant City, the designation of "final policymaker" is reserved

solely for the City Council. HOME RULE CHARTER OF THE CITY OF IRVING, TEXAS, Art. IV, Sec. 13.[3] "[O]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). Identification of a City's final policymaker for purposes of analyzing liability under 42 U.S.C. §1983 is a legal question for the court. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). "Whether a particular official has 'final policy making authority' is a question of state law." *Id*.; *Praprotnik*, 485 U.S. at 123.

In the instant case, the City is a home rule city which derives its powers from the Texas Constitution and whose broad powers are limited only by the City Charter, the Texas Constitution, or by State statute. *See* Texas Constitution Article 11, §5; TEX. LOCAL GOVT. CODE, §51.072. The Local Government Code grants authority to organize a police force to the City itself. *See* TEX. LOC. GOV'T CODE § 341.003. The City Charter, which is the source of State law governing determination of final policymakers, authorizes the City Council to set policy for the City. HOME RULE CHARTER OF THE CITY OF IRVING, TEXAS, Art. IV, Sec. 13. According to the Charter, the City Council is the sole policymaker for the City. *Id*., Art. IV, Sec. 13. As such, the City Council is the City of Irving's final policymaker. *Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936, at *13 (N.D. Tex. Sept. 12, 2024) (Fitzwater, J.), citing *Pinedo v. City of Dallas, Texas*, 2015 WL 221085, at *5 (N.D. Tex. Jan. 15, 2015).

Accordingly, to the extent Plaintiff attempts to predicate liability against the City without establishing deliberate indifference by an official with final policymaking authority, said attempt is misplaced. Defendant City's final policymakers – its City Council - had no involvement in the

---

[3] https://ecode360.com/45696018

alleged constitutional violations or any involvement in the circumstances surrounding the incident made the basis of this suit.

Any attempt by Plaintiff to rely upon the alleged actions or decisions of any City employee to impose liability upon the City is misplaced. The actions of a City employee cannot impose such liability since they are not officials possessing final policymaking authority.

Only deliberate indifference of a person with final policymaking authority can support the imposition of liability upon the City. *See Eugene v. Alief Ind. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). There is no evidence in the record that deliberate indifference existed on the part of any policymaking official of the City which was in any way related to Plaintiff's arrest or detention. Rather, assuming the veracity of Plaintiff's allegations, all actions of which Plaintiff complains were taken by City employees with no final policymaking authority. Dismissal in favor of the City is, therefore, appropriate.

Finally, Plaintiff fails to plead the identity of the City's final policymaker. This omission is fatal to his claim. *See Davenport v. City of Garland, Tex.*, 2010 WL 1779620, at *2 (N.D. Tex. Apr. 9, 2010) ("Plaintiff makes complaints against the City's policies but fails to name the final policymaker or state any facts which would allow the Court to make that determination. These bare assertions amount to nothing more than a "formulaic recitation of the elements" of a municipal liability claim . . . As such, the allegations are conclusory and not entitled to the assumption of truth.") (internal citations omitted), *rec. accepted*, 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010).

### 2. Plaintiff Has Not Pled Facts Sufficient to Establish a Constitutional Violation

Defendants Markham, Hammett, and Lewis have moved this Court to dismiss Plaintiff's unlawful arrest and false imprisonment, excessive force, first amendment, and conspiracy claims

against them as discussed more fully in DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(B)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF, the contents of which Defendant City incorporates herein pursuant to the provisions of Rule 10 of the Federal Rules of Civil Procedure. For the reasons discussed therein, Plaintiff has failed to establish a constitutional violation. Plaintiff, therefore, does not state a plausible claim for relief based on any alleged First, Fourth, or Fourteenth Amendment violations.

Regarding his due process claims, the Supreme Court explicitly recognized - as a type of question "normally attendant to arrest and custody" - a "routine booking question exception" to *Miranda* that "exempts from [*Miranda*]'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." *Alford v. State*, 358 S.W.3d 647, 654 (Tex. Crim. App. 2012) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990) (Brennan, J., plurality op.) (internal quotation marks omitted));[4] *see also Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989). ("The district court did not err, therefore, in holding that Gladden did not have an absolute right to remain silent following his arrest."). This "legitimate administrative need" includes security concerns. *See Alford*, 358 S.W.3d at 654.

Again, "not every question asked in a custodial setting constitutes an interrogation for *Miranda* purposes." *United States v. Lugo*, 289 F. Supp. 2d 790, 795 (S.D. Tex. 2003); *see also Townsend v. State*, 813 S.W.2d 181, 186 (Tex. App. - Houston [14th Dist.] 1991, pet. ref'd) (holding that questions regarding suspect's name, address, weight, height, place of employment, or physical disabilities "normally attendant to arrest and custody"). "Since [Williams] was asked nothing outside of this well-established exception to the Fifth Amendment, he has no

---

[4] Booking questions were *Miranda* exempt because these questions were "reasonably related to the police's administrative concerns." *Muniz*, 496 U.S. at 601-02.

constitutional claim." *See Presley v. City of Benbrook*, 4 F.3d 405, 408 (5th Cir. 1993); *see also Muniz*, 496 U.S. at 601-02; *Gladden*, 864 F.2d at 1198. This claim fails.

Finally, Plaintiff's claim that he could not use the phone also fails to state a constitutional claim. Plaintiff "did not have a protected liberty interest in placing a phone call upon being booked. Because [Williams] cannot meet this threshold requirement, he fails to state a constitutional violation." *Meals v. Hale Cnty. Sheriff's Office*, No. 5:10-CV-00045-BG, 2011 WL 13137098, at *2 (N.D. Tex. Aug. 18, 2011). This Court should dismiss these claims.

**B.    Plaintiff Has Not Sufficiently Alleged That Any Violation of His Constitutional Rights Was Pursuant to an Official City Policy**

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694). Thus, even if Plaintiff has alleged plausible constitutional violations - which the City does not concede - Plaintiff survives the City's motion to dismiss his *Monell* claims only:

> "by identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)."

*Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021); *see also Brown v. Tarrant County*, 985 F.3d 489, 497 & n. 11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs") (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

As to alleging an official policy, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (footnote omitted). And "[t]o establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski*, 237 F.3d at 582); *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))).

Plaintiff has not directed the Court's attention to any specific City policy which caused the alleged constitutional deprivation.  Rather, Plaintiff vaguely refers to the following:

1) "FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for 'public intoxication,' while Officer Paul Lewis made 8, and Officer James Markham - who was trained by Hammett as his Field Training Officer - made 15. [] The pronounced concentration of PI arrests among Hammett and his trainee Markham, combined with Lewis's significantly lower figure, plausibly indicates a subgroup-level pattern that City supervisors would have observed through routine arrest-report reviews, shift reports, and the department's mandatory supervisory approval of arrests." [Dkt. 3, p. 23].
2) "The Irving City Jail maintained a practice of requiring detainees to answer non-essential questions before booking, delaying phone access, and postponing magistrate presentation until detainees complied-all in violation of Texas law." *Id.* at p. 24.
3) "These practices were not the actions of a rogue officer; they were standard jail procedures applied consistently *to Plaintiff* over many hours, in the presence of multiple staff members. This plausibly alleges a continuing operational custom for which the City is liable under Monell." *Id.*, pp. 23-24 (emphasis added).

4) "These coercive [intake] threats were delivered as part of standard intake procedure and not as individualized safety assessments, demonstrating a jail-level custom of compelling compliance through punitive use of suicide-watch procedures." *Id.* at p. 26.

5) "Plaintiff alleges *on information and belief* that this practice [of muting body-worn camera audio] was widespread and tolerated at the time of his arrest, enabling officers to avoid transparency and accountability and facilitating retaliatory or unjustified arrests without fear of review. Courts routinely recognize that municipal toleration of BWC muting constitutes a plausible unconstitutional custom at the pleading stage. *Id.* at p. 26 (emphasis added).

6) "The City failed to train [supervise, and discipline] officers on:
• the probable-cause requirements for public intoxication (which requires both intoxication and danger to self or others),
• the prohibition on retaliatory arrests based on protected speech,
• lawful use of force on compliant subjects,
• the legal limits of investigatory encounters, and
• mandatory jail-processing and magistrate-presentation requirements."
*Id.* at pp. 26-27.

These speculative and conclusory allegations do not state any official City policy, and Plaintiff's assertions are insufficient to identify a specific City policy that allegedly caused the constitutional deprivations.

Plaintiff's conclusory allegations are also insufficient to demonstrate that the City Council - the only policymaker for the City of Irving - ratified and condoned these alleged policies. A sufficient complaint must contain enough "factual content" to make deliberate indifference by official policymakers not merely conceivable, but plausible under the facts as alleged. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Also problematic for Plaintiff is that he fails to identify any written policy he finds unconstitutional. Therefore, absent a facially unconstitutional policy or custom, municipal liability under § 1983 can only arise from a custom having the force of official policy if the

municipal policymakers were deliberately indifferent to the "'known or obvious consequences' that constitutional violations would result" from the custom. *Piotrowski*, 237 F.3d at 579.

Insofar as Plaintiff pleads an official policy by alleging a widespread practice that equates to a custom, he has not plausibly alleged the policy prong because he has failed to identify any similar incidents of alleged constitutional deprivations. As the Fifth Circuit has instructed:

> "[i]f actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."

*Webster*, 735 F.2d at 842.

Further, merely pointing even to some prior unconstitutional act is not sufficient:

> "[and p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired ...."

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes omitted); *see, e.g., Case v. City of New York*, 233 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ("Plaintiffs adequately state a *Monell* claim based on the City's failure to train. Plaintiffs point to a number of cases spanning the period from 2000 to 2012 that demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." (citations omitted). In this case, Plaintiff hasn't even identified any other instances of similar violations. Rather, he relies on his own experience to extrapolate a pattern, practice, or custom.  Therefore, Plaintiff's allegations are insufficient to plead a custom of First, Fourth, or Fourteenth Amendment violations.

**C.     Plaintiff Has Not Plead Sufficient Facts Regarding City Policymakers' Alleged Deliberate Indifference**

Even assuming, *arguendo*, that Plaintiff had plead facts sufficient to permit a reasonable inference of the existence of a City custom based on the alleged misconduct identified in the Complaint, Plaintiff nevertheless has failed to plead facts from which the Court can draw the reasonable inference that the City's final policymaker was deliberately indifferent to a known or obvious risk that the alleged customs would result in deprivations of the constitutional rights alleged. A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policymaker. *Peña*, 879 F.3d at 623. Thus, knowledge on the part of a policymaker that a constitutional violation will most likely result from a given policy or custom is an essential condition underlying section 1983 municipal liability. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). Plaintiff therefore must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984). "Deliberate indifference of this sort is a stringent test, and a showing of simple or even heightened negligence will not suffice to prove municipal culpability." *Id*. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 383 (internal quotation marks and citations omitted). Thus, a sufficient complaint must provide adequate "factual content" to make deliberate indifference by the City's official policymakers not merely conceivable, but plausible in the context of the facts alleged. *Iqbal*, 556 U.S. at 678.

Here, Plaintiff identifies no known acts prior to the events giving rise to Plaintiff's claims, much less any pattern of acts directly similar to the events at issue here. Therefore,

Plaintiff's conclusory, "bare bones" allegations fail to plead facts from which this Court can infer the City's policymakers acted with deliberate indifference to Plaintiff's constitutional rights.

### D.    Plaintiff's Claims for Failure to Train Should Be Dismissed

The Supreme Court established in *City of Canton v. Harris* the method of proving municipal liability based on a "policy" of inadequate training or a failure-to-train theory. 489 U.S. 378, 386-92 (1989). When a municipal entity fails to train its employees to act in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference" to the rights of persons with whom the public official will come into contact. *Id*. at 388; *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015). Likewise, a claim based upon a municipality's failure to supervise or discipline a public official requires the same showing of a policymaker's deliberate indifference to the constitutional rights of citizens. *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009 ). To plead a *Monell* claim based upon alleged City customs of deficient training and supervision, a plaintiff must plead facts supporting deliberate indifference by the City's final policymakers to a specific inadequacy in the City's training, supervision, or discipline of its officers.

Deliberate indifference is a stringent standard denoting a high degree of culpability by the municipality, and a plaintiff bears the burden of establishing deliberate indifference. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998); *Goodman v. Harris Cnty*., 571 F.3d 388, 395 (5th Cir. 2009). To prove deliberate indifference, a plaintiff must show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390 (emphasis added). The "'deliberate indifference' is a stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of Comm'rs of Bryan Cnty. v. Brown* ("*Brown*"), 520 U.S. 397, 410 (1997). A less-than-stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ..." *Canton*, 489 U.S., at 392.

*Canton* and Fifth Circuit jurisprudence envision two means of proving deliberate indifference: First, municipal employees can violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the ... policymakers." *Canton*, 489 U.S. at 390 n.10; *Burge*, 336 F.3d at 369. This "proof-by-pattern" method is "ordinarily necessary." *Brown*, 520 U.S. at 409.

Second, even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id*. (construing *Canton*, 489 U.S. at 390 & n.10); accord *Brown v. Bryan County* ("*Bryan County*"), 219 F.3d 450,459-61 (5th Cir. 2000). This has been called the "single-incident exception" in the Fifth Circuit. *Burge*, 336 F.3d at 372-73.

Here, Plaintiff's Complaint fails to plead facts sufficient to meet either means of pleading deliberate indifference. Plaintiff offers no allegations sufficient to establish that a policymaker at the City was on notice that the City's training for its police officers was inadequate but that the policymaker chose to retain the inadequate training program.

### 1. Plaintiff Fails to Allege Any Pattern of Constitutional Violations

First, Plaintiff fails to allege facts that show or facts from which the Court could reasonably infer a pattern of similar constitutional violations. A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference. *Brown*,

520 U.S. at 409. "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. (quotation marks and citation removed.) Where a plaintiff relies on prior incidents to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [municipality] that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Id*.; *Pagan-Negron v. Seguin Indep. Sch. Dist*., 974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ("Where the liability is based on informal custom, the practice must be so widespread as to have the force of law."). The pattern of abuses must "transcend [] the error made in a single case." *Peterson*, 588 F.3d at 851. A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id*. Plaintiff's own single incident is insufficient to give rise to a custom. *See, e.g., Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("isolated violations are not the persistent, often repeated constant violations that constitute custom and policy"); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (same); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (rejecting the plaintiffs' allegations of the existence of a municipal custom because the plaintiffs "describe[d] only this single incident in which [officer] Vidal was mistaken in his identification").

This is a high bar. *See id*. (noting that twenty-seven incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *see also Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) ("Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive

force over a three-year period ... and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period ... were not sufficiently numerous to constitute a pattern").

In his Complaint, Plaintiff asserts that "[t]he pronounced concentration of PI arrests among Hammett and his trainee Markham, combined with Lewis's significantly lower figure, plausibly *indicates* a subgroup-level pattern that City supervisors would have observed through routine arrest-report reviews, shift reports, and the department's mandatory supervisory approval of arrests." [Dkt. 3, p. 23] (emphasis added). Plaintiff, however, has not asserted that this "concentration of PI arrests" was associated with any unconstitutional conduct. An arrest is not indicative of unconstitutional conduct. Moreover, Plaintiff has failed to establish numerosity.

Plaintiff further asserts that "[t]he Irving City Jail maintained a practice of requiring detainees to answer non-essential questions before booking, delaying phone access, and postponing magistrate presentation until detainees complied-all in violation of Texas law." *Id*. at p. 24. Plaintiff concedes, however, that these "standard jail procedures applied consistently *to Plaintiff*." *Id*. (emphasis added). Plaintiff has not alleged any other instances of unconstitutional conduct at the jail, much less a pattern.

Plaintiff's allegations as to these instances are insufficient to meet the similarity requirements and do not establish a relevant pattern or practice. Plaintiff cites aggregate statistics with no context or explanation of the similarities to this case. This sort of speculative allegation is insufficient to establish a constitutional violation. Reciting legal conclusions without reference to incidents of the same or similar nature is insufficient, and Plaintiff fails to meet his burden.

Plaintiff has not directed the Court's attention to any prior incidents that are sufficiently similar to his own; this is not sufficient to allege a pattern. As the Supreme Court has found,

"[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Therefore, Plaintiff's Complaint does not even remotely allege facts sufficient to establish the ordinarily necessary "proof-by-pattern" to support his claim against the City.

### 2. Plaintiff Cannot Show a Single Incident With the Obvious Potential for a Violation of Constitutional Rights

Second, absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Bryan County*, 219 F.3d at 459-61; *Burge*, 336 F.3d at 373 ("[I]n a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," such that "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.") (citation omitted) (quotation marks omitted). The Supreme Court explained as much in *Canton*, by way of hypothetical:

> "[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be 'so obvious[ ]' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."

*Canton*, 489 U.S. at 390 n.10.

As the Fifth Circuit has noted, "[w]ithout a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances like those of *Canton's*

hypothetical. And in the thirty years since *Canton* issued, actual cases reaching those extremes have proved fortunately rare." *Littell*, 894 F.3d at 627 (emphasis in original). Indeed, the *Littell* court noted that, prior to its decision in that case to find such a narrow and extreme set of allegations at the pleadings stage, only one plaintiff in the "single incident" case scenario has ever prevailed in the Fifth Circuit. *Id*. at n.6.

In this matter, Plaintiff has failed to allege any specific shortcoming in the City's training and supervision of its police and jail officers. Rather, there are 5 perfunctory references to inadequate training or supervision without any factual specificity:

1. "[S]ystemic failures in supervision, training, and discipline that allowed [unconstitutional] practices to persist." [Dkt. 3, p. 22].
2. "The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision." *Id*. at p. 25.
3. The City failed to train officers on:
   • the probable-cause requirements for public intoxication (which requires both intoxication and danger to self or others),
   • the prohibition on retaliatory arrests based on protected speech,
   • lawful use of force on compliant subjects,
   • the legal limits of investigatory encounters, and
   • mandatory jail-processing and magistrate-presentation requirements. *Id*. at pp. 26-27.
4. "The City also failed to supervise or discipline officers whose arrest patterns deviated sharply from similarly situated peers, including Hammett and Markham, despite reviewing each PI arrest for approval." *Id*.
5. "The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision." *Id*.

These allegations are not sufficient to establish municipal liability. Indeed, "[p]roof of the need for better hiring practices, training or supervision does not itself establish that the City Defendants are liable." *Barrios-Barrios v. Clipps*, 825 F.Supp. 2d 730, 746 (E.D. La. 2011). "[S]howing merely that additional training would have been helpful in making difficult decisions

does not establish municipal liability. [P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Connick*, 563 U.S. at 68 (quotation omitted).

Here, Plaintiff's allegations concern the use of less-than-lethal force and Plaintiff's arrest and detention for Public Intoxication, and the alleged deprivation of due process at jail book-in. While not making light of either, Plaintiff's allegations do not reach the level of *Canton's* hypothetical of a novice officer newly-armed with no training.

Therefore, under Fifth Circuit precedent, Plaintiff's set of facts does not fit into the *Canton* hypothetical of narrow and extreme circumstances giving rise to municipal liability absent allegations of the existence of a pattern of similar alleged constitutional violations. In sum, Plaintiff has failed to plead facts from which this Court could infer the City failed to train or supervise its employees.

### 3. Plaintiff Has Not Plausibly Alleged the City's Supposed Inactions Were the "Moving Force" Behind His Injuries

Even if Plaintiff had alleged sufficient facts to establish a policy or custom or a plausible showing of inadequate training - which he has not - Plaintiff fails to adequately plead that the inadequate training caused a deprivation of Plaintiff's constitutional rights. Plaintiff asserts only conclusory allegations of causation and fails to connect the lack of training or procedures to the complained of injury. Plaintiff must allege facts which show "moving force" causation to establish his § 1983 claims. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiffs federal rights. *Id*. at 542, 546 (citing *Brown*, 520 U.S. at 404). "[T]he connection must be more than a mere 'but for' coupling

between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Valle*, 613 F.3d at 546 (quotation omitted).

As one court in this circuit explained, in the police training context:

> "[e]ven showing the obviousness of a need for additional training regarding the constitutional obligations of police officers may not be enough to establish deliberate indifference because it does not necessarily mean that the officers will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution."

*Barrios-Barrios*, 825 F.Supp.2d at 746-47 (citing *Connick*, 563 U.S. at 70) (quotation marks omitted). Moreover, the Fifth Circuit has held that "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020), cert. denied, 141 S. Ct. 376, 208 L. Ed. 2d 97 (2020).

Here, Plaintiff does not plead any facts, much less sufficient ones, to show any City policy or practice caused the alleged constitutional violation. Plaintiff alleges no pattern of misconduct from which the allegedly-offending officers could have inferred City permission to unlawfully arrest him, utilize excessive force, or retaliate against him for exercising his First Amendment rights. Nor has Plaintiff alleged a pattern of misconduct from which the allegedly-offending John Doe jail officers could have inferred City permission to utilize "unlawful and coercive jail-processing practices."  Finally, Plaintiff has failed to allege that the City's policymakers were on actual or constructive notice of constitutional violations that amounted to a custom.

Plaintiff fails to plead facts showing that the City's alleged deficient policies or training program caused or even encouraged the alleged unconstitutional acts pleaded in the Complaint. Therefore, Plaintiffs municipal claims and failure-to-train claims fail for the additional reason that Plaintiff has not alleged sufficient facts to establish "moving force" causation.

4. **No Factual Allegation That City's Officers Were Not in Compliance With State Mandated Training Requirements**

Plaintiff's allegations regarding inadequacies in training and supervision provide no basis for liability against the City because police training mandated of all law enforcement officers in the State of Texas includes the training of which Plaintiff complains and there are no factual allegations that the City's officers were not in compliance with state standards.

Texas provides that all peace officers in Texas, including those employed by the City, are required to complete training and licensing requirements of the Texas Commission on Law Enforcement ("TCOLE") before serving as a police officer. *See* TEXAS OCCUPATIONS Code §§ 2701.251, 1701.253. Under § 1701.251 of the Texas Occupations Code, TCOLE is required to establish and maintain training programs for peace officers. In order to obtain and maintain a peace officer license in Texas, each officer must satisfactorily meet TCOLE standards. The licensing and training standards established by TCOLE have been found to comply with constitutional requirements and are adequate to enable Texas peace officers to deal with unusual and recurring situations peace officers encounter. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992).

"[A]ll that is required for a municipality to prevail in a claim based on inadequate training is compliance with state mandated training standards for its officers." *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex. 1997); accord *Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). When state law mandates the training required of a city's officers, as in Texas, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training. *See Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996). Further, the Fifth Circuit has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train. *See Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009).

Training regarding a police officer's investigation of criminal wrongdoing and arrest of a criminal suspect is precisely the type of basic police training the State of Texas assures all the state's police officer trainees receive, and Plaintiff has not made any factual allegations showing state training in this regard is constitutionally inadequate. Accordingly, Plaintiff has failed to allege facts showing Defendant City's employees are not trained in accordance with constitutional requirements and cannot establish a "failure to train" claim.

**E.        Plaintiff's Claim for Failure to Supervise Should be Dismissed**

In a Section 1983 claim for failure to supervise, a plaintiff must show that: 1) the supervisor failed to supervise the subordinate official; 2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and 3) the failure to supervise amounts to deliberate indifference. *Goodman*, 571 F.3d at 395 (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998)).

Plaintiff offers no specifics addressing the elements of a claim asserting municipal liability for failure to supervise, instead conclusorily asserting that the City failed to train or supervise. Plaintiff offers no factual contentions concerning any alleged failure of supervision of the officers who participated in his arrest, any causal link between the supervision of the relevant officers and any alleged violation of Plaintiff's constitutional rights, or any alleged deliberate indifference by the City in conjunction with any alleged failure to supervise the officers who were involved in his arrest. *Id*.

Plaintiff has failed to state a plausible claim for relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Because Plaintiff's Complaint lacks allegations regarding required elements of a cause of action for failure to supervise, the Court should dismiss this claim. *Tuchman*, 14 F.3d at 1067; *Keane*, 297 F. Supp. 2d at 925; *Blackburn*, 42 F.3d at 931.

**F.      Plaintiff is Barred from Recovering Exemplary Damages.**

The Supreme Court has ruled that punitive damages are not recoverable from a governmental entity or local officials in their official capacity in § 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, Plaintiff, even if successful, cannot as a matter of law recover punitive damages in a 1983 action. *See Livingston v. Desoto Indep. Sch. Dist.*, 2004 WL 2964977, at *2 (N.D. Tex. Dec. 15, 2004). The Fifth Circuit has reaffirmed that exemplary damages are not allowed against public entities under Section 1983. *Skyy v. City of Arlington*, 712 F. App'x 396, 401 (5th Cir. 2017). Accordingly, the Court should dismiss Plaintiff's exemplary damages claim.

## IV.      CONCLUSION

The facts alleged within Plaintiff's Complaint do not constitute the violation of any right protected by the Constitution or laws of the United States, and as such, Plaintiff's claims must be dismissed for failure to state a claim for which relief can be granted. Moreover, Plaintiff fails to state a claim against Defendant City because the City cannot be liable in the absence of a constitutional violation, and Plaintiff does not allege sufficient facts of a constitutional violation. Finally, Plaintiff fails to allege sufficient facts of any unlawful City policy or that any City policy was a moving force which caused any constitutional deprivation that Plaintiff alleges in this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Defendant City respectfully prays that: (1) the Court grant Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendant recover all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which it may be justly entitled.