# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| | § | |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

**CITY ATTORNEY'S OFFICE**
**CITY OF IRVING, TEXAS**

By:     /s/Saul Pedregon
           **SAUL PEDREGON**
           Senior Assistant City Attorney
           State Bar No. 00797231
           Email:  spedregon@IrvingTX.gov
           **JASON D. McCLAIN**
           Senior Assistant City Attorney
           State Bar No. 00797032
           Email:  jmcclain@IrvingTX.gov
           825 West Irving Boulevard
           Irving, Texas 75060
           Telephone: 972.721.2541
           Facsimile:  972.721.2750

**ATTORNEYS FOR DEFENDANTS CITY OF IRVING, JAMES MARKHAM, ANDREW HAMMETT, and PAUL LEWIS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 9, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following parties or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Dale Lotts
401 E. 8th St.
Ste. 214 PMB 7860
Sioux Falls and Minnehaha, SD 57103

/s/Saul Pedregon_____
**SAUL PEDREGON**
Assistant City Attorney

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF SERVICE

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ..............................................................................................................1

MOTION TO DISMISS STANDARD ............................................................................2

BODY WORN CAMERA ...............................................................................................4

ARGUMENTS AND AUTHORITIES ...........................................................................5

I.      Plaintiff's Official Capacity Claims Are Duplicative and Should Be Dismissed ...............5

II.     Plaintiff's Claims Are Barred by Qualified Immunity ........................................6

III.    First Amendment Claims ...............................................................................21

IV.     Conspiracy Claims ........................................................................................23

CONCLUSION ...............................................................................................................25

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

# TABLE OF AUTHORITIES

*Cases*

*Alexander v. City of Round Rock*,
    854 F.3d 298, 308 (5th Cir. 2017) ........................................................................ 23

*Allen v. Cisneros*,
    815 F.3d 239, 244 (5th Cir. 2016) ........................................................................ 22

*Anderson v. Pasadena Independent School District*,
    184 F.3d 439 (5th Cir. 1999) ................................................................................. 5

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) ........................................ 3, 4, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ................................................................................. 3, 20

*Babb v. Dorman*,
    33 F.3d 472, 479 (5th Cir. 1994) ......................................................................... 16

*Bailey v. Ramos*,
    125 F.4th 667, 685 (5th Cir. 2025) ...................................................................... 22

*Baker v. McCollan*,
    443 U.S. 137, 145, 99 S. Ct. 2689, 2695 n.3 (1979) ............................................. 6

*Banda v. State*,
    890 S.W.2d 42, 52 (Tex. Crim. App. 1994) ........................................................ 11

*Batyukova v. Doege*,
    994 F.3d 717, 730 (5th Cir. 2021) ....................................................................... 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ................................................................................. 3, 20

*Brooks v. City of West Point, Miss.*,
    639 Fed.App'x 986, 990 (5th Cir. 2016) .............................................................. 17

*Brosseau v. Haugen*,
    543 U.S. 194, 198, (2004) (per curiam) .............................................................. 20

*Buehler v. Dear*,
    27 F.4th 969, 992 (5th Cir. 2022) ........................................................................ 13

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Burns-Toole v. Byrne,*
    11 F.3d 1270 (5th Cir.) ............................................................................. 3

*Carnaby v. City of Houston,*
    636 F.3d 183, 187 (5th Cir. 2011) ...................................................... 5, 19

*Carroll v. Ellington,*
    800 F.3d 154, 172 (5th Cir. 2015) ............................................................ 15

*Chacon v. Copeland,*
    577 F. App'x 355, 358 (5th Cir. 2014) ...................................................... 5

*Childers v. Iglesias,*
    848 F.3d 412, 415 (5th Cir. 2017) ............................................................ 13

*City of Houston v. Nicolai,*
    695 S.W.3d 489, 512 (Tex. App. 2024) .................................................. 10

*Collins v. Bauer,*
    2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) ................................ 24

*County of Sacramento v. Lewis,*
    523 U.S. 833, 118 S. Ct. 1708 (1998) ...................................................... 6

*Curran v. Aleshire,*
    800 F.3d 656, 664 (5th Cir. 2015) ............................................................ 5

*Degenhardt v. Bintliff,*
    117 F.4th 747, 758 (5th Cir. 2024) .......................................................... 22

*Devenpeck v. Alford,*
    543 U.S. 146, 153 (2004) ...................................................................... 7, 8

*Deville v. Marcantel,*
    567 F.3d 156, 167 (5th Cir.2009) (per curiam) ...................................... 19

*Esquivel v. Eastburn,*
    No. SA-20-CV-00377-OLG, 2021 WL 1667132, at *4 (W.D. Tex. Apr. 8, 2021) ................ 16

*Freeman v. Gore,*
    483 F.3d 404, 416 (5th Cir. 2007) ...................................................... 16, 17

*Gallagher v. State,*
    778 S.W.2d 153, 154 (Tex. App. 1989) .................................................. 10

*Gentilello v. Rege,*
    627 F.3d 540, 544 (5th Cir. 2010) ............................................................ 20

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Gladden v. Roach*,
864 F.2d 1196 (5th Cir. 1989) ...................................................................... 7

*Graham v. Connor*,
490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989), 490 U.S. at 396, 109 S.Ct. 1865 ......... 16, 19

*Hanks v. Rogers*,
853 F.3d 738, 744 (5th Cir. 2017) .............................................................. 5, 19

*Hilliard v. Ferguson*,
30 F.3d 649, 653 (5th Cir. 1994) .................................................................. 24

*Hodge v. Engleman*,
90 F.4th 840, 844-45 (5th Cir. 2024) ............................................................. 4

*Illinois v. Gates*,
462 U.S. 213, 243 n.13 (1983) ..................................................................... 7

*Jabary v. City of Allen*,
547 F. App'x 600, 610 (5th Cir. 2013) ............................................................ 23

*Kaley v. United States*,
571 U.S. 320, 338 (2014) ........................................................................... 7

*Keenan v. Tejeda*,
290 F.3d 252, 261-62 (5th Cir. 2002) ............................................................ 21

*Kelson v. Clark*,
1 F.4th 411, 416 (5th Cir. 2021) .................................................................. 3

*Kentucky v. Graham*,
473 U.S. 159, 166 (1985) ........................................................................... 6

*Lago-Planas v. Crocker*,
No. 09-cv-2075, 2011 WL 588053, at *1–3 (N.D. Tex. Jan. 19, 2011),
adopted, 2011 WL 588719 (Feb. 9, 2011) ....................................................... 11

*Livingston v. Texas*,
2023 WL 4931923, at *3 n.3 (5th Cir. Aug. 2, 2023) ....................................... 7, 10, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387 (5th Cir. 2010) ................................................................ 4

*Lynch v. Cannatella*,
810 F.2d 1363, 1369–70 (5th Cir. 1987) ......................................................... 24

*MacCloskey v. City of Dallas*,
No. 97-cv-587, 1998 WL 119535, at *2 (N.D. Tex. Mar. 9, 1998) ........................... 10

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Malley v. Briggs,*
    475 U.S. 335, 341 (1986)............................................................................. 3

*Mendenhall v. Riser,*
    213 F.3d 226, 230 (5th Cir. 2000) ............................................................... 7

*Mesa v. Prejean,*
    543 F.3d 264, 273 (5th Cir. 2008) ............................................................. 21

*Morgan v. Swanson,*
    659 F.3d 359, 370 (5th Cir. 2011) ................................................... 3, 4, 20

*Mullenix v. Luna,*
    577 U.S. 7, 11 (2015).................................................................................. 20

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
    200 F.2d 911, 914 (5th Cir. 1953) ............................................................. 24

*Nieves v. Bartlett,*
    587 U.S. 391, 403 (2019)............................................................................ 22

*Ordonez v. Gonzalez,*
    No. EP-23-CV-99-KC, 2024 WL 1250181, at *7 (W.D. Tex. Mar. 25, 2024) ...................... 13

*Padilla v. Mason,*
    169 S.W.3d 493, 503 (Tex. App. 2005)...................................................... 11

*Palo ex rel. Estate of Palo v. Dallas Cnty.,*
    2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) ................................... 6

*Pfannstiel v. City of Marion,*
    918 F.2d 1178, 1187 (5th Cir. 1990) ......................................................... 23

*Piazza v. Mayne,*
    217 F.3d 239, 246 (5th Cir. 2000) ............................................................. 15

*Pierson v. Ray,*
    386 U.S 547, 555 (1967).............................................................................. 16

*Poole v. City of Shreveport,*
    691 F.3d 624, 629 (5th Cir. 2012) ............................................................. 19

*Prim v. Stein,*
    6 F.4th 584, 593 (5th Cir. 2021) ................................................................ 10

*Raley v. Fraser,*
    747 F.2d 287, 290 (5th Cir. 1984) ............................................................. 11

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Ramirez v. Martinez,*
716 F.3d 369, 376 (5th Cir. 2013) .................................................................. 15

*Rich v. Palko,*
920 F.3d 288, 294 (5th Cir. 2019) .................................................................... 3

*Roque v. Harvel,*
995 F.3d 325, 331 (5th Cir. 2021) .................................................................... 3

*Rose v. Herrera,*
2023 WL 10476031, at *6 (S.D. Tex. Feb. 8, 2023) ......................................... 8

*Russell v. Altom,*
546 F. App'x 432, 436-37 (5th Cir. 2013) ...................................................... 21

*Salas v. Carpenter,*
980 F.2d 299 (5th Cir. 1992) ............................................................................ 3

*Scott v. Harris,*
550 U.S. 372, 380 (2007) .................................................................................. 5

*Siglar v. Hightower,*
112 F.3d 191, 193 (5th Cir.1997) ................................................................... 17

*Simpson v. State,*
886 S.W.2d 449, 455 (Tex. App. 1994) .......................................................... 11

*Spencer v. Rau,*
542 F. Supp. 2d 583, 591 (W.D. Tex. 2007) .................................................. 13

*Spiller v. Harris Cnty., Texas,*
113 F.4th 573, 579 (5th Cir. 2024) ................................................................ 12

*State v. Martinez,*
569 S.W.3d 621, 629 (Tex. Crim. App. 2019) .......................................... 10, 11

*Stephenson v. McClelland,*
632 Fed. App'x 177, 184 (5th Cir. 2015) ....................................................... 16

*Swilley v. City of Houston,*
457 Fed. Appx. 400, 404 (5th Cir. 2012) ....................................................... 24

*Terrell v. Town of Woodworth,*
2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) ............................................. 4

*Terry v. Ohio,*
392 U.S. 1, 8 (1968) ........................................................................................ 16

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Texas DPS v. Petta*,
    44 S.W.3d 575, 579 (Tex. 2001)..................................................................... 17

*Texas v. Brown*,
    460 U.S. 730, 742 (1983)........................................................................... 15

*Thompson v. City of Galveston*,
    979 F. Supp. 504, 512 (S.D. Tex. 1997)..................................................... 24

*Tolan v. Cotton*,
    572 U.S. 650, 656, (2014)........................................................................... 16

*Traylor v. Yorka*,
    2024 WL 209444, at *4 (5th Cir. 2024) ..................................................... 13

*Turner v. Driver*,
    848 F. 3d 678, 685-86 (5th Cir. 2017)........................................................ 20

*United States v. Hearn*,
    563 F.3d 95, 103 (5th Cir. 2009)................................................................ 15

*United States v. Morris*,
    477 F.2d 657 (5th Cir. 1973) ....................................................................... 7

*United States v. Tinkle*,
    655 F.2d 617 (5th Cir. 1981) ....................................................................... 7

*United States v. Wadley*,
    59 F.3d 510 (5th Cir. 1995) ......................................................................... 7

*Vincent v. City of Sulphur*,
    805 F.3d 543, 547 (5th Cir. 2015) .............................................................. 20

*Wafer v. Molina*,
    No. 3:14-CV-0976-M-BH, 2014 WL 3533698, at *2 (N.D. Tex. July 15, 2014 ..................... 15

*Walters v. McMahen*,
    795 F.Supp.2d 350, 358 (D. Md. 2011).................................................... 24

*Westfall v. Luna*,
    903 F.3d 534, 544, 549 (5th Cir. 2018) ............................................... 13, 21

*Will v. Michigan Department of State Police*,
    491 U.S. 58, 109 S. Ct. 2304 (1989)............................................................ 5

*Zavala v. Harmon*,
    2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2022)................................. 18

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

***Statutes***

Fed. R. Civ. P. 8 ................................................................................................................ 2

Tex. Code Crim. Proc., art 14.01 ...................................................................................... 7

Tex. Penal Code § 1.07 ................................................................................................... 11

Tex. Penal Code § 38.03 ................................................................................................. 14

Tex. Penal Code § 38.15 ................................................................................................. 12

Tex. Penal Code § 9.51 ................................................................................................... 16

Tex. Penal Code. § 38.02 ................................................................................................ 14

Tex. Penal. Code § 49.02 ................................................................................................ 10

Texas Penal Code § 38.15 ............................................................................................... 13

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DALE LOTTS | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. 3:25-CV-03329-S-BN |
| VS. | § | |
| | § | ECF |
| | § | |
| CITY OF IRVING, OFFICER JAMES | § | |
| MARKHAM, OFFICER ANDREW | § | |
| HAMMETT, OFFICER PAUL LEWIS, | § | |
| and JOHN DOE JAIL OFFICERS 1-10 | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants James Markham ("Markham"), Andrew Hammett ("Hammett"), and Paul Lewis ("Lewis") and file this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure12(b)(6) and Brief in Support Thereof.

## BACKGROUND

This case arises out of Plaintiff's arrest for Public Intoxication. Plaintiff files this lawsuit alleging numerous claims against Markham (the officer who initially contacted and ultimately arrested Plaintiff), Hammett (an officer who provided backup to Markham), and Lewis (another officer who provided backup to Markham). Plaintiff also sued the City of Irving, the entity which employed each of the individual defendants. [Dkt. 3, § II].

Plaintiff sues Defendants Markham, Hammett, and Lewis alleging various violations of the U.S. Constitution under 42 U.S.C. § 1983. [*Id*., § IV].[1] Specifically, Plaintiff alleges:

Claim 1 - Fourth Amendment - Unlawful Arrest and False Imprisonment. [*Id*., § IV].

Claim 2 - First Amendment - Retaliation for Protected Speech. [*Id*.].

Claim 4 - Excessive Force. [*Id*.].

Claim 5 - Section 1983 Conspiracy. [*Id*.].

The Court should dismiss all of the claims against Markham, Hammett, and Lewis because they are entitled to qualified immunity and because Plaintiff has failed to state a claim on which relief may be granted. Plaintiff's allegations and evidence establish that Defendants had probable cause to arrest him for multiple violations of the Penal Code. Plaintiff's allegations in support of his excessive force claim fail as a matter of law because they do not establish any injury sufficient to support such a claim. Additionally, Plaintiff offers no well-pled allegations to establish that Defendants violated clearly established law when they arrested him for violations of the Penal Code. Finally, Plaintiff cannot establish a § 1983 conspiracy.

## MOTION TO DISMISS STANDARD

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement ... showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a)(2). The claims must include enough factual

---

[1] While Plaintiff clearly states four claims for relief against Markham, Hammett, and Lewis (Claims 1, 2, 4, and 5) on pages 17-22 of his Complaint, he references, alludes to, and perhaps even alleges other claims against Defendants throughout his pleading. Defendants have erred on the side of caution and addressed all the claims that Defendants believe Plaintiff is or may be raising. However, if the Court believes Defendants missed an allegation raised or pled by the Plaintiff, they respectfully request an opportunity to provide supplemental briefing on that claim or claims.

allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court does not accept as true "a number of categories of statements, including legal conclusions; mere 'labels'; 'threadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (cleaned up) (quoting *Ashcroft*, 556 U.S. at 677-78).

Furthermore, "[t]he burden is on the plaintiff to overcome a defendant's defense of qualified immunity." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.), *cert. denied*, 512 U.S. 1207 (1994); accord, *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992). A public official can invoke the defense of qualified immunity to avoid liability when sued in his individual capacity for the performance of his duties. *See Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019). Qualified immunity shields a public official but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Roque v. Harvel*, 995 F.3d 325, 331 (5th Cir. 2021); *see also Morgan*, 659 F.3d at 370. Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so [courts] do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan*, 659 F.3d at 371 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) and *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011)).

At the motion to dismiss stage, the defendant is entitled to qualified immunity unless the plaintiff meets his burden "to demonstrate the inapplicability of the defense." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021). To do so, the plaintiff must allege facts sufficient to plausibly

show that (1) the defendant violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established at the time of the alleged violation. *Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735).

## BODY WORN CAMERA

On at least 12 separate occasions in his Complaint, Plaintiff specifically refers to the Body Worn Camera (BWC) Video of Defendant Markham to support his allegations (hereinafter, the "Markham BWC Video"). [Dkt. 3, §§ III (B); III (J); III (K); III (L); III (M); III (O); III (Q); III (S); III (X); III (Y); III (DD); and III (MM)]. Plaintiff alludes to the video on multiple other occasions. As of the date of the filing of this motion, the video is not included on the Court's docket. As such, Defendants have attached a copy to this Motion. (Appx. 1).

The Court may review "any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citations omitted). Body-camera footage is a "document" that may be attached to a motion to dismiss. *See Hodge v. Engleman*, 90 F.4th 840, 844-45 (5th Cir. 2024). Because Plaintiff repeatedly refers to Markham's BWC Video in his Complaint, the court in deciding Defendants' motion to dismiss can consider this video evidence. *See, e.g., Terrell v. Town of Woodworth*, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (per curiam) ("[T]he district court properly considered the video evidence from the officers' two body cams and Gonzales's dash cam that Defendants attached to their motion to dismiss because Terrell consistently referenced the video evidence in his complaint . . . and the video evidence is clearly central to his claims against Defendants in this suit.").

Moreover, while a plaintiff's version of the facts is generally accepted as true in a motion based on qualified immunity, a "narrow exception" to this approach exists where "video evidence undeniably contradicts the plaintiff's version of the facts such that no reasonable jury could believe it." *Chacon v. Copeland*, 577 F. App'x 355, 358 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). When such video evidence exists, the Fifth Circuit has said that courts "need not rely on the plaintiff's description of the facts ... but instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott*, 550 U.S. at 381, 127 S.Ct. 1769); *see also Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)).

## ARGUMENT AND AUTHORITIES

### I.     Plaintiff's Official Capacity Claims Are Duplicative and Should Be Dismissed

Plaintiff has not specified whether he is suing Defendants Markham, Hammett, and Lewis in their official or individual capacities, or both. Plaintiff has named the City of Irving as a defendant in this matter. Plaintiff has further alleged that he "seeks redress for the violation of his rights by officers and employees of the City of Irving." [Dkt. 3, § II]. To the extent that Plaintiff is suing these Defendants in their official capacities, his official capacity claims are duplicative of the claims asserted against Defendant City and should be dismissed. A lawsuit against a governmental official in his official capacity is not a lawsuit against the individual but, rather, is a suit against the official's office and is no different than a suit against the governmental unit which employs the official. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Anderson v. Pasadena Independent School District*, 184 F.3d 439, 443 (5th

Cir. 1999). Claims against government agents in their official capacities are duplicative when claims are made against the government entity. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity."). It is therefore appropriate in such circumstances for the court to dismiss the official-capacity claims. *See, e.g., Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county).

## II.     Plaintiff's Claims are Barred by Qualified Immunity

Markham, Hammett, and Lewis assert that they are entitled to qualified immunity on Plaintiff's claims. Consequently, in order to address Plaintiff's constitutional claims against these Defendants, the Court must determine whether Plaintiff has pleaded facts with sufficient specificity to overcome these Defendants' entitlement to qualified immunity.

### A.     Plaintiff Fails to Establish a Constitutional Violation

Plaintiff's claims against Markham, Hammett, and Lewis fail at the outset because Plaintiff fails to allege facts showing he was subjected to unconstitutional conduct at the hands of Defendants. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695 n.3 (1979). Before a plaintiff can successfully assert Section 1983 as a valid cause of action, he must first identify constitutionally protected conduct he contends a defendant has infringed. *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 1714 n.5 (1998). Plaintiff does not allege facts which, even if true, show Defendants engaged in conduct violative of the rights discussed *infra*.

### 1. Plaintiff's Probable Cause Claim Fails

Plaintiff claims that Defendants violated his rights when "Officers Markham and Hammett arrested Plaintiff without probable cause and without any objective sign of intoxication or danger." [Dkt. 3, § IV Claim 1].[2] Plaintiff, however, has failed to plead a viable wrongful arrest claim. He offers no more than conclusory allegations and fails to properly address the elements of the offense for which he was arrested. (*Id.*).

Probable cause exists when the facts within the officer's knowledge and facts of which he has reasonably reliable information would be sufficient to cause a prudent person to believe that the suspect has committed or is committing a criminal offense. TEX. CODE CRIM. PROC. art. 14.01(b); *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995); *Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir. 1989); *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973). Probable cause may be present even though the evidence before the officer would be insufficient to support a finding of guilt necessary to convict. *United States v. Tinkle*, 655 F.2d 617, 621 (5th Cir. 1981), cert. denied, 455 U.S. 924 (1982). Moreover, probable cause to arrest "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). And in the qualified immunity context, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

Moreover, "[t]he existence of probable cause *for any offense* is sufficient to defeat a claim of false arrest." *Livingston v. Texas*, 2023 WL 4931923, at *3 n.3 (5th Cir. Aug. 2, 2023) (per curiam) (emphasis added) (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that a warrantless arrest is justified where the facts known to the officer

---

[2] Notably, Plaintiff does not allege any wrongdoing by Defendant Lewis. [Dkt. 3, § IV Claim 1].

provide probable cause to believe a crime has been committed, even where the offense charged is not closely related to the offense for which the officer has probable cause); *Rose v. Herrera*, 2023 WL 10476031, at *6 (S.D. Tex. Feb. 8, 2023) ("The existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is not the same as, or even closely related to, the offense articulated by the officer at the scene." (citing *Devenpeck*, 543 U.S. at 153-55)). As discussed in Section II(A)(1)(b) & (c), *infra*, there was probable cause to arrest Plaintiff for at least one of, if not all, of the offenses of Public Intoxication, Failure to Identify, Interference with Public Duties, and Resisting Arrest.

### a. Markham BWC Video

The initial contact between Plaintiff and Defendant Markham occurred at approximately 1:37 a.m. on December 4, 2023.[3] (Appx. 1, 00:01). Markham was sitting in his marked police vehicle when Plaintiff approached the vehicle and leaned on the driver's side sideview mirror. (*Id*.). Plaintiff was upset that Markham's presence had prevented him from jaywalking. (*Id*. at 02:11, 02:29, 03:08, 09:02). Markham exited his vehicle to speak with Plaintiff. (*Id*. at 00:29).

From the inception of their interaction, Plaintiff was combative and belligerent with Markham. Plaintiff admitted that he raised both middle fingers and "flipped" Markham off prior to Markham activating his BWC. (*Id*. at 02:22-02:25; Dkt. 3, Sec. III ¶ F). Plaintiff proceeded to refer to Markham as somebody "that thinks they're above the law" (Appx. 1, 01:24); "a dick" (*Id*. at 01:51); and "a fucking tyrant" (*Id*. at 04:51). Plaintiff further flatly stated "I don't fucking like cops." (*Id*. at 03:46) Markham attempted to de-escalate the situation and calmly engaged with Plaintiff. (*See, generally*, Appx. 1).

During his interaction with Markham, Plaintiff exhibited slurred speech and unsteady balance. *See, generally*, Appx. 1. For example, Plaintiff stumbled over his words while

---

[3] There is a time and date stamp in the upper right corner of the Markham BWC Video. (Appx. 1).

discussing his potentially jaywalking - "Well you're sitting here, you know, waiting for me to jaywalk for." (Appx. 1, 02:29). And although the video clearly shows that Plaintiff approached Markham, Plaintiff becomes confused and asserts that Markham approached him. (*Id*. at 05:19-05:42). Moreover, Plaintiff had previously asked Markham why he was parked at that location (*Id*. at 00:30), to which Markham replied that he was performing his duties of traffic enforcement (*Id*. at 00:59-01:06); a mere 3 minutes later, Plaintiff again asks Markham "What are you waiting here for? What's your duty here?" (*Id*. at 04:12), to which Markham again replies "Traffic enforcement" (*Id*. at 04:15). Hammett appeared on the scene approximately five-and-a-half minutes into the BWC video (*Id*. at 05:22) and noticed Plaintiff "staggering when he was walking" (*Id*. at 13:58).

The arrest commences approximately six-and-a-half minutes after Plaintiff approached Markham's vehicle when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck off." (*Id*. at 06:38).[4] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). Hammett assists Markham subdue Plaintiff (*Id*. at 06:46). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47). After a brief struggle, Plaintiff is handcuffed, he is subdued,

---

[4] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

and the use of force ceases. (*Id*. at 07:18).[5] Approximately 38 seconds elapse from the time Markham reaches for Plaintiff's arm (*Id*. at 06:45) to the time when Plaintiff is subdued and the use of force ceases (*Id*. at 07:18).

### b. Public Intoxication

Under Texas law, "a person commits the offense of public intoxication if 'the person appears in a public place while intoxicated to the degree that the person may endanger [herself] or another.'" *City of Houston v. Nicolai*, 695 S.W.3d 489, 512 (Tex. App. 2024) (quoting Tex. Penal. Code § 49.02(a)). To arrest someone for public intoxication, law enforcement officers must therefore have probable cause to believe both that someone is intoxicated and that they are a danger to themselves or others. *See Prim v. Stein*, 6 F.4th 584, 593 (5th Cir. 2021) (citing *Gallagher v. State*, 778 S.W.2d 153, 154 (Tex. App. 1989)). As to the first element, courts have considered the following factors: (1) physical symptoms of intoxication such as difficulty standing, slurred speech, and bloodshot eyes; (2) whether the individual failed tests for intoxication; (3) whether the individual admitted to drinking alcohol or police saw or had reason to believe someone had drunk alcohol; or (4) other circumstantial indicators of intoxication including the smell of alcohol on someone's breath or person and whether the individual is combative or belligerent. *See Prim*, 6 F.4th at 593; *Livingston v. Texas*, 632 F. Supp. 3d 711, 723 (S.D. Tex. 2022), aff'd, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023; *MacCloskey v. City of Dallas*, No. 97-cv-587, 1998 WL 119535, at *2 (N.D. Tex. Mar. 9, 1998); *State v. Martinez*, 569 S.W.3d 621, 629 (Tex. Crim. App. 2019). For the second element, courts consider factors that suggest a potential for danger, such as whether the individual was in the middle of the street or unable to walk to their destination safely, if the individual had recently driven or

---

[5] Although Plaintiff was quickly immobilized, the time during which he was restrained was extended "[b]ecause Plaintiff is morbidly obese and cannot bring his hands together behind his back without significant strain, two sets of handcuffs were used, after a brief attempt to use one set of handcuffs." [Dkt. 3, § III ¶ S].

indicated an intent to drive a car, or whether they physically resisted arrest or engaged in violent conduct. *Martinez*, 569 S.W.3d at 629; *Simpson v. State*, 886 S.W.2d 449, 455 (Tex. App. 1994); *see also Raley v. Fraser*, 747 F.2d 287, 290 (5th Cir. 1984).

In *Livingston*, there was probable cause to arrest for public intoxication a plaintiff who directed a "profanity-laden tirade" at police officers. 632 F. Supp. 3d at 723. Other cases in which there was probable cause to arrest similarly involved not only profanity but also additional indicators of intoxication and danger. *See, e.g., Lago-Planas v. Crocker*, No. 09-cv-2075, 2011 WL 588053, at *1–3 (N.D. Tex. Jan. 19, 2011), adopted, 2011 WL 588719 (Feb. 9, 2011); *Padilla v. Mason*, 169 S.W.3d 493, 503 (Tex. App. 2005).

As discussed in greater detail in Section II(A)(1)(a), *supra*, Plaintiff was combative and belligerent in his interactions with Markham and Hammett. Further, Plaintiff exhibited confusion, slurred speech, and unsteady balance during their interaction. Moreover, Markham was concerned for Plaintiff's safety as he had indicated the intent to jaywalk and be out in the roadway while drunk.[6] As such, Defendants had probable cause to arrest Plaintiff for the offense of Public Intoxication.

### c. Other Violations

In addition to the above violation, the Markham BWC Video clearly demonstrates that Defendants had probable cause to arrest Plaintiff for at least one of, if not all, of the following violations:

---

[6] Plaintiff asserts that Markham offered to give him a ride home, and that "[o]ffering to release a person or transport them home is inconsistent with a belief that the person is so intoxicated that they pose a danger to themselves or others." [Dkt. 3, § III ¶ W]. However, returning a person to their domicile would remove them from a public place. *See Banda v. State*, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994) ("A public place is any place to which the public or a substantial group of the public has access and includes but is not limited to streets, highways, and common areas of schools, hospitals, apartment houses, office buildings, transport facilities and shops.") (citing TEX. PENAL CODE § 1.07(a)(29)).

### 1.  Interference With Public Duties

The Markham BWC video shows that Defendants had probable cause to arrest Plaintiff for Interference with Public Duties. Section 38.15(a)(1) of the Texas Penal Code provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with ... a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."

During his interaction with Markham, Plaintiff was aware that Markham was performing his police duties when he engaged Markham. Specifically, when Plaintiff initially contacted Markham and asked "What are you doing parked here?" (Appx. 1, 00:30), Markham responds that "I am performing my police duties" (*Id*. at 00:59) and "I want to watch traffic – I can totally do that." (*Id*. at 01:03). In acknowledgement, Plaintiff replied "Yeah, you can." (*Id*. at 01:06). Later, Plaintiff again asks Markham "What's your duty here?" (*Id*. at 04:12), and Markham reiterated that he is engaged in "traffic enforcement." (*Id*. at 04:15).

After Markham informed Plaintiff – and Plaintiff acknowledged – that Markham was performing his duties of traffic enforcement, Markham advised Plaintiff that he was free to "leave" or "go," and to "leave me alone." (*Id*. at 04:07, 05:33, and 05:40). Plaintiff replied that "I'm free to stay" (*Id*. at 05:42), to which Markham replied "Yeah, you are. Just back up." (*Id*. at 05:43). Plaintiff specifically disregarded Markham's instruction and stated "I don't need to back up." (*Id*. at 05:49). Markham then told Plaintiff to "Just stay away from me" (*Id*. at 05:50), to which Plaintiff replied "Well, you can fucking leave." (*Id*. at 05:51) while again specifically disregarding Markham's instruction.

Probable cause exists when a person does not follow instructions necessary for an officer to perform their duties. *See Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 579 (5th Cir. 2024)

(finding that officer had probable cause to arrest plaintiff for interference with public duties when he failed to comply with instructions to move away from a crime scene); *Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018) (finding that officer had probable cause to arrest plaintiff for interfering with his duties when she did not follow his instructions not to go into a home); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (finding that officer had probable cause to arrest plaintiff for violating officer's instructions when plaintiff "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech"); *Ordonez v. Gonzalez*, No. EP-23-CV-99-KC, 2024 WL 1250181, at *7 (W.D. Tex. Mar. 25, 2024) ("[plaintiff's] failure to comply with a police officer's instruction to stand back is not protected speech and gives the officer probable cause to arrest under Texas Penal Code § 38.15"); *Traylor v. Yorka*, 2024 WL 209444, at *4 (5th Cir. 2024) (finding probable cause to arrest for interference where "uncontested evidence show[ed] that [the plaintiff] failed to comply with [the officer's] numerous orders to leave"); *Spencer v. Rau*, 542 F. Supp. 2d 583, 591 (W.D. Tex. 2007) ("Plaintiff's continued presence at the accident scene after being ordered to leave [at least three times], along with the defiant verbal and physical exchange, created probable cause to justify the arrest."). *See also Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) ("[R]efusing to obey police officers' repeated and unambiguous warnings to step back so as not to interfere with officers' official duties ... establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1).").

## 2. Failure to Identify

The Markham BWC Video clearly demonstrates that Defendants also had probable cause to arrest Plaintiff for Failure to Identify. Regarding the charge of Failure to Identify:

> (a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.

TEX. PENAL CODE. § 38.02(a).

Plaintiff refused Defendants' request to identify himself after it was clearly communicated to him that he was under arrest, thereby committing an offense under § 38.02. After he had been handcuffed, Plaintiff asked "Am I under arrest?" (Appx. 1, 07:48), to which Defendants replied "Yes." (*Id*. at 07:50). Defendants then asked Plaintiff "You got your ID on you?" (*Id*. at 07:58) without a reply from Plaintiff. Defendants reiterated their request and informed Plaintiff that "OK, when you are under arrest, the one thing you do have to do is identify yourself. Do you have your ID on you?" (*Id*. at 08:06), to which Plaintiff replied "The one thing that I don't have to do is answer questions." (*Id*. at 08:12) and continued to refuse to identify himself. Defendants ultimately located Plaintiff's identification in his pants pocket.

### 3. Resisting Arrest

Moreover, Defendants had probable cause to arrest Plaintiff for the offense of Resisting Arrest. The Penal Code defines Resisting Arrest as follows:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.
> (b) It is no defense to prosecution under this section that the arrest or search was unlawful.

TEX. PENAL CODE § 38.03.

As discussed in greater detail in Section II(A)(1)(a), *supra*, the arrest commences approximately six-and-a-half minutes into the Markham BWC Video when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck

off." (*Id*. at 06:38).[7] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47).

The Fifth Circuit has consistently held that "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest," and "the act of resisting [arrest] can supply probable cause for the arrest itself." *Carroll v. Ellington*, 800 F.3d 154, 172 (5th Cir. 2015), citing *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (collecting cases). Thus, Defendants had probable cause to arrest Plaintiff for resisting arrest. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Piazza v. Mayne,* 217 F.3d 239, 246 (5th Cir. 2000); *Wafer v. Molina,* No. 3:14-CV-0976-M-BH, 2014 WL 3533698, at *2 (N.D. Tex. July 15, 2014); *see also United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009).

### d.     Dismissal of Criminal Charges is Irrelevant to the Probable Cause Analysis

Plaintiff alleges that "[o]n March 7, 2025, the Irving Municipal Court granted Plaintiff's Motion to Suppress and ordered all evidence resulting from the detention and arrest suppressed" and that as a result "[t]he charge was dismissed." [Dkt. 3, § III ¶¶ MM – NN]. However, "the fact that the charges against Plaintiff were ultimately dismissed is irrelevant to the probable cause analysis, which focuses on what the officer could have reasonably believed as to whether there was probable cause for an arrest at the time of the arrest." *Esquivel v. Eastburn*, No. SA-

---

[7] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

20-CV-00377-OLG, 2021 WL 1667132, at *4 (W.D. Tex. Apr. 8, 2021). "[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S 547, 555 (1967). The fact that the charges against Plaintiff were ultimately dismissed "is of no consequence." *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994).

### 2. Plaintiff's Excessive Force Claim Fails

When a plaintiff alleges excessive force during an arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. *Tolan v. Cotton*, 572 U.S. 650, 656, (2014) (citing *Graham v. Connor*, 490 U.S. 386, 389, 394 (1989)). To prevail on an excessive force claim under the Fourth Amendment, a plaintiff must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Stephenson v. McClelland*, 632 Fed. App'x 177, 184 (5th Cir. 2015). "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than de minimis." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). An excessive force claim is distinct from an unlawful arrest claim, and the Court must analyze an excessive force claim without regard to whether the arrest itself was justified. *Id*. at 417.

Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio,* 392 U.S. 1, 22-27 (1968) . In Texas, a peace officer is justified to use force to make an arrest, conduct a search, or prevent an escape. *See* TEX. PENAL CODE § 9.51 (Tex. 2013). The use of nondeadly force against a person is justified if the peace officer (1) reasonably believed force was immediately necessary to make or assist in making an arrest or search, or to prevent an escape after an arrest, (2) reasonably

believed the arrest or search was lawful or was made under a valid warrant, and (3) before using force, made known her identity and purpose, or reasonably believed her identity and purpose were already known or could not be been made known. *Id*.; *see Texas DPS v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

Plaintiff has failed to state a claim for a constitutional violation as he does not assert that he suffered any more than a de minimis injury as a result of the alleged application of excessive force. Specifically, Plaintiff asserts that "Hammett approached from behind and forcefully shoved Plaintiff into the patrol vehicle . . . Officers Markham and Hammett then maintained Plaintiff in a high-leverage arm position, holding him in a painful control hold" [Dkt. 3, § III ¶ Q]; "[t]he shove into the patrol vehicle and the prolonged arm hold caused substantial pain and visible bruising on Plaintiff's arm, which Plaintiff photographed the following day" [*Id*., ¶ T]; "[t]he force used was more than de minimis, unnecessary, disproportionate, and resulted in pain and visible bruising" [*Id*., § IV Claim 4]; and "[t]he force used caused pain and visible bruising, and was more than de minimis" [*Id*.]. These were the only references to any alleged injury in Plaintiff's Complaint.

These type of minor incidental injuries are de minimis and do not give rise to a constitutional claim for excessive force. *See, e.g., Brooks v. City of West Point, Miss.*, 639 Fed.App'x 986, 990 (5th Cir. 2016) (where Brooks "suffered abrasions to his hands and knees, some pain in his back and neck, and unspecified problems with his asthma," "[w]e have held injuries of this type to be de minimis in the context of the force used"); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (minor incidental injuries that occur in connection with the use of handcuffs do not give rise to a constitutional claim for excessive force); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (de minumus injuries, such as a bruised ear, are insufficient to claim

injury in an excessive force claim); *Zavala v. Harmon*, 2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2022) (noting that "injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent" because they are de minimis). As such, Plaintiff fails to allege facts suggesting anything more than a de minimis injury associated with the alleged application of excessive force.

Assuming *arguendo* that Plaintiff was able to establish a cognizable injury, Defendants' use of force was reasonable under the circumstances. In his Complaint, Plaintiff refers to Markham's BWC Video to support his allegations. In the relevant parts of the video, Plaintiff is observed to be non-compliant with Markham's directives. The arrest commences approximately six-and-a-half minutes after Plaintiff approached Markham's vehicle when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck off." (*Id*. at 06:38).[8] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). Hammett assists Markham subdue Plaintiff (*Id*. at 06:46). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47). After a brief struggle, Plaintiff is handcuffed, he is subdued, and the use of force ceases. (*Id*. at 07:18).[9]

---

[8] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

[9] Although Plaintiff was quickly immobilized, the time during which he was restrained was extended "[b]ecause Plaintiff is morbidly obese and cannot bring his hands together behind his back without significant strain, two sets of handcuffs were used, after a brief attempt to use one set of handcuffs." [Dkt. 3, § III ¶ S].

Approximately 38 second elapse from the time Markham reaches for Plaintiff's arm (*Id.* at 06:45) to the time when Plaintiff is subdued and the use of force ceases (*Id.* at 07:18).[10]

During the arrest, Plaintiff was repeatedly directed to place his hands behind his back. Plaintiff disregarded the officers' instructions and actively resisted arrest. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989) (instructing courts to evaluate "whether the suspect poses an immediate threat to the safety of the officers" and "whether he is actively resisting arrest or attempting to evade arrest by flight"); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009) (per curiam) ("Officers may consider a suspect's refusal to comply with instructions ... in assessing whether physical force is needed to effectuate the suspect's compliance").

Only when faced with Plaintiff's continued disregard of their directives and active resistance did the officers decide to utilize force on Plaintiff. Even then, Defendants utilized the minimum force necessary. Once Plaintiff stopped resisting and complied with their instructions, no further force was utilized. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that officers who "responded with 'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance" were entitled to qualified immunity).

Finally, "plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017); *see also Carnaby*, 636 F.3d at 187.

---

[10] Notably, Plaintiff does not allege any wrongdoing by Defendant Lewis. [Dkt. 3, § IV Claim 4]. "As he approached, Lewis briefly reached toward Plaintiff but, upon seeing that Plaintiff was standing still and offering no resistance, withdrew his hand. Lewis then produced a second set of handcuffs, applied it to Plaintiff's left wrist, and connected it to the cuff that Officer Markham had already placed on Plaintiff's right wrist. [*Id.* at § III ¶ S].

### 3. Plaintiff's Allegations Concerning Clearly Established Law Are Unavailing

Defendants are also entitled to qualified immunity because Plaintiff has pled only a vague, conclusory allegation concerning whether the applicable law was clearly established at the time of his arrest and because he defines the applicable law at too high a level of generality.

In determining whether a defendant is entitled to the protections of qualified immunity, the court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that every reasonable official would understand that the defendant's actions violated the law. *Turner v. Driver*, 848 F. 3d 678, 685-86 (5th Cir. 2017)(citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Clearly established" law may not be defined at a high level of generality. Instead, this analysis depends upon whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *al-Kidd*, 563 U.S. at 742; *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam)). A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Plaintiff makes no specific allegation with regard to this aspect of his claim. Rather, he speaks broadly of "constitutional" or "civil" rights and does not direct the Court's attention to any clearly established law with any degree of specificity. This amounts to no more than a legal conclusion and a formulaic recitation of an element of Plaintiff's Fourth Amendment claims which is insufficient to state a plausible claim for relief, and the Court should not accept these allegations as true. *Twombly*, 550 U.S. at 570. *Iqbal*, 556 U.S. at 678; *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

### III.     First Amendment Claims

To state a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) he was engaged in constitutionally protected activity; (2) the officer's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against their exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiff fails to plead sufficient facts to support the first and third elements: he was not engaged in, and the officers' actions were not motivated by, constitutionally protected speech. As discussed in greater detail in Section II(A)(1), *supra*, there was probable cause to arrest Plaintiff for multiple violations of the Penal Code. As such, Plaintiff fails to establish that Defendants' actions were substantially motivated by Plaintiff's speech and not his actions.

Moreover, "[i]f [probable cause] exists, any argument that the arrestee's speech as opposed to [his] criminal conduct was the motivation for [his] arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (quoting *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)); *see also Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) (if probable cause to arrest exists, any argument that an arrestee's speech as opposed to his/her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment); *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002) (in "a situation in which law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked," "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation" such that " [i]f probable cause existed ... or if reasonable police officers could believe probable cause existed, they are exonerated").

"To ensure that officers may go about their work without undue apprehension of being sued, [the court] generally review[s] their conduct under objective standards of reasonableness." *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019). "A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured - the motive must cause the injury." *Nieves*, 587 U.S. at 398. It must be a "'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399; *see also Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) ("A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke' the arrest, meaning that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff."). "Thus, in the context of retaliatory arrest or prosecution, to prove causation, a plaintiff generally must show that the officers lacked probable cause to make the arrest." *Degenhardt*, 117 F.4th at 758 (citation omitted). The Fifth Circuit has "likewise held that if an officer has a reasonable suspicion to initiate a seizure, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id*. (quoting *Allen*, 815 F.3d at 245).

In this case, Plaintiff's allegedly protected speech could not have been a "but for" cause of his arrest. Undisputed video evidence (Appx. 1) shows Plaintiff violating TEX. PENAL CODE §§ 38.15, 38.02, 38.03, and 49.02 in Defendants' presence. Plaintiff has therefore failed to plausibly plead that Defendants lacked probable cause to arrest him. *See, e.g., Degenhardt*, 117 F.4th at 758-59 (affirming dismissal of First Amendment retaliation claim where defendants "established a lawful basis to search the car and to cite the Degenhardts for possessing alcohol as

minors and driving recklessly," and, "[a]ccordingly, [plaintiffs] have not pleaded sufficient facts to show that [defendants'] nonretaliatory grounds for the seizures were insufficient to provoke their actions.").

To the extent that Plaintiff alleges that "Plaintiff's arrest occurred immediately after he questioned and criticized Markham's conduct. The timing and circumstances indicate the arrest was in retaliation for protected speech" [Dkt. 3, § IV Claim 2], Plaintiff's conclusory and purely speculative allegations are insufficient to plausibly allege that Defendants were "substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017). Accordingly, because Plaintiff has failed to plausibly allege that Defendants retaliated against him for the exercise of his First Amendment rights, the court should grant Defendants motion to dismiss Plaintiff's § 1983 First Amendment claim based on qualified immunity.

## IV.    Conspiracy Claims

In his Complaint, Plaintiff has alleged various violations of the Constitution under 42 U.S.C. § 1983, and specifically asserted a "Section 1983 Conspiracy" claim against Defendants. [Dkt. 3, § IV Claim 5]. Said claims fail as a matter of law. Plaintiff cannot demonstrate an underlying constitutional injury, so there is no violation to which a conspiracy could be directed.

"To prove a conspiracy under section 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) ("[A] conspiracy claim is not actionable without an actual violation of section 1983."). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.

Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). Plaintiff alleges no facts to show an agreement or any "operative facts" underlying the conspiracy claim against Defendants. *See id*.

Moreover, actions allegedly taken by employees of an entity are considered to have been taken by the entity. It is a general principle in conspiracy law that a conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1953). This principle has given rise to the intracorporate conspiracy doctrine, which provides that a "corporation cannot conspire with itself any more than a private individual can," and "that the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011). "Although the intracorporate conspiracy doctrine arose in the anti-trust context, it has been applied to public entities and has been extended to civil rights conspiracies under § . . . 1983." *Collins v. Bauer*, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) (Ramirez, J.) (citations omitted), rec. adopted, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012) (Boyle, J.); *see also Swilley v. City of Houston*, 457 Fed. Appx. 400, 404 (5th Cir. 2012) (per curiam) (holding that § 1985 claim fails because "[t]he City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997) (granting motion to dismiss § 1983 conspiracy claim where individual defendants were both "employees of the Galveston Police Department" and "for the purposes of Plaintiff's § 1983 conspiracy claim, the Galveston Police Department and its employees constitute a single legal entity which is incapable of conspiring with itself.").

Plaintiff does not dispute that the Defendants are all employees of the City. *See* Compl. § II ("Plaintiff seeks redress for the violation of his rights by officers and employees of the City of Irving."). Nor does he provide any reason why the intracorporate conspiracy doctrine does not preclude his claim. Accordingly, the court should grant Defendants' motion to dismiss Plaintiff's Section 1983 Conspiracy claim.

## CONCLUSION

The facts alleged within Plaintiff's Complaint do not constitute the violation of any right protected by the Constitution or laws of the United States, and as such, the claims must be dismissed for failure to state a claim for which relief can be granted. Moreover, even if Plaintiff's Complaint alleged facts of a violation of federally protected rights, Defendants are entitled to dismissal of Plaintiff's claims against them because of their entitlement to qualified immunity. Plaintiff does not allege particularized facts that demonstrate that he was deprived of a constitutionally protected right, and also does not allege facts showing that Defendants' conduct was objectively unreasonable in light of clearly established law.

WHEREFORE, PREMISES CONSIDERED, Defendants Markham, Hammett, and Lewis respectfully pray that: (1) the Court grant Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendants recover all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which they may be justly entitled.