**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| | § | **3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS JAMES MARKHAM,**

**ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS**

---

**Use of Generative Artificial Intelligence.** Pursuant to N.D. Tex. L. Civ. R. 7.2(f), Plaintiff discloses that generative artificial intelligence was used to assist in research, organization, and drafting of this response. Plaintiff reviewed and edited the final text and independently verified all legal authorities cited herein. Plaintiff takes full responsibility for the content and accuracy of this filing.

TABLE OF CONTENTS

---

INTRODUCTION.................................................................................................. 1
STATEMENT OF FACTS................................................................................... 2

1

**BODY WORN CAMERA**........................................................................................ **3**

I. Official Capacity Claims Are Properly Dismissed Without Prejudice.................................... 6

II. Qualified Immunity Does Not Bar Plaintiff's Claims at the Pleading Stage......................... 7

    A. The Complaint Plausibly Alleges Constitutional Violations............................................ 7

    b. Other Violations................................................................................................ 13

1. Interference With Public Duties (Tex. Penal Code § 38.15).............................................. 13

2. Failure to Identify (Tex. Penal Code § 38.02)................................................................ 13

3. Resisting Arrest (Tex. Penal Code § 38.03)................................................................... 14

    d. Dismissal of Criminal Charges is Irrelevant to the Probable Cause Analysis.. 15

    2. The Complaint Plausibly Alleges Excessive Force................................................. 15

Qualified Immunity — Per-Officer Analysis......................................................................... 16

    3. Clearly Established Law Supports Plaintiff's Claims............................................... 17

III. First Amendment Claims............................................................................................. 18

IV. Conspiracy Claims.................................................................................................... 24

**CONCLUSION**.............................................................................................. **28**

**CERTIFICATE OF SERVICE**........................................................................ **28**

# TABLE OF AUTHORITIES

Cases

| Case | Page(s) |
|------|---------|
| *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) | 29 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 2, 4, 8, 25 |
| *Babb v. Dorman*, 33 F.3d 472 (5th Cir. 1994) | 24 |
| *Barnes v. Felix*, 145 S. Ct. 1353 (2025) | 25 |
| *Batyukova v. Doege*, 994 F.3d 717 (5th Cir. 2021) | 30, 31, 32, 33 |
| *Beck v. Ohio*, 379 U.S. 89 (1964) | 12, 13, 14, 29 |
| *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) | 8 |
| *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998) | 37 |
| *Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022) | 36, 38 |
| *Bevill v. Wheeler*, 103 F.4th 363 (5th Cir. 2024) | 32, 33 |
| *Brooks v. City of West Point*, 639 F. App'x 986 (5th Cir. 2016) | 26 |
| *Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir. 2011) | 7, 8 |
| *Childers v. Iglesias*, 848 F.3d 412 (5th Cir. 2017) | 22 |
| *City of Houston v. Hill*, 482 U.S. 451 (1987) | 14, 22, 29, 30, 32 |
| *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009) | 9, 13 |
| *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (en banc) | 38 |
| *Degenhardt v. Bintliff*, 117 F.4th 747 (5th Cir. 2024) | 31 |
| *Foman v. Davis*, 371 U.S. 178 (1962) | 39 |

| | |
|---|---|
| *Franks v. Delaware*, 438 U.S. 154 (1978) | 38 |
| *Freeman v. Gore*, 483 F.3d 404 (5th Cir. 2007) | 22, 25 |
| *Gonzalez v. Trevino*, 602 U.S. 569 (2024) | 32 |
| *Graham v. Connor*, 490 U.S. 386 (1989) | 25, 27, 29 |
| *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995) | 18, 27, 34, 38 |
| *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017) | 7 |
| *Hilliard v. Ferguson*, 30 F.3d 649 (5th Cir. 1994) | 37 |
| *Hodge v. Engleman*, 90 F.4th 840 (5th Cir. 2024) | 5 |
| *Hope v. Pelzer*, 536 U.S. 730 (2002) | 29 |
| *Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024) | 29 |
| *Jabary v. City of Allen*, 547 F. App'x 600 (5th Cir. 2013) | 36 |
| *Johnson v. City of Shelby*, 574 U.S. 10 (2014) | 29 |
| *Kentucky v. Graham*, 473 U.S. 159 (1985) | 8 |
| *Lago-Planas v. Crocker*, 2011 WL 588053 (N.D. Tex. 2011) | 15 |
| *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) | 36 |
| *Livingston v. Texas*, 2023 WL 4931923 (5th Cir. 2023) | 15 |
| *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) | 37 |
| *Malley v. Briggs*, 475 U.S. 335 (1986) | 12, 13, 16, 29, 32 |
| *Mullenix v. Luna*, 577 U.S. 7 (2015) | 29 |
| *Nieves v. Bartlett*, 587 U.S. 391 (2019) | 32 |
| *Pearson v. Callahan*, 555 U.S. 223 (2009) | 9, 26 |

| | |
|---|---|
| *Pierson v. Ray*, 386 U.S. 547 (1967) | 24 |
| *Prim v. Stein*, 6 F.4th 584 (5th Cir. 2021) | 9, 14 |
| *Scott v. Harris*, 550 U.S. 372 (2007) | 4 |
| *Sibron v. New York*, 392 U.S. 40 (1968) | 20, 23, 24, 29 |
| *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) | 26 |
| *Taylor v. Riojas*, 592 U.S. 7 (2020) | 29 |
| *Tolan v. Cotton*, 572 U.S. 650 (2014) | 4, 6 |
| *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) | 29, 30, 32 |
| *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) | 17 |
| *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018) | 38 |
| *Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936 (N.D. Tex. 2024) | 24 |
| *Ziglar v. Abbasi*, 582 U.S. 120 (2017) | 37 |

**Statutes and Rules**

| Authority | Page(s) |
|---|---|
| 42 U.S.C. § 1983 | 1, 6 |
| Fed. R. Civ. P. 12(b)(6) | 1, 4, 22 |
| Fed. R. Civ. P. 12(d) | 4 |
| Fed. R. Civ. P. 15(a)(2) | 22 |
| Fed. R. Evid. 201 | 8 |
| Fed. R. Evid. 901(a) | 8 |
| Tex. Penal Code § 38.02(a) | 14 |
| Tex. Penal Code § 38.03(a) | 14 |
| Tex. Penal Code § 38.15(a), (d) | 14 |
| Tex. Penal Code § 49.02(a) | 13 |

# INTRODUCTION

On the pleaded facts, the arrest cannot be reconciled with the elements of Texas public intoxication, and the timing aligns with Plaintiff's protected criticism and recording—not with any conduct satisfying Tex. Penal Code § 49.02. Markham shifted from covert to overt surveillance, parked directly behind Plaintiff, and waited; when Plaintiff approached and began recording, Markham arrested him, force was used, and Plaintiff was jailed overnight. (Compl. ¶¶ D–F, P–T).

Five pleaded, contemporaneous admissions undercut Defendants' probable-cause and qualified-immunity theories. Markham agreed there was "100%" no reason to suspect a crime and stated he could "come up with" justification. (Compl.    L). Markham then told Plaintiff he was "free to go" five times, yet initiated the arrest forty-one seconds after the last such statement—without any pleaded change in Plaintiff's behavior, condition, or location. (Compl. ¶¶ M, P, R). Immediately after force was used on a compliant Plaintiff, Hammett stated it was "completely unnecessary." (Compl.    U). Post-arrest, Markham framed continued custody as discretionary and attitude-dependent—offering a ride home versus jail for public intoxication. (Compl.    W). And the officers' own words tied the episode to speech and recording: Hammett remarked "wouldn't shut up before, now won't talk," and Markham identified Plaintiff at booking as "one of those videotape guys." (Compl. ¶¶ V, CC).

*Accepting these allegations as true, Plaintiff plausibly alleges an arrest and use of force unsupported by arguable probable cause and motivated by protected activity. Defendants' motion should be denied* in its entirety.

## STATEMENT OF FACTS

The following facts are drawn from the Complaint and accepted as true at this stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Surveillance and encounter.** On December 4, 2023, Plaintiff was walking alone near Westgate Center Mall in Irving, Texas. (Compl.   A). Markham surveilled Plaintiff, then parked directly behind him—partially obstructing the lane—and waited. (Compl. ¶¶ B–E, H, K). Despite prolonged observation, Markham conducted no welfare check. (Compl. K). Plaintiff began recording, approached, and challenged Markham's parking. (Compl. ¶¶ F, H). Markham observed and later described Plaintiff's gestures and movements from a distance. (Compl. ¶¶ F, J). Plaintiff used profanity but remained non-violent and physically compliant, and Markham called for backup. (Compl. ¶¶ H–I).

**Admissions and arrest.** Markham agreed there was "100%" no reason to suspect a crime and stated he could "come up with" justification—before any inquiry about alcohol. (Compl.   L). Markham told Plaintiff he was "free to go" five times. (Compl.   M). The first drinking inquiry came only after Plaintiff's criticism intensified. (Compl.   O). With no alleged change in Plaintiff's condition, Markham ordered Plaintiff's hands behind his back and initiated the arrest. (Compl. ¶¶ M, P, R).

**Use of force.** Plaintiff alleges he did not resist or make any movement indicating non-compliance. (Compl.    P). Hammett shoved Plaintiff into the vehicle from behind and officers maintained a painful control hold. (Compl.    Q). Lewis arrived during the restraint, observed no resistance, and withdrew his hand. (Compl.    S). Plaintiff alleges the shove and hold caused substantial pain and visible bruising. (Compl.    T).

**Post-arrest and prosecution.** Immediately after force was used, Hammett stated it was "completely unnecessary," and then remarked: "wouldn't shut up before, now won't talk." (Compl. ¶¶ U–V). Markham later offered a discretionary choice between a ride home and jail for public intoxication. (Compl.    W). At booking, when asked about Plaintiff, Markham identified him as "one of those videotape guys." (Compl.    CC). Plaintiff alleges he displayed no objective signs of intoxication at any time. (Compl.    Z). Plaintiff further alleges the Irving Municipal Court granted his motion to suppress after finding the BWC did not support the officers' claims, and the charge was dismissed, but the arrest record continues to harm his employment, income, and pilot's license. (Compl. ¶¶ MM, NN).

## BODY WORN CAMERA

**Video references and Rule 12 posture.** The facts herein are drawn from the Complaint and must be accepted as true at this stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants attached a body-worn camera recording as Exhibit/Appendix 1 (the "BWC Video"). Plaintiff does not concede the BWC Video's authenticity, completeness, chain of custody, or that it is an accurate, unedited depiction of events.

**Incomplete, defense-selected record.** The Complaint alleges multiple officers were present and equipped with body-worn cameras. Yet Defendants submit only a single recording that appears to be from Markham alone, with no explanation for the absence of other contemporaneous recordings and no assurance that additional footage does not exist. Plaintiff reserves the right to obtain the full set of recordings in discovery and to challenge any adverse inferences Defendants seek to draw from a partial submission.

**Rule 12 record and Rule 12(d).** Defendants invite the Court to consider the BWC Video and to accept Defendants' characterization of it. Plaintiff submits that neither invitation is appropriate at this stage. If the Court concludes the BWC Video falls outside the permissible Rule 12(b)(6) record, the proper course is to disregard or exclude it—not to convert the motion under Rule 12(d). Even if the Court reviews the proffered video for a limited purpose, it cannot displace the Complaint's well-pleaded facts unless it "blatantly contradicts" them; disputed inferences remain governed by Plaintiff's allegations at this stage. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

**No incorporation-by-reference without authentication.** Incorporation-by-reference requires authenticity. *Hodge v. Engleman*, 90 F.4th 840, 844–45 (5th Cir. 2024). Defendants have not offered Rule 901(a) authentication or any foundation establishing that the proffered video is complete and unaltered—particularly significant where Defendants submit only one officer's recording while the Complaint alleges other officers were present with cameras and alleges unexplained audio gaps. (Compl.    Y).

On that basis alone, the Court should decline to treat the recording as part of the Rule 12 record.

**Even if considered, it does not "blatantly contradict" the Complaint.** Defendants' own citation practice underscores the gap in their probable-cause narrative. They cite dozens of specific timestamps for Plaintiff's words and movements, yet for their core probable-cause theory—"slurred speech and unsteady balance"—they cite only "See, generally, Appx. 1." (Defs.' Br. at 8). If the BWC Video contained clear slurred speech, staggering, or unsteady balance, Defendants—who otherwise cite timestamps with precision—would be expected to cite the exact seconds.

Defendants' lone "example" of slurred speech—Plaintiff saying, "Well you're sitting here, you know, waiting for me to jaywalk for" (Appx. 1 at 02:29)—is coherent and consistent with Plaintiff's pleaded narrative. Likewise, Defendants do not cite footage of "staggering" or "unsteady balance," relying instead on a post-arrest assertion. (Id. at 13:58). At Rule 12, the Court may not accept Defendants' characterization of ambiguous footage or resolve competing inferences against Plaintiff. *Tolan*, 572 U.S. at 657.

**Corroboration by an independent judicial officer.** The Complaint alleges that the only independent judicial officer to review this footage concluded it did not support the officers' asserted basis and suppressed the evidence. (Compl.    MM). See *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017).

**Bottom line.** Plaintiff does not dispute that a BWC recording exists. Plaintiff challenges Defendants' failure to authenticate it, disputes Defendants' characterization of it, and objects to using a partial, selectively submitted recording to override the Complaint's well-pleaded facts at the Rule 12 stage.

**ARGUMENT AND AUTHORITIES**

On a Rule 12(b)(6) motion, the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor.  The Complaint must plausibly state a claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At this stage, Defendants' characterization of the BWC cannot displace the Complaint, and the officers' pleaded admissions must be taken as true. Qualified immunity does not alter the Rule 12 standard. Carnaby v. City of Houston, 636 F.3d 183, 189 (5th Cir. 2011).

# I. Official Capacity Claims Are Properly Dismissed Without Prejudice

Plaintiff brings claims against Officers Markham, Hammett, and Lewis in their individual capacities, and separately sues the City for entity liability. (Compl. ¶¶ H–S). To the extent any official-capacity claim is construed, it is duplicative of the City claim and may be dismissed on that basis. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The individual-capacity claims remain.

## II. Qualified Immunity Does Not Bar Plaintiff's Claims at the Pleading Stage

At the pleading stage, Plaintiff must allege facts showing (1) a constitutional violation and (2) clearly established law. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Plaintiff has done so.

A. The Complaint Plausibly Alleges Constitutional Violations

1. The Complaint Plausibly Alleges Absence of Probable Cause

**a. Markham BWC Video.** Defendants' BWC narrative is addressed above. It ignores the pleaded admissions and asks the Court to credit Defendants' characterization over the Complaint. At Rule 12, the Fourth Amendment question is whether probable cause existed at the moment of seizure, and disputed inferences must be resolved in Plaintiff's favor. See BWC section, supra.

**b. Public Intoxication.** A false-arrest claim requires plausibly alleging lack of probable cause. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009). Texas public intoxication requires facts supporting both (1) intoxication and (2) endangerment—intoxication "to the degree" the person "may endanger" himself or another. Tex. Penal Code § 49.02(a); Prim v. Stein, 6 F.4th 584, 593 (5th Cir. 2021).

Plaintiff plausibly alleges neither element was supported at the moment of arrest. Plaintiff alleges no objective indicia of intoxication—no stumbling, staggering, slurred speech, odor of alcohol, or impaired coordination—and no sobriety, breath, or

welfare-type assessment. (Compl. ¶¶ K, Z). Plaintiff further alleges Markham told him he was "free to go" five times and then arrested him seconds after the last such statement, with no pleaded change in Plaintiff's behavior, condition, location, or conduct, and that intoxication was raised only after Plaintiff's criticism escalated and immediately preceded the arrest command. (Compl. ¶¶ M, O, P, R). Plaintiff also alleges facts negating endangerment: prolonged surveillance without a welfare check, repeated authorization to leave, and a later discretionary ride-or-jail offer conditioned on demeanor rather than safety. (Compl. ¶¶ K, M, W).

Plaintiff's pleaded admissions reinforce the lack of objective facts. Plaintiff alleges Markham agreed there was "100%" no reason to suspect crime and stated he could "come up with" justification before pivoting to public intoxication. (Compl.    L). Probable cause must rest on objective facts known at the time, not post-hoc rationalizations. Beck v. Ohio, 379 U.S. 89, 91 (1964).

Finally, the Complaint alleges an independent judicial officer reviewed the same footage and suppressed all evidence, finding the BWC did not support the officers' claims. (Compl.    MM). That ruling is not preclusive here, but it is consistent with Plaintiff's pleaded lack of probable cause and underscores why dismissal and qualified immunity are inappropriate at Rule 12. Fed. R. Evid. 201.

Accepting the pleaded facts as true, Plaintiff plausibly alleges arrest without probable cause for § 49.02 and plausibly negates any "objectively reasonable mistake" at the pleading stage. Club Retro, 568 F.3d at 204; Malley v. Briggs, 475 U.S. 335, 341 (1986).

**Element One: Intoxication — No Objective Indicators.** Probable cause must rest on objective facts known at the time of arrest, not labels or post-hoc characterizations. Beck v. Ohio, 379 U.S. 89, 91 (1964). Plaintiff alleges no objective indicia of intoxication at any time—no stumbling, staggering, slurred speech, odor of alcohol, or impaired coordination. (Compl.  Z). Plaintiff further alleges he was coherent and physically compliant throughout, and when intoxication was raised he questioned its basis rather than displaying confusion or impairment. (Compl. ¶¶ P, Z). Despite prolonged observation, Plaintiff alleges Markham conducted no welfare check, expressed no concern about Plaintiff's condition, and did not raise intoxication until after Plaintiff's criticism intensified. (Compl. ¶¶ K, O). Plaintiff also alleges no field sobriety testing, breath testing, or medical screening was performed despite time and opportunity. (Compl.  Z). Finally, Plaintiff alleges the "staggering" narrative emerged only after arrest and conflicts with the video and the Municipal Court's suppression order. (Compl. ¶¶ X, MM). Accepting these allegations as true, Plaintiff plausibly alleges lack of probable cause as to intoxication and thus states a false-arrest claim sufficient to overcome qualified immunity at the pleading stage. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009); Malley v. Briggs, 475 U.S. 335, 341 (1986).

**Element Two: Endangerment — No Plausible Danger.** Texas public intoxication requires not only intoxication, but intoxication "to the degree that the person may endanger the person or another." Tex. Penal Code § 49.02(a); Prim v. Stein, 6 F.4th 584, 593 (5th Cir. 2021). Plaintiff alleges facts negating that "danger" element: Markham told Plaintiff he was "free to go" five times and conducted no welfare check or safety-oriented inquiry during the prolonged surveillance and encounter. (Compl. ¶¶

D–K, M). Plaintiff further alleges Markham later offered a discretionary ride-or-jail ultimatum framed around Plaintiff's demeanor and deference—rather than any articulated safety concern—conduct inconsistent with a contemporaneous belief that Plaintiff posed a danger. (Compl.   W). At booking, Plaintiff alleges Markham described him as "one of those videotape guys," not as someone endangering himself or others due to intoxication. (Compl.   CC). Plaintiff also alleges jail staff recorded a systolic blood-pressure reading above 200 yet provided no medical evaluation, monitoring, or treatment—further undermining any claimed safety rationale tied to intoxication. (Compl.   KK). Accepting these allegations as true, Plaintiff plausibly alleges the endangerment element was unsupported at the moment of seizure and thus probable cause for § 49.02(a) was lacking. Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 204 (5th Cir. 2009).

**The Totality of Lawful Conduct Remains Insufficient.** Defendants may attempt to aggregate profanity, late-night presence, bar proximity, and an argumentative tone into arguable probable cause. But profanity and criticism are protected speech, City of Houston v. Hill, 482 U.S. at 461, and the remaining circumstances are lawful and do not supply the required objective facts for **either** § 49.02 element: (1) loss of normal mental or physical faculties, and (2) intoxication "to the degree" the person "may endanger" himself or another. Beck v. Ohio, 379 U.S. 89, 91 (1964); Tex. Penal Code § 49.02(a). Probable cause cannot be manufactured by stacking protected expression and innocent conduct. Beck, 379 U.S. at 91.

**Defendants' Authorities Are Distinguishable.** *Livingston* and *Lago-Planas* involved profanity *plus* additional objective indicators of intoxication and danger. Here, there are

none: no stumbling, staggering, slurred speech, bloodshot eyes, odor of alcohol, impaired coordination, or proximity to traffic. (Compl.   Z).

**Qualified Immunity — Per-Officer Analysis.** Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**Officer Markham.** The Complaint alleges Markham escalated after Plaintiff's criticism and recording, admitted there was "100%" no reason to suspect a crime while stating he could "come up with" justification, repeatedly told Plaintiff he was "free to go," and then arrested him without any pleaded change in Plaintiff's behavior, condition, or location and without any sobriety/danger assessment. (Compl. ¶¶ H, L, M, O, P, R, Z). It further alleges Markham offered a discretionary ride-or-jail choice for public intoxication—conduct inconsistent with a contemporaneous belief that Plaintiff "may endanger" himself or another. (Compl.   W). Taken as true, these allegations plausibly plead lack of probable cause and negate an objectively reasonable mistake at the pleading stage.

**Officer Hammett.** The Complaint alleges Hammett arrived as backup and, while Plaintiff was still and compliant, shoved Plaintiff into the patrol vehicle and helped maintain a painful control hold; Hammett then immediately stated the force was "completely unnecessary" and tied the episode to Plaintiff's speech ("wouldn't shut up before, now won't talk"), later advancing a "staggering" narrative contradicted by the recording and the Municipal Court's suppression finding. (Compl. ¶¶ N, P–Q, U–V, X, Z,

MM). Accepting these allegations as true, the Complaint plausibly alleges Hammett's personal participation in unconstitutional force and retaliatory conduct.

**Officer Lewis.** The Complaint alleges Lewis arrived during the restraint, recognized Plaintiff's compliance, yet affirmatively assisted in completing the restraint by applying a second set of handcuffs to connect Plaintiff's wrists. (Compl.    S). At the pleading stage, those are affirmative acts supporting personal participation, not mere presence. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). The Complaint further alleges Lewis had no independent factual basis to continue detention for public intoxication because intoxication was raised only after Plaintiff's criticism and Plaintiff displayed no objective signs of impairment and received no sobriety assessment. (Compl. ¶¶ O, Z). Taking the allegations as true, Lewis plausibly participated in continuing the seizure and, at minimum, failed to intervene despite a realistic opportunity to do so. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

**Audio gaps / missing context.** Finally, the Complaint alleges that the body-worn camera recordings contain gaps in audio, and that the recordings do not state why audio is absent or whether it was intentionally disabled—preventing a complete record of the officers' interactions.

That allegation further supports declining to draw pro-dismissal inferences from a partial, defense-selected record at Rule 12.

B. Other Violations

Defendants assert three alternative offenses to salvage probable cause. A threshold bar defeats all three: under *Sibron v. New York*, 392 U.S. 40, 62-63 (1968), probable cause must exist at the moment of seizure, and post-arrest conduct cannot retroactively supply it.

## 1. Interference With Public Duties (Tex. Penal Code § 38.15)

Section 38.15 requires non-speech conduct that actually interrupts, disrupts, impedes, or interferes with an officer performing a lawful duty, and it expressly provides a defense where the alleged interference "consisted of speech only." Tex. Penal Code § 38.15(a), (d); *Freeman v. Gore*, 483 F.3d 404, 411–12 (5th Cir. 2007); *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). The Complaint alleges Plaintiff's conduct was criticism/profanity and recording—while remaining non-violent and physically compliant—and that there was no emergency response or active investigation Plaintiff physically obstructed; instead, Markham observed from a distance and escalated after Plaintiff's criticism. (Compl. ¶¶ D–K, F, H–I). It also alleges Markham repeatedly said Plaintiff was "free to go," reinforcing the absence of a contemporaneous duty requiring Plaintiff's removal or restraint. (Compl.   M). Under Defendants' own precedent, arguing with officers is not enough; interference requires conduct beyond speech that actually hinders an officer's duty. *Childers v. Iglesias*, 848 F.3d 412 (5th Cir. 2017). Taking the allegations as true, § 38.15 cannot supply an alternative "any offense" basis at the pleading stage.

## 2. Failure to Identify (Tex. Penal Code § 38.02)

Failure-to-identify under § 38.02 requires, as an element, that the person was *lawfully arrested* and then refused to provide the identifying information the statute requires. Tex. Penal Code § 38.02(a). Separately, probable cause must exist at the moment the seizure begins; post-seizure events cannot retroactively justify an arrest already underway. *Sibron v. New York*, 392 U.S. 40, 62–63 (1968). The Complaint alleges Markham initiated the arrest without probable cause—after repeated "free to go" statements and without any intervening change in Plaintiff's behavior, condition, or location—so § 38.02 cannot bootstrap probable cause because it presupposes a lawful arrest. (Compl. ¶¶ M, P, R, Z). And even if Defendants argue Plaintiff later declined to identify himself, *Sibron* forecloses using later conduct to manufacture probable cause for a seizure already in progress. 392 U.S. at 62–63. On the pleaded facts, § 38.02 cannot provide an alternative basis for probable cause or qualified immunity at Rule 12.

### 3. Resisting Arrest (Tex. Penal Code § 38.03)

Resisting arrest requires that the arrestee intentionally prevented or obstructed the officer from effecting the arrest by using force against the officer or another. Tex. Penal Code § 38.03(a). And again, probable cause must exist at the moment the seizure begins; later conduct cannot retroactively supply it. *Sibron*, 392 U.S. at 62–63. The Complaint alleges Plaintiff remained still and physically compliant—no pulling away, tensing, twisting, or other noncompliance—while Markham ordered his hands behind his back; Lewis observed no resistance in real time; and Hammett immediately stated the force was "completely unnecessary," which is inconsistent with force required to overcome resistance. (Compl. ¶¶ P, S, U). Accepting these allegations as true, the

elements of § 38.03(a) are not plausibly met, and resisting arrest cannot serve as an alternative "any offense" justification for the arrest or detention at the pleading stage. (Compl. ¶¶ P, S, U); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*d. Dismissal of Criminal Charges is Irrelevant to the Probable Cause Analysis*

Dismissal alone does not establish lack of probable cause. *Pierson v. Ray*, 386 U.S. 547, 555 (1967); *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994). But Defendants conflate the *dismissal* with the *suppression order*. The suppression court reviewed the evidence and found it did not support Markham's claims — a judicial determination, not prosecutorial discretion. *Cf. Young*, 2024 WL 4193936, at *4. If the arresting officer cannot convince a neutral judicial officer that probable cause existed, no reasonable officer could have believed it did.

Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage, the Complaint plausibly alleges that no probable cause existed for any offense at the moment of seizure.

2. The Complaint Plausibly Alleges Excessive Force

To state an excessive-force claim, Plaintiff must allege facts showing the force was objectively unreasonable under the totality of circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The relevant factors are the severity of the crime, any immediate threat, and resistance or flight. Id. Plaintiff alleges a minor offense (public intoxication), no threat (unarmed, non-violent, not fleeing), and no resistance. (Compl. ¶¶ I, P). Excessive force is actionable even if the arrest were lawful, and the analysis considers

the full encounter—not a single "climactic moment." *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *Barnes v. Felix*, 145 S. Ct. 1353, 1360–61 (2025). And where defendants rely on body-worn video to reframe the encounter, courts do not reject the plaintiff's account unless the recording **blatantly contradicts** it.

Plaintiff also alleges more than de minimis force and injury: while compliant, Hammett shoved Plaintiff into the patrol vehicle, and Markham and Hammett maintained a painful control hold long enough to cause substantial pain and visible bruising. Even suspected intoxication does not justify significant force against a compliant person; Lewis arrived, saw compliance, and still helped complete the restraint by applying a second set of handcuffs. (Compl. ¶¶ Q–T). These allegations materially exceed the minor-contact scenarios in *Brooks v. City of West Point*, 639 F. App'x 986 (5th Cir. 2016), and *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). Plaintiff further alleges a contemporaneous admission of unreasonableness—Hammett stated the force was "completely unnecessary"—which the Court must accept at Rule 12. (Compl.   U); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Qualified Immunity — Per-Officer Analysis

At the pleading stage, Plaintiff must plausibly allege a constitutional violation and that the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Plaintiff does so as to each officer:

**Markham:** initiated the seizure, ordered hands behind back without resistance, and participated in the painful control hold. (Compl. ¶¶ M, P, Q).

**Hammett:** shoved a compliant Plaintiff into the vehicle and then admitted the force was "completely unnecessary." (Compl. ¶¶ P, Q, U).

**Lewis:** arrived during the hold, observed no resistance, yet affirmatively completed the restraint by applying a second set of handcuffs (and at minimum failed to intervene despite a realistic opportunity). (Compl.    S); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Accepting the allegations as true, Plaintiff plausibly alleges objectively unreasonable force by each officer (or failure to intervene) in violation of clearly established Fourth Amendment law, and qualified immunity does not warrant dismissal at this stage. *Graham*, 490 U.S. at 396; *Pearson*, 555 U.S. at 232.

3. Clearly Established Law Supports Plaintiff's Claims

To survive qualified immunity, a plaintiff must show the right was "clearly established" at the time of the violation — meaning existing precedent placed the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff need not identify a case with identical facts; it is enough that the violation was "obvious" under existing law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Defendants argue Plaintiff "makes no specific allegation" about clearly established law. A complaint must plead facts, not authorities. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014). The Complaint's forty-two paragraphs with timestamps and direct quotations are not conclusory — they are specific factual allegations that this Court must accept as true. Plaintiff has alleged that the officers knew the arrest lacked basis (Compl.    L), knew the force was unjustified (Compl.    U), and identified speech — not intoxication — as the

reason for arrest (Compl. ¶¶ V, CC). These allegations, accepted as true, place the violations within clearly established law.

**The Clearly Established Rights.** False arrest: *Beck v. Ohio*, 379 U.S. at 91 (1964); *Sibron* (1968). Excessive force: *Graham v. Connor*, 490 U.S. at 396 (1989). First Amendment: *City of Houston v. Hill* (1987); *Turner v. Driver* (2017).

**The "Obvious Case" and Knowing Violation.** *Mullenix v. Luna*, 577 U.S. 7 (2015), requires specificity for *close calls* — not knowing violations. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020). This falls squarely within the category identified in *Malley v. Briggs*, 475 U.S. 335, 341 (1986): "the plainly incompetent or those who knowingly violate the law." The officer's own admissions (Compl. ¶¶ L, U, CC; *see* Introduction, *supra*) confirm he knew the arrest lacked basis, the force was unjustified, and the motivation was speech. *See Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024) (denying QI where officers lacked an objective basis and relied on post-hoc justifications). Here, unlike *Hughes* — where misstatements had to be inferred — Markham admitted the absence of probable cause in his own words, and the Irving Municipal Court independently confirmed it. (Compl.    MM). Plaintiff bears the burden of negating qualified immunity. He has met it.

## III. First Amendment Claims

To state a First Amendment retaliation claim under § 1983, a plaintiff must allege that (1) he engaged in constitutionally protected activity, (2) defendants took an adverse action that would chill a person of ordinary firmness from continuing to engage in that

activity, and (3) the adverse action was substantially motivated by the protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021).

**Element 1: Protected Activity.** Plaintiff has alleged that he (a) criticized officers' conduct during the encounter and (b) recorded the encounter. (Compl. ¶¶ F, H, I). Both activities are protected by the First Amendment. *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987) (verbal opposition and criticism of police is protected speech); *Turner v. Driver*, 848 F.3d 678, 685–86 (5th Cir. 2017) (recording police in public is protected).

**Element 2: Adverse Action and Chilling Injury.** Plaintiff has alleged an arrest, use of force, overnight detention, and criminal prosecution, followed by a continuing arrest record that harms his employment, income, and pilot's license. (Compl. ¶¶ P–T, NN). Plaintiff has also alleged additional adverse treatment during detention, including threats of suicide restraints for invoking the right to remain silent, denial of phone access unless he answered questions, denial of basic items provided to other detainees, prolonged detention before capitulation, and being held past the morning magistrate docket while others were released. (Compl. ¶¶ DD–GG, HH–II, JJ, LL). Accepting these allegations as true, Plaintiff has plausibly alleged adverse action and injury sufficient to chill a person of ordinary firmness from continuing the protected activity. *Batyukova*, 994 F.3d at 730.

**Element 3: Substantial Motivation and But-For Causation.** To plead the motivation element, Plaintiff must plausibly allege that protected activity was a substantial motivating factor for the adverse action. *Batyukova*, 994 F.3d at 730. Plaintiff has done

so through multiple contemporaneous statements and a pleaded chronology that ties escalation to speech and recording.

**The pleaded chronology and contemporaneous statements.** Plaintiff has alleged that Markham (1) confirmed there was no reason to suspect crime ("Oh, 100%") while stating he could "come up with" justification, (2) repeatedly told Plaintiff he was "free to go," and then (3) initiated the arrest without any alleged change in Plaintiff's behavior, condition, or location. (Compl. ¶¶ L, M, P, R). Plaintiff has further alleged that intoxication was raised only after Plaintiff's criticism escalated. (Compl. O). Plaintiff has also alleged that immediately after force was used, Hammett remarked "wouldn't shut up before, now won't talk," explicitly tying the sequence to Plaintiff's speech. (Compl. V).

**The conditional release.** Plaintiff has alleged that after the arrest and use of force, Markham offered a discretionary choice—either a ride home or jail for public intoxication—framed around Plaintiff's demeanor and deference rather than safety, and that Plaintiff's refusal to submit to that expectation resulted in continued custody. (Compl. W). Accepting these allegations as true, Plaintiff has plausibly alleged differential treatment within the same encounter and a retaliatory motive tied to protected speech and recording. *Batyukova*, 994 F.3d at 730.

**"Videotape guys."** Plaintiff has alleged that at booking, Markham did not identify any intoxication-related basis; instead, he identified Plaintiff as "one of those videotape guys," treating recording activity as the defining characteristic relevant to Plaintiff's custody. (Compl. CC). Accepting this allegation as true, Plaintiff has plausibly alleged

that speech/recording—rather than intoxication—substantially motivated the decision to arrest and continue detention.

**But-for pleading.** Defendants invoke a but-for standard. Plaintiff has alleged facts that satisfy it at the pleading stage: Markham's admission that there was "100%" no reason to suspect crime, followed by a stated ability to "come up with" justification, supports the inference that non-retaliatory grounds were not the but-for cause of the arrest. (Compl. L). *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024). Accepting the pleaded statements and chronology as true, Plaintiff has plausibly alleged that, but for his protected criticism and recording, he would not have been arrested and detained. (Compl. ¶¶ F, H–I, L, M, O, P, R, W, CC).

**The *Nieves* Probable-Cause Rule Does Not Apply.** Nieves generally bars retaliatory-arrest claims where probable cause exists. *Nieves v. Bartlett*, 587 U.S. 391, 402–07 (2019). Plaintiff has alleged facts negating probable cause for the charged offense, including the absence of objective intoxication indicators and the absence of the statutory "danger" element. (Compl. ¶¶ K, M, W, Z). Where the Complaint plausibly alleges no probable cause, *Nieves* does not warrant dismissal at Rule 12. *Nieves*, 587 U.S. at 402–07.

Even assuming arguable probable cause were disputed, Plaintiff has alleged objective evidence supporting retaliatory causation, including Markham's conditional release offer (ride home versus jail) framed around demeanor and deference and Markham's identification of Plaintiff as a "videotape guy" at booking. (Compl. ¶¶ W, CC). The Supreme Court has emphasized that objective evidence can support a retaliatory-arrest

claim even when probable cause is asserted. *Gonzalez v. Trevino*, 602 U.S. 569, 575–76 (2024); *Nieves*, 587 U.S. at 407.

**Qualified Immunity — Per-Officer Analysis.** Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). At the pleading stage, the question is whether the Complaint plausibly alleges each officer's personal participation in the retaliatory conduct that deprived Plaintiff of constitutional rights. *Bevill v. Wheeler*, 103 F.4th 363, 363 (5th Cir. 2024).

**Officer Markham.** To state a First Amendment retaliation claim, Plaintiff must allege protected activity, an adverse action, and that the adverse action was substantially motivated by the protected activity. **Batyukova v. Doege**, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiff has alleged that he criticized and recorded Markham (Compl. ¶¶ F, H–I), that Markham escalated to arrest and continued custody (Compl. ¶¶ P–T, W), and that the escalation was tied to speech/recording through Markham's contemporaneous statements and chronology: "Oh, 100%" and "come up with" justification (Compl.   L), repeated "free to go" statements followed by arrest without any alleged change in Plaintiff's behavior, condition, or location (Compl. ¶¶ M, P, R), the speech-conditioned ride-or-jail offer (Compl.   W), and the booking identification of Plaintiff as "one of those videotape guys" (Compl.   CC). Accepting these allegations as true, Plaintiff has plausibly alleged Markham's personal participation in retaliatory arrest and detention in violation of clearly established First Amendment protections for criticism and recording. City of Houston v. Hill, 482 U.S. 451, 461–63 (1987); Turner v. Driver, 848 F.3d 678, 685–86 (5th Cir. 2017); Bevill v. Wheeler, 103 F.4th 363, 363 (5th Cir. 2024).

**Officer Hammett.** At the pleading stage, the question is whether the Complaint plausibly alleges Officer Hammett's personal participation in the conduct that violated Plaintiff's clearly established First Amendment rights. *Bevill v. Wheeler*, 103 F.4th 363, 363 (5th Cir. 2024). Plaintiff has alleged that Hammett arrived during the encounter and positioned himself behind Plaintiff. (Compl.    N). Plaintiff has further alleged that, while Plaintiff was physically compliant and did not resist, Hammett approached from behind and forcefully shoved Plaintiff into the patrol vehicle, while Markham and Hammett maintained Plaintiff in a high-leverage, painful control hold. (Compl. ¶¶ P, Q). Plaintiff has alleged that immediately after using force on a compliant Plaintiff, Hammett stated the force was "completely unnecessary," and then stated, "wouldn't shut up before, now won't talk," plausibly tying the officers' conduct to Plaintiff's speech. (Compl. ¶¶ U, V). Plaintiff has also alleged that Hammett later asserted Plaintiff was "staggering," while Plaintiff displayed no objective indicia of intoxication at any time. (Compl. ¶¶ X, Z). Accepting these allegations as true, Plaintiff has plausibly alleged Hammett's personal participation in the seizure and force, and plausibly alleged facts supporting an inference that Plaintiff's protected speech and recording activity substantially motivated the escalation and continued custody. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Accordingly, Plaintiff has stated a First Amendment retaliation claim against Hammett at the pleading stage.

**Officer Lewis.** To state a First Amendment retaliation claim, Plaintiff must allege protected activity, an adverse action, and that the adverse action was substantially motivated by the protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiff has alleged Lewis's personal participation because Lewis arrived during

the restraint, observed Plaintiff's compliance, and nonetheless affirmatively completed the restraint by applying a second set of handcuffs. (Compl.    S). Plaintiff has further alleged Lewis remained present through post-arrest statements and conduct tying custody to Plaintiff's speech and recording activity. (Compl. ¶¶ V, W, CC). Accepting these allegations as true, Plaintiff has plausibly alleged Lewis's personal participation in retaliatory custody and his failure to intervene despite a realistic opportunity to do so. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly alleges First Amendment retaliation by each officer.

## IV. Conspiracy Claims

A § 1983 conspiracy requires (1) an agreement to deprive constitutional rights and (2) an actual deprivation. *Jabary v. City of Allen*, 547 F. App'x 600, 615 (5th Cir. 2013). No heightened pleading applies. *Leatherman*, 507 U.S. at 168. In *Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022), the Fifth Circuit allowed a conspiracy claim past dismissal for coordinated First Amendment retaliation, *aff'd on summary judgment*, 103 F.4th 363 (5th Cir. 2024). Plaintiff's allegations are stronger: *Bevill* required inference from circumstantial evidence at both stages; here, BWC captures *direct evidence* of real-time coordination. As to element one, Plaintiff has alleged multiple specific, timestamped acts of coordination - from the two-second echo to the synchronized muting to the post-muting fabrication of a "staggering" claim. (Compl. ¶¶ H, X, Y, W, CC). As to

element two, Plaintiff has alleged actual deprivation of his Fourth and First Amendment rights (*see* §§ II, III, *supra*).

**Underlying Constitutional Violations.** Defendants' argument is entirely derivative. If any underlying claim survives, the conspiracy predicate is satisfied.

The Complaint alleges Markham summoned backup only after Plaintiff's criticism. (Compl.    H). The Complaint alleges a training/chain-of-command relationship between Markham and Hammett (FTO/trainee) during the incident, and that Hammett did not correct or intervene but instead actively participated as Markham escalated to arrest. (Compl.    N). The Complaint alleges Markham later offered Plaintiff a discretionary ride-or-jail ultimatum conditioned on demeanor/deference, and that no officer objected or intervened. (Compl.    W). The Complaint alleges unexplained audio gaps in the body-worn camera recordings and that the recordings do not disclose why audio stopped or whether audio was intentionally disabled. (Compl.    Y). The Complaint further alleges that a "staggering" narrative was advanced only post-arrest and is inconsistent with the video and the Municipal Court suppression order, and that Plaintiff displayed no objective indicia of intoxication. (Compl. ¶¶ X, Z). Finally, the Complaint alleges Markham told jail staff he's "one of those videotape guys," extending the same speech/recording-related focus beyond the scene. (Compl.    CC).

Taken together, these allegations plausibly plead coordinated action and post-hoc justification at the pleading stage. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Plaintiff does not ask the Court to weigh evidence; the point at Rule 12 is narrower: Defendants' own exhibit does not eliminate the Complaint's pleaded inference. The sequence—(i) post-arrest conversation initiated by Hammett, (ii) an unexplained audio gap, (iii) a conditional ride-or-jail offer, and (iv) the later emergence of a "staggering" narrative—does not establish dismissal or qualified immunity as a matter of law and is at least consistent with the Complaint's allegations of coordinated, post-hoc justification. (Compl. ¶¶ W, X, Y, Z).

**Staggering**: The Complaint alleges that Plaintiff did not display objective indicia of intoxication and that the "staggering" claim surfaced only after arrest, as part of post-arrest justification. (Compl. ¶¶ X, Z). Where officers supply after-the-fact justifications inconsistent with the pleaded chronology and objective record, established fabrication doctrines apply. See *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018); *Cole v. Carson*, 935 F.3d 444, 453-54 (5th Cir. 2019) (en banc).

**Qualified Immunity - Per-Officer Analysis.** *Bevill v. Fletcher*, 26 F.4th 270, 281 (5th Cir. 2022) (denying QI for coordinated retaliation at the pleading stage), *aff'd*, 103 F.4th 363 (5th Cir. 2024). The per-officer facts establishing each defendant's participation are set forth in §§ II.A.1.b, II.A.2, and III, *supra*. Markham initiated the coordination; Hammett's two-second echo (Defs.' Appx. 1 at 06:31-06:33) and unsupported "staggering" claim transformed individual misconduct into coordination (Compl.    X); Lewis witnessed the full sequence and continued participating without objection, proving he was evaluating, not merely present. *Hale v. Townley*, 45 F.3d at 919.

**The Intracorporate Conspiracy Doctrine Does Not Apply.** The Supreme Court has never extended the intracorporate conspiracy doctrine to § 1983. *Ziglar v. Abbasi*, 582 U.S. 120 (2017), addressed it only in the *Bivens* context. Section 1983 is an express statutory cause of action; *Ziglar*'s policy considerations do not apply. Even assuming the doctrine extends, four exceptions defeat it. *First*, the "personal purposes" exception: the doctrine does not apply when employees act for personal rather than institutional purposes. *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). The officers' admissions (*see* Introduction, *supra*) establish personal retaliatory motives. *Second*, the doctrine does not protect ultra vires conduct. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Hammett's unsupported "staggering" claim, contradicted by BWC, is not within any officer's scope of employment. *Third*, scope of employment is a fact question that cannot be resolved at Rule 12. *Fourth*, the conspiracy extends beyond the police department to jail staff member Bermudez (Compl.    CC), defeating the single-entity rationale. Jail staff recorded Plaintiff's blood pressure above 200 systolic but provided no medical evaluation (Compl.    KK) - inconsistent with processing an intoxicated detainee but consistent with processing someone identified as a "videotape guy."

Even if dismissed, the coordination evidence remains independently relevant to Plaintiff's First Amendment and Fourth Amendment claims as evidence of shared retaliatory motive.

Accepting these allegations as true, as the Court must at this stage, the Complaint plausibly alleges a conspiracy to deprive Plaintiff of his constitutional rights.

# CONCLUSION

The officers' own admissions (*see* Introduction, *supra*) defeat every argument in their motion. These are not reasonable mistakes; they are knowing violations of clearly established rights.

Plaintiff respectfully requests that the Court:

1. **Deny** Defendants' Motion to Dismiss in its entirety;
2. In the alternative, **grant leave to amend** under Rule 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); and
3. **Grant such other relief** as the Court deems just and proper.

Respectfully submitted,

Dale Lotts, *Pro Se*
401 E 8th St, Ste 214 PMB 7860
Sioux Falls, SD 57103 (612) 208-9601
dale.lotts@policeconduct.org

# CERTIFICATE OF SERVICE

I certify that on February 13, 2026, I served a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss on all counsel of record via the Court's CM/ECF system.

Dale Lotts, *Pro Se*
401 E 8th St, Ste 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org