# PLAINTIFF'S APPENDIX IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS

*Lotts v. City of Irving*, No. 3:25-CV-03329-S-BN (N.D. Tex.)

## TABLE OF CONTENTS

| Exhibit | Description | App. Page |
|---------|-------------|-----------|
| A | Motion to Suppress (Irving Municipal Court, Cause No. JA063581 01) | App. 003 |
| B | Order Granting Motion to Suppress (March 7, 2025) | App. 010 |
| C | BWC Analysis: Chronological Transcript with Complaint Cross-References | App. 011 |

## EXHIBIT A

**Motion to Suppress**

Irving Municipal Court, Cause No. JA063581 01

*[See Below]*

# EXHIBIT B

**Order Granting Motion to Suppress**

Irving Municipal Court, Cause No. JA063581 01 (March 7, 2025)

*[See below]*

---

# EXHIBIT C

**BWC Analysis: Chronological Transcript with Complaint Cross-References**

*[See below]*

---

Respectfully submitted,

Dale Lotts, *Pro Se* 401 E 8th St, Ste 214 PMB 7860 Sioux Falls, SD 57103 (612) 208-9601
dale.lotts@policeconduct.org

---

**[END OF APPENDIX]**

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | **IN THE IRVING MUNICIPAL COURT** |
| | § | |
| **V.** | § | |
| | § | |
| **DALE LOTTS** | § | **DALLAS COUNTY, TEXAS** |

## <u>MOTION TO SUPPRESS</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW THE DEFENDANT, DALE LOTTS, in the above-styled and numbered cause by and through his attorney of record, Aubrey Noonan, and files this Motion to Suppress evidence that was obtained illegally and respectfully moves this Honorable Court to hold a hearing on this Motion prior to trial and outside the presence of the jury, and thereafter suppress any and all evidence seized or obtained as a result of illegal acts on behalf of the State in this criminal prosecution which violated the Defendant's rights as guaranteed to him under both the federal and state constitutions and under state statutes. In support thereof, Defendant would show the following:

### I.     INTRODUCTION

The requested hearing is required by articles 28.01(6) and 38.22(6), Texas Code of Criminal Procedure. A hearing outside the presence of the jury is necessary to keep the jury from being prejudiced by inadmissible evidence. Such prejudice would result in the Defendant being denied his right to a fair trial.  U.S. Const. amends. VI and XIV, § 2; Tex. Const. art. 1, §§ 10, 15, and 19; Tex. Code Crim. Proc. arts. 1.04, 1.05, and 1.12.  *Jackson v. Denno*, 378 U.S. 368 (1964); *Reed v. State*, 518 S.W.2d 817 (Tex. Crim. App. 1975). A hearing is also necessary to adequately protect the Defendant's right to be free from compulsory self-incrimination and to ensure that any evidence sought to be admitted is not the fruit of primary illegality. U.S. Const. amends. IV, V, and XIV, §

2; Tex. Const. Art. 1, §§ 9, 10, and 19; Tex. Code Crim. Proc. arts. 1.04, 1.05, 1.06, 38.21, and 38.23; *Wong Sun v. United States*, 371 U.S. 471 (1963). Counsel for the Defendant will not be able to effectively represent him without an opportunity to test the admissibility of evidence which will be offered by the State.

## II.     ITEMS TO BE SUPPRESSED

**The Defendant moves the Court to suppress the following evidence:**

1.     All tangible evidence seized on or about December 4, 2023, from the Defendant's person.

2.     All statements made, whether oral or written, and such other actions of the Defendant, if any, at the time of and subsequent to the detention, arrest, and search of the Defendant.

3.     Testimony of law enforcement officers, or their agents and all other persons working in connection with such officers and agents, and all persons present at or near the location of the arrest and search of the Defendant regarding any of the statements or evidence acquired or objects seized.

## III.     STATEMENT OF FACTS

On December 4, 2023, at 1:40 AM, Defendant observed an Irving Police Department marked vehicle parked in a parking lot near 114 and MacArthur, with Officer James Markham #1379 inside and surveilling the area. Defendant was concerned that the officer was illegally parked, which is an offense for which the average citizen would get in trouble. Defendant was across the street from the parking lot, where he was staying at a hotel. Defendant approached Officer Markham's car and inquired into why he was illegally parked and seemingly above the law and why he was casing the area without observing any ongoing crime. Officer Markham indicated he

was on proactive patrol and was investigating vehicle license plates and VINs to see if there were any issues with stolen vehicles or other related crimes.

Officer Markham exited his vehicle and continued to speak with Defendant as Defendant recorded the interaction. Officer Markham called for backup and several other officers arrived on scene. Officer Markham claims he heard Defendant "slur[] his words" and saw him "shuffle[] his feet, appearing to be unsteady when standing." Despite these allegations, he never conducted any field sobriety tests, portable breath test, nor did he request a specimen of Defendant's breath or blood, as would be customary for an intoxication investigation. Probable cause requires more than mere suspicion; it necessitates a factual basis. *Beck v. Ohio*, 379 U.S. 89 (1964). Officer Markham's body camera footage does not show Defendant slurring his words or appearing unsteady on his feet, as he stated in his offense report. There is absolutely no evidence of intoxication – Defendant had the normal use of his mental and physical faculties as evidenced by his ability to effectively confront Officer Markham for appearing to be above the law.

Additionally, should Officer Markham claim that he had probable cause to arrest for a separate offense than Public Intoxication, like Disorderly Conduct, those claims fail as well. Disorderly conduct requires actions intended to disturb the peace. Mr. Lotts did not make unreasonable noise, use abusive or threatening language, or incite an immediate breach of the peace. His interaction with the officers did not disturb the peace, particularly as there were no other individuals present to be disturbed. There was no evidence that Mr. Lotts posed a danger to himself or others. Officer Markham did not observe any behavior suggesting endangerment. The lack of evidence gathering, such as breathalyzer tests or field sobriety tests, further undermines this claim. *See Loera v. State*, 14 S.W.3d 464 (Tex. App.—Dallas 2000). The timing and nature of the arrest, coupled with Officer Markham's comments such as "Now you won't talk but you wouldn't shut up earlier," suggest a

retaliatory motive. Retaliatory arrests made without probable cause are considered unreasonable seizures under the Fourth Amendment. *City of Houston v. Hill*, 482 U.S. 451 (1987). Defendant should not have been arrested for any offense, but particularly Public Intoxication. As a result, he is requesting this Court suppress all evidence related to the detention, arrest, and search of Defendant and dismiss this pending PI ticket.

## IV.    ARGUMENT

**As grounds for this Motion the Defendant would show the Court the following:**

The State has the burden of proving the lawfulness of a warrantless search and seizure, *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (overruled on other grounds), and that any alleged statements or acts of the Defendant which were the products of custodial interrogation meet the requisites of *Miranda v. Arizona*, 384 U.S. 436 (1966) and art. 38.22, Texas Code of Criminal Procedure.

      **a.**  The detention of the Defendant was without probable cause or reasonable suspicion in violation of the 4th, 5th, 9th and 14th Amendments of the United States Constitution and Article 1, §§ 9, 10 & 19 of the Texas Constitution. *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997); *Viveros v. State*, 828 S.W.2d 2 (Tex. Crim. App. 1992); *Amores v. State*, 816 S.W.2d 407 (Tex. Crim. App. 1991). The acquisition of the evidence which will be offered by the State in this cause was not pursuant to a reasonable investigative detention, not pursuant to an arrest warrant, was absent exigent circumstances, and made without probable cause to believe the Defendant was engaged in criminal activity.

      **b.**  The arrest and search of the Defendant was without probable cause, in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution of the

United States, and Article 1, §§ 9, 10, and 19 of the Constitution of the State of Texas. The acquisition of the evidence which the State will offer in this cause was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Defendant was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed.

c.  All statements made by the Defendant and items seized at the time of and subsequent to the arrest and search of the Defendant were products of the illegal arrest and search of the Defendant. *Mapp v. Ohio*, 367 U.S. 643 (1961); *Wong Sun v. United States*, 371 U.S. 471 (1963); 5th and 14th Amendments to the United States Constitution, Art. I, § 10 of the Texas State Constitution; Tex Code Crim. Proc. arts. 38.21, 38.22, and 38.23. Any statements and acts allegedly made by the Defendant in connection with this detention, search and seizure, and any tangible or other evidence seized or acquired then, or at any later time as a result of said statements or acts, are the products of the illegal detention, arrest and search and are therefore the direct result of illegal police procedures.

d.  Evidence seized in violation of the Constitution or laws of the State of Texas, or the United States is not admissible against the accused. Tex. Code Crim. Proc. art. 38.23; Article 1, § 9 of the Texas Constitution; 4th Amendment to the United States Constitution. Because of the foregoing reasons and others which may be adduced upon a hearing of this matter, the admission of the statements and acts of the Defendant and of the seized and derivative evidence would violate the Defendant's statutory and constitutional guarantees against self-incrimination, U.S. Const. amends. IV, V, and XIV; Tex. Const. art. 1, §§ 9, 10; Tex. Code Crim. Proc art. 1.05,

1.06, 38.21, 38.22, and 38.23, against unreasonable searches and seizures, U.S. Const. amend. IV; Tex. Const. art. 1, § 9, Tex. Code Crim. Proc. arts. 14 and 15; to effective assistance of counsel, U.S. Const. amend. VI; Tex. Const. art. 1, § 10; to a fair trial, U.S. Const. amend. VI; Tex. Const. art. 1, § 10 and Tex. Code Crim. Proc. art. 1.27, 38.01, and 38.02; and to his/her statutory rights under §§ 724.011, 724.012, 724.015 and 724.016, Tex. Transp. Code Ann.

   **e.** And for such other and further reasons as may appear or be urged upon hearing in this cause.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Motion be granted and that the Court:

1. Instruct the prosecutor and all the State's witnesses not to refer, testify or in any manner allude to oral or written statements allegedly made by the Defendant until their admissibility has been determined;

2. Make required findings of fact and law as required by statute and constitutional authority before the submission of evidence to the jury; and,

3. Order such other relief as may be deemed equitable and necessary.

Respectfully submitted,

**ROSENTHAL KALABUS & THERRIAN**

By: */s/ Aubrey Noonan*
**Aubrey Noonan**
SBN: 24089951
7300 State Highway 121, Suite 400
McKinney, TX 75070
Ofc: 972-369-0577
Fax: 972-369-0532
aubrey@texasdefensefirm.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 12, 2024, a true and correct copy of the above and foregoing document was served on the Irving City Attorney's Office, Dallas County, by email to attorney@cityofirving.org.


*/s/ Aubrey Noonan*
**Aubrey Noonan**

Cause: JA063581 01

ORDER GRANTING MOTION

**STATE OF TEXAS**
  **VS**

**IN THE MUNICIPAL COURT**
**CITY OF IRVING**
**DALLAS COUNTY, TEXAS**

**DALE LOTTS**
**DOB: 10/18/1970**
**Cause: JA063581 01**
**Offense: PUBLIC INTOXICATION**

## <u>ORDER</u>

On this day the Court considered the  ☑ Defendant's ☐ State's Motion to Suppress.

and the Court, after considering the evidence and argument of counsel is of the opinion that the above motion be **GRANTED**.

☑ IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above motion is in all things **GRANTED**;

☑ IT IS FURTHER ORDERED that the above case be set for jury trial.

    Signed this the 7th day of March, 2025.



Michael Acuña

**JUDGE PRESIDING**

# APPENDIX — EXHIBIT C

## Plaintiff's Chronological Analysis of Defendants' Body-Worn Camera Recording

***Lotts v. City of Irving***, **No. 3:25-CV-03329-S-BN (N.D. Tex.)**

**Source:** Body-worn camera recording attached by Defendants as Appendix 1 to their Motion to Dismiss. Plaintiff disputes authenticity and completeness. *See* Response, Body Worn Camera section. This analysis is provided only if the Court considers the video despite Plaintiff's objection. "Playback" refers to elapsed time from the start of Defendants' recording. "BWC Clock" refers to the camera's internal timestamp (offset ≈ 1:39:42).

**Legend — Claims Supported:** - **4A** — Fourth Amendment (unlawful arrest / false imprisonment) - **1A** — First Amendment (retaliation for protected speech) - **EF** — Excessive Force - **CON** — Conspiracy (§ 1983) ## WHAT THE VIDEO DOES NOT SHOW

## Unrecorded Surveillance Period

- **NOT SHOWN**: Markham's surveillance of Plaintiff prior to BWC activation (unknown duration and distance, Compl. ¶¶ B-E, K)
- **NOT SHOWN**: Plaintiff walking away (~100 yards), sitting, reading his phone, standing, and walking back — all without difficulty (Compl. ¶¶ A, D-F)
- **NOT SHOWN**: Any balance issues, stumbling, or signs of impairment during the surveillance period

## Missing and Incomplete Audio

- **STARTS WITHOUT AUDIO**: BWC begins showing both parties speaking, but audio is absent for the initial portion of the encounter
- **AUDIO GAP**: After the arrest, audio disappears for over 5 minutes during the critical post-arrest period (Compl. ¶ Y)

## Missing Camera Angles

- **NOT PROVIDED**: Officer Hammett's body-worn camera footage
- **NOT PROVIDED**: Officer Lewis's body-worn camera footage
- **NOT PROVIDED**: Jail intake video (separate from Markham's BWC)

## No Authentication

- No custodian declaration establishing chain of custody
- No hash/metadata verification of file integrity
- No certification that video is complete and unedited ## CHRONOLOGICAL ANALYSIS

| # | Playback | BWC Clock | Speaker | Statement / Event | Compl. ¶ | Claim(s) | Why It Supports Plaintiff |
|---|---|---|---|---|---|---|---|
| 1 | 00:30 | ~1:40:12 | Plaintiff | Repeats a question after receiving no substantive answer | — | 4A | Defendants cite as intoxication indicator; ordinary conversational behavior, not cognitive impairment |
| 2 | 00:39 | ~1:40:21 | Markham | "Emergency vehicles can park in no parking zone" | ¶ H | 4A, 1A | Claims official authority for parking position; authority requires official duty — but no enforcement activity is visible |
| 3 | 00:53–00:56 | ~1:40:35 | Markham | When asked what he would do if a civilian parked the same way, concedes he would ask them to move | ¶ H | 4A | Admission that his own parking was irregular; undermines claim of legitimate enforcement purpose |
| 4 | ~01:42 | ~1:41:24 | Markham | "I have to know the law to operate under qualified immunity" | — | 4A, 1A | Engages substantively with Plaintiff's legal argument — inconsistent with speaking to a person exhibiting "slurred speech" or impaired cognition; also claims knowledge of |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | the law while now invoking QI to argue ignorance |
| 5 | ~02:12 | ~1:41:54 | Markham | Describes Plaintiff's prior movements in detail; states Plaintiff was "pissed off," that he "knew [Plaintiff] was about to jaywalk," and that Plaintiff "might have warrants" | ¶ J | 4A, 1A, CON | Reveals prolonged surveillance and cataloguing of Plaintiff's conduct; cycles through pretexts (jaywalking, warrants) before settling on PI; calls it "proactive police work" |
| 6 | ~02:29 | ~1:42:11 | Plaintiff | "Well you're sitting here, you know, waiting for me to jaywalk for" | — | 4A | Defendants' sole cited example of "slurred speech" — a coherent sentence accurately describing Markham's surveillance conduct |
| 7 | ~03:18 | ~1:43:00 | Markham | **"Oh, 100%. Would you like some justification? Because I can come up with it. You're coming from an area where people drink. You could be out in the roadway. And then you get PI. You** | ¶ L | 4A, 1A | Admits 100% no basis for suspicion; offers to fabricate justification; occurs before any inquiry about alcohol — an officer who has observed intoxication says so; one |

| # | | | Speaker | Quote | | Amendment | Notes |
|---|---|---|---|---|---|---|---|
| | | | | **might be drunk. I can justify that all damn day."** | | | who offers to "come up with" justification describes the absence of observations |
| 8 | ~03:38 | ~1:43:20 | Plaintiff | "Yeah, I know. 'Oh, smell alcohol in him. His eyes were watery.' Right?" | — | 4A | Predicts the formulaic probable cause narrative — supporting inference that the rationale was template, not observation-based |
| 9 | ~04:07 | ~1:43:49 | Markham | **"Free to go" #1** | ¶ M | 4A, 1A | Officer who believes person is dangerously intoxicated does not authorize him to leave unsupervised; negates endangerment element of § 49.02 |
| 10 | ~04:12 | ~1:43:54 | Plaintiff | Repeats a question | — | 4A | Defendants cite as intoxication indicator; ordinary conversational behavior after receiving no answer |
| | | | | Claims he is | | | Stated justification for presence; but no radar, no lidar, and Markham's |

| 11 | ~04:15 | ~1:43:57 | Markham | performing "traffic enforcement" | — | 4A, 1A | detailed cataloguing of Plaintiff's movements is inconsistent with monitoring traffic |
|----|--------|----------|---------|----------------------------------|---|--------|------------------------------------------------------------------------------------------|
| 12 | ~04:16 | ~1:43:58 | — | No radar or lidar equipment visible | — | 4A | Undermines traffic enforcement claim |
| 13 | ~04:39 | ~1:44:21 | Markham | Admits running VIN on unoccupied vehicle because "I thought it might be stolen" | ¶ B | 4A | No report, no reasonable suspicion — same pattern of generating suspicion without basis that repeats with Plaintiff |
| 14 | ~04:59 | ~1:44:41 | — | Hammett's vehicle arrives on scene | ¶ N | CON | Responds to Markham's earlier radio transmission (backup request after criticism) |
| 15 | ~05:23 | ~1:45:05 | Hammett | On foot, positions himself behind Plaintiff | ¶ N | CON, EF | Takes position behind Plaintiff without independent observation of gait, balance, or coordination; Plaintiff facing away |
| 16 | ~05:34 | ~1:45:16 | Markham | **"Free to go" #2** | ¶ M | 4A, 1A | Hammett now present; continued authorization to leave negates endangerment |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 17 | ~05:37 | ~1:45:19 | Markham | Confirms what he observed during surveillance: Plaintiff "walking over there" | — | 4A | Describes only normal ambulation — the absence of any objective indicator persists through arrest |
| 18 | ~05:40 | ~1:45:22 | Markham | **"Free to go" #3** | ¶ M | 4A, 1A | |
| 19 | ~05:42 | ~1:45:24 | Markham / Plaintiff | **"Free to go" #4 →** Plaintiff: "I'm free to stay" → Markham: **"Yeah, you are. Just back up."** | ¶ M | 4A, 1A | Confirms Plaintiff has right to remain; cannot arrest for staying after confirming right to stay |
| 20 | 05:19– 06:36 | — | Plaintiff | Pacing near patrol vehicle | — | 4A | Defendants cite as "unsteady balance"; normal movement near a vehicle is not evidence of impairment |
| 21 | ~05:53 | ~1:45:35 | Markham | [Audible sigh of frustration] | — | 1A | Frustration with continued criticism, not concern about intoxication |
| 22 | ~05:56 | ~1:45:38 | Markham | **"Goodbye." ("Free to go" #5)** | ¶ M | 4A, 1A | Final authorization to leave; word of disengagement inconsistent with belief that Plaintiff is dangerously intoxicated |
| 23 | ~05:57 | ~1:45:39 | Plaintiff | "You're free to go too." | — | 1A | Protected speech — verbal criticism |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | of officer |
| 24 | ~05:58 | ~1:45:40 | Markham | "Do you have any other issues?" | — | 1A | Re-engages after saying goodbye; shift from disengagement to escalation |
| 25 | ~06:02 | ~1:45:44 | Plaintiff | "Other than somebody bullshit profiling me? No." | ¶ N | 1A | Protected speech — criticism of surveillance |
| 26 | ~06:07 | ~1:45:49 | Hammett | [Laughing] "How do you think you're being profiled?" | ¶ N | 1A, CON | First substantive statement is about Plaintiff's *speech*, not his condition; tone is mocking, not diagnostic |
| 27 | 06:09–06:29 | 1:45:51–1:46:11 | Hammett | Asks about profiling four times; conducts zero assessment of Plaintiff's condition | — | 1A, 4A, CON | 22 seconds of questioning focused entirely on speech; zero investigative acts regarding intoxication |
| 28 | 06:30 | ~1:46:12 | Markham | **"Have you been drinking tonight?"** | ¶ O | 4A, 1A | First mention of intoxication — over 7 minutes into encounter, only after criticism intensified; 7 seconds before arrest |
| | | | | | | | Echoes Markham within 2 seconds without any independent assessment; |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 29 | 06:31–06:33 | ~1:46:13–15 | Hammett | **"Kind of seems like you have"** | — | 4A, 1A, CON | had been on scene ~90 seconds with Plaintiff facing away; coordination signal |
| 30 | 06:36–06:37 | ~1:46:18–19 | Markham | **"Go ahead and put your hands behind your back"** — ARREST | ¶¶ P, R | 4A, 1A, EF | 41 seconds after "Goodbye"; 7 seconds after first drinking question; no change in behavior, condition, or location; only intervening event was continued criticism |
| 31 | ~06:38 | ~1:46:20 | Plaintiff | Profanity | — | 1A | Defendants cite; constitutionally protected speech — *City of Houston v. Hill*, 482 U.S. at 461 |
| 32 | ~06:40 | ~1:46:22 | Plaintiff | Raises phone to record Markham's face | ¶ P | 1A, EF | Exercising First Amendment right to record; *Turner v. Driver*, 848 F.3d at 685–86; not resistance |
| 33 | ~06:41 | ~1:46:23 | Plaintiff | "What's your suspicion that I have been drinking?" | — | 4A | Real-time legal analysis — inconsistent with impaired cognition |
| | | | | | | | Occurred 10 |

| # | | | | | | | |
|---|---|---|---|---|---|---|---|
| 34 | ~06:46 | ~1:46:28 | — | Defendants' alleged "arm-pulling" | ¶ P | EF | seconds *after* arrest began; post-arrest conduct cannot supply probable cause (*Sibron*); Complaint alleges no resistance |
| 35 | ~06:48 | ~1:46:30 | Hammett | **Shoves Plaintiff into patrol vehicle from behind** | ¶ Q | EF | Plaintiff was compliant — left hand already behind back voluntarily; shove was from behind on a non-resisting person |
| 36 | 06:48–07:20 | 1:46:30–1:47:02 | Markham / Hammett | **Pain-compliance hold maintained (~32 seconds)** | ¶ Q | EF | Prolonged hold on motionless, compliant person; caused substantial pain and visible bruising (¶ T) |
| 37 | ~06:54 | ~1:46:36 | — | Handcuffs dropped | — | EF | Extended painful hold while officers retrieved replacements |
| 38 | ~07:02 | ~1:46:44 | Lewis | Arrives; reaches toward Plaintiff; sees no resistance; **withdraws hand** | ¶ S | EF, CON | Independent confirmation that Plaintiff presented no threat or resistance |
| | | | | "You got your ID on | | | ID request 82 seconds *after* arrest; post-arrest — cannot supply |

| 39 | ~07:58 | ~1:47:40 | Markham | you?" | — | 4A | probable cause; also asks to produce document, not statutory name/DOB |
|---|---|---|---|---|---|---|---|
| 40 | ~08:13 | ~1:47:55 | Plaintiff | "One thing I don't have to do is identify myself" | — | 4A | Correct statement of Texas law; accurate legal analysis inconsistent with impaired cognition |
| 41 | 08:49–13:42 | 1:48:31–1:53:24 | Lewis | Remains within inches of Plaintiff for ~5 minutes | — | CON, 1A | Hears every post-arrest admission; takes no corrective action; *Hale v. Townley*, 45 F.3d at 919 |
| 42 | ~09:25 | ~1:49:07 | Hammett | Approaches Markham's vehicle; speaks inaudibly on both BWCs | ¶ Y | CON | Positions to avoid camera angles; no verbal cue captured — yet all officers mute simultaneously afterward |
| 43 | ~09:25+ | ~1:49:07+ | All officers | **Synchronized BWC audio muting** — no verbal instruction captured | ¶ Y | CON | All three mute independently without prompting; supports inference of prior training or established practice; missing audio during critical post-arrest justification |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | period |
| 44 | Post-mute | — | Hammett | **"That was completely unnecessary"** | ¶ U | EF, 4A | On-scene admission by the officer who applied force; precisely the on-scene evaluation *Graham v. Connor* instructs courts to consider |
| 45 | Post-mute | — | Hammett | **"Wouldn't shut up before, now won't talk"** | ¶ V | 1A | Explicitly ties arrest to speech; captured only because Markham forgot to mute |
| 46 | ~12:43 | ~1:52:25 | Markham | **"Why you hate the police so much?"** → describes deferential attitude that would have avoided arrest: "you got me, it's cool, can you just gimme a ride" → **"Do you wanna [take a ride]? Or do you wanna go to jail for public intox?"** | ¶ W | 1A, 4A | Conditions disposition on attitude/speech, not safety; creates A/B comparator — deference = ride home, criticism = jail; the only variable is speech content |
| 47 | ~13:00 | ~1:52:42 | Plaintiff / Markham | Plaintiff: "lawsuit either way" → Markham chooses jail | ¶ W | 1A | Continued criticism produces jail — but-for causation established by officer's own conditional offer |
| | | | | | | | (a) Recounts Plaintiff's *speech*, not |

| # | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48 | ~13:58–14:01 | ~1:53:40–43 | Hammett | Recounts encounter to other officers: "He's like, 'I want you to leave me alone.' Markham's like, 'You came up to me...'" + claims Plaintiff was **"staggering"** | ¶ X | CON, 4A | intoxication symptoms — speech was the salient fact; (b) "staggering" claim appears *after* muting gap, unsupported by any BWC footage; (c) Hammett was behind Plaintiff and had no vantage for gait observation pre-contact |
| 49 | 37:26–39:58 | — | Markham | **Spends ~5 minutes repairing patrol vehicle bumper** while Plaintiff sits detained | — | 4A | Inconsistent with concern for a dangerously intoxicated detainee; prioritizes vehicle maintenance over processing |
| 50 | ~49:16 | — | Jail staff | **"What's wrong with him?"** — standard intake question | ¶ CC | 4A, 1A | Intake question invites intoxication-related answer for a PI booking |
| 51 | ~49:28 | — | Markham | **"He's one of those videotape guys"** → staff acknowledges without further inquiry | ¶¶ BB, CC | 1A, CON | Asked what is "wrong" with a PI arrestee, identifies recording activity — not intoxication — as the thing that is "wrong"; immediate recognition without explanation |

| | | | | | | | indicates pre-existing operational classification |
|---|---|---|---|---|---|---|---|
| 52 | ~50:55 | — | Plaintiff | Complies with book-in | — | — | Defendants cite; demonstrates cooperation, not intoxication |

## SUMMARY

### What Defendants' Recording Shows:

- **Zero** officer statements identifying intoxication symptoms prior to arrest
- **Zero** field sobriety tests, breath tests, or medical screenings
- **Zero** welfare checks despite prolonged surveillance
- **Five** statements that Plaintiff was "free to go"
- **One** admission that "100%" no crime was suspected
- **One** offer to fabricate justification ("I can come up with it")
- **One** admission that force was "completely unnecessary"
- **One** statement tying arrest to speech ("wouldn't shut up")
- **One** classification identifying recording as the basis for arrest ("videotape guys")
- **One** conditional offer making disposition depend on attitude, not safety
- Clear, coherent, legally articulate speech from Plaintiff throughout
- Synchronized BWC muting during the post-arrest justification period

### What Defendants' Recording Does Not Show:

- Stumbling, staggering, or unsteady gait at any point
- Slurred speech at any point
- Odor of alcohol (no officer mentions it)
- Entry into a roadway
- Any conduct satisfying the "danger" element of § 49.02
- Any independent assessment by Hammett before echoing Markham
- The content of the muted period
- Hammett's or Lewis's BWC footage (not produced) **[END OF EXHIBIT C]**