IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DALE LOTTS,                        §
                                  §
          Plaintiff,              §
                                  §
V.                                §          No. 3:25-cv-3329-S-BN
                                  §
CITY OF IRVING, ET AL.,           §
                                  §
          Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Dale Lotts filed a *pro se* complaint asserting claims under 42 U.S.C. § 1983 based on violations of the First, Fourth, and Fourteenth Amendments against Defendant City of Irving, several of its police officers, and unidentified employees at its jail, related to events alleged to have occurred on December 4 and 5, 2023, paying the statutory filing fee to do so. *See* Dkt. No. 3.

The presiding United States district judge referred Lotts's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The City and Defendants James Markham, Andrew Hammett, and Paul Lewis (the "Officer Defendants") moved to dismiss Lotts's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 9-14 & 19-21. Lotts responded. *See* Dkt. Nos. 16-18. And Defendants replied. *See* Dkt. Nos. 22 & 23.

And, for the reasons and to the extent set out below, the Court should grant the motions and otherwise dismiss Lotts's claims.

**Legal Standards**

A motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Considering such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that plaintiffs allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per

curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d

370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And, under these standards, the Court may consider video footage presented through a motion to dismiss in certain circumstances – which have been met here, and, so, body camera footage has been made "part of the pleadings." *Collins*, 224 F.3d at 498-99, where Lotts refers to that footage in his complaint and that footage offers "a contemporaneous account that either confirms or negates what the state actors

allegedly did" and therefore "may be considered more than mere evidence of a [constitutional] violation" and "thus is 'central to the plaintiff's claim[s],'" *Martinez v. Dall. Police Dep't*, No. 3:22-cv-1870-K-BN, 2025 WL 2347186, at *3 (N.D. Tex. July 23, 2025) (quoting *Kaye*, 453 B.R. at 662; citing *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024) ("Because the expert report, which is incorporated into Benfer's complaint, refers to Calvert's dash cam and bodycam footage, we may consider the footage at this stage.")), *rec. accepted*, 2025 WL 2345075 (N.D. Tex. Aug. 13, 2025); *accord Aguilar v. City of Carrollton*, No. 3:25-cv-947-B-BN, 2026 WL 587186, at *3-*4 (N.D. Tex. Feb. 3, 2026), *rec. accepted*, 2026 WL 587182 (N.D. Tex. Feb. 27, 2026), *reconsideration denied*, 2026 WL 1004794 (N.D. Tex. Apr. 14, 2026).

> And, "where video recordings are included in the pleadings … the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); footnote omitted); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.' Here, the Video was attached to Montgomery County and Montes's joint motion to dismiss and referenced by Sligh in her operative complaint. Accordingly, to the extent that the Video contradicts Sligh's allegations, the Video controls." (quoting *Riley*, 355 F.3d at 377)).

*Aguilar*, 2026 WL 587186, at *4.

### Analysis

Against a Texas municipality, several of its police officers, and unidentified jailers, Lotts alleges that his arrest on December 4, 2023 and the detention that resulted from it (from which he was released in the afternoon of December 5) violated

the Fourth Amendment (because his arrest was wrongful and the force used unconstitutionally excessive), the First Amendment (because he was retaliated against based on speech), and the Fourteenth Amendment (because his right to due process was violated and he was treated with deliberate indifference).

## I.     The Court should grant the Officer Defendants' motion to dismiss.

As to the Officer Defendants' assertions of qualified immunity, the first prong of that defense is that a plaintiff fails to plausibly allege a constitutional violation. *See Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

And, as explained below, because Lotts has not alleged plausible constitutional violations based on actions by the Officer Defendants, their motion to dismiss should be granted.

"A § 1983 false arrest claim requires that the plaintiff show that the arresting officer lacked probable cause. 'Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Santander v. Salazar*, 133 F.4th 471, 481 (5th Cir. 2025) (citing then quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam)).

And, since "probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the

time of arrest or booking." *D.C. v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-155 & n.2 (2004)).

At a minimum, there was probable cause to arrest Lotts for resisting arrest where the video evidence contradicts his allegations and reflects that Lotts disregarded verbal directives, raised his arm and moved towards an officer, and then pulled his arm away from the officers when they attempted to handcuff him. *See, e.g.*, *Benfer*, 120 F.4th at 1281 ("'A person' resists arrest 'if he intentionally prevents or obstructs a person he knows is a peace officer ... from effecting an arrest ... by using force against the peace officer ....' TEX. PEN. CODE § 38.03(a). 'It is no defense ... that the arrest or search was unlawful.' *Id.* at § 38.03(b). That means, '[i]n Texas, the act of resisting can supply probable cause for the arrest itself ....' *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). And '[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest.' *Id.* (collecting cases).").

And, because probable cause supports Lotts's arrest, his First Amendment retaliatory arrest claim is not plausibly alleged. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Lotts also has not plausibly alleged that force used against him was unconstitutionally excessive.

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

And, to plausibly allege excessive force in violation of the Constitution, a plaintiff must provide facts that show or from which a court may infer "that he 'suffered an injury that resulted directly and only from a clearly excessive and objectively unreasonable use of force.'" *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (cleaned up; quoting *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (in turn citing *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020))).

And, so,

> a constitutional violation does not occur every time an officer touches someone. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. [And, w]hen the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.

*Carter v. Dupuy*, 173 F.4th 561, 564 (5th Cir. 2026) (cleaned up).

Considering challenges to an excessive force claim under Rule 12(b)(6), "[t]he central question is whether Plaintiffs have pleaded facts that plausibly suggest the Officers' conduct was clearly excessive and objectively unreasonable." *Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *7 (E.D. Tex. Mar. 14, 2019).

And, "[t]o gauge the objective reasonableness of the force, a court 'must balance the amount of force used against the need for force.' … [So t]he inquiry into

- 9 -

reasonableness is fact specific." *Hatcher v. Bement*, No. 3:14-cv-M-BN, 2015 WL 1511106, at *4 (N.D. Tex. Apr. 3, 2015) (cleaned up; quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).

Here, even if the force used, as alleged and shown through video footage to the extent that footage blatantly contradicts Lotts's allegations – the brief struggle to handcuff Lotts after he resisted by pulling his arm away and the placement of Lotts into the patrol car, which he concludes amounted to shoving – counts as more than de minimis, the factual content before the Court does not plausibly allege that that force was clearly excessive and objectively unreasonable under the circumstances.

And, to the extent that Lotts fails to plausibly allege a constitutional violation against the Officer Defendants, his claim that they conspired to violate his civil rights – which is itself conclusory, *see* Dkt. No. 3 at 21-22 (alleging "coordinated statements"; "shared responses"; and "coordinated treatment," without factual content as to an agreement between the parties) – is not plausibly alleged, *see Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (A "plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994))).

But, even if Lotts had alleged a plausible constitutional violation against an Officer Defendant, each is still entitled to dismissal of these claims based on qualified immunity.

As the Court set out in the briefing order as to the motions to dismiss for Lotts's

benefit as a *pro se* litigant,

> pleading a plausible violation of federal law is only one prong of the qualified immunity analysis. So, for a plaintiff to overcome qualified immunity, he must also show "that the right was clearly established" – "'[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *limited by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Dkt. No. 12 at 7.

This "'clearly established' prong is difficult to satisfy," *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020), in part because the Court is "bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents," *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34.

And the plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

"There are two ways to demonstrate clearly established law" and meet this

additional burden to make this second showing. *Id.*

Typically, the plaintiff must "'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances was held to have violated the Constitution.'" *Joseph*, 981 F.3d at 330 (cleaned up); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "controlling authority – or a 'robust consensus of [cases of] persuasive authority' – that defines the contours of the right in question with a high degree of particularity." (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))).

And "[i]t is the plaintiff's burden to find a case in her favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)). Because the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up). And a clearly established right must be defined "with specificity." *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)).

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citations omitted).

"In other words, 'there must be adequate authority at a sufficiently high level

of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And, in sum, under the most common approach to this prong, while the "clearly established right … must be particularized to the facts of the case establishing the right," *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 277 (5th Cir. 2022) (cleaned up), because "[t]he touchstone of the inquiry is 'fair notice,'" "[d]istinctions between cases are thus relevant only if they make the applicability of prior precedent unclear," *Boyd v. McNamara*, 74 F.4th 662, 669 (5th Cir. 2023) (citations omitted).

That is, "[a] plaintiff need not show that the very action in question has previously been held unlawful. The test is whether every reasonable official would know that their actions are unconstitutional. [And, so, a]t the end of the day, [what is absolutely necessary] is fair warning." *Stevenson v. Tocé*, 113 F.4th 494, 504 (5th Cir. 2024) (cleaned up).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 583 U.S. at 64); *accord Batyukova*, 994 F.3d at 726.

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned

- 13 -

up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338.

And, so, "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious,'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)), because qualified immunity should "not immunize those officials who commit novel, but patently 'obvious,' violations of the Constitution," *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)).

This is not a case where a constitutional violation is either obvious or novel – as explained above. So, to defeat the Officer Defendants' assertions of qualified immunity, Lotts was required to present authority particularized to the facts here. He did not. *See, e.g.*, Dkt. No. 15 at 22-33 (citing cases that, at least at a high level, may be relevant to the claims asserted but then failing to address how the facts underlying those decisions match the facts as alleged by Lotts and thus provide fair notice). And, so, even if the Court were to find that Lotts has plausibly alleged a constitutional violation, the Officer Defendants are still entitled to qualified immunity and dismissal of the claims against them.

## II. The Court should grant the City's motion to dismiss.

Lotts also alleges liability against the City of Irving through a claim titled "Monell Liability." *See* Dkt. No. 3 at 22-28.

*Monell* does not itself provide a cause of action. Still, "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to such a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

To plausibly allege that a policy was the moving force,

> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional

act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [the plaintiff's] claim also fails the other two *Monell* prongs." *Brown*, 985 F.3d at 494 & n.11 (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

- 16 -

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen*, 65 F.4th at 749 (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for

it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

Foremost, as to his arrest by the Officer Defendants, Lotts has not alleged a claim against the City because – for the reasons set out above – he has not plausibly pleaded "that a constitutional violation occurred." *Sanchez II*, 956 F.3d at 791.

But, even if he had, Lotts still fails to plausibly allege a Section 1983 claim against the City because he fails to provide factual content that allows the Court to draw the reasonable inference that a municipal policy was the moving force behind the constitutional violations alleged.

First, Lotts has not alleged that the actions taken against him were due to an

official policy.

And, as to an "unofficial" policy or pattern or practice, a municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to [its] policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at *5 (quoting *Piotrowski*, 237 F.3d at 582).

And a pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the primary scope of the allegations pleaded by Lotts – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson*, 80 F.4th at 710 (cleaned up); *accord Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) ("While municipalities can be sued directly under § 1983, *Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior" – and, so, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." (cleaned up)).

And, to the extent that Lotts attempts to plead the policy prong through prior incidents based on factual content relying on records that he obtained, *see* Dkt. No. 3 at 23 ("FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for 'public intoxication,' while Officer Paul Lewis made 8, and Officer James Markham – who was trained by Hammett as his Field Training Officer – made 15. Compared to Officer Lewis, a similarly situated patrol officer during the same period, both Hammett and Markham made substantially higher numbers of public-intoxication arrests."), these allegations do not raise a reasonable inference that an official municipal policy was the moving force behind a constitutional violation.

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (cleaned up).

And "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather, notice of a pattern of [fairly] similar violations is required." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (cleaned up).

That any one officer had a higher number of arrests for a particular offense compared to a fellow officer tells the Court nothing where there is no context or further factual elaboration to explain how these prior arrests are fairly similar to what Lotts alleges here. *See, e.g.*, *Peterson*, 588 F.3d at 851 & n.4 (as to the Fort Worth Police Department, "[t]wenty-seven [complaints of excessive force] in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy").

And, to the extent that Lotts asserts a ratification theory of liability – *see, e.g.*, Dkt. No. 3 at 24 ("[T]he City took no corrective action.") – "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality," *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at *2 (N.D. Tex. Aug. 25, 2021); *see also Peterson*, 588 F.3d at 849 (even "defend[ing] conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality").

Plus, "unless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification or

defense of his subordinate's actions is insufficient to establish an official policy or custom." *Sligh*, 87 F.4th at 303 (cleaned up).

And, so, "underlying conduct" that, "while unconstitutional, [may] not [be] sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)).

Lotts also fails to plausibly allege the policymaker prong of *Monell* liability, which requires that a complaint contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 285 (5th Cir. 2016); *see Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

### III.   On its own motion, the Court should dismiss Lotts's Fourteenth Amendment due process and deliberate indifference claims.

Under the standards of Rule 12(b)(6), a district court may "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table),

- 22 -

2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

"The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citations omitted).

And "[a] magistrate judge's report and recommendation constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions." *Jones v. City of Dall., Tex.*, No. 24-10803, 2025 WL 2491127, at *6 (5th Cir. Aug. 29, 2025) (per curiam) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

Under these principles, the Court should consider the sufficiency of Lotts's claims based on his detention at the City's jail.

Against John Doe jailers, Lotts alleges that his rights, as a detainee, to due process and to not be treated with deliberate indifference were violated when staff at the jail "told [him that] he would not be booked or processed unless he answered their questions" and failed to respond to his high blood pressure based on the following allegations:

> After Plaintiff invoked his Fifth Amendment right to remain silent, the jail officer continued questioning him. The officer stated, "These are just medical questions, okay," and repeated questions despite Plaintiff's refusal to answer. This occurs on Markham's body-worn

camera at approximately 2:29:15.

The same jail officer then stated, "Unfortunately, sir, if you don't answer my questions we are going to have to put you in a suicide [restraint/smock]. I won't have to do it, but these are just simple yes or no questions, okay." Plaintiff continued to remain silent after the threat.

A second jail officer approached and asked Plaintiff, "Are you going to try to hurt yourself while you're here?" Plaintiff, fearing that he would be placed in restraints or subjected to suicide protocols for an unknown amount of time, responded "no."

Plaintiff was denied access to a phone until he agreed to answer the questions and be fingerprinted. Jail staff repeatedly insisted that Plaintiff could not be booked unless he answered their questions, yet state law does not permit prolonged detention or denial of magistrate appearance based on refusal to answer non-essential questions. Denial of timely phone access prevented Plaintiff from contacting counsel and from arranging timely release, thereby prolonging detention without legitimate justification.

Other detainees were processed and allowed to call while Plaintiff waited.

Plaintiff was denied shoes, bedding, and items provided to other detainees until he answered their questions.

After nearly 7 hours, Plaintiff believed that he would be held indefinitely unless he answered their questions, so he contacted the staff on the intercom and told them he would answer their questions. Plaintiff then waited approximately one more hour for staff to come and ask their questions.

After questioning Plaintiff, the jailer took his blood pressure, which measured above 200 systolic. Despite this measurement, Plaintiff was not evaluated by any medical professional, was not monitored, and no medical attention of any kind was provided.

Plaintiff was held past the morning magistrate docket and released later that afternoon. Other detainees were released from their cell before the meeting, sitting in groups and chatting while waiting, then appeared before the magistrate and released after.

Dkt. No. 3 at 13-17

Following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "this circuit has continued to apply a subjective deliberate indifference standard in non-excessive-force actions alleging a violation of a pretrial detainee's constitutional rights based on episodic acts or omissions," *Cope*, 2024 WL 3177781, at *5 n.7 (citing *Alderson v.*

*Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an arrestee's] serious medical needs.'" *Cope*, 3 F.4th at 207 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez*, 904 F.3d at 391.

So allegations that a state actor's actions were merely ineffectual "do not demonstrate deliberate indifference." *S.R. ex rel. Musgrove v. Scott Cnty., Miss.*, No. 22-60124, 2023 WL 2964413, at *4 (5th Cir. Apr. 14, 2023) (per curiam) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997); citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) ("While these measures may have been inadequate, Plaintiffs do not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to Aguirre's well-being.")).

And, so, Lotts's claim that staff failed to medically address his one high blood pressure reading does not demonstrate deliberate indifference.

Lotts seems to also allege that the jail staff's failure to process him until he answered – or compel him to answer – intake questions can rise to the level of a constitutional violation. It's a confusing claim. And, to the extent that Lotts's factual content does not itself disprove the plausibility of this claim, it also fails because (1)

"the right to remain silent does not extend to 'routine booking questions,'" *Dickerson v. Wheelen*, No. 6:19-CV-00084, 2022 WL 772884, at \*8 (S.D. Tex. Mar. 12, 2022) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (recognizing a "routine booking question exception" that "exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services"); citing *Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of *Muniz*, it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists.")), and (2) "[t]he risk of suicide and the State's responsibility to prevent self-inflicted harm by detainees is well recognized by the Fifth Circuit," *id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).

And, so, Lotts has not alleged a plausible constitutional violation grounded on his failure to cooperate in the booking process.

## IV.    The Court need not grant Lotts leave to amend his claims.

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

"Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in

futility." *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) (citations omitted).

Because the Court's review of the allegations includes video footage – footage that likely would be offered by the defendants again as critical evidence in support of summary judgment should Lotts be allowed leave to replead and somehow survive a second round of motions to dismiss – the Court has fully considered the bulk of Lotts's allegations to the extent that it's likely he has stated his best case. The remainder of those allegations are equally defective and not curable for the reasons set out above. As such, the Court need not grant leave to amend and should dismiss Lotts's claims with prejudice.

But the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Lotts an opportunity to show that this case should not be dismissed with prejudice at this juncture and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

## Recommendation

The Court should grant the Defendants' motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6) [Dkt. Nos. 9 & 10], dismiss the remainder of the claims on its own Rule 12(b)(6) motion, and dismiss this lawsuit with prejudice unless Plaintiff Dale Lotts shows through timely objections a basis to amend the complaint to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 24, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

- 28 -