IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALE LOTTS | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| | § | 3:25-CV-03329-S-BN |
| VS. | § | |
| | § | ECF |
| CITY OF IRVING, OFFICER JAMES | § | |
| MARKHAM, OFFICER ANDREW | § | |
| HAMMETT, OFFICER PAUL LEWIS, | § | |
| and JOHN DOE JAIL OFFICERS 1-10 | § | |
| | § | |
| | § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF PLAINTIFF'S SPECIFIC OBJECTIONS**

**Table of Contents**

Introduction.................................................................................................... 3
Standard of Review........................................................................................ 4
Objection One: The recording does not blatantly contradict the pleaded account........... 5
Objection Two: The stated probable-cause ground fails on Defendants' own chronology.. 6
Objection Three: The retaliation ruling falls with the probable-cause finding, and the recorded exchange supplies causation.........................................................11
Objection Four: The force allegations state a plausible claim....................................... 13
Objection Five: The fact-matched comparisons the FCR found missing........................ 15
Objection Six: The proposed allegations support an inference of agreement................ 18
Objection Seven: Separate objections to each municipal path...................................... 19
Objection Eight: The jail claims challenge punishment, not booking questions..............25
Objection Nine: Dismissal with prejudice is unwarranted............................................ 28
Conclusion.................................................................................................... 30

**TABLE OF AUTHORITIES**

**Cases**

**Authority**................................................................................................ **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................. 3, 5

*Balle v. Nueces County*, 690 F. App'x 847 (5th Cir. 2017) (unpublished)....................... 28

*Barnes v. Felix*, 605 U.S. 73 (2025)...................................................................... 14

*Bazrowx v. Scott*, 136 F.3d 1053 (5th Cir. 1998)...................................................... 29

*Beck v. Ohio*, 379 U.S. 89 (1964)........................................................................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................... 5, 19

*Bell v. Wolfish*, 441 U.S. 520 (1979)....................................................................... 25

*Benfer v. City of Baytown*, 120 F.4th 1272 (5th Cir. 2024)........................................... 8, 9

*Brewster v. Dretke*, 587 F.3d 764 (5th Cir. 2009)...................................................... 29

*Buehler v. Dear*, 27 F.4th 969 (5th Cir. 2022)........................................................... 15

*California v. Hodari D.*, 499 U.S. 621 (1991)............................................................. 7

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015)...................................................... 8, 9

*Carter v. Dupuy*, 173 F.4th 561 (5th Cir. 2026)......................................................... 14

*Carver v. Atwood*, 18 F.4th 494 (5th Cir. 2021).................................................... 28, 30

*City of Houston v. Hill*, 482 U.S. 451 (1987)............................................................. 11

*Devenpeck v. Alford*, 543 U.S. 146 (2004)............................................................. 7, 10

*District of Columbia v. Wesby*, 583 U.S. 48 (2018)...................................................... 7

*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam)................................................... 5

*Foman v. Davis*, 371 U.S. 178 (1962)................................................................... 5, 30

*Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam)................................................ 11

*Graham v. Connor*, 490 U.S. 386 (1989)............................................................. 13, 14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002)....................................................................................................... 29

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016)................................................. 23

*Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995)........................................................... 17

*Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017)................................................. 13, 14, 16

*Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc)........................................ 26

*Harmon v. City of Arlington*, 16 F.4th 1159 (5th Cir. 2021)........................................... 5, 8

*Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018)........................................................................................ 24

*Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998).................................................... 27

*Longoria Next Friend of M.L. v. San Benito Independent Consolidated School District*, 942 F.3d 258 (5th Cir. 2019)........................................................................ 23, 24

*Mendenhall v. Riser*, 213 F.3d 226 (5th Cir. 2000).................................................... 17

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012)...............................................13, 14, 16

*Nieves v. Bartlett*, 587 U.S. 391 (2019).................................................................. 11, 13

*Pennsylvania v. Muniz*, 496 U.S. 582 (1990)................................................................ 25

*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018).............................5, 23, 30

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009).................................. 19, 21

*Prim v. Stein*, 6 F.4th 584 (5th Cir. 2021).................................................................... 17

*Presley v. City of Benbrook*, 4 F.3d 405 (5th Cir. 1993)................................................ 25

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013)......................................................8, 9

*Robinson v. Midland County*, 80 F.4th 704 (5th Cir. 2023)...................................... 23, 24

*Sauceda v. City of San Benito*, 78 F.4th 174 (5th Cir. 2023)...................................7, 8, 9

*Scott v. U.S. Bank National Association*, 16 F.4th 1204 (5th Cir. 2021) (per curiam). 5, 28

*Sligh v. City of Conroe*, 87 F.4th 290 (5th Cir. 2023)............................................5, 23, 24

*Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021)....................................................... 18, 19

*Timpa v. Dillard*, 20 F.4th 1020 (5th Cir. 2021)............................................................16

*Torres v. Madrid*, 592 U.S. 306 (2021)..........................................................................7

*Trammell v. Fruge*, 868 F.3d 332 (5th Cir. 2017).........................................13, 14, 16, 17

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017)............................................................. 15

*Whren v. United States*, 517 U.S. 806 (1996)............................................................. 10

*Winegarner v. City of Irving*, No. 3:24-CV-2171-K-BT, Dkt. 25 (N.D. Tex. Aug. 20, 2025) (non-binding recommendation)................................................................................... 9

*Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936 (N.D. Tex. Sept. 12, 2024) (non-binding)...................................................................................................... 9

## Statutes, Rules, and Ordinances Authority                           Page(s)

28 U.S.C. § 636(b)(1).................................................................................................. 5

Fed. R. Civ. P. 8(a)(2)................................................................................................. 5

Fed. R. Civ. P. 11.......................................................................................... 22, 25, 29

Fed. R. Civ. P. 12......................................................................................... 3, 5, 15, 16

Fed. R. Civ. P. 15(a)(2)................................................................................................ 5

Fed. R. Civ. P. 15(c)................................................................................................... 27

Fed. R. Civ. P. 72(b)(3)..................................................................................... 5, 29, 30

Tex. Code Crim. Proc. art. 14.031(a)..................................................................... 10, 21

Tex. Code Crim. Proc. art. 14.031(b).................................................................. 10, 12, 21

Tex. Code Crim. Proc. art. 14.06(b)...................................................................... 10, 12, 21

Tex. Gov't Code § 552.103....................................................................... 12, 24, 27, 29

Tex. Gov't Code § 552.108(a)(1)................................................................................. 27

Tex. Penal Code § 38.02(a)........................................................................................ 10

Tex. Penal Code § 38.03(a)......................................................................................... 8

Tex. Penal Code § 38.03(b)................................................................................ 7
Tex. Penal Code § 38.15(a), (d)........................................................................ 10
Tex. Penal Code § 49.01(2)(A).......................................................................... 9
Tex. Penal Code § 49.02(a)............................................................................... 9
Irving Code § 29-4............................................................................................. 23

**Introduction**

The FCR recommends dismissal of every claim with prejudice unless timely objections show a basis to amend to allege a plausible claim. FCR at 27-28. The test is element by element: set aside conclusory labels and ask whether the remaining well-pleaded facts permit a reasonable inference of each element. *Iqbal*, 556 U.S. at 678-79. Each objection performs that test on two tracks: why the FCR misapplied Rule 12 to the operative Complaint, the docketed recording, and incorporated materials, and the proposed allegations that cure each named defect. Throughout, "pleaded" refers to allegations in the operative Complaint. "Proposed" refers to allegations the amended complaint will state. No proposed allegation is offered to establish error in the disposition of the operative Complaint; proposed allegations answer futility only. The accompanying appendix reproduces the docketed materials cited here at the App. ranges its table of contents states, with an electronically-stored-information statement for the Dkt. 10, App. 1 recording.

One recorded exchange frames the case. Before any question about drinking, Plaintiff told Officer Markham: "You have no reason whatsoever to suspect that I'm about to commit a crime." Markham did not dispute it. He answered: "Would you like some justification? Because I can come up with it. You're coming from an area where people drink. You could be out in the roadway, and then you get PI. You might be drunk. … I

can justify that all damn day." Compl. § III ¶ L; Dkt. 10, App. 1 at 03:08-03:38. Read in

Plaintiff's favor, the answer was a warning: continued criticism would be met with a

public-intoxication arrest resting on the justification just recited. Three minutes later

Markham asked his first drinking question, and six seconds after that he ordered

Plaintiff's hands behind his back, at 06:36. The charge was public intoxication, on the

theory the statement had rehearsed. Compl. § III ¶¶ O-P.

**Standard of Review**

The district judge reviews the objected-to portions de novo and may accept, reject, or

modify the recommendation, receive further evidence, or return the matter with

instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Under Rule 8, a complaint

needs enough factual content, accepted as true, to permit a reasonable inference of

liability, not detailed factual allegations or proof. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Pro se pleadings

receive liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam).

Rule 15 directs courts to give leave to amend freely when justice requires. Fed. R. Civ.

P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). When denial rests on futility, the

court applies Rule 12 to the proposed pleading. *Peña v. City of Rio Grande City*, 879

F.3d 613, 618 (5th Cir. 2018). A movant must give "at least some notice of what his or

her amendments would be and how those amendments would cure the initial

complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021)

(per curiam); FCR at 27.

**Objection One: The recording does not blatantly contradict the pleaded account.**

Plaintiff objects to the finding that the recording blatantly contradicts the pleaded account. FCR at 5-6, 8-10. The *Harmon* rule itself is not disputed, FCR at 6, and no part of this recording blatantly contradicts any allegation in the Complaint. The FCR describes conduct it finds depicted, FCR at 8, 10, but it does not identify which Complaint allegation that description blatantly contradicts, or the elapsed interval at which the recording shows the contradiction. A recording that permits Defendants' account, while the material interval is obstructed, does not blatantly contradict the pleaded account. *Sligh v. City of Conroe* states the same limit from the other direction: an incorporated recording controls only "to the extent" it contradicts an allegation, and the allegations it does not contradict must be credited. 87 F.4th 290, 298 (5th Cir. 2023).

The recording cannot foreclose the pleaded facts it does not show. It begins after the alleged surveillance, does not show Plaintiff's feet, and is obstructed by the officers' bodies during the disputed contact interval at 06:47-06:51, with no visible frame isolating an outward pull, supplying a start or end frame, or resolving intent. Dkt. 10, App. 1 at 06:42-06:55; Compl. § III ¶¶ P-U. And one court has examined this recording: the Irving Municipal Court, with the City's attorneys participating, considered the same evidence and argument and granted Plaintiff's suppression motion "in all things." Compl. § III ¶ MM; Dkt. 15-1 at App. 003-010 (App. 104-11). The order states no grounds, and Plaintiff offers only its disposition: that court did not treat the recording as foreclosing this account.

This error underlies the probable-cause, retaliation, and force findings below. If the Court instead concludes the recording blatantly contradicts any allegation, Plaintiff

requests identification of each such allegation and the elapsed time at which the recording shows it.

**Objection Two: The stated probable-cause ground fails on Defendants' own chronology.**

Plaintiff objects to the finding that, "[a]t a minimum, there was probable cause to arrest Lotts for resisting arrest." FCR at 7-8.

**A. The parties share the chronology.** The Complaint alleges the arrest began when Markham ordered Plaintiff's hands behind his back. Compl. § III ¶ P. Defendants' motion states the same commencement: "the arrest commences" with that command, at elapsed 06:36, a party position Plaintiff pleads as the shared starting point. Officers MTD at 14 (App. 57). The recording shows the command at 06:36, its repetition at 06:39, and Plaintiff's left hand at the commanded lower-back position by 06:40, with the interval containing speech and a raised phone, not force, flight, or contact. Dkt. 10, App. 1 at 06:36-06:40. Physical contact began at 06:45, and Defendants place the asserted arm pull at 06:46-06:47. Officers MTD at 14-15 (App. 57-58). The primary marker is 06:36, the commencement both sides state. In the alternative, the movement to the commanded position permits the inference of submission completing a show-of-authority seizure by 06:40. *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991). And on the strongest undisputed marker, the physical contact at 06:45 effected a seizure by force. *Torres v. Madrid*, 592 U.S. 306, 311, 317 (2021). The asserted movement at 06:46-06:47 follows every marker, by four to eleven seconds. Probable cause depends on the facts within the officer's knowledge "at the moment of arrest,"

FCR at 7; *Beck v. Ohio*, 379 U.S. 89, 91 (1964), and an arrest cannot generate the probable cause required for its own commencement. The any-offense rule changes which offense may justify the arrest, not when the facts must be known. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). *Wesby*'s whole-picture rule describes breadth, not chronology. *District of Columbia v. Wesby*, 583 U.S. 48, 56-57, 60-61 (2018). The picture is frozen at the moment of arrest, and *Sauceda* applies that limit to resisting arrest. Plaintiff states both halves of the rule. Texas Penal Code § 38.03(b) makes unlawful arrest no defense to resisting, so if the Court credits qualifying resistance at 06:46-06:47, probable cause would arise then and run forward. What later resistance cannot do is erase the unlawful portion that preceded it or supply probable cause for the arrest that preceded it. The requested relief is phase-specific, and whether qualifying resistance occurred at all remains disputed. Objection One.

**B. The listed acts also fail Section 38.03(a)'s elements.** Resisting arrest requires intentional obstruction "by using force against" an officer. Tex. Penal Code § 38.03(a). Speech in response to a command is not force, non-forcible non-compliance is not force, and the Complaint alleges compliance and stillness. Compl. § III ¶ P. The raised right hand held a phone, no frame shows a thrust, strike, or contact, and no officer commanded Plaintiff to lower it. Dkt. 10, App. 1 at 06:40-06:46. Only the alleged arm movement at 06:46-06:47, after contact began, could implicate the force element. As Objection One establishes, the obstructed frames show no pull, no duration, and no resolved intent. *Harmon*, 16 F.4th at 1163.

**C. *Sauceda* governs the sequence, and *Benfer* does not displace it.** In *Sauceda v. City of San Benito*, a factfinder could find that the officer's words and grasp effected an arrest before the alleged pull-away, and the preceding unlawful portion survived. 78 F.4th 174, 187-88 (5th Cir. 2023). The FCR relies on *Benfer*, where the recording "unambiguously" showed the plaintiff repeatedly pulling free of the officer's grasp, a video holding this obstructed recording cannot support. 120 F.4th 1272, 1281 (5th Cir. 2024). Its *Ramirez* quote involved an admitted pull while the officer was "attempting to arrest," 716 F.3d 369, 372, 376 (5th Cir. 2013), and *Carroll* declined the illegal-arrest question, 800 F.3d 154, 170-72 (5th Cir. 2015). The cases divide by phase: *Ramirez* and *Benfer* address resistance before an arrest is complete, and *Sauceda* governs where the arrest came first.

Irving's officers made the same move in *Young* and *Winegarner*: each motion invoked the same *Carroll*-to-*Ramirez* chain while placing the offered probable-cause acts after its stated commencement; neither non-binding disposition decided the sequence question. Young Officers MTD at 11-12; Winegarner Officers MTD at 12-13; *Young*, Dkt. 34 at 15-16; *Winegarner*, Dkt. 25 at 19-21. Plaintiff cites the filings only for the positions they state.

**D. "At a minimum" identifies no other offense, and none is supported.** Defendants presented public intoxication, interference, and failure to identify, and the FCR resolves none. FCR at 7-8. Public intoxication requires intoxication to the degree the person "may endanger" himself or another. Tex. Penal Code §§ 49.01(2)(A), 49.02(a). The Complaint alleges no observed intoxication behavior, five recorded noncustodial

confirmations, and no sobriety assessment or welfare check. Compl. § III ¶¶ M, W, Z. The entire pre-arrest exchange on the subject was one question, "Have you been drinking tonight?", and one bare impression, "Kind of seems like you have," with no stated odor, speech defect, balance problem, admission, or other symptom, and in the usable audio no officer states before the command that Plaintiff endangered anyone. Dkt. 10, App. 1 at 06:30-06:36. The first claimed observation, that Plaintiff had been "staggering," was articulated by Hammett only after the arrest; its timing does not establish when any perception occurred, and the Complaint alleges there was no staggering to perceive and that the recordings do not support the claim. Compl. § III ¶ X. Release in lieu of arrest requires an officer belief that detention is unnecessary for anyone's protection and release to a responsible adult or into verified treatment, and it operates only "[i]n lieu of arresting," before arrest. Tex. Code Crim. Proc. art. 14.031(a). Markham offered the ride after the arrest, with no responsible-adult inquiry. After arrest, release belongs to a magistrate, and the Class C citation-release alternative expressly excludes public intoxication. Tex. Code Crim. Proc. arts. 14.031(b), 14.06(b). The offer permits two inferences, and either undermines the danger element: Markham perceived no danger, or he offered a disposition the statute did not permit him to make.

*Devenpeck*'s any-offense rule reaches only offenses the facts known at 06:36 supported. No offense Defendants presented was, and the pleaded and visible facts at that moment fairly raise no other. Failure to identify requires a lawful arrest first. Tex. Penal Code § 38.02(a). Interference with public duties carries an express speech-only defense, Tex. Penal Code § 38.15(a), (d), and the Complaint alleges only criticism, profanity, and recording. Compl. § III ¶¶ I, P. Markham's motive is irrelevant to probable

Page 10

cause, *Whren v. United States*, 517 U.S. 806, 813 (1996). This claim turns on the facts known at 06:36: no articulated sign of intoxication and no danger fact, with the Complaint alleging none existed. Each element is independently required. And the Introduction's exchange, the offer to "come up with" justification, supports the inference that no observed fact then existed. Compl. § III ¶ L; Dkt. 10, App. 1 at 03:08-03:38. The proposed amendment alleges the four-stage chronology, the absence of force or contact before 06:45, and the absence of any observed intoxication or danger fact, stating a plausible unlawful-arrest claim. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Three: The retaliation ruling falls with the probable-cause finding, and the recorded exchange supplies causation.**

Plaintiff objects to the conclusion that the retaliation claim fails because probable cause supported the arrest. FCR at 8. Criticism of police is core protected activity, *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987), and a custodial arrest chills ordinary firmness. *Nieves* requires a retaliatory-arrest plaintiff to plead the absence of probable cause. 587 U.S. 391, 402 (2019). Objection Two establishes that the operative allegations do that, so the FCR's single stated ground fails.

The recorded exchange below is causation evidence on the primary route regardless of any exception. For the exception, *Gonzalez v. Trevino* permits objective evidence, without virtually identical comparators, that similarly situated persons not engaged in the same protected speech would not have been arrested. 602 U.S. 653, 658-59 (2024) (per curiam). The exchange is not offered as a completed comparator showing; that

development belongs to the amendment track. While Plaintiff stood handcuffed, Markham said: "You've never been arrested before. You have no warrants out. Why do you hate the police so much?" That question asks about viewpoint, not intoxication or danger. Markham then described the deferential exchange that would have produced a ride home, offered "even now" a ride instead of jail, and told Plaintiff that "cuffs come off as easy as they go on." The offer was not carried out; Plaintiff did not recant. Compl. § III ¶ W; Dkt. 10, App. 1 at 12:36-13:27 (proposed: BWC-Hammett 08:09-08:47; BWC-Lewis 04:51-05:19). The description permits the inference that a deferential speaker would have gone home, the cuffs remark that custody was reversible at his option. The offer was also outside Markham's statutory authority, as Objection Two D states. Tex. Code Crim. Proc. arts. 14.031(b), 14.06(b). A custody choice framed as his to trade, inconsistent with perceived danger and outside his statutory authority, is recorded evidence that the decision turned on speech: but-for causation on the primary route.

The deterrent sanction was complete on delivery: the handcuffing, transport, and night in jail cannot be undone. The arrest record's continuing harm to Plaintiff's employment, income, and pilot's license is a further compensable injury flowing from the arrest and the retaliation. Compl. § III ¶ NN. The City-controlled 2023 arrest and release records, withheld under Texas Government Code § 552.103, supply the comparator development the exception contemplates and defeat any finding that amendment is futile.

Page 12

The operative timeline is actor-specific: criticism, the 03:26 answer, the first drinking question at 06:30 after nearly six minutes with no change in Plaintiff's behavior, and the arrest six seconds later. Before the arrest, the officers' own recorded words went to Plaintiff's speech, attitude, claimed "problem," and freedom to leave, against one drinking question and one bare impression. Dkt. 10, App. 1. That allocation permits the inference that their attention was on the speech, not intoxication. Then came Hammett's post-cuffing remark, pleaded as "wouldn't shut up before, now won't talk" and recorded as "Couldn't stop talking before, now won't talk." Proposed: BWC-Hammett at 06:38. Compl. § III ¶¶ F-P, V-W. The proposed allegations add the report itself: it selects for narration Plaintiff's raised middle fingers, his camera "pointing" at the officer, his "confrontational tone," and the free-to-leave exchange. Incident-23-28919 at 2-3. A report that catalogs protected speech supports the inference that the speech drove the arrest. Those allegations state a plausible retaliation claim under either *Nieves* path. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Four: The force allegations state a plausible claim.**

Plaintiff objects to the findings that the recording establishes resistance, that the event was a "brief struggle" and "placement" into a patrol car, and that the force was not plausibly excessive and unreasonable. FCR at 8-10.

This objection stands on its own: the allegations state a claim even if probable cause existed, and Plaintiff does not argue that an invalid arrest alone makes force unlawful. On Objection Two's showing, no offense was validly suspected at 06:36, so the

crime-severity *Graham* factor supplies no justification, leaving force against a compliant, nonthreatening, non-fleeing subject, which *Newman*, *Trammell*, and *Hanks* hold unjustified.

The Complaint alleges that while Plaintiff stood still and compliant, Hammett approached from behind and shoved him into the patrol vehicle, that Markham and Hammett then held him in a painful high-leverage arm position for about thirty-two seconds, and that the hold caused substantial pain and bruising photographed the next day. Compl. § III ¶¶ Q, T. The recording is obstructed during the disputed contact and does not blatantly contradict those allegations. Objection One, supra. The claim stands on those allegations alone: the shove, the hold, the pain, and the photographed bruising, weighed under *Graham*. 490 U.S. 386, 396 (1989). The Complaint additionally alleges that immediately after the force, while Plaintiff had not pulled away, twisted, or resisted, Hammett said on camera, "that was completely unnecessary." Compl. § III ¶ U. The remark states no referent, and Plaintiff discloses that. Offered as context, its timing permits a favorable inference on either reading: as an assessment of the force, excess; as a rebuke of conduct the visible frames show was speech and recording, Objection Three's retaliation inference.

Nor is the alleged force de minimis under *Carter v. Dupuy*, 173 F.4th 561, 564 (5th Cir. 2026): a rear shove plus a sustained thirty-two-second pain hold producing photographed bruising is the category *Trammell*, *Newman*, and *Hanks* held actionable against compliant subjects.

Page 14

The *Graham* and *Barnes* factors, taken in Plaintiff's favor, all point one way: a Class C fine-only offense, no weapon, no threat, no flight, movement to the commanded position five seconds before contact, no warning, and force nine seconds after the first command: the rapid escalation *Trammell* held permits the inference that force was not measured and ascending. Compl. § III ¶¶ I, P-T, Z; Dkt. 10, App. 1 at 06:36-06:45; *Barnes v. Felix*, 605 U.S. 73, 80 (2025); *Trammell*, 868 F.3d 332, 342-43 (5th Cir. 2017). The proposed amendment adds each officer's role, the sequence and duration, and the injuries. Those allegations state a plausible excessive-force claim. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Five: The fact-matched comparisons the FCR found missing.**

Plaintiff objects to the alternative conclusion that the officer claims fail both qualified-immunity prongs. FCR at 10-14. The FCR faulted Plaintiff for citing cases without "address[ing] how the facts underlying those decisions match the facts as alleged." FCR at 14. The matched comparisons follow, and each authority predates December 4, 2023. Clearly established law requires fair warning, not a prior case with materially identical facts, and the FCR itself recognizes that distinctions matter only if they make precedent's applicability unclear. FCR at 13.

**Unlawful arrest.** In *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017), Turner was unarmed, recorded police from a public place, committed no crime, posed no threat, did not flee, and was arrested after declining to identify himself. The Fifth Circuit denied the arresting officers qualified immunity at Rule 12. Id. at 686-88, 693-96. The comparison operates with Objection Two, which supplies the absence of actual or arguable probable cause it

Page 15

requires. On that predicate, Plaintiff alleges materially similar facts, with less: no identification was requested or refused. Compl. § III ¶¶ B-P.

**Retaliation.** *Turner*, 848 F.3d at 688, and *Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022), gave pre-event notice that public recording of police is protected. The claimed notice is conduct-specific: an arrest, absent probable cause, of a person for protected recording and criticism, and the recorded sequence in Objection Three supplies the retaliatory response.

**Force.** *Trammell*, a Texas public-intoxication arrest, held it clearly established that officers may not use violent force against a person who is not fleeing, violent, or aggressive and whose alleged resistance is at most pulling an arm away. 868 F.3d 332, 340-43 (5th Cir. 2017). There, three seconds between command and takedown permitted the inference that the force was not measured and ascending. Id. at 342-43. Here, the nine seconds between command and contact contained yielding, and no new command or warning preceded the force. *Newman* denied qualified immunity where the plaintiff alleged no active resistance, threat, flight, or failed command. 703 F.3d 757, 761-64 (5th Cir. 2012). The FCR's disregarded-directives characterization cannot distinguish *Newman* at Rule 12: a recording can show a command and movement, not that a person heard, understood, had time to comply, and chose not to. The Complaint alleges compliance, and the recording shows the command answered by the movement to the commanded position by 06:40: no failed command, as in *Newman*. *Hanks* held a takedown against a compliant subject unreasonable where the video permitted competing interpretations. 853 F.3d 738, 744-47 (5th Cir. 2017). And *Timpa v. Dillard*

held it clearly established that continued force against a subdued, restrained, nonthreatening person violates the Fourth Amendment. 20 F.4th 1020, 1033-35 (5th Cir. 2021). Its restraint was prone and prolonged where this hold was upright and shorter; its notice is that force must stop when resistance stops, and it governs the hold that continued after Plaintiff was pinned against the vehicle and offering no resistance. The methods differ, and the shared absence of any need for force supplied the fair warning. *Trammell*, 868 F.3d at 339 ("fair warning" can exist "despite notable factual distinctions").

**Failure to intervene.** *Hale v. Townley* denied qualified immunity where an officer had a reasonable opportunity to realize another officer's force was excessive and to intervene. 45 F.3d 914, 919-20 (5th Cir. 1995). Markham's recording depicts Lewis at the contact area for the final twenty seconds before the cuffs are secured: he approaches, extends an open hand, stops, lowers it as Plaintiff remains still, and remains beside the continuing restraint. Dkt. 10, App. 1 at 07:00-07:22. Those facts permit the inference that Lewis perceived the continuing force and Plaintiff's compliance and had a reasonable opportunity to intervene.

**Arguable probable cause.** Qualified immunity also protects a reasonable mistake: immunity applies if a reasonable officer could have believed the known facts established probable cause. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). No reasonable officer could have held that belief on Objection Two D's facts: no admission, five recorded noncustodial confirmations, and no sobriety, welfare, or danger inquiry. A belief built on facts the officer did not have is not a reasonable mistake. In *Prim v. Stein*,

officers observed difficulty standing, bloodshot eyes, slurred speech, and a twice-failed sobriety test, heard an admission of drinking, and faced an insistence on walking a busy parkway in darkness. 6 F.4th 584, 592-94 (5th Cir. 2021). *Prim* does not make those facts prerequisites, and none of them is present here: no articulated indicator, no admission, no sobriety test. For resisting arrest, arguable probable cause fails with actual: at every marker in Objection Two A, the asserted conduct had not yet happened.

Accepted as true, the operative actor-specific allegations satisfy both prongs, Compl. § III ¶¶ S, W; Dkt. 10, App. 1 at 05:25-06:47, 07:00-14:43, and the proposed additions develop the same acts and defeat futility. If the Court instead finds the showing deficient as to any officer or claim, Plaintiff requests Objection Nine's graduated disposition.

**Objection Six: The proposed allegations support an inference of agreement.**

Plaintiff objects to the finding that the conspiracy allegations lack factual content supporting an agreement and to treating that omission as incurable. FCR at 10. The elements are an agreement to commit an illegal act and an actual deprivation. *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021). Objections Two through Four supply the deprivation, and the facts below supply the agreement.

The proposed allegations rest on the field-training relationship and joint public-intoxication arrest stated in Objection Seven B, Markham's recorded statement that he could "come up with" public-intoxication justification "all damn day," and Hammett's recorded participation rather than correction. Compl. § III ¶¶ L, P-V; Dkt. 10, App. 1 at 05:25-06:47. The recording then supplies a timestamped opportunity to align

accounts. Markham muted his body-camera audio from elapsed 09:31 to 12:33 while he and Hammett conferred, and he later testified that the mute covered a case discussion with Hammett. Dkt. 10, App. 1 at 09:31-12:33; Supp. Hr'g 01:18:11-01:18:32. The officers discussed this arrest for about three minutes before either wrote a report. Afterward, each supplied an impairment account the Complaint alleges the identified recordings do not support: Hammett's "staggering" and Markham's claimed moments of slurring. Compl. § III ¶¶ X, MM.

Accepted as true, those allegations identify the object, the participants, and their complementary words and acts. A timestamped coordination opportunity on muted audio, followed by convergent accounts the recordings are alleged not to support, permits, though it does not compel, a reasonable inference of agreement under *Terwilliger*. These are proposed allegations, offered against futility. Where pleaded facts permit competing plausible inferences, the choice belongs to the factfinder. *Twombly*, 550 U.S. at 556.

The patrol-to-jail branch is preserved for a supported amended pleading rather than separately developed here. If the Court finds it unsupported, Plaintiff requests Objection Nine's graduated disposition.

**Objection Seven: Separate objections to each municipal path.**

Plaintiff objects separately to the dismissal of each municipal path below and to the policy-or-custom, comparator, policymaker, deliberate-indifference, and moving-force conclusions supporting those dismissals. FCR at 14-22, 26-28. Four paths are

presented; a fifth is preserved in Section D without being presently asserted. Each claim requires a policy or custom, a policymaker chargeable with actual or constructive knowledge of it, and a violation whose moving force it was. *Peterson*, 588 F.3d at 847. The predicate objections come first: the FCR eliminated the municipal claims partly by eliminating the constitutional claims beneath them, FCR at 14-15, so each sustained predicate objection requires the Court to reach the remaining municipal elements.

**A. Path one: the practitioner-described arrest custom.** Plaintiff objects to the dismissal of the custom path. The FCR found the arrest-count allegations lacked "context or further factual elaboration," FCR at 20-21, but the proposed amendment does not rest on counts. The custom is a two-stage arrest method, described by its practitioner on the City's own recording: a predicted pedestrian offense as the hook for compelled identification and a warrant check ("I knew [he] was about to jaywalk," he would "have to ID," he "might have warrants"), with public intoxication as the custodial fallback ("You could be out in the roadway. And then you get PI"). He delivered it in institutional terms: "proactive police work," "a bunch of directives," and "that is me actually doing my job, 100 percent." Compl. § III ¶¶ J, L; Dkt. 10, App. 1 at 02:12-03:08. An officer seven months out of field training described the method on camera in the department's terms, invoking City directives whose contents the City controls. The proposed amendment pleads that description, which permits the inference that the method was trained or tolerated, not improvised. The recorded application here shows the escalation the method supplies: protected criticism, the 03:26 justification answer, one drinking question, and the method's custodial fallback six seconds later. Knowledge: the proposed allegations plead that the description invokes City directives

Page 20

and that the Section E channels carried the practice's footprint to the responsible officials. Moving force: Markham described the method and then, the amendment pleads, performed it on Plaintiff.

The counts corroborate the description, with their limits disclosed. Public intoxication appears in 13 of Hammett's 42 calendar-2023 reports (30.95%) and 14 of Markham's 65 (21.54%), against 616 of 6,588 department-wide (9.35%), about 3.3 and 2.3 times the department rate. Lewis, the non-FTO-linked comparator, sits at 3 of 28 (10.71%), near the department rate. PD-2024-464 Arrests; PD-2026-1596 Arrest Workbook; PD-2025-3926 Arrests at 1. Cf. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 & n.4 (5th Cir. 2009). The elevation tracks the training relationship: trainer highest, trainee next, the unconnected officer at baseline. Plaintiff discloses one conflict: four workbook records cannot be located in the department-wide export; no figure's order of magnitude changes. The counts are never the custom itself. The proposed allegations also document the concealment the arrest data cannot show: Markham's report admits he parked "to watch the male and passing traffic" and gives no reason for watching this pedestrian, and the recording supplies the reason. Incident-23-28919 at 2; Dkt. 10, App. 1 at 02:12-02:27.

**B. Paths two and three: failure to train and failure to supervise.** Plaintiff objects to the dismissal of the training and supervision paths. The City itself identifies the program: its Professional Standards Division houses the Training Academy and the Police Training Officer Unit, with field training its designated mechanism for transmitting standards. City of Irving, Police Department Professional Standards,

Page 21

https://irvingtx.gov/professional_standards (last visited Aug. 6, 2026). City records identify Hammett as Markham's Field Training Officer, with a joint public-intoxication arrest during the training period. PD-2024-464 Training Records at 9; Supp. Hr'g 01:11:42-01:11:52; PD-2026-1242, 23-6594 at 1. The footing is recorded: Markham offered a post-arrest disposition the statutes reserve to a magistrate. Tex. Code Crim. Proc. arts. 14.031(a)-(b), 14.06(b); Objection Two D. Grounded in that recorded offer, the proposed amendment pleads that the release-authority training failed at a basic, recurring point; the curriculum records that would confirm the omission are City-controlled. Section E. The supervision path rests on the same mechanisms. Markham described the method and made the release offer openly, on his own camera, before the trainer the City had assigned him, and Hammett joined rather than corrected. Approver "763" then approved a report describing a person repeatedly told he was free to leave and then arrested, identifying no new observed fact. Incident-23-28919 at 1-3. A deviation made and tolerated in the open, before the trainer and the approving supervisor, permits the inference of supervisory acquiescence and supplies the notice showing. Moving force: the trained officer performed the transmitted method on Plaintiff seven months after certification, and the approved report sustained the charge.

**C. Path four: the jail booking custom.** Plaintiff objects to the dismissal of the jail-custom path. Jail employees told Plaintiff that phone access, magistration, and basic cell items would not be provided until he answered and completed booking because that was the jail's "policy" and "the way we do it here." Compl. § III ¶¶ AA, GG-LL. That is a stated operating rule, applied in coordination across separate functions over many hours by multiple staff, not an inference from one incident. Moving force: the stated rule

Page 22

produced the compelled answers and withheld necessities Objection Eight addresses, and the injury ran until Plaintiff complied.

**D. The post-suppression record: notice evidence, and a preserved theory.** Plaintiff does not presently assert a standalone post-suppression failure-to-correct claim; that theory is preserved for a Rule 11-verified amended pleading supplying its later-injury and municipal-decision elements. The facts serve the presented paths as notice and persistence evidence. On March 7, 2025, the Municipal Court, with the City's attorneys participating, suppressed all evidence from this arrest, Compl. § III ¶ MM, and the City's own Professional Standards page states that its Policy and Accreditation section "audit[s] key functions within the department to verify compliance with policies." Irving's workbook shows public-intoxication bookings continuing at pre-suppression volumes: against 689 in all of 2023, 609 from the March 7, 2025 suppression through December 31, 2025, and 225 more from January 1 through April 27, 2026, the workbook's last arrest date. PD-2026-1596 Arrest Workbook. Those counts do not establish that any post-suppression arrest was unlawful, and the absence of a produced corrective-review record is a defendant-control allegation, not proof that no review occurred. Compl. § III ¶ NN. So offered, the proposed allegations support post-notice knowledge and acquiescence for paths one and two, answering *Robinson* for the period after notice; nothing here is offered as ratification, which *Sligh* confines to sufficiently extreme after-the-fact approval, or as a moving force for the 2023 arrest. The continuing arrest-record harm is pleaded as damages in Objection Three.

Page 23

**E. Shared showings: policymaker, records, and the *Robinson* and *Sligh* limits.** A complaint need not name the policymaker if its facts allow the inference that the authorized policymaker promulgated or ratified the policy or delegated its adoption. *Groden*, 826 F.3d 280, 284-86 (5th Cir. 2016). Irving Code § 29-4 assigns the Police Chief policy promulgation and jail management, under the City Manager's supervision. The amendment pleads that structure, the field-training program, the directives Markham invoked on camera, and the City-controlled delegation and approval records that complete the connection under *Peña*, 879 F.3d at 621-23. *Longoria* dismissed municipal claims saying nothing about the challenged policy's drafter, origin, or adoption; the proposed allegations supply that route. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019). The proposed allegations also identify the City Council's "Community Services and Public Safety Committee" and the police "Departmental Outlook" presentations as the enforcement-information channels to the governing body. The withheld records are identified request by request: officer training, employment, and discipline records, PD-2025-3938; jail policies, booking logs, and identity records, PD-2026-1242 through 1244, withheld under Texas Government Code § 552.103, OAG OR2026-027534 at 3-4; and the remaining arrest-information streams, OR2026-009465 at 1-3, withheld under § 552.103 except basic information. No request is cited to prove a specific record exists. Where a defendant controls the information, a plaintiff may plead on information and belief grounded in known facts. *Innova Hosp.*, 892 F.3d 719, 730 (5th Cir. 2018). The amendment identifies each withheld record and what it would establish, including the method's non-arrest footprint. *Robinson v. Midland County* rejected municipal

Page 24

knowledge inferred from employee conduct alone, 80 F.4th 704, 710-11 (5th Cir. 2023); the paths above rest on employee-stated rules, the field-training structure, the report approval, and the identified record channels to the authorized officials. *Sligh* limits only ratification inferred from after-the-fact approval absent sufficiently extreme conduct, 87 F.4th at 303, and the paths above are pleaded independently of ratification.

Plaintiff requests that the Court reject these conclusions on de novo review as to the operative Complaint and reject futility as to the proposed allegations. For any municipal path found deficient, Plaintiff requests Objection Nine's graduated disposition, and no prejudice should attach to a Doe-dependent path before identification discovery. This filing deliberately presents a limited subset of the pleaded municipal theories, and Plaintiff says so plainly; that candor distinguishes a curable gap from futility. The theories not separately presented are preserved for a supported amended pleading, not abandoned, and any path Plaintiff cannot cure with Rule 11-verified facts will not be included in the amended complaint.

**Objection Eight: The jail claims challenge punishment, not booking questions.**

Plaintiff objects to construing the jail allegations as asserting a right to refuse routine booking questions, to the deliberate-indifference finding on the blood-pressure allegations, and to treating the identified defects as incurable. FCR at 22-26. **A. The claim is about leverage, not questions.** *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990), and *Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993), permit routine booking questions but do not address what consequences may compel answers. The amended complaint will not assert a right to refuse routine booking

questions. The Complaint alleges that jail employees imposed consequences to compel answers: a stated threat of suicide restraints ("if you don't answer my questions we are going to have to put you in a suicide [restraint/smock]"), denial of phone and counsel access, exclusion from the group magistration process, and withheld shoes and bedding provided to other detainees. Each consequence was expressly conditioned on answering, and the conditions ran for nearly eight hours, until Plaintiff complied. Compl. § III ¶¶ DD-LL. Under *Bell v. Wolfish*, a pretrial detainee may not be punished, and an arbitrary restriction not reasonably related to a legitimate objective permits the inference of punishment. 441 U.S. 520, 535, 538-39 (1979); *Hare v. City of Corinth*, 74 F.3d 633, 644-50 (5th Cir. 1996) (en banc). The FCR cites *Hare* for the State's responsibility to prevent detainee self-harm, FCR at 26, but the Complaint alleges the protocol was invoked as leverage against a detainee who displayed no distress, which inverts the protective interest *Hare* recognizes; the threat ended the moment Plaintiff answered.

**B. The proposed allegations are participant-specific.** The amendment identifies each present defendant by role: who stated the suicide-restraint consequence, who communicated the phone-and-counsel condition, and who directed the property withholding and the magistration exclusion. It states durations (the recorded suicide-threat exchange that caused Plaintiff's answer, phone denial for about six hours, and magistration delayed past the morning docket) and resulting injuries. Compl. § III ¶¶ EE-LL; BWC-Markham at 46:38-51:21. The sanitation allegations identify the responsible employee and the hours-long avoidance of reported human waste, with the duration and exposure details supplied in the amendment.

Page 26

**C. The blood-pressure allegations are developable through the same identification discovery.** The Complaint alleges that a jail employee measured Plaintiff's systolic pressure above 200 and announced the reading toward at least three other jail personnel, and that no one repeated the measurement, asked about symptoms, sought medical review, or monitored Plaintiff before release. Compl. § III ¶ KK. Announced toward trained jail personnel, a systolic reading above 200 followed by no reassessment, symptom inquiry, medical review, or monitoring permits the inference that staff understood the risk and disregarded it. That episodic-act theory is the claim. If the identification records instead show untrained screening, that City-controlled curriculum record would ground the municipal training path, preserved for the amendment rather than asserted now. The records showing who read or heard the measurement are the City-controlled booking records in Section D; the defect is developable, not incurable. If the Court concludes the episodic claim is not presently supported, Plaintiff requests Objection Nine's graduated disposition.

**D. The Doe claims require identification discovery, and Plaintiff states the limitations risk plainly.** The City controls the booking log, assignment records, intercom audio, and jail policies that identify these defendants. Substituting a named defendant for a John Doe generally does not relate back under Rule 15(c). *Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998). The proposed allegations state the withholding history with its identifiers: the earlier requests were withheld while the criminal case was pending, with PD-2023-2552 and ORR-2023-2159 drawing a previous-determination withholding, PD-2023-2591 the City's statement that there would be no pending-cases release, and PD-2024-464 a section 552.108(a)(1) withholding on

Page 27

the City's representation of a pending criminal investigation, OAG OR2024-015383; and the later requests because this civil case is pending, § 552.103, OR2026-027534. Plaintiff did not know that Doe substitution could create a relation-back problem, and once the issue became apparent, he requested the identifying records. The March 25, 2026 request sought the names of every jail, booking, intake, detention, and custody-transfer employee who interacted with Plaintiff, with their assignment records. Irving expressly characterized the request as witness-identification discovery, and the Attorney General permitted withholding of the non-basic material under § 552.103 because this case is pending. PD-2026-1242 Request § 2; Irving AG Letter PD-2026-1242/1243/1244 at 2-3; OAG OR2026-027534 at 3-4. The August 3, 2026 production identified no jail personnel. PD-2026-1242 Production Manifest. That request post-dates December 4, 2025, so it rebuts inactivity without resolving relation back or tolling, the questions non-binding *Balle v. Nueces Cnty.*, 690 F. App'x 847, 850-51 (5th Cir. 2017) (unpublished), examined and denied on its own record under Texas law. Plaintiff requests focused identification discovery and one amendment opportunity, while recognizing that the Court may find substitution untimely. The FCR did not raise limitations, accrual, or tolling, FCR at 22-28, and those predicates cannot be resolved against Plaintiff without the notice *Carver v. Atwood*, 18 F.4th 494, 498 & n.* (5th Cir. 2021), requires.

**Objection Nine: Dismissal with prejudice is unwarranted.**

Plaintiff objects to the recommendation that he likely stated his best case, that the remaining allegations are "equally defective and not curable," and that every claim should be dismissed with prejudice. FCR at 26-28.

**A. The FCR invited this showing, and these objections supply it.** The FCR recommends dismissal with prejudice "unless Plaintiff Dale Lotts shows through timely objections a basis to amend the complaint to allege a plausible claim," FCR at 28; these objections are that showing. FCR at 27. Objections Two through Eight state the proposed allegations and how each cures a stated defect, the notice *Scott* requires. 16 F.4th at 1209. *Scott* requires that notice, not a tendered pleading, and Dkt. 12 restricts supplemental filings without leave. Plaintiff will not file a pleading he has not verified to the Rule 11 standard; if the Court prefers a complete pleading for the futility test, he requests leave to lodge one within thirty days. Several rulings nevertheless reject claims without a claim-specific defect: the municipal and jail theories are resolved largely collectively, and "[t]he remainder ... equally defective and not curable" names no particular deficiency. FCR at 27. Plaintiff cannot propose specific facts to cure an unidentified defect; for any such claim, he requests identification of the deficiency or return to the magistrate judge under Rule 72(b)(3). Any theory whose defects Plaintiff cannot correct with Rule 11-verified facts will not be included in the amended complaint.

**B. The best-case inference cannot reach what the video does not show.** The FCR's stated reason for the best-case inference is that "the Court's review of the allegations includes video footage." FCR at 27. The footage depicts a street encounter and jail intake, not the hours of jail detention, the training program, supervision and report

review, or the ordinance rollout. That reason cannot support the conclusion that the municipal and jail claims are "equally defective and not curable," and the FCR states no separate reason. Id.

**C. Plaintiff has never amended, and candor is not abandonment.** This is a pro se plaintiff's original complaint, drafted without discovery while the City withheld requested records under § 552.103. District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case with prejudice," *Great Plains Trust*, 313 F.3d at 329, and generally do not dismiss a pro se complaint with prejudice without leave to amend at least once. *Brewster*, 587 F.3d at 767-68. *Bazrowx* treats the omission as harmless only where the plaintiff pleaded his best case or the dismissal was without prejudice, 136 F.3d at 1054: Section B contests the first, and the requested fallback is the second. None of the *Foman* factors beyond futility is present, and futility must be tested against the proposed pleading. *Peña*, 879 F.3d at 618. This filing deliberately presents a limited subset of the claims and theories pleaded in the operative Complaint, Compl. at 17-28 (App. 19-30). It does not redefine or abandon the remainder, which is preserved for a supported amended pleading, and proposing less is candor, not consent to prejudice. For the court-raised jail theories, *Carver* requires notice and a response opportunity before sua sponte dismissal with prejudice, 18 F.4th at 498 & n.*; this brief is that response, and Plaintiff requests the same for any ground not stated in the FCR.

**Conclusion**

Page 30

Plaintiff respectfully asks the Court to review each identified determination de novo and decline to adopt the probable-cause, retaliation, force, qualified-immunity, conspiracy, municipal, and jail findings; to reject the futility recommendation and dismissal with prejudice; for any claim found deficient, to identify the claim-specific deficiency or return the claim under Rule 72(b)(3); to grant leave to file one amended complaint within thirty days; and to dismiss without prejudice any claim not adequately cured.

**Conclusion**

Plaintiff respectfully asks the Court to review each identified determination de novo and decline to adopt the probable-cause, retaliation, force, qualified-immunity, conspiracy, municipal, and jail findings; to reject the futility recommendation and dismissal with prejudice; for any claim found deficient, to identify the claim-specific deficiency or return the claim under Rule 72(b)(3); to grant leave to file one amended complaint within thirty days; and to dismiss without prejudice any claim not adequately cured.

Respectfully submitted,

/s/ Dale Lotts

Dale Lotts
Plaintiff, Pro Se
401 E. 8th St., Ste. 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org