# IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

DALE LOTTS, Plaintiff,

v.

CITY OF IRVING, et al., Defendants.

Civil Action No. 3:25-cv-03329-S-BN

APPENDIX IN SUPPORT OF PLAINTIFF'S SPECIFIC OBJECTIONS

TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION

AND SUPPORTING BRIEF

N.D. Tex. L. Civ. R. 72.2(d), 7.1(i)

App. 1

## TABLE OF CONTENTS

Complaint (Dkt. 3) — App. 3-33

Defendants Markham, Hammett, and Lewis's Motion to Dismiss (Dkt. 10) — App. 34-68

City of Irving's Motion to Dismiss (Dkt. 9) — App. 69-101

Plaintiff's Appendix in Support of Response (Dkt. 15-1) — App. 102-124

Findings, Conclusions, and Recommendation (Dkt. 26) — App. 125-152

Electronically Stored Information Statement (Dkt. 10, App. 1 recording) — App. 153

Each document's appendix page equals its ECF page plus the offset implied above.

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

Dallas Division

| | |
|---|---|
| Dale Lotts<br>*Plaintiff*<br><br>-v-<br><br>City of Irving,<br>Officer James Markham,<br>Officer Andrew Hammett,<br>Officer Paul Lewis,<br>John Doe Jail Officers 1–10<br>*Defendants* | Case No. _____<br><br>Jury Trial: Yes |

## COMPLAINT FOR A CIVIL CASE

### I.      The Parties to This Complaint

#### A.     The Plaintiff

| | |
|---|---|
| Name | Dale Lotts |
| Street Address | 401 E 8th St<br>Ste 214 PMB 7860 |
| City and County | Sioux Falls and Minnehaha |
| State and Zip Code | SD and 57103 |
| Telephone Number | 612-208-9601 |
| E-mail Address | dale.lotts@policeconduct.org |

Mailing Address            Dale Lotts
(Service accepted here)    ℅ Northwest Registered Agent
                           5900 Balcones Drive # 19816
                           Austin, TX 78731


**B.      The Defendants**

Defendant No. 1
        Name                       City of Irving
        Job or Title (if known)    Municipality operating the
                                   Police Department and City Jail
        Street Address             825 W. Irving Blvd.
        City and County            Irving, Dallas County
        State and Zip Code         Texas 75060
        Telephone Number           (972) 721-2600
        E-mail Address

Defendant No. 2
        Name                       James Markham
        Job or Title (if known)    Police Officer, Badge #1379
                                   Irving Police Department
        Street Address             305 N. O'Connor Rd.
        City and County            Irving, Dallas County
        State and Zip Code         Texas 75061
        Telephone Number           (972) 273-1010
        E-mail Address

Defendant No. 3
        Name                       Andrew Hammett
        Job or Title (if known)    Police Officer, Badge #1263
                                   Irving Police Department
        Street Address             305 N. O'Connor Rd.

|                          |                          |
|--------------------------|--------------------------|
| City and County          | Irving, Dallas County    |
| State and Zip Code       | Texas 75061              |
| Telephone Number         | (972) 273-1010           |
| E-mail Address           |                          |

Defendant No. 4

|                          |                          |
|--------------------------|--------------------------|
| Name                     | Paul Lewis               |
| Job or Title (if known)  | Police Officer, Badge #1370 |
|                          | Irving Police Department |
| Street Address           | 305 N. O'Connor Rd.      |
| City and County          | Irving, Dallas County    |
| State and Zip Code       | Texas 75061              |
| Telephone Number         | (972) 273-1010           |
| E-mail Address           |                          |

Defendant No. 5

|                          |                          |
|--------------------------|--------------------------|
| Name                     | John Doe Jail Officers 1–10 (specific identities unknown) |
| Job or Title (if known)  | Booking, detention, and supervisory staff at Irving City Jail |
| Street Address           | 305 N. O'Connor Rd.      |
| City and County          | Irving, Dallas County    |
| State and Zip Code       | Texas 75061              |
| Telephone Number         | (972) 273-1010           |
| E-mail Address           |                          |

## II.    Basis for Jurisdiction

This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. Plaintiff seeks redress for the violation of his rights by officers and employees of the City of Irving.

3

This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the claims arise under federal law and seek relief for the deprivation of constitutional rights under color of state law.

Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to the claims occurred in Irving, Texas, within the Northern District of Texas, Dallas Division.

### III.    Factual Allegations

A.    On December 4, 2023, before any interaction with officers, Plaintiff was walking alone in and around the Westgate Center Mall in Irving, Texas. Plaintiff did not enter any business or other establishment during his walk

B.    During his walk, Plaintiff passed "TCH Social," which appeared to be a bar. At the time, the patrons visible through the front windows of TCH Social appeared predominantly Black. In the parking row directly in front of TCH Social, Plaintiff observed a marked Irving police vehicle parked beside one of the only cars in that row. Plaintiff saw the officer looking into the unoccupied vehicle. Based on Plaintiff's own background and experience — including growing up

4

with a father who served as a deputy sheriff and a cousin who is a sitting sheriff — the prolonged focus on an unoccupied parked vehicle in an otherwise empty parking lot seemed unusual. *Plaintiff did not learn what the officer was doing until later; during the body-worn camera recording at approximately 1:44:21, Officer Markham stated that he had run the vehicle's license plate and compared it to the VIN because, according to him, "I thought it might be stolen."*

C.    Later, Plaintiff was walking toward North MacArthur Boulevard using the available sidewalk, crossed an internal mall roadway near Chop Sports Las Colinas, and continued along a grassy area where no sidewalk was present.

D.    As Plaintiff approached the public sidewalk along North MacArthur, he noticed a marked Irving police vehicle pull up and stop just behind him. Plaintiff assumed the vehicle was stopping momentarily for the stop sign at that location. To avoid walking in front of the vehicle, Plaintiff paused on the sidewalk and waited for the vehicle to depart. The vehicle did not move. Plaintiff waited for a few minutes and the vehicle did not depart.

5

E.    Plaintiff then walked approximately one block along North MacArthur, crossed another mall entrance, and sat on the sidewalk to look at his phone. The patrol vehicle remained stationary and continued to observe from the same position.

F.    Believing he was being surveilled, Plaintiff raised both middle fingers toward the vehicle. The vehicle still did not move. After several minutes, Plaintiff began recording on his cellphone and walked back toward the patrol car.

G.    Plaintiff's cellphone recording does not reflect unsteady gait, slurred speech, impaired coordination, or any behavior suggesting intoxication during this approach.

H.    As Plaintiff approached the patrol vehicle, Officer Markham rolled down his window. Plaintiff asked why the officer was parked in a manner that blocked part of the driving lane and, when asked what he would do if a civilian parked the same way, Markham responded, "Probably ask them to move." Plaintiff continued questioning the officer's conduct. Immediately after this criticism, Officer Markham made a brief radio transmission (cellphone video timestamp

6

approximately 0:53), then exited his vehicle and the verbal exchange continued. *When additional officers later arrived, Plaintiff understood that the earlier transmission may have been a request for backup, though he could not hear its content at the time.*

I.   Throughout the verbal exchange, Plaintiff engaged in speech protected by the First Amendment, including criticizing Officer Markham's job performance, questioning his reason for remaining parked in a no-parking zone and obstructing the exit lane, challenging his continued presence, and objecting to his surveillance. Plaintiff at times used profanity, but remained non-violent, non-threatening, and physically compliant throughout.

J.   During the early portion of the verbal exchange, at approximately 1:41:54 on Markham's body-worn camera, Markham described in detail Plaintiff's prior movements through the Westgate Center Mall area and attributed motives to Plaintiff that Plaintiff had never expressed. Markham stated, in substance, that Plaintiff was "pissed off," that he "knew [Plaintiff] was about to jaywalk," that Plaintiff expected a ticket, and that Plaintiff "might have warrants,". Markham

7

also stated, "That's called proactive police work, my friend," and "It's called doing our job."

K.  Plaintiff did not know that Officer Markham had been specifically surveilling him until the patrol vehicle pulled up near the public sidewalk and remained there as Plaintiff waited for it to leave. Markham's statements on his body-worn camera lead Plaintiff to understand that Officer Markham had monitored Plaintiff's movements for a long period of time. Despite this claimed observation period, Markham did not initiate contact, conduct any welfare check, attempt to evaluate Plaintiff for intoxication, or express concern that Plaintiff posed a danger to himself or others.

L.  At approximately 1:43:00 on Officer Markham's body-worn camera, Plaintiff stated "You have no reason whatsoever to suspect that I'm about to commit a crime." Officer Markham immediately responded, "Oh, 100%. Would you like some justification? Because I can come up with it. You're coming from an area where people drink. You could be out in the roadway. And then you get PI. You might be drunk. I can justify that all damn day.". Plaintiff responded by saying "Oh yeah, I

8

know. You can talk shit all day long." expressing his awareness that officers may attempt to invent post-hoc justifications for detentions. This exchange occurred before any inquiry about alcohol use and while Plaintiff's behavior remained calm and non-threatening.

M. Officer Markham repeatedly confirmed the non-custodial nature of the encounter, making statements to the effect of "you are free to go" or "you can leave" (Markham BWC 1:43:49, 1:45:16, 1:45:22, 1:45:24, 1:45:38). These statements confirmed the Plaintiff was under no legal seizure or detention.

N. Officer Hammett arrived on scene at ~1:45:05 and stood behind Plaintiff. At ~1:45:44 Plaintiff comments "other than somebody bullshit profiling me[1], no [I do not have a problem]." At ~1:45:48, Officer Hammett laughs and says "How do you think you are being profiled?" Plaintiff responded with "you just got here. So you've already formed an opinion. … That's great … investigative technique."

O. The body-worn camera shows that officers raised the possibility of

---

[1] Referring to Officer Markham's prolonged surveillance of Plaintiff.

9

intoxication only after Plaintiff criticized their conduct. At ~1:46:11, approximately seven and a half minutes into the interaction—without any change in Plaintiff's behavior—Officer Markham asked for the first time whether Plaintiff had been drinking. Plaintiff had not consumed alcohol or any other intoxicating substance.

P.      Moments later, at ~1:46:19, Officer Markham ordered Plaintiff to place his hands behind his back. Plaintiff raised his phone in his right hand to record Officer Markham's face and said "What's your suspicion that I have been drinking?" and remained still. Plaintiff allowed Markham to grab his right hand and move it behind his back without difficulty. Plaintiff did not resist, pull away, tense, twist, or make any movement indicating non-compliance.

Q.      While Plaintiff remained still and compliant, Officer Andrew Hammett approached from behind and forcefully shoved Plaintiff into the patrol vehicle, which was only a short distance from where Plaintiff had been standing when told he was under arrest. Officers Markham and Hammett then maintained Plaintiff in a high-leverage arm position, holding him in a painful control hold from

10

approximately ~1:46:30 to ~1:47:02, which is visible on the body-worn camera recording.

R.   The arrest occurred immediately after Plaintiff's final request that the officer leave him alone, despite no change in Plaintiff's behavior, condition, or conduct.

S.   Officer Paul Lewis arrived at approximately 1:46:44 on the body-worn camera recording. As he approached, Lewis briefly reached toward Plaintiff but, upon seeing that Plaintiff was standing still and offering no resistance, withdrew his hand. Lewis then produced a second set of handcuffs, applied it to Plaintiff's left wrist, and connected it to the cuff that Officer Markham had already placed on Plaintiff's right wrist. Because Plaintiff is morbidly obese and cannot bring his hands together behind his back without significant strain, two sets of handcuffs were used, after a brief attempt to use one set of handcuffs.

T.   The shove into the patrol vehicle and the prolonged arm hold caused substantial pain and visible bruising on Plaintiff's arm, which Plaintiff photographed the following day.

11

U.  Following the use of force, Officer Hammett stated "that was completely unnecessary". Plaintiff did not pull away, twist, or otherwise resist during this time. Plaintiff was then informed that he was placed under arrest for "public intoxication."

V.  Shortly after placing Plaintiff in handcuffs, Officer Hammett said "wouldn't shut up before, now won't talk,", which Plaintiff understood to be a disparaging comment tied to Plaintiff's protected speech referring to Plaintiff's earlier verbal criticism of their conduct.

W.  After discovering that Mr Lotts has no warrants and no previous arrests, Officer Markham asked "why do you hate cops?" and then went on to ask Plaintiff "Do you want to do that [get a ride home] or do you want to go to jail for public intox[ication]?" Under Texas law, public intoxication requires not only intoxication but also that the person pose a danger to himself or others. Offering to release a person or transport them home is inconsistent with a belief that the person is so intoxicated that they pose a danger to themselves or others.

X.  During post-arrest conversation, Officer Hammett claimed Plaintiff had been "staggering," a statement contradicted by body-worn camera

12

App. 14

footage and the Municipal Court's suppression order (See II below).

Y.  The body-worn camera recordings contain gaps in audio. The recordings do not state why audio is absent during those periods or whether the audio was intentionally disabled. Plaintiff is not aware of any explanation for these gaps, and the missing audio prevents a complete record of the officers' interactions with Plaintiff.

Z.  At no time during Plaintiff's walk through the Westgate Center Mall area, nor during the subsequent face-to-face encounter, did Plaintiff stumble, stagger, slur speech, smell of alcohol, enter a roadway, or display any behavior consistent with intoxication. Plaintiff walked normally, stood upright, and spoke clearly, as reflected in the body-worn camera recordings. At no point did Officer Markham conduct any field sobriety assessment, request coordination tests, perform a welfare check, or take any action suggesting that he believed Plaintiff was impaired or posed a danger to himself or others.

AA.  Plaintiff was transported to the Irving City Jail. At the jail, staff told Plaintiff he would not be booked or processed unless he answered their questions.

13

BB.   At no point did any jail officer ask Plaintiff whether he had consumed alcohol, whether he felt impaired, or whether he posed a danger to himself or others. No sobriety check, medical screening, or danger assessment was performed. The only descriptive statement made about Plaintiff during intake was Officer Markham's remark that Plaintiff was "one of those camera guys," which the jail officer accepted without further inquiry. Plaintiff showed normal speech, gait, and responsiveness and had no odor of alcohol, yet jail staff initiated standard booking procedures without evaluating whether the statutory elements of public intoxication were satisfied.

CC.   Jail staff did not ask Plaintiff any questions about alcohol use, intoxication, or danger to himself or others. Intake officers performed no sobriety screening, no medical assessment, and made no inquiry into the basis for a public-intoxication arrest. The only descriptive statement made about Plaintiff during intake was Officer Markham's comment to jail staff that Plaintiff was "one of those videotape guys," which staff acknowledged without further inquiry.

DD.   After Plaintiff invoked his Fifth Amendment right to remain silent, the

14

jail officer continued questioning him. The officer stated, "These are just medical questions, okay," and repeated questions despite Plaintiff's refusal to answer. This occurs on Markham's body-worn camera at approximately 2:29:15.

EE.  The same jail officer then stated, "Unfortunately, sir, if you don't answer my questions we are going to have to put you in a suicide [restraint/smock]. I won't have to do it, but these are just simple yes or no questions, okay." Plaintiff continued to remain silent after the threat.

FF.  A second jail officer approached and asked Plaintiff, "Are you going to try to hurt yourself while you're here?" Plaintiff, fearing that he would be placed in restraints or subjected to suicide protocols for an unknown amount of time, responded "no."

GG.  Plaintiff was denied access to a phone until he agreed to answer the questions and be fingerprinted. Jail staff repeatedly insisted that Plaintiff could not be booked unless he answered their questions, yet state law does not permit prolonged detention or denial of magistrate appearance based on refusal to answer non-essential questions. Denial

15

of timely phone access prevented Plaintiff from contacting counsel and from arranging timely release, thereby prolonging detention without legitimate justification.

HH.   Other detainees were processed and allowed to call while Plaintiff waited.

II.   Plaintiff was denied shoes, bedding, and items provided to other detainees until he answered their questions.

JJ.   After nearly 7 hours, Plaintiff believed that he would be held indefinitely unless he answered their questions, so he contacted the staff on the intercom and told them he would answer their questions. Plaintiff then waited approximately one more hour for staff to come and ask their questions.

KK.   After questioning Plaintiff, the jailer took his blood pressure, which measured above 200 systolic. Despite this measurement, Plaintiff was not evaluated by any medical professional, was not monitored, and no medical attention of any kind was provided.

LL.   Plaintiff was held past the morning magistrate docket and released

16

later that afternoon. Other detainees were released from their cell before the meeting, sitting in groups and chatting while waiting, then appeared before the magistrate and released after.

MM.  On March 7, 2025, the Irving Municipal Court granted Plaintiff's Motion to Suppress and ordered all evidence resulting from the detention and arrest suppressed. At the suppression hearing, Officer Markham identified several moments on the body-worn camera recording that he claimed showed Plaintiff slurring his speech, but the video did not support those assertions, and the Court suppressed all resulting evidence. Several of the officers' stated justifications for Plaintiff's arrest were contradicted by the body-worn camera recordings, as confirmed during the suppression hearing.

NN.  The charge was dismissed, but the arrest record continues to exist and harms Plaintiff's employment, income, and pilots license.

## IV.  Statement of Claim

**Claim 1 - Fourth Amendment - Unlawful Arrest and False Imprisonment**

17

Officers Markham and Hammett arrested Plaintiff without probable cause and without any objective sign of intoxication or danger. Plaintiff exhibited no signs of intoxication and no behavior indicating danger to himself or others, and Officer Markham made repeated statements that Plaintiff was 'free to go' before initiating the arrest. These facts are inconsistent with a belief that probable cause existed for public intoxication. In addition, during the encounter Officer Markham told Plaintiff that he could either be driven home or taken to jail, which is inconsistent with a belief that Plaintiff was so intoxicated that he posed a danger to himself or others, the statutory requirement for public-intoxication under Texas Penal Code §49.02.

Jail staff's immediate labeling of Plaintiff as "one of those videotape guys," the continuation of questioning after he invoked his Fifth Amendment rights, and the threats of suicide-restraint placement used to coerce compliance demonstrate that Plaintiff's protected expressive conduct — recording and verbally criticizing police — directly triggered escalating adverse treatment.

## Claim 2 - First Amendment — Retaliation for Protected Speech

18

Plaintiff's arrest occurred immediately after he questioned and criticized Markham's conduct. The timing and circumstances indicate the arrest was in retaliation for protected speech. Officers' own recorded statements, including remarks that Plaintiff "wouldn't shut up before" and mocking Plaintiff's protected criticism, further demonstrate retaliatory motive.

Plaintiff's criticism of police conduct is core political speech, fully protected by the First Amendment.

See City of Houston v. Hill, 482 U.S. 451, 462–63 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.")

**Claim 3 - Fourteenth Amendment — Due Process and Deliberate Indifference**

John Doe Jail Officers denied Plaintiff timely access to telephonic communication and legal counsel, delayed his magistrate presentation, used coercive booking procedures, denied medical attention despite hypertensive crisis, and subjected him to punitive conditions without

justification.

The use of suicide-restraint threats to compel Plaintiff to answer questions after he invoked his Fifth Amendment right violates clearly established Fourteenth Amendment law. Plaintiff posed no threat to himself or others, expressed no suicidal ideation, and exhibited normal behavior. The threats were retaliatory, punitive, and coercive, imposed for the purpose of extracting compliance, not for any legitimate safety purpose.

## Claim 4 - Excessive Force

Officers Markham and Hammett used objectively unreasonable force on a completely compliant and non-resisting individual by forcefully shoving Plaintiff into a patrol vehicle and by applying a prolonged pain-compliance hold while Plaintiff was motionless and allowing himself to be handcuffed. The force used was more than de minimis, unnecessary, disproportionate, and resulted in pain and visible bruising. Officer Lewis's conduct upon arrival confirms that Plaintiff presented no resistance or threat. Officer Hammett later acknowledged on body-worn camera that the force used was "completely

20

unnecessary," confirming that Plaintiff was compliant. The force used caused pain and visible bruising, and was more than de minimis.

Plaintiff was fully compliant, motionless, and allowed officers to move his hands without resistance. The shove into the patrol vehicle and the prolonged pain-compliance hold occurred despite Plaintiff offering no physical threat, resistance, or evasive behavior.

The threat to place Plaintiff in suicide restraints without cause is a form of psychological force, used to compel compliance after invocation of constitutional rights.

## Claim 5 - Section 1983 Conspiracy

Officers Markham, Hammett, and Lewis acted together throughout the encounter, including during post-arrest discussions that occurred outside the audible range of body-worn cameras. Their coordinated statements, shared responses to Plaintiff's speech, and unified justifications for the arrest support the existence of joint action to deprive Plaintiff of constitutional rights.

The coordinated treatment continued at the jail, where both Officer

21

Markham and jail staff referenced Plaintiff as "one of those videotape guys," evidencing shared animus and cooperative action between patrol officers and jail personnel.

**Claim 6 - Monell Liability — City of Irving**

Plaintiff's constitutional injuries were caused by the policies, customs, and practices of the City of Irving. The City maintained:

- an established pattern of pretextual public-intoxication arrests by specific officers,

- coercive and unlawful jail-booking practices,

- a widespread and tolerated practice of muting body-worn-camera audio during enforcement encounters, and

- systemic failures in supervision, training, and discipline that allowed these practices to persist.

Each of these customs was a moving force behind Plaintiff's unlawful arrest, excessive force, retaliatory detention, and due-process violations.

**Pattern of Pretextual Public-Intoxication Arrests Known to**

22

**Supervisors.**

Due to the filing deadline, Plaintiff was unable to obtain department-wide arrest data to determine the typical volume of public-intoxication arrests across all patrol officers. However, FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for "public intoxication," while Officer Paul Lewis made 8, and Officer James Markham—who was trained by Hammett as his Field Training Officer—made 15.

Compared to Officer Lewis, a similarly situated patrol officer during the same period, both Hammett and Markham made substantially higher numbers of public-intoxication arrests. The pronounced concentration of PI arrests among Hammett and his trainee Markham, combined with Lewis's significantly lower figure, plausibly indicates a subgroup-level pattern that City supervisors would have observed through routine arrest-report reviews, shift reports, and the department's mandatory supervisory approval of arrests. Despite this clear clustering of arrests involving the same discretionary offense,

23

the City took no corrective action, demonstrating deliberate indifference to the obvious risk that officers were using public-intoxication arrests as pretextual detentions unsupported by probable cause.

This pattern aligns with Plaintiff's own experience, in which he displayed no signs of intoxication, was repeatedly told he was "free to go," and was arrested immediately after criticizing Officer Markham's conduct.

**Unlawful and Coercive Jail-Processing Practices.**

The Irving City Jail maintained a practice of requiring detainees to answer non-essential questions before booking, delaying phone access, and postponing magistrate presentation until detainees complied—all in violation of Texas law. In Plaintiff's case, jail officers refused to process him, denied him phone access, threatened restraints without cause, withheld shoes and bedding, and held him for many hours until he agreed to answer questions.

These practices were not the actions of a rogue officer; they were standard jail procedures applied consistently to Plaintiff over many

24

hours, in the presence of multiple staff members. This plausibly alleges a continuing operational custom for which the City is liable under Monell.The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision.

Together, these facts plausibly show a custom of using PI arrests as a discretionary tool to detain individuals without probable cause or to punish protected speech. This unconstitutional custom was a moving force behind Plaintiff's injuries.

**Threat-Based Coercive Intake Protocols**

Body-worn camera footage shows jail staff using suicide-restraint threats to coerce arrestees, including Plaintiff, into answering booking questions after invocation of Fifth Amendment rights. Jail officers continued questioning Plaintiff after he invoked his right to remain silent, stating they would "have to put [him] in a suicide [restraint/smock]" if he did not answer. A separate officer then asked

25

Plaintiff whether he intended to harm himself, despite Plaintiff showing no signs of distress or suicidal behavior. These coercive threats were delivered as part of standard intake procedure and not as individualized safety assessments, demonstrating a jail-level custom of compelling compliance through punitive use of suicide-watch procedures.

**Persistent Practice of Muting Body-Worn-Camera Audio.**

Plaintiff's body-worn-camera recordings contain unexplained gaps in audio during an enforcement encounter, and officers provided no explanation.

Plaintiff alleges on information and belief that this practice was widespread and tolerated at the time of his arrest, enabling officers to avoid transparency and accountability and facilitating retaliatory or unjustified arrests without fear of review. Courts routinely recognize that municipal toleration of BWC muting constitutes a plausible unconstitutional custom at the pleading stage.

**Failure to Train, Supervise, and Discipline.**

The City failed to train officers on:

26

- the probable-cause requirements for public intoxication (which requires both intoxication and danger to self or others),

- the prohibition on retaliatory arrests based on protected speech,

- lawful use of force on compliant subjects,

- the legal limits of investigatory encounters, and

- mandatory jail-processing and magistrate-presentation requirements.

The City also failed to supervise or discipline officers whose arrest patterns deviated sharply from similarly situated peers, including Hammett and Markham, despite reviewing each PI arrest for approval. This supervisory inaction—combined with high PI arrest counts, use of PI to justify discretionary detentions, and the lack of any corrective response—demonstrates deliberate indifference under Connick v. Thompson and related precedent.

The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision.

27

**Moving Force.**

The City's customs and failures were the moving force behind Plaintiff's constitutional injuries. The arresting officers acted consistently with the identified customs—using PI as a pretext, retaliating against protected speech, applying excessive force without provocation, withholding procedural rights at booking, and selectively muting body-camera audio—all of which directly caused Plaintiff's damages.

The jail's coercive questioning, suicide-restraint threats, and unquestioning acceptance of a baseless PI arrest demonstrate that City customs predetermined Plaintiff's treatment, making these customs the direct moving force behind the violations he suffered.

## State Criminal Case Outcome

On March 7, 2025, the Irving Municipal Court granted Plaintiff's Motion to Suppress and ordered all evidence resulting from the detention and arrest suppressed. The Court issued no written findings. The criminal charge was dismissed, but the arrest record remains and continues to harm Plaintiff's employment, licensing, and background

28

checks.

## V.    Relief

The Plaintiff, Dale Lotts, respectfully prays for judgment against the Defendants, jointly and severally, and requests the Court grant the following relief:

1.    Compensatory and General Damages: An award of compensatory damages in an amount to be determined by the trier of fact, sufficient to compensate the Plaintiff for all injuries suffered, including, but not limited to:

- costs incurred defending the public-intoxication charge;

- legal fees and expenses relating to expunction efforts;

- lost income;

- reputational harm;

- emotional distress;

- ongoing harm to employment, background checks, and professional licensing (including FAA medical requirements).

29

2.    Punitive damages against the individual officers for reckless or callous disregard of Plaintiff's rights.

3.    Injunctive relief requiring correction or removal of the arrest record.

4.    Any and all other relief, whether legal or equitable, as the Court deems just and proper.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

30

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:   <u>December 3, 2025</u>

Signature of Plaintiff   <u>Dale Lotts</u>

Printed Name of Plaintiff   <u>Dale Lotts</u>

31

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| | § | |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

**CITY ATTORNEY'S OFFICE**
**CITY OF IRVING, TEXAS**


By:  /s/Saul Pedregon_____
**SAUL PEDREGON**
Senior Assistant City Attorney
State Bar No. 00797231
Email:  spedregon@IrvingTX.gov
**JASON D. McCLAIN**
Senior Assistant City Attorney
State Bar No. 00797032
Email:  jmcclain@IrvingTX.gov
825 West Irving Boulevard
Irving, Texas 75060
Telephone: 972.721.2541
Facsimile:  972.721.2750


**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

**ATTORNEYS FOR DEFENDANTS CITY OF
IRVING, JAMES MARKHAM, ANDREW
HAMMETT, and PAUL LEWIS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following parties or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Dale Lotts
401 E. 8th St.
Ste. 214 PMB 7860
Sioux Falls and Minnehaha, SD 57103

/s/Saul Pedregon
**SAUL PEDREGON**
Assistant City Attorney

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF SERVICE

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .....................................................................................................................1

MOTION TO DISMISS STANDARD ....................................................................................2

BODY WORN CAMERA ........................................................................................................4

ARGUMENTS AND AUTHORITIES ....................................................................................5

I.      Plaintiff's Official Capacity Claims Are Duplicative and Should Be Dismissed ................5

II.     Plaintiff's Claims Are Barred by Qualified Immunity ...........................................6

III.    First Amendment Claims .......................................................................................21

IV.     Conspiracy Claims .................................................................................................23

CONCLUSION ......................................................................................................................25

# TABLE OF AUTHORITIES

### Cases

*Alexander v. City of Round Rock*,
854 F.3d 298, 308 (5th Cir. 2017) ........................................................................ 23

*Allen v. Cisneros*,
815 F.3d 239, 244 (5th Cir. 2016) ........................................................................ 22

*Anderson v. Pasadena Independent School District*,
184 F.3d 439 (5th Cir. 1999) ............................................................................... 5

*Ashcroft v. al-Kidd*,
563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) ........................................... 3, 4, 20

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ............................................................................... 3, 20

*Babb v. Dorman*,
33 F.3d 472, 479 (5th Cir. 1994) ........................................................................ 16

*Bailey v. Ramos*,
125 F.4th 667, 685 (5th Cir. 2025) ..................................................................... 22

*Baker v. McCollan*,
443 U.S. 137, 145, 99 S. Ct. 2689, 2695 n.3 (1979) ........................................... 6

*Banda v. State*,
890 S.W.2d 42, 52 (Tex. Crim. App. 1994) ....................................................... 11

*Batyukova v. Doege*,
994 F.3d 717, 730 (5th Cir. 2021) ...................................................................... 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ............................................................................... 3, 20

*Brooks v. City of West Point, Miss.*,
639 Fed.App'x 986, 990 (5th Cir. 2016) ............................................................ 17

*Brosseau v. Haugen*,
543 U.S. 194, 198, (2004) (per curiam) ............................................................. 20

*Buehler v. Dear*,
27 F.4th 969, 992 (5th Cir. 2022) ....................................................................... 13

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Burns-Toole v. Byrne*,
  11 F.3d 1270 (5th Cir.) ..................................................................................................... 3

*Carnaby v. City of Houston*,
  636 F.3d 183, 187 (5th Cir. 2011) ............................................................................... 5, 19

*Carroll v. Ellington*,
  800 F.3d 154, 172 (5th Cir. 2015) .................................................................................. 15

*Chacon v. Copeland*,
  577 F. App'x 355, 358 (5th Cir. 2014) ............................................................................. 5

*Childers v. Iglesias*,
  848 F.3d 412, 415 (5th Cir. 2017) .................................................................................. 13

*City of Houston v. Nicolai*,
  695 S.W.3d 489, 512 (Tex. App. 2024) .......................................................................... 10

*Collins v. Bauer*,
  2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) ........................................................ 24

*County of Sacramento v. Lewis*,
  523 U.S. 833, 118 S. Ct. 1708 (1998) .............................................................................. 6

*Curran v. Aleshire*,
  800 F.3d 656, 664 (5th Cir. 2015) .................................................................................... 5

*Degenhardt v. Bintliff*,
  117 F.4th 747, 758 (5th Cir. 2024) ................................................................................. 22

*Devenpeck v. Alford*,
  543 U.S. 146, 153 (2004) ............................................................................................... 7, 8

*Deville v. Marcantel*,
  567 F.3d 156, 167 (5th Cir.2009) (per curiam) .............................................................. 19

*Esquivel v. Eastburn*,
  No. SA-20-CV-00377-OLG, 2021 WL 1667132, at *4 (W.D. Tex. Apr. 8, 2021) ................. 16

*Freeman v. Gore*,
  483 F.3d 404, 416 (5th Cir. 2007) .............................................................................. 16, 17

*Gallagher v. State*,
  778 S.W.2d 153, 154 (Tex. App. 1989) .......................................................................... 10

*Gentilello v. Rege*,
  627 F.3d 540, 544 (5th Cir. 2010) .................................................................................. 20

- iii -

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Gladden v. Roach*,
864 F.2d 1196 (5th Cir. 1989) ................................................................................... 7

*Graham v. Connor*,
490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989), 490 U.S. at 396, 109 S.Ct. 1865.......... 16, 19

*Hanks v. Rogers*,
853 F.3d 738, 744 (5th Cir. 2017) ........................................................................... 5, 19

*Hilliard v. Ferguson*,
30 F.3d 649, 653 (5th Cir. 1994) ................................................................................ 24

*Hodge v. Engleman*,
90 F.4th 840, 844-45 (5th Cir. 2024)........................................................................... 4

*Illinois v. Gates*,
462 U.S. 213, 243 n.13 (1983)..................................................................................... 7

*Jabary v. City of Allen*,
547 F. App'x 600, 610 (5th Cir. 2013)........................................................................ 23

*Kaley v. United States*,
571 U.S. 320, 338 (2014)............................................................................................. 7

*Keenan v. Tejeda*,
290 F.3d 252, 261-62 (5th Cir. 2002) ........................................................................ 21

*Kelson v. Clark*,
1 F.4th 411, 416 (5th Cir. 2021) .................................................................................. 3

*Kentucky v. Graham*,
473 U.S. 159, 166 (1985)............................................................................................. 6

*Lago-Planas v. Crocker*,
No. 09-cv-2075, 2011 WL 588053, at *1–3 (N.D. Tex. Jan. 19, 2011),
adopted, 2011 WL 588719 (Feb. 9, 2011) ................................................................ 11

*Livingston v. Texas*,
2023 WL 4931923, at *3 n.3 (5th Cir. Aug. 2, 2023)...................................... 7, 10, 11

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383, 387 (5th Cir. 2010) ............................................................................... 4

*Lynch v. Cannatella*,
810 F.2d 1363, 1369–70 (5th Cir. 1987) .................................................................... 24

*MacCloskey v. City of Dallas*,
No. 97-cv-587, 1998 WL 119535, at *2 (N.D. Tex. Mar. 9, 1998)........................... 10

- iv -

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Malley v. Briggs,*
    475 U.S. 335, 341 (1986) ........................................................................................ 3

*Mendenhall v. Riser,*
    213 F.3d 226, 230 (5th Cir. 2000) ......................................................................... 7

*Mesa v. Prejean,*
    543 F.3d 264, 273 (5th Cir. 2008) ....................................................................... 21

*Morgan v. Swanson,*
    659 F.3d 359, 370 (5th Cir. 2011) .............................................................. 3, 4, 20

*Mullenix v. Luna,*
    577 U.S. 7, 11 (2015) ........................................................................................... 20

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
    200 F.2d 911, 914 (5th Cir. 1953) ....................................................................... 24

*Nieves v. Bartlett,*
    587 U.S. 391, 403 (2019) ..................................................................................... 22

*Ordonez v. Gonzalez,*
    No. EP-23-CV-99-KC, 2024 WL 1250181, at *7 (W.D. Tex. Mar. 25, 2024) ....................... 13

*Padilla v. Mason,*
    169 S.W.3d 493, 503 (Tex. App. 2005) ............................................................... 11

*Palo ex rel. Estate of Palo v. Dallas Cnty.,*
    2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) ............................................ 6

*Pfannstiel v. City of Marion,*
    918 F.2d 1178, 1187 (5th Cir. 1990) ................................................................... 23

*Piazza v. Mayne,*
    217 F.3d 239, 246 (5th Cir. 2000) ....................................................................... 15

*Pierson v. Ray,*
    386 U.S 547, 555 (1967) ...................................................................................... 16

*Poole v. City of Shreveport,*
    691 F.3d 624, 629 (5th Cir. 2012) ....................................................................... 19

*Prim v. Stein,*
    6 F.4th 584, 593 (5th Cir. 2021) .......................................................................... 10

*Raley v. Fraser,*
    747 F.2d 287, 290 (5th Cir. 1984) ....................................................................... 11

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Ramirez v. Martinez*,
716 F.3d 369, 376 (5th Cir. 2013) .................................................................................................. 15

*Rich v. Palko*,
920 F.3d 288, 294 (5th Cir. 2019) .................................................................................................. 3

*Roque v. Harvel*,
995 F.3d 325, 331 (5th Cir. 2021) .................................................................................................. 3

*Rose v. Herrera*,
2023 WL 10476031, at *6 (S.D. Tex. Feb. 8, 2023) ...................................................................... 8

*Russell v. Altom*,
546 F. App'x 432, 436-37 (5th Cir. 2013) ..................................................................................... 21

*Salas v. Carpenter*,
980 F.2d 299 (5th Cir. 1992) ......................................................................................................... 3

*Scott v. Harris*,
550 U.S. 372, 380 (2007).............................................................................................................. 5

*Siglar v. Hightower*,
112 F.3d 191, 193 (5th Cir.1997) ................................................................................................ 17

*Simpson v. State*,
886 S.W.2d 449, 455 (Tex. App. 1994)........................................................................................ 11

*Spencer v. Rau*,
542 F. Supp. 2d 583, 591 (W.D. Tex. 2007) ................................................................................ 13

*Spiller v. Harris Cnty., Texas*,
113 F.4th 573, 579 (5th Cir. 2024) .............................................................................................. 12

*State v. Martinez*,
569 S.W.3d 621, 629 (Tex. Crim. App. 2019) ...................................................................... 10, 11

*Stephenson v. McClelland*,
632 Fed. App'x 177, 184 (5th Cir. 2015)..................................................................................... 16

*Swilley v. City of Houston*,
457 Fed. Appx. 400, 404 (5th Cir. 2012)..................................................................................... 24

*Terrell v. Town of Woodworth*,
2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) .......................................................................... 4

*Terry v. Ohio*,
392 U.S. 1, 8 (1968)...................................................................................................................... 16

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Texas DPS v. Petta*,
  44 S.W.3d 575, 579 (Tex. 2001)................................................................................ 17

*Texas v. Brown*,
  460 U.S. 730, 742 (1983)........................................................................................ 15

*Thompson v. City of Galveston*,
  979 F. Supp. 504, 512 (S.D. Tex. 1997) .................................................................. 24

*Tolan v. Cotton*,
  572 U.S. 650, 656, (2014) ........................................................................................ 16

*Traylor v. Yorka*,
  2024 WL 209444, at *4 (5th Cir. 2024) ................................................................... 13

*Turner v. Driver*,
  848 F. 3d 678, 685-86 (5th Cir. 2017) ..................................................................... 20

*United States v. Hearn*,
  563 F.3d 95, 103 (5th Cir. 2009) ............................................................................. 15

*United States v. Morris*,
  477 F.2d 657 (5th Cir. 1973) ..................................................................................... 7

*United States v. Tinkle*,
  655 F.2d 617 (5th Cir. 1981) ..................................................................................... 7

*United States v. Wadley*,
  59 F.3d 510 (5th Cir. 1995) ....................................................................................... 7

*Vincent v. City of Sulphur*,
  805 F.3d 543, 547 (5th Cir. 2015) ........................................................................... 20

*Wafer v. Molina*,
  No. 3:14-CV-0976-M-BH, 2014 WL 3533698, at *2 (N.D. Tex. July 15, 2014 .................... 15

*Walters v. McMahen*,
  795 F.Supp.2d 350, 358 (D. Md. 2011).................................................................... 24

*Westfall v. Luna*,
  903 F.3d 534, 544, 549 (5th Cir. 2018) .............................................................. 13, 21

*Will v. Michigan Department of State Police*,
  491 U.S. 58, 109 S. Ct. 2304 (1989)......................................................................... 5

*Zavala v. Harmon*,
  2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2022)................................................ 18

- vii -
**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Statutes*

FED. R. CIV. P. 8 ............................................................................................................ 2

TEX. CODE CRIM. PROC., art 14.01 ............................................................................... 7

TEX. PENAL CODE § 1.07 ............................................................................................. 11

TEX. PENAL CODE § 38.03 ........................................................................................... 14

TEX. PENAL CODE § 38.15 ........................................................................................... 12

TEX. PENAL CODE § 9.51 ............................................................................................. 16

TEX. PENAL CODE. § 38.02 .......................................................................................... 14

TEX. PENAL. CODE § 49.02 .......................................................................................... 10

Texas Penal Code § 38.15 ............................................................................................. 13

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| | § | |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants James Markham ("Markham"), Andrew Hammett ("Hammett"), and Paul Lewis ("Lewis") and file this Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure12(b)(6) and Brief in Support Thereof.

## BACKGROUND

This case arises out of Plaintiff's arrest for Public Intoxication. Plaintiff files this lawsuit alleging numerous claims against Markham (the officer who initially contacted and ultimately arrested Plaintiff), Hammett (an officer who provided backup to Markham), and Lewis (another officer who provided backup to Markham). Plaintiff also sued the City of Irving, the entity which employed each of the individual defendants. [Dkt. 3, § II].

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT** **PAGE 1**

Plaintiff sues Defendants Markham, Hammett, and Lewis alleging various violations of the U.S. Constitution under 42 U.S.C. § 1983. [*Id.*, § IV].[1] Specifically, Plaintiff alleges:

Claim 1 - Fourth Amendment - Unlawful Arrest and False Imprisonment. [*Id.*, § IV].

Claim 2 - First Amendment - Retaliation for Protected Speech. [*Id.*].

Claim 4 - Excessive Force. [*Id.*].

Claim 5 - Section 1983 Conspiracy. [*Id.*].

The Court should dismiss all of the claims against Markham, Hammett, and Lewis because they are entitled to qualified immunity and because Plaintiff has failed to state a claim on which relief may be granted. Plaintiff's allegations and evidence establish that Defendants had probable cause to arrest him for multiple violations of the Penal Code. Plaintiff's allegations in support of his excessive force claim fail as a matter of law because they do not establish any injury sufficient to support such a claim. Additionally, Plaintiff offers no well-pled allegations to establish that Defendants violated clearly established law when they arrested him for violations of the Penal Code. Finally, Plaintiff cannot establish a § 1983 conspiracy.

## MOTION TO DISMISS STANDARD

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented via pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement ... showing that the pleader is entitled to relief." FED. R. CIV. P. 8 (a)(2). The claims must include enough factual

---

[1] While Plaintiff clearly states four claims for relief against Markham, Hammett, and Lewis (Claims 1, 2, 4, and 5) on pages 17-22 of his Complaint, he references, alludes to, and perhaps even alleges other claims against Defendants throughout his pleading. Defendants have erred on the side of caution and addressed all the claims that Defendants believe Plaintiff is or may be raising. However, if the Court believes Defendants missed an allegation raised or pled by the Plaintiff, they respectfully request an opportunity to provide supplemental briefing on that claim or claims.

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 2**

allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court does not accept as true "a number of categories of statements, including legal conclusions; mere 'labels'; 'threadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (cleaned up) (quoting *Ashcroft*, 556 U.S. at 677-78).

Furthermore, "[t]he burden is on the plaintiff to overcome a defendant's defense of qualified immunity." *Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.), *cert. denied*, 512 U.S. 1207 (1994); accord, *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992). A public official can invoke the defense of qualified immunity to avoid liability when sued in his individual capacity for the performance of his duties. *See Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019). Qualified immunity shields a public official but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Roque v. Harvel*, 995 F.3d 325, 331 (5th Cir. 2021); *see also Morgan*, 659 F.3d at 370. Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law,' so [courts] do not deny immunity unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan*, 659 F.3d at 371 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) and *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011)).

At the motion to dismiss stage, the defendant is entitled to qualified immunity unless the plaintiff meets his burden "to demonstrate the inapplicability of the defense." *Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021). To do so, the plaintiff must allege facts sufficient to plausibly

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**         **PAGE 3**

show that (1) the defendant violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established at the time of the alleged violation. *Morgan*, 659 F.3d at 371 (citing *al-Kidd*, 563 U.S. at 735).

## BODY WORN CAMERA

On at least 12 separate occasions in his Complaint, Plaintiff specifically refers to the Body Worn Camera (BWC) Video of Defendant Markham to support his allegations (hereinafter, the "Markham BWC Video"). [Dkt. 3, §§ III (B); III (J); III (K); III (L); III (M); III (O); III (Q); III (S); III (X); III (Y); III (DD); and III (MM)]. Plaintiff alludes to the video on multiple other occasions. As of the date of the filing of this motion, the video is not included on the Court's docket. As such, Defendants have attached a copy to this Motion. (Appx. 1).

The Court may review "any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citations omitted). Body-camera footage is a "document" that may be attached to a motion to dismiss. *See Hodge v. Engleman*, 90 F.4th 840, 844-45 (5th Cir. 2024). Because Plaintiff repeatedly refers to Markham's BWC Video in his Complaint, the court in deciding Defendants' motion to dismiss can consider this video evidence. *See, e.g., Terrell v. Town of Woodworth*, 2024 WL 667690, at *5 (5th Cir. Feb. 19, 2024) (per curiam) ("[T]he district court properly considered the video evidence from the officers' two body cams and Gonzales's dash cam that Defendants attached to their motion to dismiss because Terrell consistently referenced the video evidence in his complaint . . . and the video evidence is clearly central to his claims against Defendants in this suit.").

Moreover, while a plaintiff's version of the facts is generally accepted as true in a motion based on qualified immunity, a "narrow exception" to this approach exists where "video evidence undeniably contradicts the plaintiff's version of the facts such that no reasonable jury could believe it." *Chacon v. Copeland*, 577 F. App'x 355, 358 (5th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). When such video evidence exists, the Fifth Circuit has said that courts "need not rely on the plaintiff's description of the facts ... but instead consider 'the facts in the light depicted by the videotape.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott*, 550 U.S. at 381, 127 S.Ct. 1769); *see also Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("[A] plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)).

## ARGUMENT AND AUTHORITIES

### I.     Plaintiff's Official Capacity Claims Are Duplicative and Should Be Dismissed

Plaintiff has not specified whether he is suing Defendants Markham, Hammett, and Lewis in their official or individual capacities, or both. Plaintiff has named the City of Irving as a defendant in this matter. Plaintiff has further alleged that he "seeks redress for the violation of his rights by officers and employees of the City of Irving." [Dkt. 3, § II]. To the extent that Plaintiff is suing these Defendants in their official capacities, his official capacity claims are duplicative of the claims asserted against Defendant City and should be dismissed. A lawsuit against a governmental official in his official capacity is not a lawsuit against the individual but, rather, is a suit against the official's office and is no different than a suit against the governmental unit which employs the official. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Anderson v. Pasadena Independent School District*, 184 F.3d 439, 443 (5th

Cir. 1999). Claims against government agents in their official capacities are duplicative when claims are made against the government entity. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity."). It is therefore appropriate in such circumstances for the court to dismiss the official-capacity claims. *See, e.g., Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county).

## II. Plaintiff's Claims are Barred by Qualified Immunity

Markham, Hammett, and Lewis assert that they are entitled to qualified immunity on Plaintiff's claims. Consequently, in order to address Plaintiff's constitutional claims against these Defendants, the Court must determine whether Plaintiff has pleaded facts with sufficient specificity to overcome these Defendants' entitlement to qualified immunity.

### A. Plaintiff Fails to Establish a Constitutional Violation

Plaintiff's claims against Markham, Hammett, and Lewis fail at the outset because Plaintiff fails to allege facts showing he was subjected to unconstitutional conduct at the hands of Defendants. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695 n.3 (1979). Before a plaintiff can successfully assert Section 1983 as a valid cause of action, he must first identify constitutionally protected conduct he contends a defendant has infringed. *County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 1714 n.5 (1998). Plaintiff does not allege facts which, even if true, show Defendants engaged in conduct violative of the rights discussed *infra*.

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**          **PAGE 6**

### 1. Plaintiff's Probable Cause Claim Fails

Plaintiff claims that Defendants violated his rights when "Officers Markham and Hammett arrested Plaintiff without probable cause and without any objective sign of intoxication or danger." [Dkt. 3, § IV Claim 1].[2] Plaintiff, however, has failed to plead a viable wrongful arrest claim. He offers no more than conclusory allegations and fails to properly address the elements of the offense for which he was arrested. (*Id*.).

Probable cause exists when the facts within the officer's knowledge and facts of which he has reasonably reliable information would be sufficient to cause a prudent person to believe that the suspect has committed or is committing a criminal offense. TEX. CODE CRIM. PROC. art. 14.01(b); *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995); *Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir. 1989); *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973). Probable cause may be present even though the evidence before the officer would be insufficient to support a finding of guilt necessary to convict. *United States v. Tinkle*, 655 F.2d 617, 621 (5th Cir. 1981), cert. denied, 455 U.S. 924 (1982). Moreover, probable cause to arrest "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). And in the qualified immunity context, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

Moreover, "[t]he existence of probable cause *for any offense* is sufficient to defeat a claim of false arrest." *Livingston v. Texas*, 2023 WL 4931923, at *3 n.3 (5th Cir. Aug. 2, 2023) (per curiam) (emphasis added) (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that a warrantless arrest is justified where the facts known to the officer

---

[2] Notably, Plaintiff does not allege any wrongdoing by Defendant Lewis. [Dkt. 3, § IV Claim 1].

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                                        **PAGE 7**

provide probable cause to believe a crime has been committed, even where the offense charged is not closely related to the offense for which the officer has probable cause); *Rose v. Herrera*, 2023 WL 10476031, at *6 (S.D. Tex. Feb. 8, 2023) ("The existence of probable cause for any offense is sufficient to defeat a claim of false arrest, even if the offense giving rise to probable cause is not the same as, or even closely related to, the offense articulated by the officer at the scene." (citing *Devenpeck*, 543 U.S. at 153-55)). As discussed in Section II(A)(1)(b) & (c), *infra*, there was probable cause to arrest Plaintiff for at least one of, if not all, of the offenses of Public Intoxication, Failure to Identify, Interference with Public Duties, and Resisting Arrest.

### a. Markham BWC Video

The initial contact between Plaintiff and Defendant Markham occurred at approximately 1:37 a.m. on December 4, 2023.[3] (Appx. 1, 00:01). Markham was sitting in his marked police vehicle when Plaintiff approached the vehicle and leaned on the driver's side sideview mirror. (*Id.*). Plaintiff was upset that Markham's presence had prevented him from jaywalking. (*Id.* at 02:11, 02:29, 03:08, 09:02). Markham exited his vehicle to speak with Plaintiff. (*Id.* at 00:29).

From the inception of their interaction, Plaintiff was combative and belligerent with Markham. Plaintiff admitted that he raised both middle fingers and "flipped" Markham off prior to Markham activating his BWC. (*Id.* at 02:22-02:25; Dkt. 3, Sec. III ¶ F). Plaintiff proceeded to refer to Markham as somebody "that thinks they're above the law" (Appx. 1, 01:24); "a dick" (*Id.* at 01:51); and "a fucking tyrant" (*Id.* at 04:51). Plaintiff further flatly stated "I don't fucking like cops." (*Id.* at 03:46) Markham attempted to de-escalate the situation and calmly engaged with Plaintiff. (*See, generally*, Appx. 1).

During his interaction with Markham, Plaintiff exhibited slurred speech and unsteady balance. *See, generally*, Appx. 1. For example, Plaintiff stumbled over his words while

---

[3] There is a time and date stamp in the upper right corner of the Markham BWC Video. (Appx. 1).

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 8**

discussing his potentially jaywalking - "Well you're sitting here, you know, waiting for me to jaywalk for." (Appx. 1, 02:29). And although the video clearly shows that Plaintiff approached Markham, Plaintiff becomes confused and asserts that Markham approached him. (*Id*. at 05:19-05:42). Moreover, Plaintiff had previously asked Markham why he was parked at that location (*Id*. at 00:30), to which Markham replied that he was performing his duties of traffic enforcement (*Id*. at 00:59-01:06); a mere 3 minutes later, Plaintiff again asks Markham "What are you waiting here for? What's your duty here?" (*Id*. at 04:12), to which Markham again replies "Traffic enforcement" (*Id*. at 04:15). Hammett appeared on the scene approximately five-and-a-half minutes into the BWC video (*Id*. at 05:22) and noticed Plaintiff "staggering when he was walking" (*Id*. at 13:58).

The arrest commences approximately six-and-a-half minutes after Plaintiff approached Markham's vehicle when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck off." (*Id*. at 06:38).[4] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). Hammett assists Markham subdue Plaintiff (*Id*. at 06:46). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47). After a brief struggle, Plaintiff is handcuffed, he is subdued,

---

[4] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 9**

and the use of force ceases. (*Id*. at 07:18).[5] Approximately 38 seconds elapse from the time Markham reaches for Plaintiff's arm (*Id*. at 06:45) to the time when Plaintiff is subdued and the use of force ceases (*Id*. at 07:18).

### b. Public Intoxication

Under Texas law, "a person commits the offense of public intoxication if 'the person appears in a public place while intoxicated to the degree that the person may endanger [herself] or another.'" *City of Houston v. Nicolai*, 695 S.W.3d 489, 512 (Tex. App. 2024) (quoting TEX. PENAL. CODE § 49.02(a)). To arrest someone for public intoxication, law enforcement officers must therefore have probable cause to believe both that someone is intoxicated and that they are a danger to themselves or others. *See Prim v. Stein*, 6 F.4th 584, 593 (5th Cir. 2021) (citing *Gallagher v. State*, 778 S.W.2d 153, 154 (Tex. App. 1989)). As to the first element, courts have considered the following factors: (1) physical symptoms of intoxication such as difficulty standing, slurred speech, and bloodshot eyes; (2) whether the individual failed tests for intoxication; (3) whether the individual admitted to drinking alcohol or police saw or had reason to believe someone had drunk alcohol; or (4) other circumstantial indicators of intoxication including the smell of alcohol on someone's breath or person and whether the individual is combative or belligerent. *See Prim*, 6 F.4th at 593; *Livingston v. Texas*, 632 F. Supp. 3d 711, 723 (S.D. Tex. 2022), aff'd, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023; *MacCloskey v. City of Dallas*, No. 97-cv-587, 1998 WL 119535, at *2 (N.D. Tex. Mar. 9, 1998); *State v. Martinez*, 569 S.W.3d 621, 629 (Tex. Crim. App. 2019). For the second element, courts consider factors that suggest a potential for danger, such as whether the individual was in the middle of the street or unable to walk to their destination safely, if the individual had recently driven or

---

[5] Although Plaintiff was quickly immobilized, the time during which he was restrained was extended "[b]ecause Plaintiff is morbidly obese and cannot bring his hands together behind his back without significant strain, two sets of handcuffs were used, after a brief attempt to use one set of handcuffs." [Dkt. 3, § III ¶ S].

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**     **PAGE 10**

indicated an intent to drive a car, or whether they physically resisted arrest or engaged in violent conduct. *Martinez*, 569 S.W.3d at 629; *Simpson v. State*, 886 S.W.2d 449, 455 (Tex. App. 1994); *see also Raley v. Fraser*, 747 F.2d 287, 290 (5th Cir. 1984).

In *Livingston*, there was probable cause to arrest for public intoxication a plaintiff who directed a "profanity-laden tirade" at police officers. 632 F. Supp. 3d at 723. Other cases in which there was probable cause to arrest similarly involved not only profanity but also additional indicators of intoxication and danger. *See, e.g., Lago-Planas v. Crocker*, No. 09-cv-2075, 2011 WL 588053, at *1–3 (N.D. Tex. Jan. 19, 2011), adopted, 2011 WL 588719 (Feb. 9, 2011); *Padilla v. Mason*, 169 S.W.3d 493, 503 (Tex. App. 2005).

As discussed in greater detail in Section II(A)(1)(a), *supra*, Plaintiff was combative and belligerent in his interactions with Markham and Hammett. Further, Plaintiff exhibited confusion, slurred speech, and unsteady balance during their interaction. Moreover, Markham was concerned for Plaintiff's safety as he had indicated the intent to jaywalk and be out in the roadway while drunk.[6] As such, Defendants had probable cause to arrest Plaintiff for the offense of Public Intoxication.

### c. Other Violations

In addition to the above violation, the Markham BWC Video clearly demonstrates that Defendants had probable cause to arrest Plaintiff for at least one of, if not all, of the following violations:

---

[6] Plaintiff asserts that Markham offered to give him a ride home, and that "[o]ffering to release a person or transport them home is inconsistent with a belief that the person is so intoxicated that they pose a danger to themselves or others." [Dkt. 3, § III ¶ W]. However, returning a person to their domicile would remove them from a public place. *See Banda v. State*, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994) ("A public place is any place to which the public or a substantial group of the public has access and includes but is not limited to streets, highways, and common areas of schools, hospitals, apartment houses, office buildings, transport facilities and shops.") (citing TEX. PENAL CODE § 1.07(a)(29)).

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 11**

### 1. Interference With Public Duties

The Markham BWC video shows that Defendants had probable cause to arrest Plaintiff for Interference with Public Duties. Section 38.15(a)(1) of the Texas Penal Code provides: "A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with ... a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law."

During his interaction with Markham, Plaintiff was aware that Markham was performing his police duties when he engaged Markham. Specifically, when Plaintiff initially contacted Markham and asked "What are you doing parked here?" (Appx. 1, 00:30), Markham responds that "I am performing my police duties" (*Id*. at 00:59) and "I want to watch traffic – I can totally do that." (*Id*. at 01:03). In acknowledgement, Plaintiff replied "Yeah, you can." (*Id*. at 01:06). Later, Plaintiff again asks Markham "What's your duty here?" (*Id*. at 04:12), and Markham reiterated that he is engaged in "traffic enforcement." (*Id*. at 04:15).

After Markham informed Plaintiff – and Plaintiff acknowledged – that Markham was performing his duties of traffic enforcement, Markham advised Plaintiff that he was free to "leave" or "go," and to "leave me alone." (*Id*. at 04:07, 05:33, and 05:40). Plaintiff replied that "I'm free to stay" (*Id*. at 05:42), to which Markham replied "Yeah, you are. Just back up." (*Id*. at 05:43). Plaintiff specifically disregarded Markham's instruction and stated "I don't need to back up." (*Id*. at 05:49). Markham then told Plaintiff to "Just stay away from me" (*Id*. at 05:50), to which Plaintiff replied "Well, you can fucking leave." (*Id*. at 05:51) while again specifically disregarding Markham's instruction.

Probable cause exists when a person does not follow instructions necessary for an officer to perform their duties. *See Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 579 (5th Cir. 2024)

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 12**

(finding that officer had probable cause to arrest plaintiff for interference with public duties when he failed to comply with instructions to move away from a crime scene); *Westfall v. Luna*, 903 F.3d 534, 544 (5th Cir. 2018) (finding that officer had probable cause to arrest plaintiff for interfering with his duties when she did not follow his instructions not to go into a home); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017) (finding that officer had probable cause to arrest plaintiff for violating officer's instructions when plaintiff "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech"); *Ordonez v. Gonzalez*, No. EP-23-CV-99-KC, 2024 WL 1250181, at *7 (W.D. Tex. Mar. 25, 2024) ("[plaintiff's] failure to comply with a police officer's instruction to stand back is not protected speech and gives the officer probable cause to arrest under Texas Penal Code § 38.15"); *Traylor v. Yorka*, 2024 WL 209444, at *4 (5th Cir. 2024) (finding probable cause to arrest for interference where "uncontested evidence show[ed] that [the plaintiff] failed to comply with [the officer's] numerous orders to leave"); *Spencer v. Rau*, 542 F. Supp. 2d 583, 591 (W.D. Tex. 2007) ("Plaintiff's continued presence at the accident scene after being ordered to leave [at least three times], along with the defiant verbal and physical exchange, created probable cause to justify the arrest."). *See also Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) ("[R]efusing to obey police officers' repeated and unambiguous warnings to step back so as not to interfere with officers' official duties ... establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1).").

### 2.    Failure to Identify

The Markham BWC Video clearly demonstrates that Defendants also had probable cause to arrest Plaintiff for Failure to Identify. Regarding the charge of Failure to Identify:

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 13**

(a) A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.

TEX. PENAL CODE. § 38.02(a).

Plaintiff refused Defendants' request to identify himself after it was clearly communicated to him that he was under arrest, thereby committing an offense under § 38.02. After he had been handcuffed, Plaintiff asked "Am I under arrest?" (Appx. 1, 07:48), to which Defendants replied "Yes." (*Id*. at 07:50). Defendants then asked Plaintiff "You got your ID on you?" (*Id*. at 07:58) without a reply from Plaintiff. Defendants reiterated their request and informed Plaintiff that "OK, when you are under arrest, the one thing you do have to do is identify yourself. Do you have your ID on you?" (*Id*. at 08:06), to which Plaintiff replied "The one thing that I don't have to do is answer questions." (*Id*. at 08:12) and continued to refuse to identify himself. Defendants ultimately located Plaintiff's identification in his pants pocket.

### 3. Resisting Arrest

Moreover, Defendants had probable cause to arrest Plaintiff for the offense of Resisting Arrest. The Penal Code defines Resisting Arrest as follows:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

TEX. PENAL CODE § 38.03.

As discussed in greater detail in Section II(A)(1)(a), *supra*, the arrest commences approximately six-and-a-half minutes into the Markham BWC Video when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 14**

App. 57

off." (*Id*. at 06:38).[7] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47).

The Fifth Circuit has consistently held that "[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest," and "the act of resisting [arrest] can supply probable cause for the arrest itself." *Carroll v. Ellington*, 800 F.3d 154, 172 (5th Cir. 2015), citing *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (collecting cases). Thus, Defendants had probable cause to arrest Plaintiff for resisting arrest. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Piazza v. Mayne,* 217 F.3d 239, 246 (5th Cir. 2000); *Wafer v. Molina,* No. 3:14-CV-0976-M-BH, 2014 WL 3533698, at *2 (N.D. Tex. July 15, 2014); *see also United States v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009).

### d.    Dismissal of Criminal Charges is Irrelevant to the Probable Cause Analysis

Plaintiff alleges that "[o]n March 7, 2025, the Irving Municipal Court granted Plaintiff's Motion to Suppress and ordered all evidence resulting from the detention and arrest suppressed" and that as a result "[t]he charge was dismissed." [Dkt. 3, § III ¶¶ MM – NN]. However, "the fact that the charges against Plaintiff were ultimately dismissed is irrelevant to the probable cause analysis, which focuses on what the officer could have reasonably believed as to whether there was probable cause for an arrest at the time of the arrest." *Esquivel v. Eastburn*, No. SA-

---

[7] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 15**

20-CV-00377-OLG, 2021 WL 1667132, at *4 (W.D. Tex. Apr. 8, 2021). "[A] peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." *Pierson v. Ray*, 386 U.S 547, 555 (1967). The fact that the charges against Plaintiff were ultimately dismissed "is of no consequence." *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994).

### 2.    Plaintiff's Excessive Force Claim Fails

When a plaintiff alleges excessive force during an arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures. *Tolan v. Cotton*, 572 U.S. 650, 656, (2014) (citing *Graham v. Connor*, 490 U.S. 386, 389, 394 (1989)). To prevail on an excessive force claim under the Fourth Amendment, a plaintiff must show: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Stephenson v. McClelland*, 632 Fed. App'x 177, 184 (5th Cir. 2015). "To state a claim for excessive use of force, the plaintiff's asserted injury must be more than de minimis." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). An excessive force claim is distinct from an unlawful arrest claim, and the Court must analyze an excessive force claim without regard to whether the arrest itself was justified. *Id*. at 417.

Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Terry v. Ohio,* 392 U.S. 1, 22-27 (1968) . In Texas, a peace officer is justified to use force to make an arrest, conduct a search, or prevent an escape. *See* TEX. PENAL CODE § 9.51 (Tex. 2013). The use of nondeadly force against a person is justified if the peace officer (1) reasonably believed force was immediately necessary to make or assist in making an arrest or search, or to prevent an escape after an arrest, (2) reasonably

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                                **PAGE 16**

believed the arrest or search was lawful or was made under a valid warrant, and (3) before using force, made known her identity and purpose, or reasonably believed her identity and purpose were already known or could not be been made known. *Id*.; *see Texas DPS v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

Plaintiff has failed to state a claim for a constitutional violation as he does not assert that he suffered any more than a de minimis injury as a result of the alleged application of excessive force. Specifically, Plaintiff asserts that "Hammett approached from behind and forcefully shoved Plaintiff into the patrol vehicle . . . Officers Markham and Hammett then maintained Plaintiff in a high-leverage arm position, holding him in a painful control hold" [Dkt. 3, § III ¶ Q]; "[t]he shove into the patrol vehicle and the prolonged arm hold caused substantial pain and visible bruising on Plaintiff's arm, which Plaintiff photographed the following day" [*Id*., ¶ T]; "[t]he force used was more than de minimis, unnecessary, disproportionate, and resulted in pain and visible bruising" [*Id*., § IV Claim 4]; and "[t]he force used caused pain and visible bruising, and was more than de minimis" [*Id*.]. These were the only references to any alleged injury in Plaintiff's Complaint.

These type of minor incidental injuries are de minimis and do not give rise to a constitutional claim for excessive force. *See, e.g., Brooks v. City of West Point, Miss.*, 639 Fed.App'x 986, 990 (5th Cir. 2016) (where Brooks "suffered abrasions to his hands and knees, some pain in his back and neck, and unspecified problems with his asthma," "[w]e have held injuries of this type to be de minimis in the context of the force used"); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (minor incidental injuries that occur in connection with the use of handcuffs do not give rise to a constitutional claim for excessive force); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997) (de minimus injuries, such as a bruised ear, are insufficient to claim

injury in an excessive force claim); *Zavala v. Harmon*, 2022 WL 17220034, at *6 (S.D. Tex. Oct. 19, 2022) (noting that "injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent" because they are de minimis). As such, Plaintiff fails to allege facts suggesting anything more than a de minimis injury associated with the alleged application of excessive force.

Assuming *arguendo* that Plaintiff was able to establish a cognizable injury, Defendants' use of force was reasonable under the circumstances. In his Complaint, Plaintiff refers to Markham's BWC Video to support his allegations. In the relevant parts of the video, Plaintiff is observed to be non-compliant with Markham's directives. The arrest commences approximately six-and-a-half minutes after Plaintiff approached Markham's vehicle when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck off." (*Id*. at 06:38).[8] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). Hammett assists Markham subdue Plaintiff (*Id*. at 06:46). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47). After a brief struggle, Plaintiff is handcuffed, he is subdued, and the use of force ceases. (*Id*. at 07:18).[9]

---

[8] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

[9] Although Plaintiff was quickly immobilized, the time during which he was restrained was extended "[b]ecause Plaintiff is morbidly obese and cannot bring his hands together behind his back without significant strain, two sets of handcuffs were used, after a brief attempt to use one set of handcuffs." [Dkt. 3, § III ¶ S].

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **PAGE 18**

Approximately 38 second elapse from the time Markham reaches for Plaintiff's arm (*Id*. at 06:45) to the time when Plaintiff is subdued and the use of force ceases (*Id*. at 07:18).[10]

During the arrest, Plaintiff was repeatedly directed to place his hands behind his back. Plaintiff disregarded the officers' instructions and actively resisted arrest. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989) (instructing courts to evaluate "whether the suspect poses an immediate threat to the safety of the officers" and "whether he is actively resisting arrest or attempting to evade arrest by flight"); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009) (per curiam) ("Officers may consider a suspect's refusal to comply with instructions ... in assessing whether physical force is needed to effectuate the suspect's compliance").

Only when faced with Plaintiff's continued disregard of their directives and active resistance did the officers decide to utilize force on Plaintiff. Even then, Defendants utilized the minimum force necessary. Once Plaintiff stopped resisting and complied with their instructions, no further force was utilized. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding that officers who "responded with 'measured and ascending' actions that corresponded to Poole's escalating verbal and physical resistance" were entitled to qualified immunity).

Finally, "plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017); *see also Carnaby*, 636 F.3d at 187.

---

[10] Notably, Plaintiff does not allege any wrongdoing by Defendant Lewis. [Dkt. 3, § IV Claim 4]. "As he approached, Lewis briefly reached toward Plaintiff but, upon seeing that Plaintiff was standing still and offering no resistance, withdrew his hand. Lewis then produced a second set of handcuffs, applied it to Plaintiff's left wrist, and connected it to the cuff that Officer Markham had already placed on Plaintiff's right wrist. [*Id*. at § III ¶ S].

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**                                    **PAGE 19**

### 3.  Plaintiff's Allegations Concerning Clearly Established Law Are Unavailing

Defendants are also entitled to qualified immunity because Plaintiff has pled only a vague, conclusory allegation concerning whether the applicable law was clearly established at the time of his arrest and because he defines the applicable law at too high a level of generality.

In determining whether a defendant is entitled to the protections of qualified immunity, the court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that every reasonable official would understand that the defendant's actions violated the law. *Turner v. Driver*, 848 F. 3d 678, 685-86 (5th Cir. 2017)(citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Clearly established" law may not be defined at a high level of generality. Instead, this analysis depends upon whether, in light of the specific context of the case, not as a broad proposition, the "violative nature of particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *al-Kidd*, 563 U.S. at 742; *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam)). A plaintiff must identify "adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

Plaintiff makes no specific allegation with regard to this aspect of his claim. Rather, he speaks broadly of "constitutional" or "civil" rights and does not direct the Court's attention to any clearly established law with any degree of specificity. This amounts to no more than a legal conclusion and a formulaic recitation of an element of Plaintiff's Fourth Amendment claims which is insufficient to state a plausible claim for relief, and the Court should not accept these allegations as true. *Twombly*, 550 U.S. at 570. *Iqbal*, 556 U.S. at 678; *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**   **PAGE 20**

### III.    First Amendment Claims

To state a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) he was engaged in constitutionally protected activity; (2) the officer's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the officer's adverse actions were substantially motivated against their exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021). Plaintiff fails to plead sufficient facts to support the first and third elements: he was not engaged in, and the officers' actions were not motivated by, constitutionally protected speech. As discussed in greater detail in Section II(A)(1), *supra*, there was probable cause to arrest Plaintiff for multiple violations of the Penal Code. As such, Plaintiff fails to establish that Defendants' actions were substantially motivated by Plaintiff's speech and not his actions.

Moreover, "[i]f [probable cause] exists, any argument that the arrestee's speech as opposed to [his] criminal conduct was the motivation for [his] arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Russell v. Altom*, 546 F. App'x 432, 436-37 (5th Cir. 2013) (quoting *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)); *see also Westfall v. Luna*, 903 F.3d 534 (5th Cir. 2018) (if probable cause to arrest exists, any argument that an arrestee's speech as opposed to his/her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment); *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002) (in "a situation in which law enforcement officers might have a motive to retaliate but there was also a ground to charge criminal conduct against the citizen they disliked," "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation" such that " [i]f probable cause existed ... or if reasonable police officers could believe probable cause existed, they are exonerated").

"To ensure that officers may go about their work without undue apprehension of being sued, [the court] generally review[s] their conduct under objective standards of reasonableness." *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019). "A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024) (quoting *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured - the motive must cause the injury." *Nieves*, 587 U.S. at 398. It must be a "'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 399; *see also Bailey v. Ramos*, 125 F.4th 667, 685 (5th Cir. 2025) ("A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke' the arrest, meaning that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff."). "Thus, in the context of retaliatory arrest or prosecution, to prove causation, a plaintiff generally must show that the officers lacked probable cause to make the arrest." *Degenhardt*, 117 F.4th at 758 (citation omitted). The Fifth Circuit has "likewise held that if an officer has a reasonable suspicion to initiate a seizure, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id*. (quoting *Allen*, 815 F.3d at 245).

In this case, Plaintiff's allegedly protected speech could not have been a "but for" cause of his arrest. Undisputed video evidence (Appx. 1) shows Plaintiff violating Tex. Penal Code §§ 38.15, 38.02, 38.03, and 49.02 in Defendants' presence. Plaintiff has therefore failed to plausibly plead that Defendants lacked probable cause to arrest him. *See, e.g., Degenhardt*, 117 F.4th at 758-59 (affirming dismissal of First Amendment retaliation claim where defendants "established a lawful basis to search the car and to cite the Degenhardts for possessing alcohol as

minors and driving recklessly," and, "[a]ccordingly, [plaintiffs] have not pleaded sufficient facts to show that [defendants'] nonretaliatory grounds for the seizures were insufficient to provoke their actions.").

To the extent that Plaintiff alleges that "Plaintiff's arrest occurred immediately after he questioned and criticized Markham's conduct. The timing and circumstances indicate the arrest was in retaliation for protected speech" [Dkt. 3, § IV Claim 2], Plaintiff's conclusory and purely speculative allegations are insufficient to plausibly allege that Defendants were "substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017). Accordingly, because Plaintiff has failed to plausibly allege that Defendants retaliated against him for the exercise of his First Amendment rights, the court should grant Defendants motion to dismiss Plaintiff's § 1983 First Amendment claim based on qualified immunity.

### IV. Conspiracy Claims

In his Complaint, Plaintiff has alleged various violations of the Constitution under 42 U.S.C. § 1983, and specifically asserted a "Section 1983 Conspiracy" claim against Defendants. [Dkt. 3, § IV Claim 5]. Said claims fail as a matter of law. Plaintiff cannot demonstrate an underlying constitutional injury, so there is no violation to which a conspiracy could be directed.

"To prove a conspiracy under section 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013); *see also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) ("[A] conspiracy claim is not actionable without an actual violation of section 1983."). "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.

**DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT**      **PAGE 23**

Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). Plaintiff alleges no facts to show an agreement or any "operative facts" underlying the conspiracy claim against Defendants. *See id*.

Moreover, actions allegedly taken by employees of an entity are considered to have been taken by the entity. It is a general principle in conspiracy law that a conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1953). This principle has given rise to the intracorporate conspiracy doctrine, which provides that a "corporation cannot conspire with itself any more than a private individual can," and "that the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011). "Although the intracorporate conspiracy doctrine arose in the anti-trust context, it has been applied to public entities and has been extended to civil rights conspiracies under § . . . 1983." *Collins v. Bauer*, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) (Ramirez, J.) (citations omitted), rec. adopted, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012) (Boyle, J.); *see also Swilley v. City of Houston*, 457 Fed. Appx. 400, 404 (5th Cir. 2012) (per curiam) (holding that § 1985 claim fails because "[t]he City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997) (granting motion to dismiss § 1983 conspiracy claim where individual defendants were both "employees of the Galveston Police Department" and "for the purposes of Plaintiff's § 1983 conspiracy claim, the Galveston Police Department and its employees constitute a single legal entity which is incapable of conspiring with itself.").

Plaintiff does not dispute that the Defendants are all employees of the City. *See* Compl. § II ("Plaintiff seeks redress for the violation of his rights by officers and employees of the City of Irving."). Nor does he provide any reason why the intracorporate conspiracy doctrine does not preclude his claim. Accordingly, the court should grant Defendants' motion to dismiss Plaintiff's Section 1983 Conspiracy claim.

## CONCLUSION

The facts alleged within Plaintiff's Complaint do not constitute the violation of any right protected by the Constitution or laws of the United States, and as such, the claims must be dismissed for failure to state a claim for which relief can be granted. Moreover, even if Plaintiff's Complaint alleged facts of a violation of federally protected rights, Defendants are entitled to dismissal of Plaintiff's claims against them because of their entitlement to qualified immunity. Plaintiff does not allege particularized facts that demonstrate that he was deprived of a constitutionally protected right, and also does not allege facts showing that Defendants' conduct was objectively unreasonable in light of clearly established law.

WHEREFORE, PREMISES CONSIDERED, Defendants Markham, Hammett, and Lewis respectfully pray that: (1) the Court grant Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendants recover all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which they may be justly entitled.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| DALE LOTTS | § |
| | § |
| **Plaintiff,** | § |
| | § |
| | § |
| | § **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § |
| | § **ECF** |
| | § |
| CITY OF IRVING, OFFICER JAMES | § |
| MARKHAM, OFFICER ANDREW | § |
| HAMMETT, OFFICER PAUL LEWIS, | § |
| and JOHN DOE JAIL OFFICERS 1-10 | § |
| | § |
| **Defendants.** | § |

## DEFENDANT CITY OF IRVING'S RULE 12(b)(6) MOTION TO DISMISS, AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

**CITY ATTORNEY'S OFFICE**
**CITY OF IRVING, TEXAS**


By:      /s/Saul Pedregon
**SAUL PEDREGON**
Senior Assistant City Attorney
State Bar No. 00797231
Email: spedregon@IrvingTX.gov
**JASON D. McCLAIN**
Senior Assistant City Attorney
State Bar No. 00797032
Email: jmcclain@IrvingTX.gov
825 West Irving Boulevard
Irving, Texas 75060
Telephone: 972.721.2541
Facsimile: 972.721.2750


**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

**ATTORNEYS FOR DEFENDANTS CITY OF IRVING, JAMES MARKHAM, ANDREW HAMMETT, and PAUL LEWIS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following parties or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Dale Lotts
401 E. 8th St.
Ste. 214 PMB 7860
Sioux Falls and Minnehaha, SD 57103

/s/Saul Pedregon_____
**SAUL PEDREGON**
Assistant City Attorney

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF SERVICE

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      INTRODUCTION AND GROUNDS NECESSITATING DISMISSAL ...........................1

II.     APPLICABLE STANDARD FOR 12(b)(6) DISMISSAL .................................................3

III.    ARGUMENT AND AUTHORITIES.................................................................................4

        A.    Plaintiff's Constitutional Claims Should Be Dismissed .............................................6

        B.    Plaintiff Has Not Sufficiently Alleged That Any Violation Of His
             Constitutional Rights Was Pursuant To An Official City Policy ............................10

        C.    Plaintiff Has Not Plead Sufficient Facts Regarding City Policymakers'
             Alleged Deliberate Indifference................................................................................14

        D.    Plaintiff's Claims for Failure to Train Should Be Dismissed ..................................15

        E.    Plaintiff's Claim for Failure to Supervise Should Be Dismissed ............................24

        F.    Plaintiff is Barred from Recovering Exemplary Damages .......................................25

IV.     CONCLUSION................................................................................................................25

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

- i -

App. 71

# TABLE OF AUTHORITIES

## *Cases*

*Alford v. State*,
358 S.W.3d 647, 654 (Tex. Crim. App. 2012)............................................................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)...................................................................................... passim

*Baker v. Putnal*,
75 F.3d 190, 199 (5th Cir.1996) ......................................................................................... 23

*Barrios-Barrios v. Clipps*,
825 F.Supp. 2d 730, 746 (E.D. La. 2011)............................................................... 20, 22

*Bd. Of Comm'rs of Bryan Cnty. v. Brown* ("Brown"),
520 U.S. 397, 410 (1997).................................................................................. 16, 17, 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007)...................................................................................... passim

*Benavides v. County of Wilson*,
955 F.2d 968, 973 (5th Cir.1992) .......................................................................... 23

*Bennett v. City of Slidell*,
735 F.2d 861 (5th Cir. 1984) .................................................................... 5, 14, 17

*Blackburn v. City of Marshall*,
42 F.3d 925 at 931 (5th Cir. 1995).............................................................. 4, 24

*Brown v. Bryan County* ("*Bryan County*"),
219 F.3d 450,459-61 (5th Cir. 2000) ........................................................ 16, 17, 19

*Brown v. Tarrant County*,
985 F.3d 489, 497 & n. 11 (5th Cir. 2021) .................................................. 10

*Burge v. St. Tammany Parish*,
336 F.3d 363, 370 (5th Cir. 2003) ...................................................... 14, 16, 19

*Campbell v. City of San Antonio*,
43 F.3d 973, 977 (5th Cir. 1995) .................................................................. 17

*Case v. City of New York*,
233 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ......................................... 13

*City of Canton v. Harris*,
    489 U.S. 378, 386-92 (1989) ........................................................................................... passim

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247, 271 (1981) ..................................................................................................... 25

*City of St. Louis v. Praprotnik*,
    485 U.S. 112, 123 (1988) ....................................................................................................... 7

*Connick v. Thompson*,
    563 U.S. 51, 61-62 (2011) ......................................................................................... 19, 21, 22

*Culbertson v. Lykos*,
    790 F.3d 608, 625 (5th Cir. 2015) ...................................................................................... 15

*Davenport v. City of Garland, Tex.*,
    2010 WL 1779620, at *2 (N.D. Tex. Apr. 9, 2010) ............................................................. 8

*Deville v. Marcantel*,
    567 F.3d 156, 171 (5th Cir. 2009 ) ..................................................................................... 15

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
    406 F.3d 375, 383 (5th Cir. 2005) ............................................................................ 5, 13, 14

*Eugene v. Alief Ind. Sch. Dist.*,
    65 F.3d 1299, 1304 (5th Cir. 1995) ...................................................................................... 8

*Fernandez- Montes v. Allied Pilots Ass'n*,
    987 F.2d 278, 284 (5th Cir. 1993) ........................................................................................ 3

*Fraire v. City of Arlington*,
    957 F.2d 1268, 1278 (5th Cir. 1992) .................................................................................. 17

*Fuentes v. Nueces County*,
    689 F. App'x 775, 778 (5th Cir. 2017) ............................................................................... 17

*Gladden v. Roach*,
    864 F.2d 1196, 1198 (5th Cir. 1989) ............................................................................... 9, 10

*Gonzales v. Westbrook*,
    118 F.Supp.2d 728, 737 (W.D. Tex. 2000) ........................................................................ 23

*Goodman v. Harris Cnty.*,
    571 F.3d 388 (5th Cir.2009) ................................................................................... 15, 23, 24

*Gros v. City of Grand Prairie*,
    181 F.3d 613, 615 (5th Cir. 1999) ........................................................................................ 7

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Huong v. City of Port Arthur*,
  961 F.Supp. 1003, 1007 (E.D. Tex. 1997) ................................................................... 23

*Hutcheson v. Dallas County*,
  994 F.3d 477, 483 (5ᵗʰ Cir. 2021) .............................................................................. 10

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191, 205 (5th Cir. 2007) ............................................................................ 3, 4

*Jackson v. Procunier*,
  789 F.2d 307, 309 (5th Cir. 1986) ................................................................................ 3

*James v. Harris County*,
  577 F.3d 612, 617 (5th Cir. 2009) .............................................................................. 11

*Jett v. Dallas Independent School District*,
  491 U.S. 701, 737 (1989) ............................................................................................. 7

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045, 1050 (5th Cir. 1982) ............................................................................ 3

*Keane v. Fox TV Stations, Inc.*,
  297 F. Supp. 2d 921 at 925 (S.D. Tex. 2004) ......................................................... 4, 24

*Littell v. Hous. Indep. Sch. Dist.*,
  894 F.3d 616, 622-23 (5th Cir. 2018) ...................................................................... 5, 20

*Livingston v. Desoto Indep. Sch. Dist.*,
  2004 WL 2964977, at *2 (N.D. Tex. Dec. 15, 2004) ................................................... 25

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
  369 F.3d 464, 467 (5th Cir. 2004) ................................................................................ 3

*Meals v. Hale Cnty. Sheriff's Office*,
  No. 5:10-CV-00045-BG, 2011 WL 13137098, at *2 (N.D. Tex. Aug. 18, 2011) .................... 10

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658, 690 (1978) .................................................................................... passim

*Pagan-Negron v. Seguin Indep. Sch. Dist.*,
  974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ........................................................... 17

*Peña v. City of Rio Grande*,
  879 F.3d 613, 621 (5th Cir. 2018) .................................................................... 5, 11, 14

*Pennsylvania v. Muniz*,
  496 U.S. 582, 600-02 (1990) ................................................................................... 9, 10

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Peterson v. City of Fort Worth*,
   588 F.3d 838, 847 (5th Cir. 2009) ...................................................................... 5, 10, 17

*Pineda v. City of Houston*,
   291 F.3d 325, 328 (5th Cir. 2002) ........................................................................ 10, 17

*Pinedo v. City of Dallas*,
   No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ........................ 7, 11

*Piotrowski v. City of Houston*,
   237 F.3d 567, 578 (5th Cir. 2001) ........................................................................ passim

*Presley v. City of Benbrook*,
   4 F.3d 405, 408 (5th Cir. 1993) ............................................................................ 10

*Ratliff v. Aransas County*,
   948 F.3d 281, 285 (5th Cir. 2020), cert. denied,
   141 S. Ct. 376, 208 L. Ed. 2d 97 (2020) ................................................................ 22

*Sanchez v. Young County*,
   956 F.3d 785, 791 (5th Cir. 2020) ........................................................................ 10

*Skyy v. City of Arlington*,
   712 F. App'x 396, 401 (5th Cir. 2017) .................................................................. 25

*Smith v. Brenoettsy*,
   158 F.3d 908, 911-912 (5th Cir. 1998) .................................................................. 24

*Snyder v. Trepagnier*,
   142 F.3d 791, 796 (5th Cir. 1998) ........................................................................ 15

*Spiller v. City of Tex. City, Police Dep't*,
   130 F.3d 162, 167 (5th Cir. 1997) ........................................................................ 11

*Tennessee v. Garner*,
   471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985) .................................................. 19

*Townsend v. State*,
   813 S.W.2d 181, 186 (Tex. App. - Houston [14th Dist.] 1991, pet. ref'd) .................... 9

*Tuchman v. DSC Comms. Corp.*,
   14 F.3d 1061, 1067 (5th Cir. 1994) ...................................................................... 3, 24

*United States v. Lugo*,
   289 F. Supp. 2d 790, 795 (S.D. Tex. 2003) ............................................................ 9

*Valle v. City of Houston*,
   613 F.3d 536, 542 (5th Cir. 2010) ........................................................................ 21, 22

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

*Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*,
  495 F.3d 191, 205 (5th Cir. 2007) ................................................................... 4

*Webster v. City of Houston*,
  735 F.2d 838, 841 (5th Cir. 1984) ....................................................... 5, 11, 13

*Young v. City of Irving*,
  No. 3:23-CV-1423-D, 2024 WL 4193936, at *13 (N.D. Tex. Sept. 12, 2024) ......................... 7

*Zarnow v. City of Wichita Falls*,
  614 F.3d 161, 168-69 (5th Cir. 2010) ................................................... 5, 10

**Statutes**

42 U.S.C. § 1983 .......................................................................... 2, 4, 6

FED. R. CIV. P. 12(b)(6) ..................................................................... 3

TEX. LOC. GOV'T CODE § 341.003 ............................................................ 7

TEX. LOCAL GOVT. CODE, §51.072 ........................................................... 7

Texas Constitution Article 11 ............................................................. 7

TEXAS OCCUPATIONS Code §§ 2701.251, 1701.253 ........................................... 23

**Other Authorities**

HOME RULE CHARTER OF THE CITY OF IRVING, TEXAS .......................................... 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DALE LOTTS** | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | **CIVIL ACTION NO. 3:25-CV-03329-S-BN** |
| **VS.** | § | |
| | § | **ECF** |
| | § | |
| **CITY OF IRVING, OFFICER JAMES** | § | |
| **MARKHAM, OFFICER ANDREW** | § | |
| **HAMMETT, OFFICER PAUL LEWIS,** | § | |
| **and JOHN DOE JAIL OFFICERS 1-10** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT CITY OF IRVING'S RULE 12(b)(6)**
**MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of Irving, Texas ("City") submits its Rule 12(b)(6) Motion to Dismiss and

Brief in Support Thereof in response to Plaintiff's Complaint (Dkt. 3).

### I.    INTRODUCTION AND GROUNDS NECESSITATING DISMISSAL

This case arises out of Plaintiff's arrest for Public Intoxication. Plaintiff files this lawsuit

alleging numerous claims against Markham (the officer who initially contacted and ultimately

arrested Plaintiff), Hammett (an officer who provided backup to Markham), and Lewis (another

officer who provided backup to Markham). Finally, Plaintiff also sued the City of Irving, the

entity which employed each of the individual defendants.[1] Plaintiff sues Defendants Markham,

---

[1] Plaintiff has not specified whether he has sued Defendants Markham, Hammett, and Lewis in their official or individual capacities, or both. To the extent that Plaintiff has sued the City through the individual defendants in their official capacity, Defendant City also moves this Court to dismiss Plaintiff's claims against it for lack of standing as discussed more fully within DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **Page 1**

Hammett, and Lewis alleging various violations of the U.S. Constitution under 42 U.S.C. § 1983.

Defendants Markham, Hammett, and Lewis have filed their 12(b)(6) Motion to Dismiss.

With regards to the City, Plaintiff asserts the following cause of action: [2]

**Claim 6 - Monell Liability - City of Irving**.

[Dkt. 3, § IV Claim 6].

Plaintiff alleges that his "constitutional injuries were caused by the policies, customs, and practices of the City of Irving." *Id*. Specifically, Plaintiff asserts that "[t]he City maintained:

- an established pattern of pretextual public-intoxication arrests by specific officers,
- coercive and unlawful jail-booking practices,
- a widespread and tolerated practice of muting body-worn-camera audio during enforcement encounters, and
- systemic failures in supervision, training, and discipline that allowed these practices to persist.

Each of these customs was a moving force behind Plaintiff's unlawful arrest, excessive force, retaliatory detention, and due-process violations."
[Dkt. 3, § IV Claim 6].

The City moves for judgment on the grounds that Plaintiff has failed to establish an underlying constitutional violation. Moreover, Plaintiff has not plead and cannot establish evidence of any City policy or custom promulgated or adopted by the City's policymakers that caused ("were the moving forces behind") Plaintiff's alleged injuries. Further, Plaintiff cannot show that any of the City's training procedures were inadequate, that the City's policymakers were deliberately indifferent in adopting a training policy, or that any City policy directly caused Plaintiff's alleged injuries. Likewise, Plaintiff cannot show that the polices regarding

---

12(B)(6)MOTION TO DISMISS, the contents of which Defendant City incorporates herein pursuant to the provisions of Rule 10 of the Federal Rules of Civil Procedure.

[2] While Plaintiff clearly states a single claim for relief against the City on pages 22-28 of his Complaint, he references, alludes to, and perhaps even alleges other claims against the City throughout his pleading. The City has erred on the side of caution and addressed all of the claims that Defendant believes Plaintiff is or may be raising. However, if the Court believes Defendant missed an allegation raised or pled by the Plaintiff, it respectfully requests an opportunity to provide supplemental briefing on that claim or claims.

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT** **Page 2**

supervision, training, and treatment of persons was so constitutionally lacking that it constituted a deliberate disregard to Plaintiff's constitutional rights.

## II.     APPLICABLE STANDARD FOR 12(b)(6) DISMISSAL

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the City asserts that Plaintiff has failed to state a claim upon which relief may be granted and seeks dismissal of Plaintiff's claims against it. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all well-pleaded facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To avoid dismissal, a plaintiff must allege all the proper elements of a right to recover from a defendant. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The court should dismiss a complaint if it lacks an allegation regarding one of the required elements

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **Page 3**

of a cause of action. *See Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921 at 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925 at 931 (5th Cir. 1995)). Additionally, FED. R. CIV. P. 8 demands more than unadorned, "the-defendant-unlawfully-harmed-me" accusations and is not met by a complaint that includes nothing more than conclusions. *Iqbal*, 566 U.S. at 678. The pleadings must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 570; *see also Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.)*, 495 F.3d 191, 205 (5th Cir. 2007).

### III. ARGUMENT AND AUTHORITIES

Plaintiff seeks to hold the City liable under 42 U.S.C. § 1983, which makes liable "[e]very person" who, under color of state law, violates federal constitutional rights. For this purpose, municipal entities like the City qualify as "persons." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But the City "cannot be held liable under § 1983 on a respondeat superior theory." *Id*. Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). Rather, to hold the City liable under § 1983 a plaintiff must establish that an "official policy" of the City itself - and not the policy of an individual municipal employee - was the "moving force" and actual cause of the loss of constitutional rights and any resultant harm. *Id*.

Thus, to state a § 1983 claim against the City, the Complaint must allege sufficient facts to permit the reasonable inference 1) that a constitutional violation occurred, and 2) an "official policy" attributable to the City's policymakers that 3) "was the moving force" behind it. *Littell v.*

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT** **Page 4**

*Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622-23 (5th Cir. 2018); *see Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018).

In the absence of proof that a deprivation was caused by an officially promulgated municipal policy, a plaintiff may establish municipal liability through proof that a deprivation was caused by a custom, that is, a practice that is so widespread as to have the force of law. *Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Isolated incidents do not establish the type of persistent, often repeated, constant violations that constitute the custom required for municipal liability under Section 1983. *Id.* at 581 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *see also Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (a custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the conduct").

In order to impose municipal liability under Section 1983 based on a custom or practice, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582 (citations omitted); *see also Zarnow*, 614 F.3d at 169; *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). Prior incidents used to establish a pattern must have occurred for so long or so frequently that the course of conduct warrants attribution to the municipality of knowledge that the objectionable conduct is the expected, accepted practice of its employees. *Peterson*, 588 F.3d at 850-51. Additionally, a pattern requires similarity and specificity, and prior incidents cannot simply include any and all bad or unwise acts, but rather they must point to the specific violation in question. *Id.* at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Isolated unconstitutional actions by municipal employees will almost never trigger municipal

liability. *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

## A.      Plaintiff's Constitutional Claims Should Be Dismissed

Plaintiff claims that City police officers Markham, Hammet, and Lewis violated his rights when they allegedly arrested him without probable cause and falsely imprisoned him [Dkt. 3, §IV Claim 1], retaliated against him for exercising his First Amendment rights [*Id*. Claim 2], and utilized excessive force in effectuating his arrest [*Id*. Claim 4]. Plaintiff further asserts that unnamed John Doe defendants violated his due process rights. [*Id*. Claim 3]. Plaintiff's claim of alleged constitutional violations should be dismissed because Plaintiff has failed to plead sufficient facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Plaintiff has not pled sufficient facts to establish either a constitutional violation by the City or a policy, custom, or practice of the City that was the moving force of a constitutional violation. *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 578.

### 1.   Plaintiff Cannot Demonstrate Involvement by a Final Policymaker

Municipal liability under Section 1983 must be premised on a municipal policy or custom that causes the alleged constitutional deprivation. Thus, Plaintiff must have evidence of a City policy that has caused his alleged constitutional injuries in order to survive dismissal. Because a municipality is not subject to respondeat superior liability, the acts of individual City employees do not create liability under Section 1983 unless that employee is a policymaker.

Identification of a final policymaker for Defendant City is necessary for a proper analysis of a Section 1983 cause of action. Throughout his Complaint, Plaintiff generally refers to "the City" but does not identify a final policymaker. *See, generally,* Plaintiff's Complaint [Dkt. 3]. However, for purposes of Defendant City, the designation of "final policymaker" is reserved

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                    **Page 6**

solely for the City Council. HOME RULE CHARTER OF THE CITY OF IRVING, TEXAS, Art. IV, Sec. 13.[3] "[O]nly those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion); *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). Identification of a City's final policymaker for purposes of analyzing liability under 42 U.S.C. §1983 is a legal question for the court. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). "Whether a particular official has 'final policy making authority' is a question of state law." *Id.*; *Praprotnik*, 485 U.S. at 123.

In the instant case, the City is a home rule city which derives its powers from the Texas Constitution and whose broad powers are limited only by the City Charter, the Texas Constitution, or by State statute. *See* Texas Constitution Article 11, §5; TEX. LOCAL GOVT. CODE, §51.072. The Local Government Code grants authority to organize a police force to the City itself. *See* TEX. LOC. GOV'T CODE § 341.003. The City Charter, which is the source of State law governing determination of final policymakers, authorizes the City Council to set policy for the City. HOME RULE CHARTER OF THE CITY OF IRVING, TEXAS, Art. IV, Sec. 13. According to the Charter, the City Council is the sole policymaker for the City. *Id.*, Art. IV, Sec. 13. As such, the City Council is the City of Irving's final policymaker. *Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936, at *13 (N.D. Tex. Sept. 12, 2024) (Fitzwater, J.), citing *Pinedo v. City of Dallas, Texas*, 2015 WL 221085, at *5 (N.D. Tex. Jan. 15, 2015).

Accordingly, to the extent Plaintiff attempts to predicate liability against the City without establishing deliberate indifference by an official with final policymaking authority, said attempt is misplaced. Defendant City's final policymakers – its City Council - had no involvement in the

---

[3] https://ecode360.com/45696018

alleged constitutional violations or any involvement in the circumstances surrounding the incident made the basis of this suit.

Any attempt by Plaintiff to rely upon the alleged actions or decisions of any City employee to impose liability upon the City is misplaced. The actions of a City employee cannot impose such liability since they are not officials possessing final policymaking authority.

Only deliberate indifference of a person with final policymaking authority can support the imposition of liability upon the City. *See Eugene v. Alief Ind. Sch. Dist*., 65 F.3d 1299, 1304 (5th Cir. 1995). There is no evidence in the record that deliberate indifference existed on the part of any policymaking official of the City which was in any way related to Plaintiff's arrest or detention. Rather, assuming the veracity of Plaintiff's allegations, all actions of which Plaintiff complains were taken by City employees with no final policymaking authority. Dismissal in favor of the City is, therefore, appropriate.

Finally, Plaintiff fails to plead the identity of the City's final policymaker. This omission is fatal to his claim. *See Davenport v. City of Garland, Tex*., 2010 WL 1779620, at *2 (N.D. Tex. Apr. 9, 2010) ("Plaintiff makes complaints against the City's policies but fails to name the final policymaker or state any facts which would allow the Court to make that determination. These bare assertions amount to nothing more than a "formulaic recitation of the elements" of a municipal liability claim . . . As such, the allegations are conclusory and not entitled to the assumption of truth.") (internal citations omitted), *rec. accepted*, 2010 WL 1779619 (N.D. Tex. Apr. 30, 2010).

### 2.  Plaintiff Has Not Pled Facts Sufficient to Establish a Constitutional Violation

Defendants Markham, Hammett, and Lewis have moved this Court to dismiss Plaintiff's unlawful arrest and false imprisonment, excessive force, first amendment, and conspiracy claims

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**                                   **Page 8**

against them as discussed more fully in DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(B)(6) MOTION TO DISMISS AND BRIEF IN SUPPORT THEREOF, the contents of which Defendant City incorporates herein pursuant to the provisions of Rule 10 of the Federal Rules of Civil Procedure. For the reasons discussed therein, Plaintiff has failed to establish a constitutional violation. Plaintiff, therefore, does not state a plausible claim for relief based on any alleged First, Fourth, or Fourteenth Amendment violations.

Regarding his due process claims, the Supreme Court explicitly recognized - as a type of question "normally attendant to arrest and custody" - a "routine booking question exception" to *Miranda* that "exempts from [*Miranda*]'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." *Alford v. State*, 358 S.W.3d 647, 654 (Tex. Crim. App. 2012) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 600-02 (1990) (Brennan, J., plurality op.) (internal quotation marks omitted));[4] *see also Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989). ("The district court did not err, therefore, in holding that Gladden did not have an absolute right to remain silent following his arrest."). This "legitimate administrative need" includes security concerns. *See Alford*, 358 S.W.3d at 654.

Again, "not every question asked in a custodial setting constitutes an interrogation for *Miranda* purposes." *United States v. Lugo*, 289 F. Supp. 2d 790, 795 (S.D. Tex. 2003); *see also Townsend v. State*, 813 S.W.2d 181, 186 (Tex. App. - Houston [14th Dist.] 1991, pet. ref'd) (holding that questions regarding suspect's name, address, weight, height, place of employment, or physical disabilities "normally attendant to arrest and custody"). "Since [Williams] was asked nothing outside of this well-established exception to the Fifth Amendment, he has no

---

[4] Booking questions were *Miranda* exempt because these questions were "reasonably related to the police's administrative concerns." *Muniz*, 496 U.S. at 601-02.

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT** **Page 9**

constitutional claim." *See Presley v. City of Benbrook*, 4 F.3d 405, 408 (5th Cir. 1993); *see also Muniz*, 496 U.S. at 601-02; *Gladden*, 864 F.2d at 1198. This claim fails.

Finally, Plaintiff's claim that he could not use the phone also fails to state a constitutional claim. Plaintiff "did not have a protected liberty interest in placing a phone call upon being booked. Because [Williams] cannot meet this threshold requirement, he fails to state a constitutional violation." *Meals v. Hale Cnty. Sheriff's Office*, No. 5:10-CV-00045-BG, 2011 WL 13137098, at *2 (N.D. Tex. Aug. 18, 2011). This Court should dismiss these claims.

**B.      Plaintiff Has Not Sufficiently Alleged That Any Violation of His Constitutional Rights Was Pursuant to an Official City Policy**

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694). Thus, even if Plaintiff has alleged plausible constitutional violations - which the City does not concede - Plaintiff survives the City's motion to dismiss his *Monell* claims only:

> "by identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)."

*Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021); *see also Brown v. Tarrant County*, 985 F.3d 489, 497 & n. 11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs") (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

As to alleging an official policy, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (footnote omitted). And "[t]o establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski*, 237 F.3d at 582); *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))).

Plaintiff has not directed the Court's attention to any specific City policy which caused the alleged constitutional deprivation. Rather, Plaintiff vaguely refers to the following:

1) "FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for 'public intoxication,' while Officer Paul Lewis made 8, and Officer James Markham - who was trained by Hammett as his Field Training Officer - made 15. [] The pronounced concentration of PI arrests among Hammett and his trainee Markham, combined with Lewis's significantly lower figure, plausibly indicates a subgroup-level pattern that City supervisors would have observed through routine arrest-report reviews, shift reports, and the department's mandatory supervisory approval of arrests." [Dkt. 3, p. 23].
2) "The Irving City Jail maintained a practice of requiring detainees to answer non-essential questions before booking, delaying phone access, and postponing magistrate presentation until detainees complied-all in violation of Texas law." *Id.* at p. 24.
3) "These practices were not the actions of a rogue officer; they were standard jail procedures applied consistently *to Plaintiff* over many hours, in the presence of multiple staff members. This plausibly alleges a continuing operational custom for which the City is liable under Monell." *Id.*, pp. 23-24 (emphasis added).

4) "These coercive [intake] threats were delivered as part of standard intake procedure and not as individualized safety assessments, demonstrating a jail-level custom of compelling compliance through punitive use of suicide-watch procedures." *Id*. at p. 26.

5) "Plaintiff alleges *on information and belief* that this practice [of muting body-worn camera audio] was widespread and tolerated at the time of his arrest, enabling officers to avoid transparency and accountability and facilitating retaliatory or unjustified arrests without fear of review. Courts routinely recognize that municipal toleration of BWC muting constitutes a plausible unconstitutional custom at the pleading stage. *Id*. at p. 26 (emphasis added).

6) "The City failed to train [supervise, and discipline] officers on:
• the probable-cause requirements for public intoxication (which requires both intoxication and danger to self or others),
• the prohibition on retaliatory arrests based on protected speech,
• lawful use of force on compliant subjects,
• the legal limits of investigatory encounters, and
• mandatory jail-processing and magistrate-presentation requirements."
*Id*. at pp. 26-27.

These speculative and conclusory allegations do not state any official City policy, and Plaintiff's assertions are insufficient to identify a specific City policy that allegedly caused the constitutional deprivations.

Plaintiff's conclusory allegations are also insufficient to demonstrate that the City Council - the only policymaker for the City of Irving - ratified and condoned these alleged policies. A sufficient complaint must contain enough "factual content" to make deliberate indifference by official policymakers not merely conceivable, but plausible under the facts as alleged. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Also problematic for Plaintiff is that he fails to identify any written policy he finds unconstitutional. Therefore, absent a facially unconstitutional policy or custom, municipal liability under § 1983 can only arise from a custom having the force of official policy if the

municipal policymakers were deliberately indifferent to the "'known or obvious consequences' that constitutional violations would result" from the custom. *Piotrowski*, 237 F.3d at 579.

Insofar as Plaintiff pleads an official policy by alleging a widespread practice that equates to a custom, he has not plausibly alleged the policy prong because he has failed to identify any similar incidents of alleged constitutional deprivations. As the Fifth Circuit has instructed:

> "[i]f actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."

*Webster*, 735 F.2d at 842.

Further, merely pointing even to some prior unconstitutional act is not sufficient:

> "[and p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of similar violations is required. While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired ...."

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes omitted); *see, e.g., Case v. City of New York*, 233 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) ("Plaintiffs adequately state a *Monell* claim based on the City's failure to train. Plaintiffs point to a number of cases spanning the period from 2000 to 2012 that demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." (citations omitted). In this case, Plaintiff hasn't even identified any other instances of similar violations. Rather, he relies on his own experience to extrapolate a pattern, practice, or custom.  Therefore, Plaintiff's allegations are insufficient to plead a custom of First, Fourth, or Fourteenth Amendment violations.

## C.    Plaintiff Has Not Plead Sufficient Facts Regarding City Policymakers' Alleged Deliberate Indifference

Even assuming, *arguendo*, that Plaintiff had plead facts sufficient to permit a reasonable inference of the existence of a City custom based on the alleged misconduct identified in the Complaint, Plaintiff nevertheless has failed to plead facts from which the Court can draw the reasonable inference that the City's final policymaker was deliberately indifferent to a known or obvious risk that the alleged customs would result in deprivations of the constitutional rights alleged. A city cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" is attributable to a city policymaker. *Peña*, 879 F.3d at 623. Thus, knowledge on the part of a policymaker that a constitutional violation will most likely result from a given policy or custom is an essential condition underlying section 1983 municipal liability. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). Plaintiff therefore must demonstrate either actual or constructive knowledge of the custom, which is attributable either to the governing body of the municipality or to an official who has been designated as a policymaker. *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984). "Deliberate indifference of this sort is a stringent test, and a showing of simple or even heightened negligence will not suffice to prove municipal culpability." *Id*. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis*, 406 F.3d at 383 (internal quotation marks and citations omitted). Thus, a sufficient complaint must provide adequate "factual content" to make deliberate indifference by the City's official policymakers not merely conceivable, but plausible in the context of the facts alleged. *Iqbal*, 556 U.S. at 678.

Here, Plaintiff identifies no known acts prior to the events giving rise to Plaintiff's claims, much less any pattern of acts directly similar to the events at issue here. Therefore,

Plaintiff's conclusory, "bare bones" allegations fail to plead facts from which this Court can infer the City's policymakers acted with deliberate indifference to Plaintiff's constitutional rights.

**D.      Plaintiff's Claims for Failure to Train Should Be Dismissed**

The Supreme Court established in *City of Canton v. Harris* the method of proving municipal liability based on a "policy" of inadequate training or a failure-to-train theory. 489 U.S. 378, 386-92 (1989). When a municipal entity fails to train its employees to act in a constitutional manner, that failure constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference" to the rights of persons with whom the public official will come into contact. *Id*. at 388; *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015). Likewise, a claim based upon a municipality's failure to supervise or discipline a public official requires the same showing of a policymaker's deliberate indifference to the constitutional rights of citizens. *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009 ). To plead a *Monell* claim based upon alleged City customs of deficient training and supervision, a plaintiff must plead facts supporting deliberate indifference by the City's final policymakers to a specific inadequacy in the City's training, supervision, or discipline of its officers.

Deliberate indifference is a stringent standard denoting a high degree of culpability by the municipality, and a plaintiff bears the burden of establishing deliberate indifference. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). To prove deliberate indifference, a plaintiff must show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390 (emphasis added). The "'deliberate indifference' is a stringent standard

of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of Comm'rs of Bryan Cnty. v. Brown* ("*Brown*"), 520 U.S. 397, 410 (1997). A less-than-stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ..." *Canton*, 489 U.S., at 392.

*Canton* and Fifth Circuit jurisprudence envision two means of proving deliberate indifference: First, municipal employees can violate constitutional rights "so often" that the factfinder can infer from the pattern of violations that "the need for further training must have been plainly obvious to the ... policymakers." *Canton*, 489 U.S. at 390 n.10; *Burge*, 336 F.3d at 369. This "proof-by-pattern" method is "ordinarily necessary." *Brown*, 520 U.S. at 409.

Second, even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Id*. (construing *Canton*, 489 U.S. at 390 & n.10); accord *Brown v. Bryan County* ("*Bryan County*"), 219 F.3d 450,459-61 (5th Cir. 2000). This has been called the "single-incident exception" in the Fifth Circuit. *Burge*, 336 F.3d at 372-73.

Here, Plaintiff's Complaint fails to plead facts sufficient to meet either means of pleading deliberate indifference. Plaintiff offers no allegations sufficient to establish that a policymaker at the City was on notice that the City's training for its police officers was inadequate but that the policymaker chose to retain the inadequate training program.

### 1. Plaintiff Fails to Allege Any Pattern of Constitutional Violations

First, Plaintiff fails to allege facts that show or facts from which the Court could reasonably infer a pattern of similar constitutional violations. A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference. *Brown*,

520 U.S. at 409. "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id*. (quotation marks and citation removed.) Where a plaintiff relies on prior incidents to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [municipality] that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Id*.; *Pagan-Negron v. Seguin Indep. Sch. Dist*., 974 F. Supp. 2d 1020, 1032 (W.D. Tex. 2013) ("Where the liability is based on informal custom, the practice must be so widespread as to have the force of law."). The pattern of abuses must "transcend [] the error made in a single case." *Peterson*, 588 F.3d at 851. A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *Id*. Plaintiff's own single incident is insufficient to give rise to a custom. *See, e.g., Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("isolated violations are not the persistent, often repeated constant violations that constitute custom and policy"); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) (same); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (rejecting the plaintiffs' allegations of the existence of a municipal custom because the plaintiffs "describe[d] only this single incident in which [officer] Vidal was mistaken in his identification").

This is a high bar. *See id*. (noting that twenty-seven incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *see also Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) ("Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive

force over a three-year period ... and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period ... were not sufficiently numerous to constitute a pattern").

In his Complaint, Plaintiff asserts that "[t]he pronounced concentration of PI arrests among Hammett and his trainee Markham, combined with Lewis's significantly lower figure, plausibly *indicates* a subgroup-level pattern that City supervisors would have observed through routine arrest-report reviews, shift reports, and the department's mandatory supervisory approval of arrests." [Dkt. 3, p. 23] (emphasis added). Plaintiff, however, has not asserted that this "concentration of PI arrests" was associated with any unconstitutional conduct. An arrest is not indicative of unconstitutional conduct. Moreover, Plaintiff has failed to establish numerosity.

Plaintiff further asserts that "[t]he Irving City Jail maintained a practice of requiring detainees to answer non-essential questions before booking, delaying phone access, and postponing magistrate presentation until detainees complied-all in violation of Texas law." *Id*. at p. 24. Plaintiff concedes, however, that these "standard jail procedures applied consistently *to Plaintiff*." *Id*. (emphasis added). Plaintiff has not alleged any other instances of unconstitutional conduct at the jail, much less a pattern.

Plaintiff's allegations as to these instances are insufficient to meet the similarity requirements and do not establish a relevant pattern or practice. Plaintiff cites aggregate statistics with no context or explanation of the similarities to this case. This sort of speculative allegation is insufficient to establish a constitutional violation. Reciting legal conclusions without reference to incidents of the same or similar nature is insufficient, and Plaintiff fails to meet his burden.

Plaintiff has not directed the Court's attention to any prior incidents that are sufficiently similar to his own; this is not sufficient to allege a pattern. As the Supreme Court has found,

"[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). Therefore, Plaintiff's Complaint does not even remotely allege facts sufficient to establish the ordinarily necessary "proof-by-pattern" to support his claim against the City.

### 2. Plaintiff Cannot Show a Single Incident With the Obvious Potential for a Violation of Constitutional Rights

Second, absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an "obvious" or "highly predictable consequence" of the alleged training inadequacy. *Bryan County*, 219 F.3d at 459-61; *Burge*, 336 F.3d at 373 ("[I]n a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights," such that "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.") (citation omitted) (quotation marks omitted). The Supreme Court explained as much in *Canton*, by way of hypothetical:

> "[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] (1985), can be said to be 'so obvious[ ]' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."

*Canton*, 489 U.S. at 390 n.10.

As the Fifth Circuit has noted, "[w]ithout a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances like those of *Canton's*

hypothetical. And in the thirty years since *Canton* issued, actual cases reaching those extremes have proved fortunately rare." *Littell*, 894 F.3d at 627 (emphasis in original). Indeed, the *Littell* court noted that, prior to its decision in that case to find such a narrow and extreme set of allegations at the pleadings stage, only one plaintiff in the "single incident" case scenario has ever prevailed in the Fifth Circuit. *Id*. at n.6.

In this matter, Plaintiff has failed to allege any specific shortcoming in the City's training and supervision of its police and jail officers. Rather, there are 5 perfunctory references to inadequate training or supervision without any factual specificity:

1. "[S]ystemic failures in supervision, training, and discipline that allowed [unconstitutional] practices to persist." [Dkt. 3, p. 22].
2. "The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision." *Id*. at p. 25.
3. The City failed to train officers on:
   • the probable-cause requirements for public intoxication (which requires both intoxication and danger to self or others),
   • the prohibition on retaliatory arrests based on protected speech,
   • lawful use of force on compliant subjects,
   • the legal limits of investigatory encounters, and
   • mandatory jail-processing and magistrate-presentation requirements. *Id*. at pp. 26-27.
4. "The City also failed to supervise or discipline officers whose arrest patterns deviated sharply from similarly situated peers, including Hammett and Markham, despite reviewing each PI arrest for approval." *Id*.
5. "The City failed to train jail staff on lawful invocation of the Fifth Amendment, the prohibition on coercive questioning, and the constitutional limits on suicide-watch placement. Instead, staff used suicide-restraint protocols as a compliance tool, evidencing systemic failures in training and supervision." *Id*.

These allegations are not sufficient to establish municipal liability. Indeed, "[p]roof of the need for better hiring practices, training or supervision does not itself establish that the City Defendants are liable." *Barrios-Barrios v. Clipps*, 825 F.Supp. 2d 730, 746 (E.D. La. 2011). "[S]howing merely that additional training would have been helpful in making difficult decisions

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT** **Page 20**

does not establish municipal liability. [P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Connick*, 563 U.S. at 68 (quotation omitted).

Here, Plaintiff's allegations concern the use of less-than-lethal force and Plaintiff's arrest and detention for Public Intoxication, and the alleged deprivation of due process at jail book-in. While not making light of either, Plaintiff's allegations do not reach the level of *Canton's* hypothetical of a novice officer newly-armed with no training.

Therefore, under Fifth Circuit precedent, Plaintiff's set of facts does not fit into the *Canton* hypothetical of narrow and extreme circumstances giving rise to municipal liability absent allegations of the existence of a pattern of similar alleged constitutional violations. In sum, Plaintiff has failed to plead facts from which this Court could infer the City failed to train or supervise its employees.

### 3. Plaintiff Has Not Plausibly Alleged the City's Supposed Inactions Were the "Moving Force" Behind His Injuries

Even if Plaintiff had alleged sufficient facts to establish a policy or custom or a plausible showing of inadequate training - which he has not - Plaintiff fails to adequately plead that the inadequate training caused a deprivation of Plaintiff's constitutional rights. Plaintiff asserts only conclusory allegations of causation and fails to connect the lack of training or procedures to the complained of injury. Plaintiff must allege facts which show "moving force" causation to establish his § 1983 claims. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiffs federal rights. *Id*. at 542, 546 (citing *Brown*, 520 U.S. at 404). "[T]he connection must be more than a mere 'but for' coupling

between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Valle*, 613 F.3d at 546 (quotation omitted).

As one court in this circuit explained, in the police training context:

> "[e]ven showing the obviousness of a need for additional training regarding the constitutional obligations of police officers may not be enough to establish deliberate indifference because it does not necessarily mean that the officers will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution."

*Barrios-Barrios*, 825 F.Supp.2d at 746-47 (citing *Connick*, 563 U.S. at 70) (quotation marks omitted). Moreover, the Fifth Circuit has held that "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020), cert. denied, 141 S. Ct. 376, 208 L. Ed. 2d 97 (2020).

Here, Plaintiff does not plead any facts, much less sufficient ones, to show any City policy or practice caused the alleged constitutional violation. Plaintiff alleges no pattern of misconduct from which the allegedly-offending officers could have inferred City permission to unlawfully arrest him, utilize excessive force, or retaliate against him for exercising his First Amendment rights. Nor has Plaintiff alleged a pattern of misconduct from which the allegedly-offending John Doe jail officers could have inferred City permission to utilize "unlawful and coercive jail-processing practices." Finally, Plaintiff has failed to allege that the City's policymakers were on actual or constructive notice of constitutional violations that amounted to a custom.

Plaintiff fails to plead facts showing that the City's alleged deficient policies or training program caused or even encouraged the alleged unconstitutional acts pleaded in the Complaint. Therefore, Plaintiffs municipal claims and failure-to-train claims fail for the additional reason that Plaintiff has not alleged sufficient facts to establish "moving force" causation.

**4. No Factual Allegation That City's Officers Were Not in Compliance With State Mandated Training Requirements**

Plaintiff's allegations regarding inadequacies in training and supervision provide no basis for liability against the City because police training mandated of all law enforcement officers in the State of Texas includes the training of which Plaintiff complains and there are no factual allegations that the City's officers were not in compliance with state standards.

Texas provides that all peace officers in Texas, including those employed by the City, are required to complete training and licensing requirements of the Texas Commission on Law Enforcement ("TCOLE") before serving as a police officer. *See* TEXAS OCCUPATIONS Code §§ 2701.251, 1701.253. Under § 1701.251 of the Texas Occupations Code, TCOLE is required to establish and maintain training programs for peace officers. In order to obtain and maintain a peace officer license in Texas, each officer must satisfactorily meet TCOLE standards. The licensing and training standards established by TCOLE have been found to comply with constitutional requirements and are adequate to enable Texas peace officers to deal with unusual and recurring situations peace officers encounter. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992).

"[A]ll that is required for a municipality to prevail in a claim based on inadequate training is compliance with state mandated training standards for its officers." *Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1007 (E.D. Tex. 1997); accord *Gonzales v. Westbrook*, 118 F.Supp.2d 728, 737 (W.D. Tex. 2000). When state law mandates the training required of a city's officers, as in Texas, a plaintiff generally cannot satisfy the elements to support a claim of inadequate training. *See Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996). Further, the Fifth Circuit has previously rejected attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train. *See Goodman v. Harris Cnty.*, 571 F.3d 388 (5th Cir. 2009).

Training regarding a police officer's investigation of criminal wrongdoing and arrest of a criminal suspect is precisely the type of basic police training the State of Texas assures all the state's police officer trainees receive, and Plaintiff has not made any factual allegations showing state training in this regard is constitutionally inadequate. Accordingly, Plaintiff has failed to allege facts showing Defendant City's employees are not trained in accordance with constitutional requirements and cannot establish a "failure to train" claim.

**E. Plaintiff's Claim for Failure to Supervise Should be Dismissed**

In a Section 1983 claim for failure to supervise, a plaintiff must show that: 1) the supervisor failed to supervise the subordinate official; 2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and 3) the failure to supervise amounts to deliberate indifference. *Goodman*, 571 F.3d at 395 (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998)).

Plaintiff offers no specifics addressing the elements of a claim asserting municipal liability for failure to supervise, instead conclusorily asserting that the City failed to train or supervise. Plaintiff offers no factual contentions concerning any alleged failure of supervision of the officers who participated in his arrest, any causal link between the supervision of the relevant officers and any alleged violation of Plaintiff's constitutional rights, or any alleged deliberate indifference by the City in conjunction with any alleged failure to supervise the officers who were involved in his arrest. *Id*.

Plaintiff has failed to state a plausible claim for relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Because Plaintiff's Complaint lacks allegations regarding required elements of a cause of action for failure to supervise, the Court should dismiss this claim. *Tuchman*, 14 F.3d at 1067; *Keane*, 297 F. Supp. 2d at 925; *Blackburn*, 42 F.3d at 931.

**F.      Plaintiff is Barred from Recovering Exemplary Damages.**

The Supreme Court has ruled that punitive damages are not recoverable from a governmental entity or local officials in their official capacity in § 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, Plaintiff, even if successful, cannot as a matter of law recover punitive damages in a 1983 action. *See Livingston v. Desoto Indep. Sch. Dist.*, 2004 WL 2964977, at *2 (N.D. Tex. Dec. 15, 2004). The Fifth Circuit has reaffirmed that exemplary damages are not allowed against public entities under Section 1983. *Skyy v. City of Arlington*, 712 F. App'x 396, 401 (5th Cir. 2017). Accordingly, the Court should dismiss Plaintiff's exemplary damages claim.

## IV.      CONCLUSION

The facts alleged within Plaintiff's Complaint do not constitute the violation of any right protected by the Constitution or laws of the United States, and as such, Plaintiff's claims must be dismissed for failure to state a claim for which relief can be granted. Moreover, Plaintiff fails to state a claim against Defendant City because the City cannot be liable in the absence of a constitutional violation, and Plaintiff does not allege sufficient facts of a constitutional violation. Finally, Plaintiff fails to allege sufficient facts of any unlawful City policy or that any City policy was a moving force which caused any constitutional deprivation that Plaintiff alleges in this lawsuit.

WHEREFORE, PREMISES CONSIDERED, Defendant City respectfully prays that: (1) the Court grant Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendant recover all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which it may be justly entitled.

# PLAINTIFF'S APPENDIX IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS JAMES MARKHAM, ANDREW HAMMETT, AND PAUL LEWIS'S RULE 12(b)(6) MOTION TO DISMISS

## *Lotts v. City of Irving*, No. 3:25-CV-03329-S-BN (N.D. Tex.)

---

## TABLE OF CONTENTS

| Exhibit | Description | App. Page |
|---|---|---|
| A | Motion to Suppress (Irving Municipal Court, Cause No. JA063581 01) | App. 003 |
| B | Order Granting Motion to Suppress (March 7, 2025) | App. 010 |
| C | BWC Analysis: Chronological Transcript with Complaint Cross-References | App. 011 |

## EXHIBIT A

**Motion to Suppress**

Irving Municipal Court, Cause No. JA063581 01

*[See Below]*

---

# EXHIBIT B

**Order Granting Motion to Suppress**

Irving Municipal Court, Cause No. JA063581 01 (March 7, 2025)

*[See below]*

---

# EXHIBIT C

**BWC Analysis: Chronological Transcript with Complaint Cross-References**

*[See below]*

---

Respectfully submitted,

Dale Lotts, *Pro Se* 401 E 8th St, Ste 214 PMB 7860 Sioux Falls, SD 57103 (612) 208-9601 dale.lotts@policeconduct.org

---

**[END OF APPENDIX]**

CAUSE NO. JA063581

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE IRVING MUNICIPAL COURT |
| | § | |
| V. | § | |
| | § | |
| DALE LOTTS | § | DALLAS COUNTY, TEXAS |

## MOTION TO SUPPRESS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW THE DEFENDANT, DALE LOTTS, in the above-styled and numbered cause by and through his attorney of record, Aubrey Noonan, and files this Motion to Suppress evidence that was obtained illegally and respectfully moves this Honorable Court to hold a hearing on this Motion prior to trial and outside the presence of the jury, and thereafter suppress any and all evidence seized or obtained as a result of illegal acts on behalf of the State in this criminal prosecution which violated the Defendant's rights as guaranteed to him under both the federal and state constitutions and under state statutes. In support thereof, Defendant would show the following:

## I.     INTRODUCTION

The requested hearing is required by articles 28.01(6) and 38.22(6), Texas Code of Criminal Procedure. A hearing outside the presence of the jury is necessary to keep the jury from being prejudiced by inadmissible evidence. Such prejudice would result in the Defendant being denied his right to a fair trial.  U.S. Const. amends. VI and XIV, § 2; Tex. Const. art. 1, §§ 10, 15, and 19; Tex. Code Crim. Proc. arts. 1.04, 1.05, and 1.12.  *Jackson v. Denno*, 378 U.S. 368 (1964); *Reed v. State*, 518 S.W.2d 817 (Tex. Crim. App. 1975). A hearing is also necessary to adequately protect the Defendant's right to be free from compulsory self-incrimination and to ensure that any evidence sought to be admitted is not the fruit of primary illegality. U.S. Const. amends. IV, V, and XIV, §

2; Tex. Const. Art. 1, §§ 9, 10, and 19; Tex. Code Crim. Proc. arts. 1.04, 1.05, 1.06, 38.21, and 38.23; *Wong Sun v. United States*, 371 U.S. 471 (1963). Counsel for the Defendant will not be able to effectively represent him without an opportunity to test the admissibility of evidence which will be offered by the State.

## II.   ITEMS TO BE SUPPRESSED

**The Defendant moves the Court to suppress the following evidence:**

1.   All tangible evidence seized on or about December 4, 2023, from the Defendant's person.

2.   All statements made, whether oral or written, and such other actions of the Defendant, if any, at the time of and subsequent to the detention, arrest, and search of the Defendant.

3.   Testimony of law enforcement officers, or their agents and all other persons working in connection with such officers and agents, and all persons present at or near the location of the arrest and search of the Defendant regarding any of the statements or evidence acquired or objects seized.

## III.   STATEMENT OF FACTS

On December 4, 2023, at 1:40 AM, Defendant observed an Irving Police Department marked vehicle parked in a parking lot near 114 and MacArthur, with Officer James Markham #1379 inside and surveilling the area. Defendant was concerned that the officer was illegally parked, which is an offense for which the average citizen would get in trouble. Defendant was across the street from the parking lot, where he was staying at a hotel. Defendant approached Officer Markham's car and inquired into why he was illegally parked and seemingly above the law and why he was casing the area without observing any ongoing crime. Officer Markham indicated he

App. 004

was on proactive patrol and was investigating vehicle license plates and VINs to see if there were any issues with stolen vehicles or other related crimes.

Officer Markham exited his vehicle and continued to speak with Defendant as Defendant recorded the interaction. Officer Markham called for backup and several other officers arrived on scene. Officer Markham claims he heard Defendant "slur[] his words" and saw him "shuffle[] his feet, appearing to be unsteady when standing." Despite these allegations, he never conducted any field sobriety tests, portable breath test, nor did he request a specimen of Defendant's breath or blood, as would be customary for an intoxication investigation. Probable cause requires more than mere suspicion; it necessitates a factual basis. *Beck v. Ohio*, 379 U.S. 89 (1964). Officer Markham's body camera footage does not show Defendant slurring his words or appearing unsteady on his feet, as he stated in his offense report. There is absolutely no evidence of intoxication – Defendant had the normal use of his mental and physical faculties as evidenced by his ability to effectively confront Officer Markham for appearing to be above the law.

Additionally, should Officer Markham claim that he had probable cause to arrest for a separate offense than Public Intoxication, like Disorderly Conduct, those claims fail as well. Disorderly conduct requires actions intended to disturb the peace. Mr. Lotts did not make unreasonable noise, use abusive or threatening language, or incite an immediate breach of the peace. His interaction with the officers did not disturb the peace, particularly as there were no other individuals present to be disturbed. There was no evidence that Mr. Lotts posed a danger to himself or others. Officer Markham did not observe any behavior suggesting endangerment. The lack of evidence gathering, such as breathalyzer tests or field sobriety tests, further undermines this claim. *See Loera v. State*, 14 S.W.3d 464 (Tex. App.—Dallas 2000). The timing and nature of the arrest, coupled with Officer Markham's comments such as "Now you won't talk but you wouldn't shut up earlier," suggest a

retaliatory motive. Retaliatory arrests made without probable cause are considered unreasonable seizures under the Fourth Amendment. *City of Houston v. Hill*, 482 U.S. 451 (1987). Defendant should not have been arrested for any offense, but particularly Public Intoxication. As a result, he is requesting this Court suppress all evidence related to the detention, arrest, and search of Defendant and dismiss this pending PI ticket.

## IV.    ARGUMENT

**As grounds for this Motion the Defendant would show the Court the following:**

The State has the burden of proving the lawfulness of a warrantless search and seizure, *Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (overruled on other grounds), and that any alleged statements or acts of the Defendant which were the products of custodial interrogation meet the requisites of *Miranda v. Arizona*, 384 U.S. 436 (1966) and art. 38.22, Texas Code of Criminal Procedure.

    **a.** The detention of the Defendant was without probable cause or reasonable suspicion in violation of the 4th, 5th, 9th and 14th Amendments of the United States Constitution and Article 1, §§ 9, 10 & 19 of the Texas Constitution. *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997); *Viveros v. State*, 828 S.W.2d 2 (Tex. Crim. App. 1992); *Amores v. State*, 816 S.W.2d 407 (Tex. Crim. App. 1991). The acquisition of the evidence which will be offered by the State in this cause was not pursuant to a reasonable investigative detention, not pursuant to an arrest warrant, was absent exigent circumstances, and made without probable cause to believe the Defendant was engaged in criminal activity.

    **b.** The arrest and search of the Defendant was without probable cause, in violation of the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution of the

United States, and Article 1, §§ 9, 10, and 19 of the Constitution of the State of Texas. The acquisition of the evidence which the State will offer in this cause was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Defendant was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed.

c.  All statements made by the Defendant and items seized at the time of and subsequent to the arrest and search of the Defendant were products of the illegal arrest and search of the Defendant. *Mapp v. Ohio*, 367 U.S. 643 (1961); *Wong Sun v. United States*, 371 U.S. 471 (1963); 5th and 14th Amendments to the United States Constitution, Art. I, § 10 of the Texas State Constitution; Tex Code Crim. Proc. arts. 38.21, 38.22, and 38.23. Any statements and acts allegedly made by the Defendant in connection with this detention, search and seizure, and any tangible or other evidence seized or acquired then, or at any later time as a result of said statements or acts, are the products of the illegal detention, arrest and search and are therefore the direct result of illegal police procedures.

d.  Evidence seized in violation of the Constitution or laws of the State of Texas, or the United States is not admissible against the accused. Tex. Code Crim. Proc. art. 38.23; Article 1, § 9 of the Texas Constitution; 4th Amendment to the United States Constitution. Because of the foregoing reasons and others which may be adduced upon a hearing of this matter, the admission of the statements and acts of the Defendant and of the seized and derivative evidence would violate the Defendant's statutory and constitutional guarantees against self-incrimination, U.S. Const. amends. IV, V, and XIV; Tex. Const. art. 1, §§ 9, 10; Tex. Code Crim. Proc art. 1.05,

1.06, 38.21, 38.22, and 38.23, against unreasonable searches and seizures, U.S. Const. amend. IV; Tex. Const. art. 1, § 9, Tex. Code Crim. Proc. arts. 14 and 15; to effective assistance of counsel, U.S. Const. amend. VI; Tex. Const. art. 1, § 10; to a fair trial, U.S. Const. amend. VI; Tex. Const. art. 1, § 10 and Tex. Code Crim. Proc. art. 1.27, 38.01, and 38.02; and to his/her statutory rights under §§ 724.011, 724.012, 724.015 and 724.016, Tex. Transp. Code Ann.

e. And for such other and further reasons as may appear or be urged upon hearing in this cause.

## V.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that this Motion be granted and that the Court:

1. Instruct the prosecutor and all the State's witnesses not to refer, testify or in any manner allude to oral or written statements allegedly made by the Defendant until their admissibility has been determined;

2. Make required findings of fact and law as required by statute and constitutional authority before the submission of evidence to the jury; and,

3. Order such other relief as may be deemed equitable and necessary.

Respectfully submitted,

ROSENTHAL KALABUS & THERRIAN

By: */s/ Aubrey Noonan*
**Aubrey Noonan**
SBN: 24089951
7300 State Highway 121, Suite 400
McKinney, TX 75070
Ofc: 972-369-0577
Fax: 972-369-0532
aubrey@texasdefensefirm.com

## CERTIFICATE OF SERVICE

This is to certify that on July 12, 2024, a true and correct copy of the above and foregoing document was served on the Irving City Attorney's Office, Dallas County, by email to attorney@cityofirving.org.

*/s/ Aubrey Noonan*
**Aubrey Noonan**

App. 009

App. 110

Cause:  JA063581 01

ORDER GRANTING MOTION

**IN THE MUNICIPAL COURT**
**CITY OF IRVING**
**DALLAS COUNTY, TEXAS**

**STATE OF TEXAS**
**VS**

**DALE LOTTS**
**DOB: 10/18/1970**
**Cause:  JA063581 01**
**Offense: PUBLIC INTOXICATION**

# ORDER

On this day the Court considered the  ☑ Defendant's ☐ State's Motion  to Suppress.

and the Court, after considering the evidence and argument of counsel is of the opinion that the above motion be **GRANTED**.

☑ IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above motion is in all things **GRANTED**;

☑ IT IS FURTHER ORDERED that the above case be set for jury trial.

Signed this the 7th day of March, 2025.



Michael Acuña

JUDGE PRESIDING

# APPENDIX — EXHIBIT C

## Plaintiff's Chronological Analysis of Defendants' Body-Worn Camera Recording

*Lotts v. City of Irving*, **No. 3:25-CV-03329-S-BN (N.D. Tex.)**

**Source:** Body-worn camera recording attached by Defendants as Appendix 1 to their Motion to Dismiss. Plaintiff disputes authenticity and completeness. *See* Response, Body Worn Camera section. This analysis is provided only if the Court considers the video despite Plaintiff's objection. "Playback" refers to elapsed time from the start of Defendants' recording. "BWC Clock" refers to the camera's internal timestamp (offset ≈ 1:39:42).

**Legend — Claims Supported:** - **4A** — Fourth Amendment (unlawful arrest / false imprisonment) - **1A** — First Amendment (retaliation for protected speech) - **EF** — Excessive Force - **CON** — Conspiracy (§ 1983) ## WHAT THE VIDEO DOES NOT SHOW

### Unrecorded Surveillance Period

- **NOT SHOWN**: Markham's surveillance of Plaintiff prior to BWC activation (unknown duration and distance, Compl. ¶¶ B-E, K)
- **NOT SHOWN**: Plaintiff walking away (~100 yards), sitting, reading his phone, standing, and walking back — all without difficulty (Compl. ¶¶ A, D-F)
- **NOT SHOWN**: Any balance issues, stumbling, or signs of impairment during the surveillance period

### Missing and Incomplete Audio

- **STARTS WITHOUT AUDIO**: BWC begins showing both parties speaking, but audio is absent for the initial portion of the encounter
- **AUDIO GAP**: After the arrest, audio disappears for over 5 minutes during the critical post-arrest period (Compl. ¶ Y)

### Missing Camera Angles

- **NOT PROVIDED**: Officer Hammett's body-worn camera footage
- **NOT PROVIDED**: Officer Lewis's body-worn camera footage
- **NOT PROVIDED**: Jail intake video (separate from Markham's BWC)

### No Authentication

- No custodian declaration establishing chain of custody
- No hash/metadata verification of file integrity
- No certification that video is complete and unedited ## CHRONOLOGICAL ANALYSIS

| # | Playback | BWC Clock | Speaker | Statement / Event | Compl. ¶ | Claim(s) | Why It Supports Plaintiff |
|---|---|---|---|---|---|---|---|
| 1 | 00:30 | ~1:40:12 | Plaintiff | Repeats a question after receiving no substantive answer | — | 4A | Defendants cite as intoxication indicator; ordinary conversational behavior, not cognitive impairment |
| 2 | 00:39 | ~1:40:21 | Markham | "Emergency vehicles can park in no parking zone" | ¶ H | 4A, 1A | Claims official authority for parking position; authority requires official duty — but no enforcement activity is visible |
| 3 | 00:53–00:56 | ~1:40:35 | Markham | When asked what he would do if a civilian parked the same way, concedes he would ask them to move | ¶ H | 4A | Admission that his own parking was irregular; undermines claim of legitimate enforcement purpose |
| 4 | ~01:42 | ~1:41:24 | Markham | "I have to know the law to operate under qualified immunity" | — | 4A, 1A | Engages substantively with Plaintiff's legal argument — inconsistent with speaking to a person exhibiting "slurred speech" or impaired cognition; also claims knowledge of |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | the law while now invoking QI to argue ignorance |
| 5 | ~02:12 | ~1:41:54 | Markham | Describes Plaintiff's prior movements in detail; states Plaintiff was "pissed off," that he "knew [Plaintiff] was about to jaywalk," and that Plaintiff "might have warrants" | ¶ J | 4A, 1A, CON | Reveals prolonged surveillance and cataloguing of Plaintiff's conduct; cycles through pretexts (jaywalking, warrants) before settling on PI; calls it "proactive police work" |
| 6 | ~02:29 | ~1:42:11 | Plaintiff | "Well you're sitting here, you know, waiting for me to jaywalk for" | — | 4A | Defendants' sole cited example of "slurred speech" — a coherent sentence accurately describing Markham's surveillance conduct |
| 7 | ~03:18 | ~1:43:00 | Markham | **"Oh, 100%. Would you like some justification? Because I can come up with it. You're coming from an area where people drink. You could be out in the roadway. And then you get PI. You** | ¶ L | 4A, 1A | Admits 100% no basis for suspicion; offers to fabricate justification; occurs before any inquiry about alcohol — an officer who has observed intoxication says so; one |

App. 013

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | **might be drunk. I can justify that all damn day."** | | | who offers to "come up with" justification describes the absence of observations |
| 8 | ~03:38 | ~1:43:20 | Plaintiff | "Yeah, I know. 'Oh, smell alcohol in him. His eyes were watery.' Right?" | — | 4A | Predicts the formulaic probable cause narrative — supporting inference that the rationale was template, not observation-based |
| 9 | ~04:07 | ~1:43:49 | Markham | **"Free to go" #1** | ¶ M | 4A, 1A | Officer who believes person is dangerously intoxicated does not authorize him to leave unsupervised; negates endangerment element of § 49.02 |
| 10 | ~04:12 | ~1:43:54 | Plaintiff | Repeats a question | — | 4A | Defendants cite as intoxication indicator; ordinary conversational behavior after receiving no answer |
| | | | | Claims he is | | | Stated justification for presence; but no radar, no lidar, and Markham's |

App. 014

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11 | ~04:15 | ~1:43:57 | Markham | performing "traffic enforcement" | — | 4A, 1A | detailed cataloguing of Plaintiff's movements is inconsistent with monitoring traffic |
| 12 | ~04:16 | ~1:43:58 | — | No radar or lidar equipment visible | — | 4A | Undermines traffic enforcement claim |
| 13 | ~04:39 | ~1:44:21 | Markham | Admits running VIN on unoccupied vehicle because "I thought it might be stolen" | ¶ B | 4A | No report, no reasonable suspicion — same pattern of generating suspicion without basis that repeats with Plaintiff |
| 14 | ~04:59 | ~1:44:41 | — | Hammett's vehicle arrives on scene | ¶ N | CON | Responds to Markham's earlier radio transmission (backup request after criticism) |
| 15 | ~05:23 | ~1:45:05 | Hammett | On foot, positions himself behind Plaintiff | ¶ N | CON, EF | Takes position behind Plaintiff without independent observation of gait, balance, or coordination; Plaintiff facing away |
| 16 | ~05:34 | ~1:45:16 | Markham | **"Free to go" #2** | ¶ M | 4A, 1A | Hammett now present; continued authorization to leave negates endangerment |

App. 116

| | | | | | | |
|---|---|---|---|---|---|---|
| 17 | ~05:37 | ~1:45:19 | Markham | Confirms what he observed during surveillance: Plaintiff "walking over there" | — | 4A | Describes only normal ambulation — the absence of any objective indicator persists through arrest |
| 18 | ~05:40 | ~1:45:22 | Markham | **"Free to go" #3** | ¶ M | 4A, 1A | |
| 19 | ~05:42 | ~1:45:24 | Markham / Plaintiff | **"Free to go" #4 →** Plaintiff: "I'm free to stay" → Markham: **"Yeah, you are. Just back up."** | ¶ M | 4A, 1A | Confirms Plaintiff has right to remain; cannot arrest for staying after confirming right to stay |
| 20 | 05:19–06:36 | — | Plaintiff | Pacing near patrol vehicle | — | 4A | Defendants cite as "unsteady balance"; normal movement near a vehicle is not evidence of impairment |
| 21 | ~05:53 | ~1:45:35 | Markham | [Audible sigh of frustration] | — | 1A | Frustration with continued criticism, not concern about intoxication |
| 22 | ~05:56 | ~1:45:38 | Markham | **"Goodbye." ("Free to go" #5)** | ¶ M | 4A, 1A | Final authorization to leave; word of disengagement inconsistent with belief that Plaintiff is dangerously intoxicated |
| 23 | ~05:57 | ~1:45:39 | Plaintiff | "You're free to go too." | — | 1A | Protected speech — verbal criticism |

App. 016

| # | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | of officer |
| 24 | ~05:58 | ~1:45:40 | Markham | "Do you have any other issues?" | — | 1A | Re-engages after saying goodbye; shift from disengagement to escalation |
| 25 | ~06:02 | ~1:45:44 | Plaintiff | "Other than somebody bullshit profiling me? No." | ¶ N | 1A | Protected speech — criticism of surveillance |
| 26 | ~06:07 | ~1:45:49 | Hammett | [Laughing] "How do you think you're being profiled?" | ¶ N | 1A, CON | First substantive statement is about Plaintiff's *speech*, not his condition; tone is mocking, not diagnostic |
| 27 | 06:09–06:29 | 1:45:51–1:46:11 | Hammett | Asks about profiling four times; conducts zero assessment of Plaintiff's condition | — | 1A, 4A, CON | 22 seconds of questioning focused entirely on speech; zero investigative acts regarding intoxication |
| 28 | 06:30 | ~1:46:12 | Markham | **"Have you been drinking tonight?"** | ¶ O | 4A, 1A | First mention of intoxication — over 7 minutes into encounter, only after criticism intensified; 7 seconds before arrest |
| | | | | | | | Echoes Markham within 2 seconds without any independent assessment; |

| 29 | 06:31–06:33 | ~1:46:13–15 | Hammett | **"Kind of seems like you have"** | — | 4A, 1A, CON | had been on scene ~90 seconds with Plaintiff facing away; coordination signal |
|---|---|---|---|---|---|---|---|
| 30 | 06:36–06:37 | ~1:46:18–19 | Markham | **"Go ahead and put your hands behind your back"** — ARREST | ¶¶ P, R | 4A, 1A, EF | 41 seconds after "Goodbye"; 7 seconds after first drinking question; no change in behavior, condition, or location; only intervening event was continued criticism |
| 31 | ~06:38 | ~1:46:20 | Plaintiff | Profanity | — | 1A | Defendants cite; constitutionally protected speech — *City of Houston v. Hill*, 482 U.S. at 461 |
| 32 | ~06:40 | ~1:46:22 | Plaintiff | Raises phone to record Markham's face | ¶ P | 1A, EF | Exercising First Amendment right to record; *Turner v. Driver*, 848 F.3d at 685–86; not resistance |
| 33 | ~06:41 | ~1:46:23 | Plaintiff | "What's your suspicion that I have been drinking?" | — | 4A | Real-time legal analysis — inconsistent with impaired cognition |
|  |  |  |  |  |  |  | Occurred 10 |

App. 119

| | | | | | | |
|---|---|---|---|---|---|---|
| 34 | ~06:46 | ~1:46:28 | — | Defendants' alleged "arm-pulling" | ¶ P | EF | seconds *after* arrest began; post-arrest conduct cannot supply probable cause (*Sibron*); Complaint alleges no resistance |
| 35 | ~06:48 | ~1:46:30 | Hammett | **Shoves Plaintiff into patrol vehicle from behind** | ¶ Q | EF | Plaintiff was compliant — left hand already behind back voluntarily; shove was from behind on a non-resisting person |
| 36 | 06:48–07:20 | 1:46:30–1:47:02 | Markham / Hammett | **Pain-compliance hold maintained** (~32 seconds) | ¶ Q | EF | Prolonged hold on motionless, compliant person; caused substantial pain and visible bruising (¶ T) |
| 37 | ~06:54 | ~1:46:36 | — | Handcuffs dropped | — | EF | Extended painful hold while officers retrieved replacements |
| 38 | ~07:02 | ~1:46:44 | Lewis | Arrives; reaches toward Plaintiff; sees no resistance; **withdraws hand** | ¶ S | EF, CON | Independent confirmation that Plaintiff presented no threat or resistance |
| | | | | "You got your ID on | | | ID request 82 seconds *after* arrest; post-arrest — cannot supply |

App. 019

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 39 | ~07:58 | ~1:47:40 | Markham | you?" | — | 4A | probable cause; also asks to produce document, not statutory name/DOB |
| 40 | ~08:13 | ~1:47:55 | Plaintiff | "One thing I don't have to do is identify myself" | — | 4A | Correct statement of Texas law; accurate legal analysis inconsistent with impaired cognition |
| 41 | 08:49–13:42 | 1:48:31–1:53:24 | Lewis | Remains within inches of Plaintiff for ~5 minutes | — | CON, 1A | Hears every post-arrest admission; takes no corrective action; *Hale v. Townley*, 45 F.3d at 919 |
| 42 | ~09:25 | ~1:49:07 | Hammett | Approaches Markham's vehicle; speaks inaudibly on both BWCs | ¶ Y | CON | Positions to avoid camera angles; no verbal cue captured — yet all officers mute simultaneously afterward |
| 43 | ~09:25+ | ~1:49:07+ | All officers | **Synchronized BWC audio muting** — no verbal instruction captured | ¶ Y | CON | All three mute independently without prompting; supports inference of prior training or established practice; missing audio during critical post-arrest justification |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | period |
| 44 | Post-mute | — | Hammett | **"That was completely unnecessary"** | ¶ U | EF, 4A | On-scene admission by the officer who applied force; precisely the on-scene evaluation *Graham v. Connor* instructs courts to consider |
| 45 | Post-mute | — | Hammett | **"Wouldn't shut up before, now won't talk"** | ¶ V | 1A | Explicitly ties arrest to speech; captured only because Markham forgot to mute |
| 46 | ~12:43 | ~1:52:25 | Markham | **"Why you hate the police so much?"** → describes deferential attitude that would have avoided arrest: "you got me, it's cool, can you just gimme a ride" → **"Do you wanna [take a ride]? Or do you wanna go to jail for public intox?"** | ¶ W | 1A, 4A | Conditions disposition on attitude/speech, not safety; creates A/B comparator — deference = ride home, criticism = jail; the only variable is speech content |
| 47 | ~13:00 | ~1:52:42 | Plaintiff / Markham | Plaintiff: "lawsuit either way" → Markham chooses jail | ¶ W | 1A | Continued criticism produces jail — but-for causation established by officer's own conditional offer |
| | | | | | | | (a) Recounts Plaintiff's *speech*, not |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 48 | ~13:58–14:01 | ~1:53:40–43 | Hammett | Recounts encounter to other officers: "He's like, 'I want you to leave me alone.' Markham's like, 'You came up to me...'" + claims Plaintiff was **"staggering"** | ¶ X | CON, 4A | intoxication symptoms — speech was the salient fact; (b) "staggering" claim appears *after* muting gap, unsupported by any BWC footage; (c) Hammett was behind Plaintiff and had no vantage for gait observation pre-contact |
| 49 | 37:26–39:58 | — | Markham | **Spends ~5 minutes repairing patrol vehicle bumper** while Plaintiff sits detained | — | 4A | Inconsistent with concern for a dangerously intoxicated detainee; prioritizes vehicle maintenance over processing |
| 50 | ~49:16 | — | Jail staff | **"What's wrong with him?"** — standard intake question | ¶ CC | 4A, 1A | Intake question invites intoxication-related answer for a PI booking |
| 51 | ~49:28 | — | Markham | **"He's one of those videotape guys"** → staff acknowledges without further inquiry | ¶¶ BB, CC | 1A, CON | Asked what is "wrong" with a PI arrestee, identifies recording activity — not intoxication — as the thing that is "wrong"; immediate recognition without explanation |

App. 123

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | indicates pre-existing operational classification |
| 52 | ~50:55 | — | Plaintiff | Complies with book-in | — | — | Defendants cite; demonstrates cooperation, not intoxication |

## SUMMARY

**What Defendants' Recording Shows:**

- **Zero** officer statements identifying intoxication symptoms prior to arrest
- **Zero** field sobriety tests, breath tests, or medical screenings
- **Zero** welfare checks despite prolonged surveillance
- **Five** statements that Plaintiff was "free to go"
- **One** admission that "100%" no crime was suspected
- **One** offer to fabricate justification ("I can come up with it")
- **One** admission that force was "completely unnecessary"
- **One** statement tying arrest to speech ("wouldn't shut up")
- **One** classification identifying recording as the basis for arrest ("videotape guys")
- **One** conditional offer making disposition depend on attitude, not safety
- Clear, coherent, legally articulate speech from Plaintiff throughout
- Synchronized BWC muting during the post-arrest justification period

**What Defendants' Recording Does Not Show:**

- Stumbling, staggering, or unsteady gait at any point
- Slurred speech at any point
- Odor of alcohol (no officer mentions it)
- Entry into a roadway
- Any conduct satisfying the "danger" element of § 49.02
- Any independent assessment by Hammett before echoing Markham
- The content of the muted period
- Hammett's or Lewis's BWC footage (not produced) **[END OF EXHIBIT C]**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DALE LOTTS,                         §
                                    §
            Plaintiff,              §
                                    §
V.                                  §          No. 3:25-cv-3329-S-BN
                                    §
CITY OF IRVING, ET AL.,             §
                                    §
            Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Dale Lotts filed a *pro se* complaint asserting claims under 42 U.S.C. § 1983 based on violations of the First, Fourth, and Fourteenth Amendments against Defendant City of Irving, several of its police officers, and unidentified employees at its jail, related to events alleged to have occurred on December 4 and 5, 2023, paying the statutory filing fee to do so. *See* Dkt. No. 3.

The presiding United States district judge referred Lotts's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The City and Defendants James Markham, Andrew Hammett, and Paul Lewis (the "Officer Defendants") moved to dismiss Lotts's complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 9-14 & 19-21. Lotts responded. *See* Dkt. Nos. 16-18. And Defendants replied. *See* Dkt. Nos. 22 & 23.

And, for the reasons and to the extent set out below, the Court should grant the motions and otherwise dismiss Lotts's claims.

## Legal Standards

A motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Considering such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

- 2 -

556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that plaintiffs allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per

- 3 -

curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen an allegation is contradicted by the contents of an exhibit attached to the pleading," "the exhibit and not the allegation controls." *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (cleaned up; quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d

370, 377 (5th Cir. 2004) (citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And, under these standards, the Court may consider video footage presented through a motion to dismiss in certain circumstances – which have been met here, and, so, body camera footage has been made "part of the pleadings." *Collins*, 224 F.3d at 498-99, where Lotts refers to that footage in his complaint and that footage offers "a contemporaneous account that either confirms or negates what the state actors

- 5 -

allegedly did" and therefore "may be considered more than mere evidence of a [constitutional] violation" and "thus is 'central to the plaintiff's claim[s],'" *Martinez v. Dall. Police Dep't*, No. 3:22-cv-1870-K-BN, 2025 WL 2347186, at *3 (N.D. Tex. July 23, 2025) (quoting *Kaye*, 453 B.R. at 662; citing *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024) ("Because the expert report, which is incorporated into Benfer's complaint, refers to Calvert's dash cam and bodycam footage, we may consider the footage at this stage.")), *rec. accepted*, 2025 WL 2345075 (N.D. Tex. Aug. 13, 2025); *accord Aguilar v. City of Carrollton*, No. 3:25-cv-947-B-BN, 2026 WL 587186, at *3-*4 (N.D. Tex. Feb. 3, 2026), *rec. accepted*, 2026 WL 587182 (N.D. Tex. Feb. 27, 2026), *reconsideration denied*, 2026 WL 1004794 (N.D. Tex. Apr. 14, 2026).

> And, "where video recordings are included in the pleadings … the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon*, 16 F.4th at 1163 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); footnote omitted); *see also Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam) ("If an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.' Here, the Video was attached to Montgomery County and Montes's joint motion to dismiss and referenced by Sligh in her operative complaint. Accordingly, to the extent that the Video contradicts Sligh's allegations, the Video controls." (quoting *Riley*, 355 F.3d at 377)).

*Aguilar*, 2026 WL 587186, at *4.

## Analysis

Against a Texas municipality, several of its police officers, and unidentified jailers, Lotts alleges that his arrest on December 4, 2023 and the detention that resulted from it (from which he was released in the afternoon of December 5) violated

the Fourth Amendment (because his arrest was wrongful and the force used unconstitutionally excessive), the First Amendment (because he was retaliated against based on speech), and the Fourteenth Amendment (because his right to due process was violated and he was treated with deliberate indifference).

## I.   The Court should grant the Officer Defendants' motion to dismiss.

As to the Officer Defendants' assertions of qualified immunity, the first prong of that defense is that a plaintiff fails to plausibly allege a constitutional violation. *See Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

And, as explained below, because Lotts has not alleged plausible constitutional violations based on actions by the Officer Defendants, their motion to dismiss should be granted.

"A § 1983 false arrest claim requires that the plaintiff show that the arresting officer lacked probable cause. 'Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Santander v. Salazar*, 133 F.4th 471, 481 (5th Cir. 2025) (citing then quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam)).

And, since "probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the

time of arrest or booking." *D.C. v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-155 & n.2 (2004)).

At a minimum, there was probable cause to arrest Lotts for resisting arrest where the video evidence contradicts his allegations and reflects that Lotts disregarded verbal directives, raised his arm and moved towards an officer, and then pulled his arm away from the officers when they attempted to handcuff him. *See, e.g.*, *Benfer*, 120 F.4th at 1281 ("'A person' resists arrest 'if he intentionally prevents or obstructs a person he knows is a peace officer ... from effecting an arrest ... by using force against the peace officer ....' TEX. PEN. CODE § 38.03(a). 'It is no defense ... that the arrest or search was unlawful.' *Id.* at § 38.03(b). That means, '[i]n Texas, the act of resisting can supply probable cause for the arrest itself ....' *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). And '[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest.' *Id.* (collecting cases).").

And, because probable cause supports Lotts's arrest, his First Amendment retaliatory arrest claim is not plausibly alleged. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Lotts also has not plausibly alleged that force used against him was unconstitutionally excessive.

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

- 8 -
App. 132

should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

And, to plausibly allege excessive force in violation of the Constitution, a plaintiff must provide facts that show or from which a court may infer "that he 'suffered an injury that resulted directly and only from a clearly excessive and objectively unreasonable use of force.'" *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (cleaned up; quoting *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (in turn citing *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020))).

And, so,

> a constitutional violation does not occur every time an officer touches someone. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. [And, w]hen the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.

*Carter v. Dupuy*, 173 F.4th 561, 564 (5th Cir. 2026) (cleaned up).

Considering challenges to an excessive force claim under Rule 12(b)(6), "[t]he central question is whether Plaintiffs have pleaded facts that plausibly suggest the Officers' conduct was clearly excessive and objectively unreasonable." *Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *7 (E.D. Tex. Mar. 14, 2019).

And, "[t]o gauge the objective reasonableness of the force, a court 'must balance the amount of force used against the need for force.' … [So t]he inquiry into

- 9 -

App. 133

reasonableness is fact specific." *Hatcher v. Bement*, No. 3:14-cv-M-BN, 2015 WL 1511106, at \*4 (N.D. Tex. Apr. 3, 2015) (cleaned up; quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).

Here, even if the force used, as alleged and shown through video footage to the extent that footage blatantly contradicts Lotts's allegations – the brief struggle to handcuff Lotts after he resisted by pulling his arm away and the placement of Lotts into the patrol car, which he concludes amounted to shoving – counts as more than de minimis, the factual content before the Court does not plausibly allege that that force was clearly excessive and objectively unreasonable under the circumstances.

And, to the extent that Lotts fails to plausibly allege a constitutional violation against the Officer Defendants, his claim that they conspired to violate his civil rights – which is itself conclusory, *see* Dkt. No. 3 at 21-22 (alleging "coordinated statements"; "shared responses"; and "coordinated treatment," without factual content as to an agreement between the parties) – is not plausibly alleged, *see Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (A "plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994))).

But, even if Lotts had alleged a plausible constitutional violation against an Officer Defendant, each is still entitled to dismissal of these claims based on qualified immunity.

As the Court set out in the briefing order as to the motions to dismiss for Lotts's

benefit as a *pro se* litigant,

> pleading a plausible violation of federal law is only one prong of the qualified immunity analysis. So, for a plaintiff to overcome qualified immunity, he must also show "that the right was clearly established" – "'[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *limited by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Dkt. No. 12 at 7.

This "'clearly established' prong is difficult to satisfy," *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020), in part because the Court is "bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents," *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34.

And the plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

"There are two ways to demonstrate clearly established law" and meet this

additional burden to make this second showing. *Id.*

Typically, the plaintiff must "'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances was held to have violated the Constitution.'" *Joseph*, 981 F.3d at 330 (cleaned up); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "controlling authority – or a 'robust consensus of [cases of] persuasive authority' – that defines the contours of the right in question with a high degree of particularity." (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))).

And "[i]t is the plaintiff's burden to find a case in her favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)). Because the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up). And a clearly established right must be defined "with specificity." *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)).

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citations omitted).

"In other words, 'there must be adequate authority at a sufficiently high level

of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And, in sum, under the most common approach to this prong, while the "clearly established right … must be particularized to the facts of the case establishing the right," *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 277 (5th Cir. 2022) (cleaned up), because "[t]he touchstone of the inquiry is 'fair notice,'" "[d]istinctions between cases are thus relevant only if they make the applicability of prior precedent unclear," *Boyd v. McNamara*, 74 F.4th 662, 669 (5th Cir. 2023) (citations omitted).

That is, "[a] plaintiff need not show that the very action in question has previously been held unlawful. The test is whether every reasonable official would know that their actions are unconstitutional. [And, so, a]t the end of the day, [what is absolutely necessary] is fair warning." *Stevenson v. Tocé*, 113 F.4th 494, 504 (5th Cir. 2024) (cleaned up).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 583 U.S. at 64); *accord Batyukova*, 994 F.3d at 726.

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned

up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338.

And, so, "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious,'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)), because qualified immunity should "not immunize those officials who commit novel, but patently 'obvious,' violations of the Constitution," *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)).

This is not a case where a constitutional violation is either obvious or novel – as explained above. So, to defeat the Officer Defendants' assertions of qualified immunity, Lotts was required to present authority particularized to the facts here. He did not. *See, e.g.*, Dkt. No. 15 at 22-33 (citing cases that, at least at a high level, may be relevant to the claims asserted but then failing to address how the facts underlying those decisions match the facts as alleged by Lotts and thus provide fair notice). And, so, even if the Court were to find that Lotts has plausibly alleged a constitutional violation, the Officer Defendants are still entitled to qualified immunity and dismissal of the claims against them.

## II.     The Court should grant the City's motion to dismiss.

Lotts also alleges liability against the City of Irving through a claim titled "Monell Liability." *See* Dkt. No. 3 at 22-28.

*Monell* does not itself provide a cause of action. Still, "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

And the general pleading standards set out above apply to such a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

But, because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell*, 436 U.S. at 690), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez II*, 956 F.3d at 791 (citing *Monell*, 436 U.S. at 694); *see also Cope v. Coleman Cnty.*, No. 23-10414, 2024 WL 3177781, at *3 (5th Cir. June 26, 2024) (per curiam) ("A municipality may be held liable for a constitutional violation 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" (quoting *Monell*, 436 U.S. at 694)).

To plausibly allege that a policy was the moving force,

> a plaintiff must identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional

act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

These elements are "necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

And, where a plaintiff's claim fails as to one prong, a court "need not consider whether [the plaintiff's] claim also fails the other two *Monell* prongs." *Brown*, 985 F.3d at 494 & n.11 (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

And, in rare circumstances, "a single decision by a policymaker may … constitute a policy for which a municipality may be liable," where (1) the "decision was made by a final policymaker, and (2) a plainly obvious consequence of the decision is a constitutional violation." *Doe v. Englewood Indep. Sch. Dist.*, 964 F.3d 351, 366 (5th Cir. 2020) (cleaned up); *see also Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) ("[A]n official policy includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (cleaned up)).

- 16 -
App. 140

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen*, 65 F.4th at 749 (citation omitted).

A plaintiff must then "allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (citation omitted).

As to the causation required, "[t]his connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (footnote omitted). That is because the "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor." *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013) (per curiam).

"[T]he failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (citation omitted). And, although "a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for

- 17 -
App. 141

it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

Foremost, as to his arrest by the Officer Defendants, Lotts has not alleged a claim against the City because – for the reasons set out above – he has not plausibly pleaded "that a constitutional violation occurred." *Sanchez II*, 956 F.3d at 791.

But, even if he had, Lotts still fails to plausibly allege a Section 1983 claim against the City because he fails to provide factual content that allows the Court to draw the reasonable inference that a municipal policy was the moving force behind the constitutional violations alleged.

First, Lotts has not alleged that the actions taken against him were due to an

official policy.

And, as to an "unofficial" policy or pattern or practice, a municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to [its] policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at *5 (quoting *Piotrowski*, 237 F.3d at 582).

And a pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the primary scope of the allegations pleaded by Lotts – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson,* 80 F.4th at 710 (cleaned up); *accord Webb v. Twn. of Saint Joseph,* 925 F.3d 209, 214 (5th Cir. 2019) ("While municipalities can be sued directly under § 1983, *Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior" – and, so, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." (cleaned up)).

And, to the extent that Lotts attempts to plead the policy prong through prior incidents based on factual content relying on records that he obtained, *see* Dkt. No. 3 at 23 ("FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for 'public intoxication,' while Officer Paul Lewis made 8, and Officer James Markham – who was trained by Hammett as his Field Training Officer – made 15. Compared to Officer Lewis, a similarly situated patrol officer during the same period, both Hammett and Markham made substantially higher numbers of public-intoxication arrests."), these allegations do not raise a reasonable inference that an official municipal policy was the moving force behind a constitutional violation.

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (cleaned up).

And "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather, notice of a pattern of [fairly] similar violations is required." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (cleaned up).

That any one officer had a higher number of arrests for a particular offense compared to a fellow officer tells the Court nothing where there is no context or further factual elaboration to explain how these prior arrests are fairly similar to what Lotts alleges here. *See, e.g.*, *Peterson*, 588 F.3d at 851 & n.4 (as to the Fort Worth Police Department, "[t]wenty-seven [complaints of excessive force] in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy").

And, to the extent that Lotts asserts a ratification theory of liability – *see, e.g.*, Dkt. No. 3 at 24 ("[T]he City took no corrective action.") – "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality," *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at *2 (N.D. Tex. Aug. 25, 2021); *see also Peterson*, 588 F.3d at 849 (even "defend[ing] conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality").

Plus, "unless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification or

- 21 -

defense of his subordinate's actions is insufficient to establish an official policy or custom." *Sligh*, 87 F.4th at 303 (cleaned up).

And, so, "underlying conduct" that, "while unconstitutional, [may] not [be] sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)).

Lotts also fails to plausibly allege the policymaker prong of *Monell* liability, which requires that a complaint contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 285 (5th Cir. 2016); *see Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

### III. On its own motion, the Court should dismiss Lotts's Fourteenth Amendment due process and deliberate indifference claims.

Under the standards of Rule 12(b)(6), a district court may "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table),

2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

"The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citations omitted).

And "[a] magistrate judge's report and recommendation constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions." *Jones v. City of Dall., Tex.*, No. 24-10803, 2025 WL 2491127, at *6 (5th Cir. Aug. 29, 2025) (per curiam) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

Under these principles, the Court should consider the sufficiency of Lotts's claims based on his detention at the City's jail.

Against John Doe jailers, Lotts alleges that his rights, as a detainee, to due process and to not be treated with deliberate indifference were violated when staff at the jail "told [him that] he would not be booked or processed unless he answered their questions" and failed to respond to his high blood pressure based on the following allegations:

> After Plaintiff invoked his Fifth Amendment right to remain silent, the jail officer continued questioning him. The officer stated, "These are just medical questions, okay," and repeated questions despite Plaintiff's refusal to answer. This occurs on Markham's body-worn

camera at approximately 2:29:15.

The same jail officer then stated, "Unfortunately, sir, if you don't answer my questions we are going to have to put you in a suicide [restraint/smock]. I won't have to do it, but these are just simple yes or no questions, okay." Plaintiff continued to remain silent after the threat.

A second jail officer approached and asked Plaintiff, "Are you going to try to hurt yourself while you're here?" Plaintiff, fearing that he would be placed in restraints or subjected to suicide protocols for an unknown amount of time, responded "no."

Plaintiff was denied access to a phone until he agreed to answer the questions and be fingerprinted. Jail staff repeatedly insisted that Plaintiff could not be booked unless he answered their questions, yet state law does not permit prolonged detention or denial of magistrate appearance based on refusal to answer non-essential questions. Denial of timely phone access prevented Plaintiff from contacting counsel and from arranging timely release, thereby prolonging detention without legitimate justification.

Other detainees were processed and allowed to call while Plaintiff waited.

Plaintiff was denied shoes, bedding, and items provided to other detainees until he answered their questions.

After nearly 7 hours, Plaintiff believed that he would be held indefinitely unless he answered their questions, so he contacted the staff on the intercom and told them he would answer their questions. Plaintiff then waited approximately one more hour for staff to come and ask their questions.

After questioning Plaintiff, the jailer took his blood pressure, which measured above 200 systolic. Despite this measurement, Plaintiff was not evaluated by any medical professional, was not monitored, and no medical attention of any kind was provided.

Plaintiff was held past the morning magistrate docket and released later that afternoon. Other detainees were released from their cell before the meeting, sitting in groups and chatting while waiting, then appeared before the magistrate and released after.

Dkt. No. 3 at 13-17

Following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "this circuit has continued to apply a subjective deliberate indifference standard in non-excessive-force actions alleging a violation of a pretrial detainee's constitutional rights based on episodic acts or omissions," *Cope*, 2024 WL 3177781, at *5 n.7 (citing *Alderson v.*

- 24 -

*Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an arrestee's] serious medical needs.'" *Cope*, 3 F.4th at 207 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez*, 904 F.3d at 391.

So allegations that a state actor's actions were merely ineffectual "do not demonstrate deliberate indifference." *S.R. ex rel. Musgrove v. Scott Cnty., Miss.*, No. 22-60124, 2023 WL 2964413, at *4 (5th Cir. Apr. 14, 2023) (per curiam) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997); citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) ("While these measures may have been inadequate, Plaintiffs do not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to Aguirre's well-being.")).

And, so, Lotts's claim that staff failed to medically address his one high blood pressure reading does not demonstrate deliberate indifference.

Lotts seems to also allege that the jail staff's failure to process him until he answered – or compel him to answer – intake questions can rise to the level of a constitutional violation. It's a confusing claim. And, to the extent that Lotts's factual content does not itself disprove the plausibility of this claim, it also fails because (1)

"the right to remain silent does not extend to 'routine booking questions,'" *Dickerson v. Wheelen*, No. 6:19-CV-00084, 2022 WL 772884, at *8 (S.D. Tex. Mar. 12, 2022) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (recognizing a "routine booking question exception" that "exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services"); citing *Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of *Muniz*, it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists.")), and (2) "[t]he risk of suicide and the State's responsibility to prevent self-inflicted harm by detainees is well recognized by the Fifth Circuit," *id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).

And, so, Lotts has not alleged a plausible constitutional violation grounded on his failure to cooperate in the booking process.

## IV.    The Court need not grant Lotts leave to amend his claims.

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

"Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in

futility." *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) (citations omitted).

Because the Court's review of the allegations includes video footage – footage that likely would be offered by the defendants again as critical evidence in support of summary judgment should Lotts be allowed leave to replead and somehow survive a second round of motions to dismiss – the Court has fully considered the bulk of Lotts's allegations to the extent that it's likely he has stated his best case. The remainder of those allegations are equally defective and not curable for the reasons set out above. As such, the Court need not grant leave to amend and should dismiss Lotts's claims with prejudice.

But the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Lotts an opportunity to show that this case should not be dismissed with prejudice at this juncture and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

### Recommendation

The Court should grant the Defendants' motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6) [Dkt. Nos. 9 & 10], dismiss the remainder of the claims on its own Rule 12(b)(6) motion, and dismiss this lawsuit with prejudice unless Plaintiff Dale Lotts shows through timely objections a basis to amend the complaint to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 24, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

## ELECTRONICALLY STORED INFORMATION STATEMENT

Under N.D. Tex. L. Civ. R. 7.2(e) and 72.2(d), Plaintiff states that the body-worn-camera recording cited in the objections and brief as Dkt. 10, App. 1 is electronically stored information already filed with the Court as Appendix 1 to Defendants Markham, Hammett, and Lewis's Motion to Dismiss (Dkt. 10) and conventionally maintained by the Clerk. The recording cannot be reproduced on paper and is therefore identified here rather than reprinted. Citations in the objections and brief give elapsed time from the start of the recording. Under Local Rule 7.1(i)(3)-(4), this statement page, numbered App. 153, is the appendix location assigned to that electronically stored information.