# APPENDIX IN SUPPORT OF PLAINTIFF'S RULE 59(e) MOTION

Civil Action No. 3:25-CV-03329-S-BN


| | |
|---|---|
| Dkt. 12 — Briefing Order | App. 2 |
| Dkt. 15 — Officers Response | App. 3 |
| Dkt. 16 — City Response | App. 4 |
| Dkt. 26 — Findings, Conclusions, and Recommendation | App. 5–20 |
| Dkt. 28 — Objections | App. 21–22 |
| Dkt. 28-1 — Brief in Support of Objections | App. 23–25 |
| Dkt. 29 — Order | App. 26 |
| Dkt. 30 — Judgment | App. 27 |
| Dkt. 9 — City motion, printed page 6 | App. 28 |
| Dkt. 10 — Officers motion, printed pages 9, 24–25 | App. 29–31 |
| December 11, 2023 jail-records response | App. 32 |
| September 26, 2025 video-availability notice | App. 33 |
| April 8, 2026 City letter to Attorney General | App. 34–36 |
| June 30, 2026 OAG ruling OR2026-027534 | App. 37–38 |
| Produced public-release report for Lotts arrest | App. 39 |
| Dkt. 5 — Service Order, page 2 | App. 40 |
| City employee roster — selected rows 267 and 621 | App. 41 |
| Dkt. 28-1 — Additional amendment-preservation pages | App. 42–56 |

to Lotts – through a medium that is universally accessible. Defendants must file a notice with the Court that they have complied with this directive no later than **January 16, 2026**.

Next, Lotts must file a written response to each motion to dismiss by **February 12, 2026**. Each response must be accompanied by or incorporate a brief, and each response and its brief must not together exceed 30 pages in length, excluding any table of contents and table of authorities.

And Defendants may file reply briefs, but no additional documents, by **February 27, 2026**. Each reply must not exceed 15 pages in length. No supplemental pleadings, briefs, or evidence or other documents may be filed in connection with the motions or the responses thereto without leave of court.

And, because Lotts is proceeding *pro se*, the Court sets forth these legal standards applicable to the motions to dismiss:

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

## CONCLUSION

The officers' own admissions (*see* Introduction, *supra*) defeat every argument in their motion. These are not reasonable mistakes; they are knowing violations of clearly established rights.

Plaintiff respectfully requests that the Court:

1. **Deny** Defendants' Motion to Dismiss in its entirety;
2. In the alternative, **grant leave to amend** under Rule 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); and
3. **Grant such other relief** as the Court deems just and proper.

Respectfully submitted,
By: /s/Dale Lotts
Dale Lotts, *Pro Se*
401 E 8th St, Ste 214 PMB 7860
Sioux Falls, SD 57103 (612) 208-9601
dale.lotts@policeconduct.org

## CERTIFICATE OF SERVICE

I certify that on February 13, 2026, I served a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss on all counsel of record via the Court's CM/ECF system.
By: /s/Dale Lotts
Dale Lotts, *Pro Se*
401 E 8th St, Ste 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org

The Complaint alleges specific statistical evidence of the pattern, a formal FTO training relationship that transmitted the practice, an informal "videotape guys" classification system known to both patrol and jail staff, seven hours of facially unconstitutional jail customs, and a municipal court suppression order that put the City on actual notice. These allegations, accepted as true, state a plausible Monell claim under every theory pled.

Plaintiff respectfully requests that the Court:

1. **Deny** the City's Motion to Dismiss in its entirety, with the exception of Argument F (exemplary damages against the City);
2. In the alternative, **grant leave to amend** under Fed. R. Civ. P. 15(a)(2); and
3. **Grant such other relief** as the Court deems just and proper.

Respectfully submitted,

By: /s/Dale Lotts

Dale Lotts, *Pro Se*
401 E 8th St, Ste 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org

## CERTIFICATE OF SERVICE

I certify that on February 13, 2026, I served a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendant City of Irving's Rule 12(b)(6) Motion to Dismiss on all counsel of record via the Court's CM/ECF system:

the Fourth Amendment (because his arrest was wrongful and the force used unconstitutionally excessive), the First Amendment (because he was retaliated against based on speech), and the Fourteenth Amendment (because his right to due process was violated and he was treated with deliberate indifference).

## I. The Court should grant the Officer Defendants' motion to dismiss.

As to the Officer Defendants' assertions of qualified immunity, the first prong of that defense is that a plaintiff fails to plausibly allege a constitutional violation. *See Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)).

And, as explained below, because Lotts has not alleged plausible constitutional violations based on actions by the Officer Defendants, their motion to dismiss should be granted.

"A § 1983 false arrest claim requires that the plaintiff show that the arresting officer lacked probable cause. 'Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Santander v. Salazar*, 133 F.4th 471, 481 (5th Cir. 2025) (citing then quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam)).

And, since "probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the

time of arrest or booking." *D.C. v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153-155 & n.2 (2004)).

At a minimum, there was probable cause to arrest Lotts for resisting arrest where the video evidence contradicts his allegations and reflects that Lotts disregarded verbal directives, raised his arm and moved towards an officer, and then pulled his arm away from the officers when they attempted to handcuff him. *See, e.g.*, *Benfer*, 120 F.4th at 1281 ("'A person' resists arrest 'if he intentionally prevents or obstructs a person he knows is a peace officer ... from effecting an arrest ... by using force against the peace officer ....' TEX. PEN. CODE § 38.03(a). 'It is no defense ... that the arrest or search was unlawful.' *Id.* at § 38.03(b). That means, '[i]n Texas, the act of resisting can supply probable cause for the arrest itself ....' *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013). And '[t]he great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest.' *Id.* (collecting cases).").

And, because probable cause supports Lotts's arrest, his First Amendment retaliatory arrest claim is not plausibly alleged. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Lotts also has not plausibly alleged that force used against him was unconstitutionally excessive.

A claim "that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen

should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *accord Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Excessive-force claims are 'governed by the Fourth Amendment's "reasonableness" standard.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014))).

And, to plausibly allege excessive force in violation of the Constitution, a plaintiff must provide facts that show or from which a court may infer "that he 'suffered an injury that resulted directly and only from a clearly excessive and objectively unreasonable use of force.'" *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (cleaned up; quoting *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (in turn citing *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020))).

And, so,

> a constitutional violation does not occur every time an officer touches someone. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. [And, w]hen the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes.

*Carter v. Dupuy*, 173 F.4th 561, 564 (5th Cir. 2026) (cleaned up).

Considering challenges to an excessive force claim under Rule 12(b)(6), "[t]he central question is whether Plaintiffs have pleaded facts that plausibly suggest the Officers' conduct was clearly excessive and objectively unreasonable." *Delacruz v. City of Port Arthur*, No. 1:18-CV-11, 2019 WL 1211843, at *7 (E.D. Tex. Mar. 14, 2019).

And, "[t]o gauge the objective reasonableness of the force, a court 'must balance the amount of force used against the need for force.' … [So t]he inquiry into

reasonableness is fact specific." *Hatcher v. Bement*, No. 3:14-cv-M-BN, 2015 WL 1511106, at *4 (N.D. Tex. Apr. 3, 2015) (cleaned up; quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).

Here, even if the force used, as alleged and shown through video footage to the extent that footage blatantly contradicts Lotts's allegations – the brief struggle to handcuff Lotts after he resisted by pulling his arm away and the placement of Lotts into the patrol car, which he concludes amounted to shoving – counts as more than de minimis, the factual content before the Court does not plausibly allege that that force was clearly excessive and objectively unreasonable under the circumstances.

And, to the extent that Lotts fails to plausibly allege a constitutional violation against the Officer Defendants, his claim that they conspired to violate his civil rights – which is itself conclusory, *see* Dkt. No. 3 at 21-22 (alleging "coordinated statements"; "shared responses"; and "coordinated treatment," without factual content as to an agreement between the parties) – is not plausibly alleged, *see Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (A "plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994))).

But, even if Lotts had alleged a plausible constitutional violation against an Officer Defendant, each is still entitled to dismissal of these claims based on qualified immunity.

As the Court set out in the briefing order as to the motions to dismiss for Lotts's

up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338.

And, so, "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious,'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)), because qualified immunity should "not immunize those officials who commit novel, but patently 'obvious,' violations of the Constitution," *Tyson v. Sabine*, 42 F.4th 508, 520 (5th Cir. 2022) (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)).

This is not a case where a constitutional violation is either obvious or novel – as explained above. So, to defeat the Officer Defendants' assertions of qualified immunity, Lotts was required to present authority particularized to the facts here. He did not. *See, e.g.*, Dkt. No. 15 at 22-33 (citing cases that, at least at a high level, may be relevant to the claims asserted but then failing to address how the facts underlying those decisions match the facts as alleged by Lotts and thus provide fair notice). And, so, even if the Court were to find that Lotts has plausibly alleged a constitutional violation, the Officer Defendants are still entitled to qualified immunity and dismissal of the claims against them.

## II. The Court should grant the City's motion to dismiss.

Lotts also alleges liability against the City of Irving through a claim titled "Monell Liability." *See* Dkt. No. 3 at 22-28.

*Monell* does not itself provide a cause of action. Still, "[m]unicipalities can be held liable for violating a person's constitutional rights under § 1983." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) ("*Sanchez II*") (citing *Monell v.*

it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted).

And, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and footnote omitted).

That is because "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for 'where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (en banc) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997))).

Foremost, as to his arrest by the Officer Defendants, Lotts has not alleged a claim against the City because – for the reasons set out above – he has not plausibly pleaded "that a constitutional violation occurred." *Sanchez II*, 956 F.3d at 791.

But, even if he had, Lotts still fails to plausibly allege a Section 1983 claim against the City because he fails to provide factual content that allows the Court to draw the reasonable inference that a municipal policy was the moving force behind the constitutional violations alleged.

First, Lotts has not alleged that the actions taken against him were due to an

official policy.

And, as to an "unofficial" policy or pattern or practice, a municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to [its] policymaker." *Peña*, 879 F.3d at 623 (quoting *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)); *see also Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 711 (5th Cir. 2023) ("[P]laintiffs' theory hinges entirely on the idea that if enough individuals do something, it becomes the fault of the policymaker. [But, w]ithout a showing of knowledge and acquiescence, such a theory is no more than vicarious liability and cannot survive a motion to dismiss." (citation omitted)).

"To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo*, 2015 WL 5021393, at *5 (quoting *Piotrowski*, 237 F.3d at 582).

And a pattern requires "sufficiently numerous incidents," as opposed to "isolated instances." *McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (cleaned up).

Which is why allegations "limited to the events surrounding the plaintiff" – the primary scope of the allegations pleaded by Lotts – cannot constitute "an allegation of a *de facto* policy … by [a municipality]," *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *accord Hutcheson*, 994 F.3d at 482, as such allegations do "not plausibly allege *any* pattern of conduct – much less a pattern of similar violations," *Johnson*, 83 F.4th at 947 (emphasis in original).

> [Instead, a] plaintiff can establish a policy by pointing to similar incidents that are sufficiently numerous and have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. That knowledge, coupled with a failure to act, can show the existence of a municipal policy.

*Robinson*, 80 F.4th at 710 (cleaned up); *accord Webb v. Twn. of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019) ("While municipalities can be sued directly under § 1983, *Monell* establishes that they cannot be found liable on a theory of vicarious liability or respondeat superior" – and, so, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." (cleaned up)).

And, to the extent that Lotts attempts to plead the policy prong through prior incidents based on factual content relying on records that he obtained, *see* Dkt. No. 3 at 23 ("FOIA records obtained by Plaintiff show that, from 2022 through early 2024, Officer Andrew Hammett made 27 arrests for 'public intoxication,' while Officer Paul Lewis made 8, and Officer James Markham – who was trained by Hammett as his Field Training Officer – made 15. Compared to Officer Lewis, a similarly situated patrol officer during the same period, both Hammett and Markham made substantially higher numbers of public-intoxication arrests."), these allegations do not raise a reasonable inference that an official municipal policy was the moving force behind a constitutional violation.

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the

governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850 (cleaned up).

And "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather, notice of a pattern of [fairly] similar violations is required." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (cleaned up).

That any one officer had a higher number of arrests for a particular offense compared to a fellow officer tells the Court nothing where there is no context or further factual elaboration to explain how these prior arrests are fairly similar to what Lotts alleges here. *See, e.g.*, *Peterson*, 588 F.3d at 851 & n.4 (as to the Fort Worth Police Department, "[t]wenty-seven [complaints of excessive force] in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy").

And, to the extent that Lotts asserts a ratification theory of liability – *see, e.g.*, Dkt. No. 3 at 24 ("[T]he City took no corrective action.") – "[s]imply not repudiating [police conduct] does not mean that a policymaker ratifies it. If so, that would cross the line into impermissible respondeat superior liability for a municipality," *Dobbins v. City of Dall.*, No. 3:20-cv-1727-K, 2021 WL 3781927, at *2 (N.D. Tex. Aug. 25, 2021); *see also Peterson*, 588 F.3d at 849 (even "defend[ing] conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality").

Plus, "unless the subordinate's actions are sufficiently extreme – for instance, an obvious violation of clearly established law – a policymaker's ratification or

defense of his subordinate's actions is insufficient to establish an official policy or custom." *Sligh*, 87 F.4th at 303 (cleaned up).

And, so, "underlying conduct" that, "while unconstitutional, [may] not [be] sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)).

Lotts also fails to plausibly allege the policymaker prong of *Monell* liability, which requires that a complaint contain factual content to allow the Court to reasonably infer "that the challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 285 (5th Cir. 2016); *see Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden*, 826 F.3d at 284, 286)).

### III. On its own motion, the Court should dismiss Lotts's Fourteenth Amendment due process and deliberate indifference claims.

Under the standards of Rule 12(b)(6), a district court may "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table),

2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

"The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (citations omitted).

And "[a] magistrate judge's report and recommendation constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions." *Jones v. City of Dall., Tex.*, No. 24-10803, 2025 WL 2491127, at *6 (5th Cir. Aug. 29, 2025) (per curiam) (citing *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998)).

Under these principles, the Court should consider the sufficiency of Lotts's claims based on his detention at the City's jail.

Against John Doe jailers, Lotts alleges that his rights, as a detainee, to due process and to not be treated with deliberate indifference were violated when staff at the jail "told [him that] he would not be booked or processed unless he answered their questions" and failed to respond to his high blood pressure based on the following allegations:

> After Plaintiff invoked his Fifth Amendment right to remain silent, the jail officer continued questioning him. The officer stated, "These are just medical questions, okay," and repeated questions despite Plaintiff's refusal to answer. This occurs on Markham's body-worn

camera at approximately 2:29:15.

The same jail officer then stated, "Unfortunately, sir, if you don't answer my questions we are going to have to put you in a suicide [restraint/smock]. I won't have to do it, but these are just simple yes or no questions, okay." Plaintiff continued to remain silent after the threat.

A second jail officer approached and asked Plaintiff, "Are you going to try to hurt yourself while you're here?" Plaintiff, fearing that he would be placed in restraints or subjected to suicide protocols for an unknown amount of time, responded "no."

Plaintiff was denied access to a phone until he agreed to answer the questions and be fingerprinted. Jail staff repeatedly insisted that Plaintiff could not be booked unless he answered their questions, yet state law does not permit prolonged detention or denial of magistrate appearance based on refusal to answer non-essential questions. Denial of timely phone access prevented Plaintiff from contacting counsel and from arranging timely release, thereby prolonging detention without legitimate justification.

Other detainees were processed and allowed to call while Plaintiff waited.

Plaintiff was denied shoes, bedding, and items provided to other detainees until he answered their questions.

After nearly 7 hours, Plaintiff believed that he would be held indefinitely unless he answered their questions, so he contacted the staff on the intercom and told them he would answer their questions. Plaintiff then waited approximately one more hour for staff to come and ask their questions.

After questioning Plaintiff, the jailer took his blood pressure, which measured above 200 systolic. Despite this measurement, Plaintiff was not evaluated by any medical professional, was not monitored, and no medical attention of any kind was provided.

Plaintiff was held past the morning magistrate docket and released later that afternoon. Other detainees were released from their cell before the meeting, sitting in groups and chatting while waiting, then appeared before the magistrate and released after.

Dkt. No. 3 at 13-17

Following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), "this circuit has continued to apply a subjective deliberate indifference standard in non-excessive-force actions alleging a violation of a pretrial detainee's constitutional rights based on episodic acts or omissions," *Cope*, 2024 WL 3177781, at *5 n.7 (citing *Alderson v.*

*Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (per curiam)).

"'Deliberate indifference is an extremely high standard to meet' but can be satisfied by a 'wanton disregard for [an arrestee's] serious medical needs.'" *Cope*, 3 F.4th at 207 (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Put another way, "[d]eliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez*, 904 F.3d at 391.

So allegations that a state actor's actions were merely ineffectual "do not demonstrate deliberate indifference." *S.R. ex rel. Musgrove v. Scott Cnty., Miss.*, No. 22-60124, 2023 WL 2964413, at *4 (5th Cir. Apr. 14, 2023) (per curiam) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir. 1997); citing *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) ("While these measures may have been inadequate, Plaintiffs do not present any evidence that the Officers knew they were insufficient and intentionally failed to do more out of indifference to Aguirre's well-being.")).

And, so, Lotts's claim that staff failed to medically address his one high blood pressure reading does not demonstrate deliberate indifference.

Lotts seems to also allege that the jail staff's failure to process him until he answered – or compel him to answer – intake questions can rise to the level of a constitutional violation. It's a confusing claim. And, to the extent that Lotts's factual content does not itself disprove the plausibility of this claim, it also fails because (1)

"the right to remain silent does not extend to 'routine booking questions,'" *Dickerson v. Wheelen*, No. 6:19-CV-00084, 2022 WL 772884, at *8 (S.D. Tex. Mar. 12, 2022) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (recognizing a "routine booking question exception" that "exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services"); citing *Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993) ("In the wake of *Muniz*, it has been universally accepted by courts, both federal and state, that a routine booking question exception to the Fifth Amendment exists.")), and (2) "[t]he risk of suicide and the State's responsibility to prevent self-inflicted harm by detainees is well recognized by the Fifth Circuit," *id.* (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc)).

And, so, Lotts has not alleged a plausible constitutional violation grounded on his failure to cooperate in the booking process.

## IV. The Court need not grant Lotts leave to amend his claims.

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

"Granting leave to amend, however, is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in

futility." *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) (citations omitted).

Because the Court's review of the allegations includes video footage – footage that likely would be offered by the defendants again as critical evidence in support of summary judgment should Lotts be allowed leave to replead and somehow survive a second round of motions to dismiss – the Court has fully considered the bulk of Lotts's allegations to the extent that it's likely he has stated his best case. The remainder of those allegations are equally defective and not curable for the reasons set out above. As such, the Court need not grant leave to amend and should dismiss Lotts's claims with prejudice.

But the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Lotts an opportunity to show that this case should not be dismissed with prejudice at this juncture and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

## Recommendation

The Court should grant the Defendants' motions to dismiss under Federal Rule

of Civil Procedure 12(b)(6) [Dkt. Nos. 9 & 10], dismiss the remainder of the claims on its own Rule 12(b)(6) motion, and dismiss this lawsuit with prejudice unless Plaintiff Dale Lotts shows through timely objections a basis to amend the complaint to allege a plausible claim.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 24, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

2017) (unpublished), denied the related tolling questions on its own record; they remain unresolved here. Plaintiff requests rejection of these findings, or else the paragraph 9 disposition, and no prejudice for any Doe-dependent theory before identification discovery. Brief, Objection Eight.

9. **Leave to amend and dismissal with prejudice.** Plaintiff objects to the recommendation that he likely stated his best case, that the remaining allegations are equally defective and not curable, and that every claim should be dismissed with prejudice. FCR at 26-28. Plaintiff has never amended, and the best-case inference rests on video that depicts only the street encounter and intake, not the jail-detention, training, supervision, review, or ordinance-rollout allegations. This filing deliberately presents a limited subset of the claims and theories pleaded in the operative Complaint, Compl. at 17-28 (App. 19-30). It does not redefine or abandon the remainder, which is preserved for a supported amended pleading rather than separately developed here, including: (a) Claim One, unlawful arrest and false imprisonment; (b) Claim Two, First Amendment retaliation; (c) Claim Three, each detention theory, including telephone and counsel access, magistration, coercive booking, suicide-related threats, withheld basic cell items, and medical care; (d) Claim Four, physical force and the suicide-threat theory; (e) Claim Five, the officer agreement and the patrol-to-jail branch; and (f) Claim Six, every pleaded municipal path. Proposing less as to any theory is candor, not abandonment or consent to dismissal with prejudice. These objections give the notice *Scott* requires; if the Court prefers to test futility against a complete pleading, Plaintiff requests leave to lodge a Rule 11-verified proposed amended complaint within thirty days, conformed to the

Court's claim-specific rulings. For any claim found deficient, Plaintiff requests this graduated disposition, in order: identification of the specific deficiency with thirty days to amend, or return of the claim to the magistrate judge under Rule 72(b)(3), and, only if both fail, dismissal without prejudice. Any theory whose identified defects Plaintiff cannot correct with supportable facts will not be included in the amended complaint. If the Court identifies a claim-specific ground not stated in the FCR, Plaintiff requests notice and one opportunity to respond before dismissal with prejudice. Brief, Objection Nine.

Plaintiff requests de novo review of each determination identified above, rejection of the recommended dismissal with prejudice, and leave to file one amended complaint within thirty days of the Court's order; any claim that remains deficient should be dismissed without prejudice.

Respectfully submitted,

/s/ Dale Lotts

Dale Lotts
Plaintiff, Pro Se
401 E. 8th St., Ste. 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org

Plaintiff objects to the recommendation that he likely stated his best case, that the remaining allegations are "equally defective and not curable," and that every claim should be dismissed with prejudice. FCR at 26-28.

**A. The FCR invited this showing, and these objections supply it.** The FCR recommends dismissal with prejudice "unless Plaintiff Dale Lotts shows through timely objections a basis to amend the complaint to allege a plausible claim," FCR at 28; these objections are that showing. FCR at 27. Objections Two through Eight state the proposed allegations and how each cures a stated defect, the notice *Scott* requires. 16 F.4th at 1209. *Scott* requires that notice, not a tendered pleading, and Dkt. 12 restricts supplemental filings without leave. Plaintiff will not file a pleading he has not verified to the Rule 11 standard; if the Court prefers a complete pleading for the futility test, he requests leave to lodge one within thirty days. Several rulings nevertheless reject claims without a claim-specific defect: the municipal and jail theories are resolved largely collectively, and "[t]he remainder ... equally defective and not curable" names no particular deficiency. FCR at 27. Plaintiff cannot propose specific facts to cure an unidentified defect; for any such claim, he requests identification of the deficiency or return to the magistrate judge under Rule 72(b)(3). Any theory whose defects Plaintiff cannot correct with Rule 11-verified facts will not be included in the amended complaint.

**B. The best-case inference cannot reach what the video does not show.** The FCR's stated reason for the best-case inference is that "the Court's review of the allegations includes video footage." FCR at 27. The footage depicts a street encounter and jail intake, not the hours of jail detention, the training program, supervision and report

review, or the ordinance rollout. That reason cannot support the conclusion that the municipal and jail claims are "equally defective and not curable," and the FCR states no separate reason. Id.

**C. Plaintiff has never amended, and candor is not abandonment.** This is a pro se plaintiff's original complaint, drafted without discovery while the City withheld requested records under § 552.103. District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case with prejudice," *Great Plains Trust*, 313 F.3d at 329, and generally do not dismiss a pro se complaint with prejudice without leave to amend at least once. *Brewster*, 587 F.3d at 767-68. *Bazrowx* treats the omission as harmless only where the plaintiff pleaded his best case or the dismissal was without prejudice, 136 F.3d at 1054: Section B contests the first, and the requested fallback is the second. None of the *Foman* factors beyond futility is present, and futility must be tested against the proposed pleading. *Peña*, 879 F.3d at 618. This filing deliberately presents a limited subset of the claims and theories pleaded in the operative Complaint, Compl. at 17-28 (App. 19-30). It does not redefine or abandon the remainder, which is preserved for a supported amended pleading, and proposing less is candor, not consent to prejudice. For the court-raised jail theories, *Carver* requires notice and a response opportunity before sua sponte dismissal with prejudice, 18 F.4th at 498 & n.*; this brief is that response, and Plaintiff requests the same for any ground not stated in the FCR.

**Conclusion**

Plaintiff respectfully asks the Court to review each identified determination de novo and decline to adopt the probable-cause, retaliation, force, qualified-immunity, conspiracy, municipal, and jail findings; to reject the futility recommendation and dismissal with prejudice; for any claim found deficient, to identify the claim-specific deficiency or return the claim under Rule 72(b)(3); to grant leave to file one amended complaint within thirty days; and to dismiss without prejudice any claim not adequately cured.

**Conclusion**

Plaintiff respectfully asks the Court to review each identified determination de novo and decline to adopt the probable-cause, retaliation, force, qualified-immunity, conspiracy, municipal, and jail findings; to reject the futility recommendation and dismissal with prejudice; for any claim found deficient, to identify the claim-specific deficiency or return the claim under Rule 72(b)(3); to grant leave to file one amended complaint within thirty days; and to dismiss without prejudice any claim not adequately cured.

Respectfully submitted,

/s/ Dale Lotts

Dale Lotts
Plaintiff, Pro Se
401 E. 8th St., Ste. 214 PMB 7860
Sioux Falls, SD 57103
(612) 208-9601
dale.lotts@policeconduct.org

# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DALE LOTTS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-3329-S-BN |
| | § | |
| CITY OF IRVING, et al. | § | |

## ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. Objections were filed. The Court reviewed de novo those portions of the proposed findings, conclusions, and recommendation to which objection was made, and reviewed the remaining proposed findings, conclusions, and recommendation for plain error. Finding no error, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

**SO ORDERED.**

SIGNED August 12, 2026.

[signature]

**UNITED STATES DISTRICT JUDGE**

# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| DALE LOTTS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-3329-S-BN |
| | § | |
| CITY OF IRVING, et al. | § | |

## <u>JUDGMENT</u>

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered, it is ORDERED, ADJUDGED, and DECREED that Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) [ECF Nos. 9, 10] are **GRANTED**, the remainder of Plaintiff's claims are **DISMISSED** on the Court's own motion under Rule 12(b)(6), and this lawsuit is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Clerk shall transmit a true copy of this Judgment and the Order Accepting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge to the parties and their counsel.

**SO ORDERED.**

SIGNED August 12, 2026.

**UNITED STATES DISTRICT JUDGE**

liability. *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

**A. Plaintiff's Constitutional Claims Should Be Dismissed**

Plaintiff claims that City police officers Markham, Hammet, and Lewis violated his rights when they allegedly arrested him without probable cause and falsely imprisoned him [Dkt. 3, §IV Claim 1], retaliated against him for exercising his First Amendment rights [*Id*. Claim 2], and utilized excessive force in effectuating his arrest [*Id*. Claim 4]. Plaintiff further asserts that unnamed John Doe defendants violated his due process rights. [*Id*. Claim 3]. Plaintiff's claim of alleged constitutional violations should be dismissed because Plaintiff has failed to plead sufficient facts to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Plaintiff has not pled sufficient facts to establish either a constitutional violation by the City or a policy, custom, or practice of the City that was the moving force of a constitutional violation. *Monell*, 436 U.S. at 694; *Piotrowski*, 237 F.3d at 578.

**1. Plaintiff Cannot Demonstrate Involvement by a Final Policymaker**

Municipal liability under Section 1983 must be premised on a municipal policy or custom that causes the alleged constitutional deprivation. Thus, Plaintiff must have evidence of a City policy that has caused his alleged constitutional injuries in order to survive dismissal. Because a municipality is not subject to respondeat superior liability, the acts of individual City employees do not create liability under Section 1983 unless that employee is a policymaker.

Identification of a final policymaker for Defendant City is necessary for a proper analysis of a Section 1983 cause of action. Throughout his Complaint, Plaintiff generally refers to "the City" but does not identify a final policymaker. *See, generally,* Plaintiff's Complaint [Dkt. 3]. However, for purposes of Defendant City, the designation of "final policymaker" is reserved

discussing his potentially jaywalking - "Well you're sitting here, you know, waiting for me to jaywalk for." (Appx. 1, 02:29). And although the video clearly shows that Plaintiff approached Markham, Plaintiff becomes confused and asserts that Markham approached him. (*Id*. at 05:19-05:42). Moreover, Plaintiff had previously asked Markham why he was parked at that location (*Id*. at 00:30), to which Markham replied that he was performing his duties of traffic enforcement (*Id*. at 00:59-01:06); a mere 3 minutes later, Plaintiff again asks Markham "What are you waiting here for? What's your duty here?" (*Id*. at 04:12), to which Markham again replies "Traffic enforcement" (*Id*. at 04:15). Hammett appeared on the scene approximately five-and-a-half minutes into the BWC video (*Id*. at 05:22) and noticed Plaintiff "staggering when he was walking" (*Id*. at 13:58).

The arrest commences approximately six-and-a-half minutes after Plaintiff approached Markham's vehicle when Markham instructs Plaintiff to place his hands behind his back. (Appx. 1, 06:36). Plaintiff responds by saying "Fuck off." (*Id*. at 06:38).[4] Markham reiterates his request and directs Plaintiff to "Go ahead and put your hands behind your back." (*Id*. at 06:39). Plaintiff again disregards Markham's directive, and instead raises his arm and steps towards Markham while stating "Why? What's your suspicion that I've been drinking?" (*Id*. at 06:40). Markham issues a final directive for Plaintiff to "Put your hands behind your back" as he reaches for Plaintiff's right arm. (*Id*. at 06:45). Hammett assists Markham subdue Plaintiff (*Id*. at 06:46). The ensuing video shows Plaintiff pulling his arm away from Defendants as they attempt to handcuff him. (*Id*. at 06:46 – 06:47). After a brief struggle, Plaintiff is handcuffed, he is subdued,

---

[4] During the book-in process, Plaintiff readily complies with the detention officer's request to put his hands behind his back (Appx. 1, 50:55), thereby demonstrating that he understood – yet chose to disregard – Markham's directives.

Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). Plaintiff alleges no facts to show an agreement or any "operative facts" underlying the conspiracy claim against Defendants. *See id*.

Moreover, actions allegedly taken by employees of an entity are considered to have been taken by the entity. It is a general principle in conspiracy law that a conspiracy requires two or more persons or entities. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1953). This principle has given rise to the intracorporate conspiracy doctrine, which provides that a "corporation cannot conspire with itself any more than a private individual can," and "that the acts of the agents are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (citing *Nelson Radio*, 200 F.2d at 914). "[B]ecause the acts of corporate agents are attributable to the corporation itself, a corporation lacks the multiplicity of actors required to form a conspiracy." *Walters v. McMahen*, 795 F.Supp.2d 350, 358 (D. Md. 2011). "Although the intracorporate conspiracy doctrine arose in the anti-trust context, it has been applied to public entities and has been extended to civil rights conspiracies under § . . . 1983." *Collins v. Bauer*, 2012 WL 443010, at *7 (N.D. Tex. Jan. 23, 2012) (Ramirez, J.) (citations omitted), rec. adopted, 2012 WL 444014 (N.D. Tex. Feb. 10, 2012) (Boyle, J.); *see also Swilley v. City of Houston*, 457 Fed. Appx. 400, 404 (5th Cir. 2012) (per curiam) (holding that § 1985 claim fails because "[t]he City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."); *Thompson v. City of Galveston*, 979 F. Supp. 504, 512 (S.D. Tex. 1997) (granting motion to dismiss § 1983 conspiracy claim where individual defendants were both "employees of the Galveston Police Department" and "for the purposes of Plaintiff's § 1983 conspiracy claim, the Galveston Police Department and its employees constitute a single legal entity which is incapable of conspiring with itself.").

Plaintiff does not dispute that the Defendants are all employees of the City. *See* Compl. § II ("Plaintiff seeks redress for the violation of his rights by officers and employees of the City of Irving."). Nor does he provide any reason why the intracorporate conspiracy doctrine does not preclude his claim. Accordingly, the court should grant Defendants' motion to dismiss Plaintiff's Section 1983 Conspiracy claim.

**CONCLUSION**

The facts alleged within Plaintiff's Complaint do not constitute the violation of any right protected by the Constitution or laws of the United States, and as such, the claims must be dismissed for failure to state a claim for which relief can be granted. Moreover, even if Plaintiff's Complaint alleged facts of a violation of federally protected rights, Defendants are entitled to dismissal of Plaintiff's claims against them because of their entitlement to qualified immunity. Plaintiff does not allege particularized facts that demonstrate that he was deprived of a constitutionally protected right, and also does not allege facts showing that Defendants' conduct was objectively unreasonable in light of clearly established law.

WHEREFORE, PREMISES CONSIDERED, Defendants Markham, Hammett, and Lewis respectfully pray that: (1) the Court grant Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's claims; (2) Plaintiff take nothing by this suit; (3) all relief requested by Plaintiff be denied; (4) Defendants recover all costs of suit and attorney's fees; and (5) for such other and further relief, general or special, at law and in equity, to which they may be justly entitled.

**City of Irving, TX - Open Records Request ORR-2023-2159 Previous Determination**

1 message

**Lauren Gilmette (Irving, TX)** <IrvingTX@request.justfoia.com> Mon, Dec 11, 2023 at 1:41 PM
Reply-To: 5d8b5098-60c6-49fa-a2fe-5e6ce97c076d.IrvingTX@request.justfoia.com
To: dlotts@knightrider.com

Dear Dale Lotts,

NOTICE:

On December 5, 2023, we received your public information request for the police report, jail records and calls, dash camera video and body camera video for report #23-28919. In order to promote governmental efficiency and encourage the prompt release of information as required by the Public In-formation Act, we have relied upon Open Records Letter No. 2022-34959 in re-sponding to your request. We do so within five business days after the receipt of your request.

The department has made a good faith determination the information you requested:

> deals with the detection, investigation, or prosecution of crime and the release of the records would interfere with the detection, investigation, or prosecution of an open or pending criminal matter.

This information is subject to section 552.108(a)(l) of the Government Code. The depart-ment has also determined you have not previously requested this information. Therefore, pursuant to the previous determination granted by the Office of the Attorney General in Open Records Letter No. 2022-34959, the department is releasing some information to you, and is withholding the remaining responsive information subject to section 5 5 2 .108( a)( I ) of the Government Code.

> Please note, we are withholding the following specified types of information:
> Police Incident report (except basic information) Witness/suspect interview(s)
> Video recording(s): Dash and Body camera
> Jail records and calls

If you have questions regarding the use of this previous determination. Please call the department at 972-721-2555, or for more information concerning your rights and the responsibilities of the department, please visit the Office of the Attorney General's website at https:/www.texasattorneygeneral.gov/open-government/members-public/108-previous-determination or call the Office of the Attorney General's Open Government Hotline, toll free, at (877) 673-6839. You may also review general information about the Public

*If you request this information a second time, the department must request a ruling from the Office of the

Attorney General (the "OAG") in order to withhold the information. See Open Records Letter No. 2022-34959.

**Duplicate request PD-2023-2552

---

**File: Incident Report Public Release 23-28919.pdf**
619K

**Irving Police Department - Open Records Request PD-2025-2212 Documents Available**

1 message

**Lauren Gilmette (Irving, TX)** <IrvingTX@request.justfoia.com> Fri, Sep 26, 2025 at 4:45 PM
Reply-To: dae94986-fb83-4ce2-833e-0aa25bcc1e1a.IrvingTX@request.justfoia.com
To: dlotts@knightrider.com

RE: Open Records Request **Request Number: PD-2025-2212** Submitted On: 07/16/2025

Dear Dale Lotts,

The Open Records Request dated 07/16/2025, has been processed by theIrving Police Department. Our findings are as follows:

Body worn and dash camera videos pertaining to report #23-28919/JA063581 will be sent in a separate email from evidence.com.

If you have any questions, you may contact the Irving Police Department at(972) 721-2555.

Sincerely,

Irving Police Department
305 N. O'Connor Road
Irving, Texas 75061
IPDRecordReq@irvingtx.gov
(972) 721-2437

IRVING
TEXAS

April 8, 2026

***Via E-Filing***
Office of the Attorney General
c/o Tamara Smith
Chief - Open Records Division
P.O. Box 12548
Austin, Texas 78711-2548

RE: Request for Public Information Decision Based on **Government Code Sections 552.103, 552.108, 552.101, and 552.152**

| Today's Date | Date Request Received | Police Dept. Reference No. |
|---|---|---|
| **April 8, 2026** | **March 25, 2026** | **PD-2026-1242**<br>**PD-2026-1243**<br>**PD-2026-1244** |

| Requestor Name and Email | Requestor Mailing Address |
|---|---|
| **Dale Lotts**<br>**dlotts@knightrider.com** | **401 E 8th Street**<br>**Sioux Falls, SD 57103** |
| ***Copy of this letter sent to Requestor without enclosures.*** | |

Dear Sir or Madam:

The City of Irving received three Public Information Requests for specific records maintained by the Police Department. Please see the requests enclosed as Exhibit A, for details. A representative sample of the responsive records are enclosed as Exhibits B, C, D, E, F, G, and H. Additional information that is not responsive but included for your convenience is enclosed as Exhibit I. And Exhibit J are letters being sent to the requestor which are explained below.

We have recently received a ruling from your office that allowed us to withhold the records responsive to the previous two requests under Section 552.103, see OR2026-009465, with the exception of basic information, which we released to the requestor. The previous request at issue involved current general orders and standard operating procedures. In the current request PD-2026-1243, the requestor is seeking general orders and standard operating procedures in effect on a certain date. Some of these records are the exact same records as those previously requested and addressed in the previous ruling. And some of these records have edits or slight variations. As such, we did not believe we could send the requestor a letter completely relying on this previous determination. Simultaneously with this letter, the requestor will receive Exhibit J, which explains that a portion of the records requested are being withheld pursuant to OR2026-009465 and that the remaining records are being sent to your office for a ruling.

The requestor also requested body worn camera footage in request PD-2026-1242. Pursuant to Code of Criminal Procedure Article *2B.0112*, the requestor must provide specific information when making this request. However, as shown in Exhibit A, the requestor failed to provide the approximate time and the specific location of where the recordings occurred. As such, the

requestor is being notified along with this letter that this was an improper request for body worn camera footage, see Exhibit J.

Pursuant to the Texas Government Code Section 552.301, we request an opinion on the following questions:

1. ***Are the records enclosed as Exhibits B, C, D, E, F, G, and H excepted from disclosure pursuant to Section 552.103 (records for pending litigation)?***

The City believes that the information requested is exempt from disclosure under Section 552.103, information relating to litigation. Under this section, information which relates to litigation may be withheld from disclosure under the requirements of Section 552.103 of the Government Code if litigation is pending or reasonably anticipated and the information at issue relates to that litigation. Heard v. Houston Post Co., 684 S.W.2d 210, 212 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Section 552.103 of the Act enables governmental entities to protect their position in litigation by forcing parties seeking information to obtain it through discovery. Open Records Decision No. 551 (1990). Section 552.103 of the Act was intended to prevent the use of the Open Records Act as a method to avoid discovery rules. Attorney General Opinion JM-1048 (1989). Because the requested records relate to the pending litigation the City contends the records at issue are exempt from disclosure under Section 552.103(a).

In his three requests, the requestor has asked for

1. **PD-2026-1242** (See Exhibit A) **[Exhibits B, C, D, and E are responsive]**
    a. All "body worn camera footage recorded by the arresting officer, any transporting officer, and any other involved officer," and the identification for "all officers involved in the stop, detention, investigation, arrest, search, transport," etc., regarding certain specified arrests made by Officer Markham, and
    b. the complete list of "all officers present on scene, the names of all jail, booking, intake, detention, and custody-transfer personnel who spoke with, interacted with, received, processed, searched, supervised, or took custody" of the requestor.
2. **PD-2026-1243** (See Exhibit A) **[Exhibit F is responsive]**
    a. Copies of "the complete set of Irving Police Department and jail policies, procedures, general orders, special orders, directives, manuals, standard operating procedures, post orders, written protocols, training bulletins, attachments, appendices, forms, checklists, and referenced addenda that were in effect on December 4, 2023" along with specific policies and procedures requested.
3. **PD-2026-1244** (See Exhibit A) **[Exhibits G and H are responsive]**
    a. All "records relating to any use of force by Officer Markham, and all complaints involving Officer Markham, arising from any interaction, incident, detention, stop, arrest, transport," etc.

On December 4, 2025, the requestor filed a lawsuit against the City, see Exhibit I. The case is currently pending in the United States District Court for the Northern District of Texas, Dallas Division; Civil Action No. 3-25CV3329-S; *Dale Lotts vs. City of Irving, et al*. Thereafter on March 25, 2026, after filing the lawsuit against the City and receiving the previous ruling from your office

allowing us to withhold information given the pending litigation, the requestor submitted these three open records requests. All three open record requests are directly related to the topic for which the requestor is suing the City. In fact, one of these requests is basically seeking witness identification information. Therefore, it is clear that the requestor is using the open record process as a discovery method.

Therefore, we request a decision regarding whether the material enclosed as Exhibits B, C, D, E, F, G, and H are excepted from public disclosure under the above-referenced provision of the Texas Government Code. Please note the City will release the basic information regarding Exhibits B, C, and E.

2. ***Are the records enclosed as Exhibits C and D excepted from disclosure pursuant to Section 552.108 (records of a law enforcement agency)?***

Pursuant to Section 552.108(a), information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted if release would interfere with the detection, investigation, or prosecution of a matter that has not resulted in conviction or deferred adjudication. Furthermore, the courts have held that releasing records related to a case that has not received final disposition by a court of law would presumptively interfere with the detection, investigation, and prosecution of crime. See Holmes v. Morales, 924 S. W.2d 920 (Tex. 1996). Houston Chronicle Publ'g Co. v. City of Houston, 531 S.W.2d 177, 184-87 (Tex. Civ. App.—Houston [14th Dist.] 1975), writ ref'd n.r.e., 536 S.W.2d 559 (Tex. 1976) (per curiam) (court delineates law enforcement interests that are present in active cases).

The responsive records enclosed as Exhibits C and D are held by the Irving Police Department and relate to an incident that has not received a final disposition by the appropriate court of law and/or is still being investigated. Specifically, the responsive records involve an ongoing active investigation by the City of Irving Police Department and upon completion of the investigation will be pending prosecution in the appropriate court of law either Dallas County District Attorney's Office or Irving Municipal Court depending on the charges.

The release of this information would interfere with the detection, investigation, or prosecution of this crime. The city argues that investigative strategies may be revealed, witnesses may be unwilling to speak for fear of retaliation, and/or confidential information may be revealed if the requested records are disclosed or released. This request to withhold the requested information is compelling as the city argues that the release of the submitted information and/or records has the potential to jeopardize this pending or any future prosecution.

For the reasons stated above, the City of Irving respectfully requests the Attorney General find that the information requested be excepted from public disclosure pursuant to Section 552.108(a)(1) of the Texas Government Code. Pursuant to 552.108(c), the city will release the basic information regarding Exhibit C to the requestor.

3. ***Is the information enclosed as Exhibit D excepted from disclosure pursuant to Section 552.101 (information deemed confidential by law) in conjunction with Section 261.201 of the Texas Family Code?***

with section 261.201(a) of the Family Code.[3] *See* Open Records Decision No. 440 at 2 (1986) (predecessor statute).

Section 552.103 of the Government Code provides, in relevant part:

> (a) Information is excepted from [required public disclosure] if it is information relating to litigation of a civil or criminal nature to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party.
>
> . . .
>
> (c) Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.

Gov't Code § 552.103(a), (c). The governmental body claiming section 552.103 has the burden of providing relevant facts and documents sufficient to establish the applicability of section 552.103 to the information it seeks to withhold. To meet this burden, the governmental body must demonstrate: (1) litigation was pending or reasonably anticipated on the date of its receipt of the request for information, and (2) the information at issue is related to that litigation. *See Univ. of Tex. Law Sch. v. Tex. Legal Found.*, 958 S.W.2d 479 (Tex. App.—Austin 1997, orig. proceeding); *Heard v. Houston Post Co.*, 684 S.W.2d 210 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Both elements of the test must be met in order for information to be excepted from disclosure under section 552.103. *See* Open Records Decision No. 551 at 4 (1990).

You state, and provide documentation showing, prior to the city's receipt of the instant request, a lawsuit styled *Dale Lotts vs. City of Irving, et al.*, Cause No. 3-25CV3329-S, was filed and is currently pending in the United States District Court for the Northern District of Texas, Dallas Division. Therefore, we agree litigation was pending on the date the city received the present request for information. You also state, and we agree, the information at issue pertains to the substance of these pending lawsuits. Based on your representations and our review, we find the information at issue is related to the pending litigation. Therefore, we conclude the city may generally withhold the remaining information under section 552.103 of the Government Code.

We note, and the city acknowledges, however, information normally found on the front page of an offense or incident report is generally considered public. *See Houston Chronicle Publ'g Co. v. City of Houston*, 531 S.W.2d 177 (Tex. Civ. App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e. per curiam*, 536 S.W.2d 559 (Tex. 1976); Open Records Decision No. 127 at 3-4 (1976) (summarizing types of information deemed public by *Houston*

[3] As our ruling is dispositive, we need not address your remaining argument against disclosure of the submitted information.

*Chronicle*). This office has determined section 552.103 does not except from release basic information about a crime. *See* Open Records Decision No. 362 at 2 (1983). Accordingly, with the exception of basic information, the city may withhold the remaining information under section 552.103(a) of the Government Code.[4]

Generally, however, once information has been obtained by all parties to the litigation though discovery or otherwise, no section 552.103(a) interest exists with respect to that information. *See* Open Records Decision Nos. 349 (1982), 320 (1982). Thus, information that has either been obtained from or provided to all parties to the pending litigation is not excepted from disclosure under section 552.103(a) and must be disclosed. Further, the applicability of section 552.103(a) ends once the litigation has concluded. *See* Attorney General Opinion MW-575 (1982); *see also* Open Records Decision No. 350 (1982).

In summary, as the requestor did not properly request the body worn camera recordings at issue pursuant to chapter 2B, our ruling does not reach this information and it need not be released. The city must withhold Exhibit D under section 552.101 of the Government Code in conjunction with section 261.201(a) of the Family Code. With the exception of basic information, the city may withhold the remaining information under section 552.103(a) of the Government Code.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

Hunter Simmons
Assistant Attorney General
Open Records Division

HS/mo

Ref: ID# 26-017599

c: Requestor

---

[4] As our ruling is dispositive, we need not address the remaining arguments against disclosure of this information, except to note basic information held to be public in *Houston Chronicle* is generally not excepted from public disclosure under section 552.108 of the Government Code. Gov't Code § 552.108(c).

# Irving Police Department
## Incident Report - Public Release
23-28919

### Offense Information

Report Number: **230028919-0000** Offense: **PUBLIC INTOXICATION**

Offense Location: **W 114 FW WB/N MACARTHUR BL, IRVING**

Reporting Officer: MARKHAM,JAMES #1379 Unit: 264 Reporting District: 6423

Reported: Monday, 12/4/2023 1:40:00 AM

Occurence: Monday, 12/4/2023 01:40

### Summary

One subject was arrested for public intoxication.

### Persons / Businesses

| Involvement | Type | Name | Age | Race | Sex | MNI |
|---|---|---|---|---|---|---|
| ARRESTEE | Individual | LOTTS,DALE | 53 | W | M | 6563164 |
| | | 401 E 8TH ST STE 214 PMB7860, SIOUX FALLS, SD 57103 | | | | |

| DPS No | Charge Description | Level | Warrant Agency | Warrant Number |
|---|---|---|---|---|
| MC5604 | PUBLIC INTOXICATION | MC | | |

| Involvement | Type | Name | Age | Race | Sex | MNI |
|---|---|---|---|---|---|---|
| COMPLAINANT | Society/Public | STATE OF TEXAS | | | | 5678817 |

### Other Officers

| Officer Name | Badge # |
|---|---|
| HAMMETT,ANDREW | 1263 |
| LEWIS,PAUL | 1370 |

accordance with Rule 4(*l*) or an executed waiver of service.

The Court further advises Lotts that, if proper service is not made and shown to the Court through a filed proof of service (or a waiver of service obtained and filed with the Court) before the 90th day after the filing of this action (on December 4, 2025) that is not a Saturday, Sunday, or legal holiday – which will be **Wednesday, March 4, 2026** – this case is subject to dismissal without prejudice unless Lotts shows both (1) good cause for this failure and (2) good cause for the Court to extend the time for service for an appropriate, specified period. *See* FED. R. CIV. P. 4(m); *see also* FED. R. CIV. P. 41(b) (providing for dismissal, with or without prejudice, for failure to prosecute and obey court orders).

SO ORDERED.

DATED: December 10, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

# Selected Employee Roster Entries

Source: City-produced Employee Records (Redacted Per AG Ruling).xlsx, worksheet New Report. The table reproduces the column headings and cell values from rows 267 and 621. Blank cells remain blank.

| **Source field** | **Row 267** | **Row 621** |
|---|---|---|
| Emp: Last name | Remington | Bermudez |
| Emp: First name | Lewis | Miguel |
| Emp: Badge/ID number | 763 | C2191 |
| Emp: Hire date | 03/04/1996 | 04/20/2020 |
| Emp: Employment end date | | |
| Emp: Title/rank | Lieutenant | Detention Officer |
| Emp: Type | Sworn | Civilian |
| Emp: Org: Division | Special Operations | Technical Services |
| Emp: Org: Platoon/Unit | | B Nights |

This is a transcription of selected spreadsheet cells, not an image of the worksheet. The roster itself does not match either employee to a particular recorded act or establish an assignment on December 4, 2023.

Plaintiff objects to the finding that the recording blatantly contradicts the pleaded account. FCR at 5-6, 8-10. The *Harmon* rule itself is not disputed, FCR at 6, and no part of this recording blatantly contradicts any allegation in the Complaint. The FCR describes conduct it finds depicted, FCR at 8, 10, but it does not identify which Complaint allegation that description blatantly contradicts, or the elapsed interval at which the recording shows the contradiction. A recording that permits Defendants' account, while the material interval is obstructed, does not blatantly contradict the pleaded account. *Sligh v. City of Conroe* states the same limit from the other direction: an incorporated recording controls only "to the extent" it contradicts an allegation, and the allegations it does not contradict must be credited. 87 F.4th 290, 298 (5th Cir. 2023).

The recording cannot foreclose the pleaded facts it does not show. It begins after the alleged surveillance, does not show Plaintiff's feet, and is obstructed by the officers' bodies during the disputed contact interval at 06:47-06:51, with no visible frame isolating an outward pull, supplying a start or end frame, or resolving intent. Dkt. 10, App. 1 at 06:42-06:55; Compl. § III ¶¶ P-U. And one court has examined this recording: the Irving Municipal Court, with the City's attorneys participating, considered the same evidence and argument and granted Plaintiff's suppression motion "in all things." Compl. § III ¶ MM; Dkt. 15-1 at App. 003-010 (App. 104-11). The order states no grounds, and Plaintiff offers only its disposition: that court did not treat the recording as foreclosing this account.

This error underlies the probable-cause, retaliation, and force findings below. If the Court instead concludes the recording blatantly contradicts any allegation, Plaintiff

FCR at 7; *Beck v. Ohio*, 379 U.S. 89, 91 (1964), and an arrest cannot generate the probable cause required for its own commencement. The any-offense rule changes which offense may justify the arrest, not when the facts must be known. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). *Wesby*'s whole-picture rule describes breadth, not chronology. *District of Columbia v. Wesby*, 583 U.S. 48, 56-57, 60-61 (2018). The picture is frozen at the moment of arrest, and *Sauceda* applies that limit to resisting arrest. Plaintiff states both halves of the rule. Texas Penal Code § 38.03(b) makes unlawful arrest no defense to resisting, so if the Court credits qualifying resistance at 06:46-06:47, probable cause would arise then and run forward. What later resistance cannot do is erase the unlawful portion that preceded it or supply probable cause for the arrest that preceded it. The requested relief is phase-specific, and whether qualifying resistance occurred at all remains disputed. Objection One.

**B. The listed acts also fail Section 38.03(a)'s elements.** Resisting arrest requires intentional obstruction "by using force against" an officer. Tex. Penal Code § 38.03(a). Speech in response to a command is not force, non-forcible non-compliance is not force, and the Complaint alleges compliance and stillness. Compl. § III ¶ P. The raised right hand held a phone, no frame shows a thrust, strike, or contact, and no officer commanded Plaintiff to lower it. Dkt. 10, App. 1 at 06:40-06:46. Only the alleged arm movement at 06:46-06:47, after contact began, could implicate the force element. As Objection One establishes, the obstructed frames show no pull, no duration, and no resolved intent. *Harmon*, 16 F.4th at 1163.

**C. *Sauceda* governs the sequence, and *Benfer* does not displace it.** In *Sauceda v. City of San Benito*, a factfinder could find that the officer's words and grasp effected an arrest before the alleged pull-away, and the preceding unlawful portion survived. 78 F.4th 174, 187-88 (5th Cir. 2023). The FCR relies on *Benfer*, where the recording "unambiguously" showed the plaintiff repeatedly pulling free of the officer's grasp, a video holding this obstructed recording cannot support. 120 F.4th 1272, 1281 (5th Cir. 2024). Its *Ramirez* quote involved an admitted pull while the officer was "attempting to arrest," 716 F.3d 369, 372, 376 (5th Cir. 2013), and *Carroll* declined the illegal-arrest question, 800 F.3d 154, 170-72 (5th Cir. 2015). The cases divide by phase: *Ramirez* and *Benfer* address resistance before an arrest is complete, and *Sauceda* governs where the arrest came first.

Irving's officers made the same move in *Young* and *Winegarner*: each motion invoked the same *Carroll*-to-Ramirez chain while placing the offered probable-cause acts after its stated commencement; neither non-binding disposition decided the sequence question. Young Officers MTD at 11-12; Winegarner Officers MTD at 12-13; *Young*, Dkt. 34 at 15-16; *Winegarner*, Dkt. 25 at 19-21. Plaintiff cites the filings only for the positions they state.

**D. "At a minimum" identifies no other offense, and none is supported.** Defendants presented public intoxication, interference, and failure to identify, and the FCR resolves none. FCR at 7-8. Public intoxication requires intoxication to the degree the person "may endanger" himself or another. Tex. Penal Code §§ 49.01(2)(A), 49.02(a). The Complaint alleges no observed intoxication behavior, five recorded noncustodial

confirmations, and no sobriety assessment or welfare check. Compl. § III ¶¶ M, W, Z. The entire pre-arrest exchange on the subject was one question, "Have you been drinking tonight?", and one bare impression, "Kind of seems like you have," with no stated odor, speech defect, balance problem, admission, or other symptom, and in the usable audio no officer states before the command that Plaintiff endangered anyone. Dkt. 10, App. 1 at 06:30-06:36. The first claimed observation, that Plaintiff had been "staggering," was articulated by Hammett only after the arrest; its timing does not establish when any perception occurred, and the Complaint alleges there was no staggering to perceive and that the recordings do not support the claim. Compl. § III ¶ X. Release in lieu of arrest requires an officer belief that detention is unnecessary for anyone's protection and release to a responsible adult or into verified treatment, and it operates only "[i]n lieu of arresting," before arrest. Tex. Code Crim. Proc. art. 14.031(a). Markham offered the ride after the arrest, with no responsible-adult inquiry. After arrest, release belongs to a magistrate, and the Class C citation-release alternative expressly excludes public intoxication. Tex. Code Crim. Proc. arts. 14.031(b), 14.06(b). The offer permits two inferences, and either undermines the danger element: Markham perceived no danger, or he offered a disposition the statute did not permit him to make.

*Devenpeck*'s any-offense rule reaches only offenses the facts known at 06:36 supported. No offense Defendants presented was, and the pleaded and visible facts at that moment fairly raise no other. Failure to identify requires a lawful arrest first. Tex. Penal Code § 38.02(a). Interference with public duties carries an express speech-only defense, Tex. Penal Code § 38.15(a), (d), and the Complaint alleges only criticism, profanity, and recording. Compl. § III ¶¶ I, P. Markham's motive is irrelevant to probable

cause, *Whren v. United States*, 517 U.S. 806, 813 (1996). This claim turns on the facts known at 06:36: no articulated sign of intoxication and no danger fact, with the Complaint alleging none existed. Each element is independently required. And the Introduction's exchange, the offer to "come up with" justification, supports the inference that no observed fact then existed. Compl. § III ¶ L; Dkt. 10, App. 1 at 03:08-03:38. The proposed amendment alleges the four-stage chronology, the absence of force or contact before 06:45, and the absence of any observed intoxication or danger fact, stating a plausible unlawful-arrest claim. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Three: The retaliation ruling falls with the probable-cause finding, and the recorded exchange supplies causation.**

Plaintiff objects to the conclusion that the retaliation claim fails because probable cause supported the arrest. FCR at 8. Criticism of police is core protected activity, *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987), and a custodial arrest chills ordinary firmness. *Nieves* requires a retaliatory-arrest plaintiff to plead the absence of probable cause. 587 U.S. 391, 402 (2019). Objection Two establishes that the operative allegations do that, so the FCR's single stated ground fails.

The recorded exchange below is causation evidence on the primary route regardless of any exception. For the exception, *Gonzalez v. Trevino* permits objective evidence, without virtually identical comparators, that similarly situated persons not engaged in the same protected speech would not have been arrested. 602 U.S. 653, 658-59 (2024) (per curiam). The exchange is not offered as a completed comparator showing; that

The operative timeline is actor-specific: criticism, the 03:26 answer, the first drinking question at 06:30 after nearly six minutes with no change in Plaintiff's behavior, and the arrest six seconds later. Before the arrest, the officers' own recorded words went to Plaintiff's speech, attitude, claimed "problem," and freedom to leave, against one drinking question and one bare impression. Dkt. 10, App. 1. That allocation permits the inference that their attention was on the speech, not intoxication. Then came Hammett's post-cuffing remark, pleaded as "wouldn't shut up before, now won't talk" and recorded as "Couldn't stop talking before, now won't talk." Proposed: BWC-Hammett at 06:38. Compl. § III ¶¶ F-P, V-W. The proposed allegations add the report itself: it selects for narration Plaintiff's raised middle fingers, his camera "pointing" at the officer, his "confrontational tone," and the free-to-leave exchange. Incident-23-28919 at 2-3. A report that catalogs protected speech supports the inference that the speech drove the arrest. Those allegations state a plausible retaliation claim under either *Nieves* path. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Four: The force allegations state a plausible claim.**

Plaintiff objects to the findings that the recording establishes resistance, that the event was a "brief struggle" and "placement" into a patrol car, and that the force was not plausibly excessive and unreasonable. FCR at 8-10.

This objection stands on its own: the allegations state a claim even if probable cause existed, and Plaintiff does not argue that an invalid arrest alone makes force unlawful. On Objection Two's showing, no offense was validly suspected at 06:36, so the

crime-severity *Graham* factor supplies no justification, leaving force against a compliant, nonthreatening, non-fleeing subject, which *Newman*, *Trammell*, and *Hanks* hold unjustified.

The Complaint alleges that while Plaintiff stood still and compliant, Hammett approached from behind and shoved him into the patrol vehicle, that Markham and Hammett then held him in a painful high-leverage arm position for about thirty-two seconds, and that the hold caused substantial pain and bruising photographed the next day. Compl. § III ¶¶ Q, T. The recording is obstructed during the disputed contact and does not blatantly contradict those allegations. Objection One, supra. The claim stands on those allegations alone: the shove, the hold, the pain, and the photographed bruising, weighed under *Graham*. 490 U.S. 386, 396 (1989). The Complaint additionally alleges that immediately after the force, while Plaintiff had not pulled away, twisted, or resisted, Hammett said on camera, "that was completely unnecessary." Compl. § III ¶ U. The remark states no referent, and Plaintiff discloses that. Offered as context, its timing permits a favorable inference on either reading: as an assessment of the force, excess; as a rebuke of conduct the visible frames show was speech and recording, Objection Three's retaliation inference.

Nor is the alleged force de minimis under *Carter v. Dupuy*, 173 F.4th 561, 564 (5th Cir. 2026): a rear shove plus a sustained thirty-two-second pain hold producing photographed bruising is the category *Trammell*, *Newman*, and *Hanks* held actionable against compliant subjects.

The *Graham* and *Barnes* factors, taken in Plaintiff's favor, all point one way: a Class C fine-only offense, no weapon, no threat, no flight, movement to the commanded position five seconds before contact, no warning, and force nine seconds after the first command: the rapid escalation *Trammell* held permits the inference that force was not measured and ascending. Compl. § III ¶¶ I, P-T, Z; Dkt. 10, App. 1 at 06:36-06:45; *Barnes v. Felix*, 605 U.S. 73, 80 (2025); *Trammell*, 868 F.3d 332, 342-43 (5th Cir. 2017). The proposed amendment adds each officer's role, the sequence and duration, and the injuries. Those allegations state a plausible excessive-force claim. If the Court instead finds the claim deficient, Plaintiff requests Objection Nine's graduated disposition.

**Objection Five: The fact-matched comparisons the FCR found missing.**

Plaintiff objects to the alternative conclusion that the officer claims fail both qualified-immunity prongs. FCR at 10-14. The FCR faulted Plaintiff for citing cases without "address[ing] how the facts underlying those decisions match the facts as alleged." FCR at 14. The matched comparisons follow, and each authority predates December 4, 2023. Clearly established law requires fair warning, not a prior case with materially identical facts, and the FCR itself recognizes that distinctions matter only if they make precedent's applicability unclear. FCR at 13.

**Unlawful arrest.** In *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017), Turner was unarmed, recorded police from a public place, committed no crime, posed no threat, did not flee, and was arrested after declining to identify himself. The Fifth Circuit denied the arresting officers qualified immunity at Rule 12. Id. at 686-88, 693-96. The comparison operates with Objection Two, which supplies the absence of actual or arguable probable cause it

accounts. Markham muted his body-camera audio from elapsed 09:31 to 12:33 while he and Hammett conferred, and he later testified that the mute covered a case discussion with Hammett. Dkt. 10, App. 1 at 09:31-12:33; Supp. Hr'g 01:18:11-01:18:32. The officers discussed this arrest for about three minutes before either wrote a report. Afterward, each supplied an impairment account the Complaint alleges the identified recordings do not support: Hammett's "staggering" and Markham's claimed moments of slurring. Compl. § III ¶¶ X, MM.

Accepted as true, those allegations identify the object, the participants, and their complementary words and acts. A timestamped coordination opportunity on muted audio, followed by convergent accounts the recordings are alleged not to support, permits, though it does not compel, a reasonable inference of agreement under *Terwilliger*. These are proposed allegations, offered against futility. Where pleaded facts permit competing plausible inferences, the choice belongs to the factfinder. *Twombly*, 550 U.S. at 556.

The patrol-to-jail branch is preserved for a supported amended pleading rather than separately developed here. If the Court finds it unsupported, Plaintiff requests Objection Nine's graduated disposition.

**Objection Seven: Separate objections to each municipal path.**

Plaintiff objects separately to the dismissal of each municipal path below and to the policy-or-custom, comparator, policymaker, deliberate-indifference, and moving-force conclusions supporting those dismissals. FCR at 14-22, 26-28. Four paths are

presented; a fifth is preserved in Section D without being presently asserted. Each claim requires a policy or custom, a policymaker chargeable with actual or constructive knowledge of it, and a violation whose moving force it was. *Peterson*, 588 F.3d at 847. The predicate objections come first: the FCR eliminated the municipal claims partly by eliminating the constitutional claims beneath them, FCR at 14-15, so each sustained predicate objection requires the Court to reach the remaining municipal elements.

**A. Path one: the practitioner-described arrest custom.** Plaintiff objects to the dismissal of the custom path. The FCR found the arrest-count allegations lacked "context or further factual elaboration," FCR at 20-21, but the proposed amendment does not rest on counts. The custom is a two-stage arrest method, described by its practitioner on the City's own recording: a predicted pedestrian offense as the hook for compelled identification and a warrant check ("I knew [he] was about to jaywalk," he would "have to ID," he "might have warrants"), with public intoxication as the custodial fallback ("You could be out in the roadway. And then you get PI"). He delivered it in institutional terms: "proactive police work," "a bunch of directives," and "that is me actually doing my job, 100 percent." Compl. § III ¶¶ J, L; Dkt. 10, App. 1 at 02:12-03:08. An officer seven months out of field training described the method on camera in the department's terms, invoking City directives whose contents the City controls. The proposed amendment pleads that description, which permits the inference that the method was trained or tolerated, not improvised. The recorded application here shows the escalation the method supplies: protected criticism, the 03:26 justification answer, one drinking question, and the method's custodial fallback six seconds later. Knowledge: the proposed allegations plead that the description invokes City directives

and that the Section E channels carried the practice's footprint to the responsible officials. Moving force: Markham described the method and then, the amendment pleads, performed it on Plaintiff.

The counts corroborate the description, with their limits disclosed. Public intoxication appears in 13 of Hammett's 42 calendar-2023 reports (30.95%) and 14 of Markham's 65 (21.54%), against 616 of 6,588 department-wide (9.35%), about 3.3 and 2.3 times the department rate. Lewis, the non-FTO-linked comparator, sits at 3 of 28 (10.71%), near the department rate. PD-2024-464 Arrests; PD-2026-1596 Arrest Workbook; PD-2025-3926 Arrests at 1. Cf. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 & n.4 (5th Cir. 2009). The elevation tracks the training relationship: trainer highest, trainee next, the unconnected officer at baseline. Plaintiff discloses one conflict: four workbook records cannot be located in the department-wide export; no figure's order of magnitude changes. The counts are never the custom itself. The proposed allegations also document the concealment the arrest data cannot show: Markham's report admits he parked "to watch the male and passing traffic" and gives no reason for watching this pedestrian, and the recording supplies the reason. Incident-23-28919 at 2; Dkt. 10, App. 1 at 02:12-02:27.

**B. Paths two and three: failure to train and failure to supervise.** Plaintiff objects to the dismissal of the training and supervision paths. The City itself identifies the program: its Professional Standards Division houses the Training Academy and the Police Training Officer Unit, with field training its designated mechanism for transmitting standards. City of Irving, Police Department Professional Standards,

https://irvingtx.gov/professional_standards (last visited Aug. 6, 2026). City records identify Hammett as Markham's Field Training Officer, with a joint public-intoxication arrest during the training period. PD-2024-464 Training Records at 9; Supp. Hr'g 01:11:42-01:11:52; PD-2026-1242, 23-6594 at 1. The footing is recorded: Markham offered a post-arrest disposition the statutes reserve to a magistrate. Tex. Code Crim. Proc. arts. 14.031(a)-(b), 14.06(b); Objection Two D. Grounded in that recorded offer, the proposed amendment pleads that the release-authority training failed at a basic, recurring point; the curriculum records that would confirm the omission are City-controlled. Section E. The supervision path rests on the same mechanisms. Markham described the method and made the release offer openly, on his own camera, before the trainer the City had assigned him, and Hammett joined rather than corrected. Approver "763" then approved a report describing a person repeatedly told he was free to leave and then arrested, identifying no new observed fact. Incident-23-28919 at 1-3. A deviation made and tolerated in the open, before the trainer and the approving supervisor, permits the inference of supervisory acquiescence and supplies the notice showing. Moving force: the trained officer performed the transmitted method on Plaintiff seven months after certification, and the approved report sustained the charge.

**C. Path four: the jail booking custom.** Plaintiff objects to the dismissal of the jail-custom path. Jail employees told Plaintiff that phone access, magistration, and basic cell items would not be provided until he answered and completed booking because that was the jail's "policy" and "the way we do it here." Compl. § III ¶¶ AA, GG-LL. That is a stated operating rule, applied in coordination across separate functions over many hours by multiple staff, not an inference from one incident. Moving force: the stated rule

produced the compelled answers and withheld necessities Objection Eight addresses, and the injury ran until Plaintiff complied.

**D. The post-suppression record: notice evidence, and a preserved theory.** Plaintiff does not presently assert a standalone post-suppression failure-to-correct claim; that theory is preserved for a Rule 11-verified amended pleading supplying its later-injury and municipal-decision elements. The facts serve the presented paths as notice and persistence evidence. On March 7, 2025, the Municipal Court, with the City's attorneys participating, suppressed all evidence from this arrest, Compl. § III ¶ MM, and the City's own Professional Standards page states that its Policy and Accreditation section "audit[s] key functions within the department to verify compliance with policies." Irving's workbook shows public-intoxication bookings continuing at pre-suppression volumes: against 689 in all of 2023, 609 from the March 7, 2025 suppression through December 31, 2025, and 225 more from January 1 through April 27, 2026, the workbook's last arrest date. PD-2026-1596 Arrest Workbook. Those counts do not establish that any post-suppression arrest was unlawful, and the absence of a produced corrective-review record is a defendant-control allegation, not proof that no review occurred. Compl. § III ¶ NN. So offered, the proposed allegations support post-notice knowledge and acquiescence for paths one and two, answering *Robinson* for the period after notice; nothing here is offered as ratification, which *Sligh* confines to sufficiently extreme after-the-fact approval, or as a moving force for the 2023 arrest. The continuing arrest-record harm is pleaded as damages in Objection Three.

**E. Shared showings: policymaker, records, and the *Robinson* and *Sligh* limits.** A complaint need not name the policymaker if its facts allow the inference that the authorized policymaker promulgated or ratified the policy or delegated its adoption. *Groden*, 826 F.3d 280, 284-86 (5th Cir. 2016). Irving Code § 29-4 assigns the Police Chief policy promulgation and jail management, under the City Manager's supervision. The amendment pleads that structure, the field-training program, the directives Markham invoked on camera, and the City-controlled delegation and approval records that complete the connection under *Peña*, 879 F.3d at 621-23. *Longoria* dismissed municipal claims saying nothing about the challenged policy's drafter, origin, or adoption; the proposed allegations supply that route. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019). The proposed allegations also identify the City Council's "Community Services and Public Safety Committee" and the police "Departmental Outlook" presentations as the enforcement-information channels to the governing body. The withheld records are identified request by request: officer training, employment, and discipline records, PD-2025-3938; jail policies, booking logs, and identity records, PD-2026-1242 through 1244, withheld under Texas Government Code § 552.103, OAG OR2026-027534 at 3-4; and the remaining arrest-information streams, OR2026-009465 at 1-3, withheld under § 552.103 except basic information. No request is cited to prove a specific record exists. Where a defendant controls the information, a plaintiff may plead on information and belief grounded in known facts. *Innova Hosp.*, 892 F.3d 719, 730 (5th Cir. 2018). The amendment identifies each withheld record and what it would establish, including the method's non-arrest footprint. *Robinson v. Midland County* rejected municipal

knowledge inferred from employee conduct alone, 80 F.4th 704, 710-11 (5th Cir. 2023); the paths above rest on employee-stated rules, the field-training structure, the report approval, and the identified record channels to the authorized officials. *Sligh* limits only ratification inferred from after-the-fact approval absent sufficiently extreme conduct, 87 F.4th at 303, and the paths above are pleaded independently of ratification.

Plaintiff requests that the Court reject these conclusions on de novo review as to the operative Complaint and reject futility as to the proposed allegations. For any municipal path found deficient, Plaintiff requests Objection Nine's graduated disposition, and no prejudice should attach to a Doe-dependent path before identification discovery. This filing deliberately presents a limited subset of the pleaded municipal theories, and Plaintiff says so plainly; that candor distinguishes a curable gap from futility. The theories not separately presented are preserved for a supported amended pleading, not abandoned, and any path Plaintiff cannot cure with Rule 11-verified facts will not be included in the amended complaint.

**Objection Eight: The jail claims challenge punishment, not booking questions.**

Plaintiff objects to construing the jail allegations as asserting a right to refuse routine booking questions, to the deliberate-indifference finding on the blood-pressure allegations, and to treating the identified defects as incurable. FCR at 22-26. **A. The claim is about leverage, not questions.** *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990), and *Presley v. City of Benbrook*, 4 F.3d 405, 408 n.2 (5th Cir. 1993), permit routine booking questions but do not address what consequences may compel answers. The amended complaint will not assert a right to refuse routine booking