UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DALE LOTTS, Plaintiff,
v.
CITY OF IRVING, et al., Defendants.

Civil Action No. 3:25-CV-03329-S-BN

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO ALTER OR VACATE THE JUDGMENT AND FOR LEAVE TO AMEND**

**Use of Generative Artificial Intelligence**

Plaintiff used generative artificial intelligence to assist in preparing this reply.

**I. Rule 15 governs reopening for amendment.**

Rule 15(a)'s considerations govern this Rule 59(e) request to reopen for amendment. *Farmers Texas County Mutual Insurance Co. v. 1st Choice Accident & Injury, L.L.C.*, No. 24-20275, slip op. at 5-6 (5th Cir. Feb. 24, 2026). Leave should be freely given; denial requires a substantial reason. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The factors are undue delay, bad faith, repeated failure to cure through allowed amendments, undue prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff has never amended; no bad faith is shown. His February requests and pre-judgment cure explanations answer undue delay; Defendants identify only relitigation as prejudice. Part II.

Independently, the opening brief identifies manifest error in resolving disputed encounter facts against Plaintiff and finding amendment futile. Dkt. 26 at 8-10, 27-28; Dkt. 31-1 at 5-6, 15-16. Well-pleaded facts and reasonable inferences favor Plaintiff; video controls only on blatant contradiction. *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021). Parts III.A-C apply that rule to arrest, retaliation, and force. Plaintiff asserts legal error, not newly discovered evidence.

*Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009), generally calls for a pro se amendment opportunity unless the plaintiff pleaded his best case. No curative facts were

proposed there. Plaintiff explained cures before judgment. App. 23; Dkt. 31-1 at 8-17.

"Exhibit A" is Dkt. 31-3; "App." cites Dkt. 31-2.

**II. The filed objections explained the cures before judgment.**

Plaintiff requested amendment in both February 12 responses. Dkt. 15 at 28 (App. 3), Dkt. 16 at 27 (App. 4). The briefing order required leave for supplemental submissions. Dkt. 12 at 2 (App. 2). The recommendation later invited a showing "through timely objections a basis to amend the complaint to allege a plausible claim." Dkt. 26 at 28 (App. 20).

Plaintiff followed that procedure. The objections brief explained arrest, force, immunity, municipal, and jail cures. Dkt. 28-1 at 8-11, 13-15, 19-26. It stated: "Objections Two through Eight state the proposed allegations and how each cures a stated defect, the notice *Scott* requires." *Id.* at 29 (App. 23). It requested permission to submit a complete pleading within thirty days if preferred for the futility test. *Id.* Defendants' assertion that no cure explanation was supplied is incorrect. Dkt. 32 at 6 n.2, 11. *Scott v. U.S. Bank National Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), permits a proposed complaint or cure explanation.

*Farmers* permits affirmance on ample and obvious grounds despite inadequate explanation. Slip op. at 6-10. It rejected reliance on awaiting judicial guidance where the plaintiff defended its pleading and first sought further amendment after judgment. *Id.* at 11-13. Plaintiff instead requested leave in February and explained the cures through the invited objections procedure before judgment. App. 3-4, 23-25, 43-56.

The September 9 motion supplied Exhibit A twenty-eight days after the August 12 judgment and thirty-three days after the objections. App. 23, 26-27; Dkt. 31-3 at 1. The objections said factual support would be checked under Rule 11 before submission. App. 23. Plaintiff relies on requested leave, not a granted thirty-day deadline. Rule 15(a)(2) remained available after amendment as of course expired.

Under *Farmers*, undue delay requires prejudice to Defendants or unwarranted burdens on the Court; elapsed time alone is insufficient. Slip op. at 10-11. Defendants identify renewed

litigation, not lost evidence or disrupted discovery or trial settings. Dkt. 32 at 19-20. Their asserted court burden assumes futility; Parts III-IV show why considering the invited cures is warranted.

**III. Exhibit A changes the premises of the blanket futility ruling.**

Futility tests each proposed claim under Rule 12(b)(6). *Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018). Each claim and immunity prong must be assessed on the properly assumed facts. A plausible claim defeats futility as to it, subject to immunity.

**A. Later asserted resistance cannot dispose of the earlier arrest claim.**

The recommendation resolved disputed facts against Plaintiff, finding resistance in disregarded commands, a raised arm, movement toward an officer, and an asserted pull. Dkt. 26 at 8 (App. 6). Defendants place arrest at 06:36 and the pull at 06:46-06:47. Dkt. 10 at 9 (App. 29). Exhibit A pleads submission by 06:40 and restraint about 06:45, both before the pull. Ex. A ¶¶ 26-29, 85-89.

Later resistance cannot erase an earlier unlawful arrest. *Sauceda v. City of San Benito*, 78 F.4th 174, 187-88 (5th Cir. 2023). Exhibit A alleges a visible phone in the raised hand, left-hand compliance, obstructed views, and no intentional resistance. Ex. A ¶¶ 27-33, 86, 89. Section 38.03(a) requires intentional obstruction using force against an officer or another. Probable cause must precede the earlier seizure.

Public intoxication requires intoxication to a degree that may endanger a person. Tex. Penal Code § 49.02(a). Exhibit A disputes the report's slurring, shuffling, unsteadiness, and lost-focus descriptions. It alleges responsive conversation, standing, permission to leave and remain, and crossing predicted after Markham left. Ex. A ¶¶ 17-25, 76, 87-94, 176. *Prim v. Stein*, 6 F.4th 584, 592-94 (5th Cir. 2021), involved apparent impairment and an intended lengthy walk across intersections. The distinction concerns intoxication and danger facts, not mandatory testing or realized harm.

The intervening phone and compliance movements supplied no intentional force or physical interference under the pleaded account. Speech alone falls within § 38.15(d), and § 38.02(a) presupposes a lawful arrest. *Freeman v. Gore*, 483 F.3d 404, 414-15 (5th Cir. 2007); *Turner v. Driver*, 848 F.3d 678, 695 (5th Cir. 2017); Ex. A ¶¶ 86, 89, 94.

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204-07 (5th Cir. 2009), separately requires facts defeating reasonable probable-cause mistake. Markham allegedly knew the responsive exchange, standing posture, permission to remain, and predicted crossing. Hammett heard that permission, supplied a qualified drinking impression, and saw compliance. Ex. A ¶¶ 87-96. Plaintiff requests that assessment on the proposed account, without adopting the report's disputed observations.

Lewis's application rests on his own escort and the recorded release discussion detailed in Part III.B, including the allegedly absent offense basis, not release discretion alone. Ex. A ¶¶ 97-101. *Turner*, 848 F.3d at 695-96, distinguishes unsupported restraint from prompt investigation and release. The proposed application addresses his communicated information and both immunity prongs.

**B. The retaliation amendments connect protected speech to each officer's act.**

The recommendation rejected retaliation for probable cause and insufficient fair warning. Dkt. 26 at 8, 14 (App. 6, 9). Exhibit A disputes probable cause and pleads officer-specific but-for causation under *Nieves v. Bartlett*, 587 U.S. 391, 398-402 (2019). Ex. A ¶¶ 102-114. The *Enlow* comparison below addresses fair warning.

Markham allegedly heard criticism and saw recording, said he could "come up with" justification, and permitted Plaintiff to leave or remain. After handcuffing, he asked, "Why do you hate the police so much?" He described deferential speech that could have produced a ride and offered one "even now" instead of jail. Plaintiff answered, "I'm already under arrest, so it's up to you." Ex. A ¶¶ 17-21, 40-44, 103-104. Those words support speech-determined custody. The objections raised that theory. Dkt. 28-1 at 11-13.

Hammett's application rests on criticism directed to him, his drinking assertion and joinder, and his later speech-to-silence remark. Lewis's rests on hearing the speech-linked release discussion before his own escort. Ex. A ¶¶ 107-114. Each application alleges that the officer would not have taken his challenged action without the speech motive.

*Enlow v. Tishomingo County*, No. 91-1003, slip op. at 3-4 & n.7, 12-14 (5th Cir. June 8, 1992), rejected summary-judgment immunity on disputed speech, arrest, and probable-cause facts. Wall handcuffed the plaintiff under the sheriff's speech-linked arrest direction. Lewis allegedly implemented the communicated custody choice through escort. Ex. A ¶¶ 105, 109, 113. *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987), protects verbal opposition.

A viewer could regard Plaintiff's criticism and profanity as offensive to the officers. Offensiveness alone does not remove constitutional protection: "Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988) (quoting *FCC v. Pacifica Foundation*). A viewer's reaction to Plaintiff's language does not establish that the recording blatantly contradicts his pleaded account of compliance and force. *Harmon*, 16 F.4th at 1162-63.

The primary arrest and continued-custody theories require absent probable cause and officer-specific but-for causation. Ex. A ¶¶ 97-114.

**C. The force amendments answer reasonableness and fair warning.**

The recommendation evaluated handcuffing after asserted resistance and placement into the patrol SUV. Dkt. 26 at 8-10, 14 (App. 6-9). Exhibit A alleges compliance, no intentional resistance, and control from contact. Hammett's distinct forceful shove against the SUV is recalled, not isolated on camera. Ex. A ¶¶ 26-37, 116-123. Markham's leverage and Hammett's shove and restraint allegedly caused bruising and shoulder pain that continued until he could lower his arms to a normal resting position. Ex. A ¶¶ 117, 121. Occlusion cannot defeat those allegations; fair warning requires separate assessment.

*Hanks v. Rogers*, 853 F.3d 738, 741-43, 744-49 (5th Cir. 2017), involved an abrupt blow driving a minor-offense suspect into his vehicle before reaching the ground. *Trammell v. Fruge*, 868 F.3d 332, 340-43 (5th Cir. 2017), denied immunity for a tackle after an arm pull, distinguishing an uninjurious grab. *Boyd v. McNamara*, 74 F.4th 662, 667-69 (5th Cir. 2023), denied immunity for tasing during cuffing cooperation, applying *Hanks* and *Trammell*. These cases inform Hammett's shove and joint force despite left-hand compliance. Ex. A ¶¶ 116-123.

*Joseph v. Bartlett*, 981 F.3d 319, 335, 339-41 (5th Cir. 2020) (force reduction upon subdual, even before cuffing), and *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008) (slamming a subdued, handcuffed person's face into a vehicle), gave each officer fair warning against continued injurious leverage after control. *Timpa v. Dillard*, 20 F.4th 1020, 1034-36 (5th Cir. 2021), applies *Bush* across force techniques, considering continuing need and time to recognize subdual. Exhibit A alleges Markham initiated contact, then kept the joined hands raised. Ex. A ¶¶ 29, 32, 116-123. *Zorn v. Linton*, No. 25-297, slip op. at 4-5 (U.S. Mar. 23, 2026), granted immunity for wristlock lifting of a refusing protester warned of force. Plaintiff alleges commands without a force warning and compliance before contact. Ex. A ¶¶ 27-36, 116-123; Dkt. 28-1 at 15 (App. 49); Markham BWC 06:36-06:45.

*Alexander v. City of Round Rock*, 854 F.3d 298, 309-10 (5th Cir. 2017), held that even relatively insignificant injuries are cognizable when caused by unreasonably excessive force. *Freeman* rejected tight-cuff bruising after twisting and jerking. 483 F.3d at 416-17. *Lewis v. Delgado*, No. 24-20484, slip op. at 6-9 (5th Cir. Jan. 7, 2026), granted immunity for minimal cuffing in an armed-suspect search, assuming medical notice. The shove and leverage differ in degree and need, independently of arrest legality. Ex. A ¶¶ 117, 120-123.

Count Four answers the missing-agreement finding. Dkt. 26 at 10 (App. 8). Hammett's training of Markham, drinking assertion, joint restraint, and later speech-focused acts support an inferred shared retaliatory course. Ex. A ¶¶ 124-132. Each officer has separate knowledge and implementation allegations. *Id.* Paragraph 133 distinguishes *Hilliard v. Ferguson*, 30 F.3d

649, 653 (5th Cir. 1994), concerning § 1985(3). *Thompson v. City of Galveston* applied the doctrine to § 1983. 979 F. Supp. 504, 511-12 (S.D. Tex. 1997). But defense-cited *Collins* denied dismissal based on pleaded exceptions, including personal purposes. Dkt. 10 at 24 (App. 30); *Collins v. Bauer*, No. 3:11-CV-887-B, slip op. at 12-15 (N.D. Tex. Jan. 23, 2012), adopted (Feb. 10, 2012). The speech-focused acts support an inferred shared purpose to punish criticism through custody and force. Ex. A ¶¶ 124-133. Plaintiff requests assessment under *Collins*, separately from agreement and doctrinal applicability.

**D. The municipal amendments identify policy, attribution, and causal mechanisms.**

Defendants dispute violation, policy, knowledge, and causation. Dkt. 32 at 14-15. *Groden v. City of Dallas*, 826 F.3d 280, 284-86 (5th Cir. 2016), permits policy-attribution allegations without naming the final policymaker. Exhibit A connects municipal training, review, policy issuance, and jail management to each challenged practice. Ex. A ¶¶ 166-173, 179, 187, 193, 203.

The arrest-practice path, M-01, connects Markham's stated directives, the established trainer-trainee relationship, joint implementation, and passage through charging and review. Ex. A ¶¶ 174-182. Plaintiff infers municipal maintenance through the identified training and corrective functions, rather than from the officers' employment alone. *Id.* ¶¶ 179-181.

M-02 identifies deficient objective PI-element assessment and speech-neutral custody decisions. Training records and Hammett's instructional role supply the alleged transmission mechanism. Ex. A ¶¶ 183-189. Paragraph 187 separately alleges knowing maintenance, based on instructional review, joint implementation, and the Young complaint and response. Sergeant Phillips's July 7, 2023 response documents Irving's complaint-review process without naming Hammett or specifying the allegations. Young's later pleading alleges Hammett's participation. *Id.* ¶ 172. Those attributed sources support the pleaded notice inference, distinct from transmission.

The report-review path, M-03, identifies approval of a narrative that recounts permission to leave without explaining the change to arrest. Ex. A ¶¶ 190-196. The 2019 review rules, 2023 routing, and earlier complaint review identify the corrective channels supporting the pleaded knowing-maintenance inference. *Id.* ¶¶ 191-194. The December 5 approval corroborates the alleged existing practice. Its separate causal role concerns later maintenance and use of the report-based charge and resulting defense expenses, not the December 4 charging act. *Id.* ¶¶ 177, 182, 195-196.

M-10 alleges a separate jail rule. Multiple employees described and enforced answer-conditioned telephone access over five to six hours after self-harm clearance. Ex. A ¶¶ 197-204. Repeated descriptions, coordinated implementation, and assigned municipal functions support an authorized operating-rule inference, distinct from custom. *Id.* ¶ 203; Dkt. 31-1 at 17. Remembered statements support phone conditioning. Later delivery and recognition support the separate item-withholding inference. Ex. A ¶¶ 200-202.

*Balle v. Nueces County*, 952 F.3d 552, 559-60 (5th Cir. 2017), reversed dismissal of an alleged unwritten medical-care policy on different six-day acute-medical facts. Here, *Bell v. Wolfish*, 441 U.S. 520, 535, 538-39 (1979), governs the alleged punishment. Exhibit A pleads the coercive condition, isolation, cold, impaired sleep, and resulting compliance. Ex. A ¶¶ 148-155, 197-205.

*Collins v. Ainsworth*, No. 03-60539, slip op. at 30-31 (5th Cir. Aug. 20, 2004), rejected overnight telephone and mattress restrictions. *Hamilton v. Lyons*, 74 F.3d 99, 106-07 (5th Cir. 1996), rejected listed three-day restrictions even assuming punitive intent. Unlike *Collins*'s practical delays, repeated denials of a functioning telephone available to others allegedly induced answers after self-harm clearance. Ex. A ¶¶ 148-151, 197-205. The item component separately alleges cold and impaired sleep until delivery after answers and processing. *Id.* ¶¶ 152-155, 200-202. Plaintiff requests assessment of that coordinated rule, its actual effects, and each deprivation, rather than duration or purpose in isolation.

*Alexander v. Philip R. Taft Psy D & Assocs., P.L.L.C.*, No. 24-10663, slip op. at 2-3, 11-14 (5th Cir. Dec. 23, 2025), upheld five-day suicide-cell conditions serving prevention after an affirmative suicide report. Here, Exhibit A alleges immediate denial and clearance, followed by separate answer-conditioned restrictions. Ex. A ¶¶ 51-65, 197-205.

Street recordings and the resistance finding do not resolve the later jail rule or remembered events.

**IV. Employee identification and limitations require separate rulings.**

The employee-specific cures and immunity applications appear in Dkt. 31-1 at 11-13 and Exhibit A: Bermudez (¶¶ 134-139); Does 1 and 2 (¶¶ 140-147); Doe 3 (¶¶ 148-151); Doe 7 (¶¶ 152-155); Doe 8 (¶¶ 156-159); and Doe 5 (¶¶ 160-164). Plaintiff requests separate rulings on those applications, the municipal rule, and employee identification.

*Jacobsen v. Osborne*, 133 F.3d 315, 320-21 (5th Cir. 1998), distinguishes misidentification from unknown identity. *Balle*, 952 F.3d at 556-58, rejected relation back for unknown identities. Plaintiff requests separate identity, lawsuit-notice, and naming-circumstance determinations. Ex. A ¶¶ 207-209. Role records identify the actor. Notice records address this lawsuit within Rule 4(m)'s period. Naming circumstances require a distinct Rule 15(c) determination. The City's defense does not establish each employee's circumstances. Dkt. 9 at 6 (App. 28).

App. 32-38 documents the December 2023 request, criminal-case withholding, September 2025 production notice, and later identification request. Exhibit A separates ordinary viewing, enlarged-frame surname recognition, and the unconfirmed roster match. Ex. A ¶¶ 7, 208. *Jenkins v. Tahmahkera*, No. 24-10724, slip op. at 9-15 (5th Cir. Aug. 19, 2025), rejected delayed accrual and tolling on its record. Documented requests and the City's merits defense warrant the requested Rule 4(m) extension and City-held identity/notice records, with a substitution/service period. App. 28, 32-38; Dkt. 31-1 at 18-19.

Employee limitations should not control City or named-officer relief. *Balle* affirmed individual limitations dismissal while reversing municipal dismissal. 952 F.3d at 556-60. Plaintiff requests the same separate treatment here.

**V. Requested relief**

Plaintiff requests vacatur or alteration of Dkt. 30, reopening, and filing of Exhibit A under Local Civil Rule 15.1(b). Alternatively, he requests relief for every nonfutile claim, defendant, and municipal path through one conformed complaint, preserving objections to exclusions. He requests leave to conform curable defects and notice and opportunity to respond to new sua-sponte grounds.

For each denial, Plaintiff requests the deficient element or immunity prong, proposed allegations considered, governing authority, and any controlling recording passage. He requests the identity, notice, substitution, and service procedure in Dkt. 31-1 at 18-19 for each plausibly pleaded employee claim.

Respectfully submitted,

/s/ Dale Lotts
Dale Lotts, pro se
401 E. 8th Street, Suite 214, PMB 7860
Sioux Falls, South Dakota 57103
Telephone: (612) 208-9601
Email: dale.lotts@policeconduct.org

**Certificate of Service**

I certify that on October 14, 2026, I served this document through the Court's electronic filing system on all counsel of record.

/s/ Dale Lotts